# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| _____ : | **CIVIL ACTION NO.** |
| KIMBERLY COLE and ALAN COLE, *et al.*, on : | **13-CV-07871-FLW-TJB** |
| behalf of themselves and all others similarly : | |
| situated, : | |
| : | **Document Electronically Filed** |
| Plaintiffs, : | |
| : | **Oral Argument Requested** |
| v. : | |
| : | |
| NIBCO Inc., : | |
| Defendant. : | |
| _____ : | |

---

## MEMORANDUM OF LAW IN SUPPORT OF THE
## PARTIAL MOTION TO DISMISS OF NIBCO INC.

---

| | |
|---|---|
| John McGahren, Esquire | Robert T. Connor, Esquire |
| jmcgahren@morganlewis.com | rconnor@kjmsh.com |
| MORGAN, LEWIS & BOCKIUS, LLP | Jason T. Scheets, Esquire |
| 502 Carnegie Center | jscheets@kjmsh.com |
| Princeton, NJ 08540-6289 | KELLEY JASONS McGOWAN SPINELLI |
| Telephone: (609) 919-6600 | HANNA & REBER, LLP |
| Fax: (609) 9196701 | Two Liberty Place, Suite 1900 |
| | 50 South 16th Street |
| | Philadelphia, PA 19102 |
| J. Gordon Cooney, Jr., Esquire | Telephone: (215) 854-0658 |
| jgcooney@morganlewis.com | Fax: (215) 854-8434 |
| (admitted p*ro hac vice*) | *Attorneys for NIBCO Inc.* |
| Franco A. Corrado, Esquire | |
| fcorrado@morganlewis.com | |
| MORGAN, LEWIS & BOCKIUS LLP | |
| 1701 Market Street | |
| Philadelphia, PA 19103 | |
| Telephone: (215) 963-5000 | |
| Fax: (215) 963-5001 | |

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ...........................................................................................1

II.     SUMMARY OF THE FIRST AMENDED COMPLAINT ..............................3

        A.      Plaintiffs' Individual Facts ...............................................................3

        B.      NIBCO's PEX Products And Its Limited Warranty..........................7

III.    LEGAL STANDARD ....................................................................................8

IV.     ARGUMENT .................................................................................................9

        A.      The Tort And Implied Warranty Claims By Plaintiff Monica And All Of The Coles' Claims Are Subsumed By State Product Liability Statutes And Must Be Dismissed ..........................................................................................9

        B.      Plaintiffs' Claims For Breach Of Implied Warranty Of Fitness For A Particular Purpose Must Be Dismissed .............................................11

        C.      Plaintiffs McMahon's And McCoy's Warranty Claims Fail For Additional Reasons .......................................................................................13

        D.      Plaintiffs' Various Attempts To Plead A Consumer Fraud Claim Fail Under Rule 9(b) .......................................................................................14

                1.      Plaintiff Monica Cannot State A Claim Under The NJCFA ..................15

                        a.      The FAC Identifies No Actionable Misrepresentation Or Omission.................................................................15

                        b.      Plaintiff Monica Cannot Contort His Breach Of Warranty Claim Into A Violation Of The NJCFA ......................................18

                2.      The Pepernos Cannot State A Claim Under Pennsylvania's UTPCPL ..............................................................................19

                        a.      The FAC Does Not Adequately Allege That NIBCO Engaged In Conduct Considered Actionable Under The UTPCPL ..........................................................20

                        b.      In Any Event, The Pepernos Fail To Allege Justifiable Reliance ......................................................................20

                3.      The Medders And Plaintiff McMahon Have Not Stated A Claim Under The TX DTPA ..............................................................21

                4.      Plaintiff Sminkey Cannot State A Claim Under The OK DTPA ...........23

        E.      Plaintiffs' Negligence Claim Is Fatally Deficient ...........................24

                1.      Plaintiffs Cannot State A Negligence Claim Because It Is Premised On A Breach Of NIBCO's Contractual Duty To Provide A Warranty Remedy ......................................................................24

# TABLE OF CONTENTS
(continued)

**Page(s)**

|  |  |  |  |
|---|---|---|---|
| | 2. | Regardless, The Negligence Claim Does Not Meet The Pleading Standards Of *Iqbal* And *Twombly* | 25 |
| F. | | No Plaintiff Has Stated A Viable Unjust Enrichment Claim | 27 |
| G. | | The Claim For Declaratory And Injunctive Relief Must Be Dismissed Because These Are Remedies, Not Stand-Alone Causes Of Action | 29 |
| V. | | CONCLUSION | 30 |

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alvarez v. Chevron Corp.*,
No. CV 09-3343, 2009 WL 5552497 (C.D. Cal. Sept. 30, 2009), *aff'd*, 656 F.3d 925
(9th Cir. 2011) ......................................................................................................... 14

*Arcand v. Brother Int'l Corp.*,
No. 07–cv–4987, 2010 WL 3907333 (D.N.J. Sept. 29, 2010) ................................ 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......................................................................................*passim*

*Bealer v. Mutual Fire, Marine & Inland Ins. Co.*,
242 F. App'x 802 (3d Cir. 2007) ............................................................................ 24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...............................................................................1, 8, 14, 26

*Berry v. Indianapolis Life Ins. Co.*,
608 F. Supp. 2d 785 (N.D. Tex. 2009) ................................................................... 22

*Branch Banking & Trust Co. v. Howard*,
No. 12-0175, 2013 WL 951652 (S.D. Ala. Mar. 8, 2013) ...................................... 28

*Brannigan v. Bank of Am. Corp.*,
No. 13-CV-00129, 2013 WL 6510787 (N.D. Ga. Dec. 12, 2013) .......................... 24

*Certain Underwriters At Lloyd's, London v. U-Line Corp.*,
No. 13-3203, 2013 WL 5503672 (D.N.J. Oct. 1, 2013) ......................................9, 10

*Chruby v. Kowaleski*,
534 F. App'x 156 (3d Cir. 2013) ............................................................................ 29

*Cooper v. Sw. Marine & Gen. Ins. Co.*,
No. 13-cv-1651, 2014 WL 769394 (N.D. Ala. Feb. 26, 2014) ............................... 24

*Crozier v. Johnson & Johnson Consumer Cos.*,
901 F. Supp. 2d 494 (D.N.J. 2012) ...................................................................15, 16

*Danny Lynn Elec. & Plumbing, LLC v. Veolia ES Solid Waste Se., Inc.*,
No. 09-cv-19, 2011 WL 2893629 (M.D. Ala. July 19, 2011) ................................. 28

*Deburro v. Apple, Inc.*,
No. A-13-CA-784-SS, 2013 WL 5917665 (W.D. Tex. Oct. 31, 2013).........12, 22, 23

*Durso v. Samsung Elecs. Am., Inc.*,
No. 12-cv-5352, 2014 WL 4237590 (D.N.J. Aug. 26, 2014)................................... 14

**TABLE OF AUTHORITIES**

(continued)

**Page(s)**

*Floyd v. Brown & Williamson Tobacco Corp.*,
    159 F. Supp. 2d 823 (E.D. Pa. 2001) ....................................................21

*Frederico v. Home Depot*,
    507 F.3d 188 (3d Cir. 2007) .........................................................9, 15

*Frey v. Gumbine's RV*,
    No. 1:10-CV-1457, 2010 WL 4718750 (M.D. Pa. Nov. 15, 2010) ..........................12

*Garcia v. Bank of Am., N.A.*,
    No. 12-CV-360, 2014 WL 3696269 (S.D. Tex. July 23, 2014) ............................24

*Glauberzon v. Pella Corp.*,
    No. 10-5929, 2011 WL 1337509 (D.N.J. Apr. 7, 2011) ...................................17

*Gray v. Abbott Labs., Inc.*,
    No. 10-cv-6377, 2011 WL 3022274 (N.D. Ill. July 22, 2011) ............................12

*Hehr Int'l, Inc. v. Sika Corp.*,
    No. 12-1624, 2013 WL 4008810 (D.N.J. Aug. 5, 2013) ...................................11

*Hoffman v. Natural Factors Nutritional Prods. Inc.*,
    No. 12-7244, 2014 WL 2916452 (D.N.J. June 26, 2014) ..................................12

*Hunt v. U.S. Tobacco Co.*,
    538 F.3d 217 (3d Cir. 2008) ..............................................................20

*In re Atlas Roofing Corp.-Chalet Shingle Prods. Liab. Litig.*,
    No. 13-CV-2195, 2014 WL 3360233 (N.D. Ga. July 9, 2014) .............................27

*In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prods. Liab. Litig.*,
    No. 12-00087, 2013 WL 1194851 (D.S.C. Mar. 22, 2013) .................................14

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*,
    MDL No. 07–1873, 2008 WL 5217594 (E.D. La. Dec. 12, 2008) ...........................12

*In re Gerber Probiotic Sales Practices Litig.*,
    No. 12-835, 2014 WL 5092920 (D.N.J. Oct. 10, 2014) ....................................18

*In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*,
    No. 08-939, 2009 WL 2940081 (D.N.J. Sept. 11, 2009) ..............................16, 17

*Jim Schumacher, LLC v. Spireon, Inc.*,
    No. 12-cv-00625, 2014 WL 3508002 (E.D. Tenn. July 14, 2014) ........................28

*Johnson v. Draeger Safety Diagnostics, Inc.*,
    No. 13-2439, 2013 WL 3788937 (D.N.J. July 19, 2013) ..................................11

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Johnson v. Wells Fargo Bank, NA,*
    999 F. Supp. 2d 919 (N.D. Tex. 2014) ................................................................. 27

*Kee v. Zimmer, Inc.,*
    871 F. Supp. 2d 405 (E.D. Pa. 2012) ................................................................. 21

*LaTraverse v. Kia Motors of Am.,*
    No. 10-6133, 2011 WL 3273150 (D.N.J. July 27, 2011) ....................................... 18

*Maniscalco v. Brother Int'l Corp.,*
    627 F. Supp. 2d 494 (D.N.J. 2009) ................................................................ 28, 29

*Mayer v. Belichick,*
    605 F.3d 223 (3d Cir. 2010) ................................................................................. 7

*Mendez v. Shah,*
    No. 13-1585, 2014 WL 2921023 (D.N.J. June 27, 2014) ...................................... 11

*Mhoon v. U.S. Bank Home Mortg.,*
    No. 12-cv-03053, 2013 WL 6858680 (W.D. Tenn. Dec. 30, 2013) ......................... 25

*Militello v. Allstate Prop. & Cas. Ins. Co.,*
    No. 14-cv-00240, 2014 WL 2892386 (M.D. Pa. June 26, 2014) ........................... 21

*Morris v. BMW of N. Am., LLC,*
    No. 13-4980, 2014 WL 793550 (D.N.J. Feb. 26, 2014) ...................... 16, 17, 18, 19

*Murchison v. Progressive N. Ins. Co.,*
    572 F. Supp. 2d 1281 (E.D. Okla. 2008) ............................................................. 24

*Nelson v. Xacta 3000 Inc.,*
    No. 08-5426, 2009 WL 4119176 (D.N.J. Nov. 24, 2009) ..................................... 28

*Omni USA, Inc. v. Parker-Hannifin Corp.,*
    No. H-10-4728, 2012 WL 1038642 (S.D. Tex. Mar. 27, 2012) .............................. 22

*Palmucci v. Brunswick Corp.,*
    710 A.2d 1045 (N.J. Super. Ct. App. Div. 1998) ................................................. 18

*Pappalardo v. Combat Sports, Inc.,*
    No. 11-1320, 2011 WL 6756949 (D.N.J. Dec. 23, 2011) ..................................... 17

*Phillips v. Cnty. of Allegheny,*
    515 F.3d 224 (3d Cir. 2008) ................................................................................. 8

*Post v. Liberty Mut. Grp., Inc.,*
    No. 14-CV-238, 2014 WL 2777396 (E.D. Pa. June 18, 2014) ......................... 19, 20

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Rice v. JPMorgan Chase Bank NA*,
No. 14-cv-00318, 2014 WL 3889472 (N.D. Ala. Aug. 5, 2014) .............................................24

*Rolo v. City Investing Co. Liquidating Trust*,
155 F.3d 644 (3d Cir. 1998) ................................................................................................9

*Schmidt v. Ford Motor Co.*,
972 F. Supp. 2d 712 (E.D. Pa. 2013)...........................................................................21, 28

*Shannon v. Howmedica Osteonics Corp.*,
No. 09-4171, 2010 WL 421096 (D.N.J. Feb. 1, 2010)...................................................10, 11

*Smith v. Merial Ltd.*,
No. 10-439, 2011 WL 2119100 (D.N.J. May 26, 2011) ......................................................10

*Strauss v. Ford Motor Co.*,
439 F. Supp. 2d 680 (N.D. Tex. 2006) ................................................................................12

*Swift Freedom Aviation, LLC v. Aero*,
No. 1:04-CV-90, 2005 WL 2246256 (E.D. Tenn. Sept. 13, 2005) ........................................12

*TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC*,
No. 12-3355, 2014 WL 3853900 (D.N.J. Aug. 5, 2014).......................................................25

*Thomas v. Metro. Life Ins. Co.*,
540 F. Supp. 2d 1212 (W.D. Okla. Jan. 10, 2008) ........................................................23, 24

*VNB Realty, Inc. v. U.S. Bank, N.A.*,
No. 13-04743, 2014 WL 1628441 (D.N.J. Apr. 23, 2014).....................................................29

*Weinberg v. Sun Co.*,
777 A.2d 442 (Pa. 2001).....................................................................................................21

*Werner Kammann Maschinenfabrik v. Max Levy Autograph, Inc.*,
No. 01-1083, 2002 WL 126634 (E.D. Pa. Jan. 31, 2002) ......................................................25

*Williams v. Suntrust Mortg., Inc.*,
No. 12-CV-477, 2013 WL 1209623 (E.D. Tenn. Mar. 25, 2013)..........................................25

**STATUTES**

13 Pa. Cons. Stat. Ann. § 2315................................................................................... 11, 12

73 Pa. Cons. Stat. Ann. § 201-1........................................................................................1

73 Pa. Cons. Stat. Ann. § 201-2................................................................................. 19, 20

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

Ala. Code § 7-2-315 ..................................................................................................11, 12

Ga. Code Ann. § 11-2-315 .........................................................................................11, 12

Ga. Code Ann. § 11-2-607(3)(a) ...............................................................................13, 14

N.J. Stat. Ann. § 2A:58C-1 ..............................................................................................9

N.J. Stat. Ann. § 12A:2-315 ......................................................................................11, 12

N.J. Stat. Ann. § 56:8-2 ....................................................................................................1

Okla. Stat. Ann. tit. 12A, § 2-315 .............................................................................11, 12

Okla. Stat. Ann. tit. 78, § 51-55 ...............................................................................1, 23

Tenn. Code Ann. § 29-28-102(6) ....................................................................................10

Tenn. Code Ann. § 47-2-315 .....................................................................................11, 12

Tex. Bus. & Com. Code Ann. § 2.315 .......................................................................11, 12

Tex. Bus. & Com. Code Ann. § 2.607(c)(1) ..............................................................13, 14

Tex. Bus. & Com. Code Ann. § 17.41 ..............................................................................1

Tex. Bus. & Com. Code Ann. § 17.46(a) .........................................................................22

**RULES**

Fed. R. Civ. P. 8(a) ...........................................................................................................1

Fed. R. Civ. P. 9(b) .......................................................................................................1, 9

Fed. R.Civ. P. 12(b)(6) .................................................................................................1, 8

## I.   __INTRODUCTION__

Plaintiffs are geographically-dispersed homeowners who allege to have purchased homes with plumbing systems constructed, at least in part, with some combination of three plumbing components manufactured by Defendant NIBCO Inc. ("NIBCO"):  (1) PEX[1] flexible plumbing tubes ("PEX Tubing"); (2) brass fittings that connect PEX Tubing ("PEX Fittings"); and (3) stainless steel clamps that join the PEX Tubing and PEX Fittings together ("PEX Clamps").  *See* First Amended Complaint ("FAC"), Doc. 37, ¶¶ 1, 108.  According to Plaintiffs, these PEX components have a propensity to degrade prematurely, and they assert that some of the PEX products installed in their plumbing systems have leaked, causing water damage to their homes.

Without the necessary factual allegations to support their contentions under Supreme Court precedent, Plaintiffs assert (1) claims for breach of express warranty and the implied warranties of merchantability and fitness for a particular purpose (Counts I-III); (2) claims sounding in fraud based on supposed violations of selected state consumer-fraud statutes (Counts V-VIII);[2] (3) claims for negligence (Count IV); (4) claims for unjust enrichment (Count IX); and (5) a stand-alone claim for declaratory and injunctive relief (Count X).  Plaintiffs fail to state cognizable claims, however, and the FAC should be dismissed in large part pursuant to *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and Federal Rules of Civil Procedure 8(a), 12(b)(6) and 9(b).

---

[1] PEX is an acronym for chemically bonded polyethylene tubing products.  FAC ¶ 111.

[2] Only the Plaintiffs from New Jersey, Pennsylvania, Texas and Oklahoma attempt to allege violations of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-2 *et seq.* (Count V), the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PA UTPCPL"), 73 Pa. Cons. Stat. Ann. § 201-1 *et seq.* (Count VI), the Texas Deceptive Trade Practices Act ("TX DTPA"), Tex. Bus. & Com. Code Ann. § 17.41 *et seq.* (Count VII), and the Oklahoma Deceptive Trade Practices Act ("OK DTPA"), Okla. Stat. Ann. tit. 78, §§ 51-55 (Count VIII), respectively.

*First*, all tort and warranty claims by the Coles from Tennessee (*i.e.*, Counts I-IV and IX) and all tort and implied warranty claims by Plaintiff James Monica from New Jersey (*i.e.*, Counts II-V and IX) should be dismissed because these claims are subsumed under the product liability statutes of those Plaintiffs' home states.

*Second*, Plaintiffs' claims for breach of implied warranty of fitness for a particular purpose (Count III) fail because no Plaintiff claims to have used NIBCO's PEX products for any other purpose than their ordinary purpose in a residential plumbing system, and, in any event, because the FAC fails to plead that NIBCO knew of any particular purpose and knowingly provided its skill and judgment to aid Plaintiffs' selection of its products for that particular purpose.

*Third*, all warranty claims brought by Plaintiffs Michael McMahon and Kelly McCoy (Counts I through III) should be dismissed because the FAC does not allege that they provided NIBCO with pre-suit notice of the alleged defects, and pre-suit notice is a condition precedent to any recovery for breach of express or implied warranty under the laws of their states.

*Fourth*, although the gravamen of Plaintiffs' consumer fraud claims (Counts V-VII) is that NIBCO made supposedly false statements about its PEX Tubing, Fittings, and Clamps, the FAC fails to identify the specific content of the supposedly fraudulent statements at issue, much less identify the "who, what, when, where and how" of any alleged misrepresentation they claim occurred, as required by Rule 9(b) and governing precedent. To the extent Plaintiffs base their fraud claims on an alleged omission, they have not pleaded facts to support a plausible inference that NIBCO knew of any alleged defect at the time Plaintiffs' NIBCO PEX products were purchased.

Compounding matters, no Plaintiff alleges that he or she saw any particular statements, advertising or promotional material from NIBCO prior to the purchase of PEX products. The absence of such facts is telling, although not surprising, given it is unlikely any Plaintiff actually purchased the components for their plumbing system, or even knew anything about NIBCO's PEX products until long after contractors installed those products in their homes.

*Fifth*, Plaintiff Ray Sminkey's claim under the Oklahoma DTPA (Count VIII) should be dismissed because the statute provides no private cause of action for consumers.

*Sixth*, the unjust enrichment claim (Count IX) should be dismissed for all Plaintiffs because it is (a) subsumed by Plaintiffs' contract-based claims, and/or (b) cannot be brought by indirect purchasers, like the Plaintiffs here, who did not directly confer any benefit upon NIBCO.

*Finally*, the so-called claim for declaratory and injunctive relief (Count X) should be dismissed because no such stand-alone cause of action exists.

## II.   SUMMARY OF THE FIRST AMENDED COMPLAINT

### A.   Plaintiffs' Individual Facts.

Plaintiffs are homeowners who purchased homes built with plumbing systems consisting, at least in part, of certain NIBCO PEX products. Plaintiffs' claims and experiences differ from plaintiff to plaintiff and are governed by different laws.

**The Coles:** Plaintiffs Kimberly and Alan Cole are Tennessee residents who moved into a newly-constructed home in 2009. *Id.* ¶¶ 14-19. According to them, the home was constructed using PEX Tubing, Fittings, and Clamps installed by a licensed professional contractor. *Id.* ¶¶ 17-18. The Coles do not claim to have selected PEX products, or to have reviewed or heard any NIBCO statements about PEX products prior to their purchase. *See id.* ¶¶ 14-27. They claim to have experienced water leaks from alleged failures in PEX Fittings and PEX Tubing beginning in 2010, *id.* ¶¶ 20-24, though they claim to have "contacted . . . NIBCO . . . [to] request[]

replacement of the defective PEX Tubing" only. *Id.* ¶ 24. The Coles allege that NIBCO has breached its express warranty by "declin[ing] to replace" that PEX Tubing. *Id.* The Coles do not claim to have provided NIBCO notice about PEX Fittings, and make no claims regarding PEX Clamps. *See id.* ¶¶ 14-27.

**Plaintiff Monica:** Plaintiff James Monica is a New Jersey resident. *Id.* ¶ 28. He asserts that between September 2010 and December 2010, a "licensed professional contractor" installed a residential plumbing system in his home using PEX Tubing, Fittings, and Clamps. *Id.* ¶¶ 29-31. Plaintiff Monica does not identify any statements about PEX that he read or heard that he now claims are false, and does not claim to have had any input in the selection of his PEX products. *See id.* ¶¶ 28-42. He claims to have experienced leaks beginning in 2012 resulting from corrosion in some PEX Fittings. *Id.* ¶¶ 33-35, 38. According to him, he notified NIBCO of the leaks and "requested replacement of the defective NIBCO PEX Fittings," but his request was denied. *Id.* ¶ 39. Plaintiff Monica makes no claims regarding PEX tubing or Clamps. *See id.* ¶¶ 28-42.

**Plaintiff Boyd:** Plaintiff Lind Boyd is an Alabama resident. *Id.* ¶ 43. She asserts that her new home was constructed in 2008 with professionally installed PEX Tubing, Fittings, and Clamps, though she does not claim to have chosen NIBCO PEX products or to have read, heard, or relied upon any statements from NIBCO about its PEX products in making any purchase decision. *See id.* ¶¶ 43-56. Plaintiff Boyd alleges that her PEX Tubing has leaked, but that NIBCO declined to replace these products or to otherwise compensate her under the express warranty. *Id.* ¶ 49-53. Plaintiff Boyd makes no claims regarding PEX Fittings or Clamps. *See id.* ¶¶ 43-56.

**Plaintiff McMahon:** Plaintiff Michael McMahon moved into his Texas home on January 1, 2013, but he apparently is not the original owner. *Id.* ¶ 57. Rather, his home was constructed in 2007, with PEX Tubing, Fittings and Clamps used to complete the plumbing system. *Id.* ¶¶ 58-60. Although Plaintiff McMahon claims he experienced failures of his PEX Tubing, he does not claim to have ever tendered a warranty claim or other form of notice to NIBCO before suing. *See id.* ¶¶ 62-65. Plaintiff McMahon makes no claims regarding PEX Fittings or Clamps. *See id.* ¶¶ 57-65.

**Plaintiff Sminkey:** Plaintiff Ray Sminkey is an Oklahoma resident. *Id.* ¶ 66. Construction on his new home was completed in or around February 2009. *Id.* ¶ 71. As part of the construction, contractors installed a residential plumbing system using PEX Tubing, but he does not allege that any other NIBCO PEX components were used in his home. *See id.* ¶¶ 68-70. Nor does he specify any particular statement by NIBCO that he read or heard before the PEX Tubing was chosen for his home that he claims is false, or even that he selected PEX Tubing over other brands or forms of tubing. *See id.* ¶¶ 66-76. Plaintiff Sminkey contends that his plumbing has leaked and had to be replaced by a plumber. *Id.* ¶¶ 72-75. He includes no allegations that he gave pre-suit notice to NIBCO of any of these alleged failures. *See id.* ¶¶ 66-76. Nor does he assert claims regarding PEX Fittings or Clamps. *See id.*

**The Medders:** Plaintiffs James and Judy Medders are Texas residents. *Id.* ¶ 77. Their new home was built in 2011, allegedly with professionally installed PEX Tubing, Fittings, and Clamps. *Id.* ¶¶ 78-81. The Medders do not claim that they selected PEX products or that they saw or heard anything about them prior to installation in their home. *See id.* ¶¶ 77-89. The Medders allege that failures of PEX Fittings caused leaks in various locations in their home between December 2013 and June 2014. *Id.* ¶¶ 83-85. They claim to have "provided NIBCO

with actual notice of the failures" but claim that NIBCO "has failed to repair or replace" those products pursuant to the written warranty.  *Id.* ¶ 86.  The Medders assert no claims regarding PEX Tubing or Clamps.  *See id.* ¶¶ 77-89.

**The Pepernos:**  Plaintiffs Robert and Sara Peperno are Pennsylvania residents who, in 2008, moved into a new home constructed with PEX Tubing, Fittings, and Clamps.  *Id.* ¶¶ 90-94. The Pepernos claim to have experienced three leaks as a result of "splits" in their PEX Tubing between December 2013 and June 2014.  *Id.* ¶¶ 96-99, 101.  They allegedly notified NIBCO of the leaks and requested relief pursuant to NIBCO's written warranty.  *Id.* ¶ 100.  The Pepernos do not claim to have read or heard any false or misleading statements from NIBCO about its PEX products at any point before they were purchased.  *See id.* ¶¶ 90-103.   The Pepernos do not assert claims regarding PEX Fittings or Clamps.  *See id.*

**Plaintiff McCoy:**  Plaintiff Kelly McCoy lives in Georgia.  *Id.* ¶ 103.[3]  His home was reconstructed in 2010 purportedly with PEX Tubing, Fittings, and Clamps.  *Id.* ¶¶ 104-06.  He alleges that the PEX Tubing installed in his home "split," resulting in leaks requiring installation of replacement tubing and other repairs to the affected area, though he does not allege when these leaks occurred.  *Id.* ¶ 107.  Nor does he allege that he ever contacted NIBCO about the leaks, let alone to give notice of a potential claim or request a replacement or other remedy under the terms of the express warranty.  *See id.* ¶¶ 103-109.  Plaintiff McCoy has also not identified any supposedly false statements from NIBCO about its PEX products upon which he allegedly relied.  *See id.*  Plaintiff McCoy does not assert any claims regarding PEX Fittings or Clamps. *See id.*

---

[3] The paragraph numbering is erroneous in certain places in the FAC.  *See* FAC at page 18 (duplicate paragraph 103); *id.* at page 19 (shift from paragraph 109 to paragraph 104).

**B.**     **NIBCO's PEX Products And Its Limited Warranty.**

NIBCO manufactures and sells an array of products for use in commercial, industrial, and residential plumbing systems, but this lawsuit concerns PEX Tubing, PEX Fittings, and PEX Clamps. *Id.* ¶¶ 1, 108. These are distinct components of a broader water distribution system – they are sold separately and do not need to be used together. *See id.* ¶ 8. Plaintiffs allege a supposed so-called "defect" for each, claiming that the PEX Tubing is prone to premature failure and rupture, that the PEX Fittings are prone to corrosion, and that the PEX Clamps are prone to cracking. *Id.* ¶¶ 2-4, 9, 113, 128-133, 143. As discussed above, not all Plaintiffs have systems constructed with each of these components, and even those who allegedly have all three do not allege failures of all three. Indeed, no Plaintiff claims to have experienced a failure of PEX Clamps. *See id.* ¶¶ 14-109.

Plaintiffs concede that NIBCO's PEX products include a limited warranty, the terms and duration of which vary depending on several factors, including the brand of products and accessories used to complete the plumbing system, the manner of installation, and the particular operating and water conditions. *See id.* ¶¶ 8, 114, 123. The limited warranty provides that NIBCO PEX piping systems will be "free from defects in materials and workmanship . . . under normal conditions" for 25 years if only NIBCO PEX tubes, fittings, valves, and installation accessories are used and the system is installed by a "licensed professional contractor." *Id.* ¶ 114 & Ex. 1.[4] The duration is limited to 10 years, however, if (1) the NIBCO PEX piping system is not professionally installed or (2) the piping system includes a mix of non-NIBCO components, parts, or accessories. *Id.* at Ex. 1.

---

[4] Documents attached to a complaint are properly considered on a motion to dismiss. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complaint's claims are based upon these documents.").

Under the Uniform Commercial Code and the warranty terms, an owner desiring to make a claim is obligated to "immediately contact NIBCO . . . either in writing or by telephone" if "any defect occurs which the owner believes is covered" by the warranty.  *Id.*  Owners are expressly told in the warranty that they "will be instructed to return" the allegedly defective component to NIBCO for inspection.  *Id.*  Moreover, there are a number of causative factors excluded from warranty coverage, including, but not limited to, "if the failure or resulting damage is caused by" external damage before, during, or after installation, exposure to damaging chemicals or corrosive water, improper installation, or exposure to temperature and pressures beyond the product's specifications.  *Id.*

## III.   <u>LEGAL STANDARD</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted where the complaint fails to allege facts sufficient to establish each element of the claims.  *See Iqbal*, 556 U.S. at 678-80; *Twombly*, 550 U.S. at 555-56.  To survive a motion to dismiss, the complaint's allegations must rise above the "speculative," "conceivable," or "possible," and instead must "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 547, 555, 563, 570; *see also Iqbal*, 556 U.S. at 678 (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully"); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008) (factual allegations must "'raise a reasonable expectation that discovery will reveal evidence of' the necessary element" to justify advancement "beyond the pleadings") (citation omitted).  A complaint must include more than "labels and conclusions . . . a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Thus, while well-pleaded allegations of fact are accepted as true, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not.  *Iqbal*, 556 U.S. at 678.

8

Plaintiffs' consumer protection claims are also subject to the more stringent pleading requirements of Rule 9(b), which requires that "the circumstances constituting fraud" must be "state[d] with particularity."  Fed. R. Civ. P. 9(b).  "The purpose of Rule 9(b) is to provide notice of the 'precise misconduct' with which the defendants are charged and to prevent false or unsubstantiated charges."  *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998) (citation omitted).  "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."  *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).  Here, Plaintiffs' claims sound in fraud because they allege, *inter alia*, that NIBCO violated the consumer protection laws of their home states through supposed misrepresentations and omissions regarding certain of its PEX products.

## IV.  <u>ARGUMENT</u>

### A.  **The Tort And Implied Warranty Claims By Plaintiff Monica And All Of The Coles' Claims Are Subsumed By State Product Liability Statutes And Must <u>Be Dismissed.</u>**

New Jersey and Tennessee have broad product liability statutes which effectively create an exclusive statutory cause of action for claims falling within their purview.[5]  These statutes subsume **all** claims in product liability actions, regardless of the particular legal theories advanced.  *See* N.J. Stat. Ann. § 2A:58C-1(2)-(3) (providing that New Jersey Products Liability Act ("NJPLA") governs any "product liability action" alleging that product caused "physical damage to property, other than to the product itself"); *Certain Underwriters At Lloyd's, London v. U-Line Corp.*, No. 13-3203, 2013 WL 5503672, at *3-5 (D.N.J. Oct. 1, 2013) (stating that

---

[5] Like the FAC, the motion to dismiss applies the law of each Plaintiff's home state to their claims.  *See, e.g.*, FAC ¶¶ 28, 175 (alleging violation of New Jersey statute for Plaintiff Monica); *id.* ¶¶ 90, 185 (Pennsylvania statute for Pepernos); *id.* ¶¶ 57, 77, 191 (Texas statute for Plaintiff McMahon and the Medders); *id.* ¶¶ 66, 200 (Oklahoma statute for Plaintiff Sminkey).

NJPLA "encompass[es] virtually all possible causes of action relating to harms caused by consumer and other products") (internal quotation marks and citation omitted); *see also* Tenn. Code Ann. § 29-28-102(6) (providing that Tennessee Products Liability Act ("TPLA") "includes all actions brought for . . . property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product," and specifically encompasses claims for "breach of warranty, express or implied," and "any other substantive legal theory in tort or contract whatsoever"); *Smith v. Merial Ltd.*, No. 10-439, 2011 WL 2119100, at *5 (D.N.J. May 26, 2011) ("The language of the TPLA is at least as broad, if not broader, than the NJPLA.").

As framed by the FAC, this case unquestionably is a product liability action within the purview of the NJPLA and TPLA because this case, at its core, is indisputably about alleged defects in NIBCO's PEX products which, as expressly claimed by Plaintiffs, caused "property damage beyond that sustained only to the Defective NIBCO PEX Products." FAC ¶ 173; *see also id.* ¶¶ 2-4, 22-26, 33, 40-41, 113, 126-35, 151, 159, 170, 180, 210 (premising claims on defective products).   Therefore, with the exception of Plaintiff Monica's express warranty claim,[6] the product liability statutes of New Jersey and Tennessee subsume all remaining claims alleged by Plaintiff Monica and the Coles.  This requires dismissal of the subsumed claims. *See Certain Underwriters At Lloyd's, London*, 2013 WL 5503672, at *3-5 (dismissing negligence and implied warranty claims, among others, as subsumed under NJPLA); *Smith*, 2011 WL

---

[6] There is a narrow exception under the NJPLA for express warranty claims. *See Shannon v. Howmedica Osteonics Corp.*, No. 09-4171, 2010 WL 421096, at *2 (D.N.J. Feb. 1, 2010).

2119100, at *3-4 (dismissing consumer fraud, implied warranty, and unjust enrichment claims as subsumed by NJPLA and TPLA).[7]

### B. Plaintiffs' Claims For Breach Of Implied Warranty Of Fitness For A Particular Purpose Must Be Dismissed.

The FAC includes cursory allegations that NIBCO breached an implied warranty of fitness for a particular purpose. *See* FAC ¶¶ 163-66. Though the specific elements of an implied warranty for a particular purpose claim vary among the laws of each Plaintiff's home state, they nonetheless share critical requirements that Plaintiffs fail to plead.

Fundamentally, each Plaintiff must at a minimum allege a "particular purpose" for which they used the NIBCO PEX products that *differed* from the ordinary, intended use as components of a plumbing system.[8] Beyond this threshold requirement, each Plaintiff also must plead that (a) at the time of purchase, he/she intended to use the product for a particular purpose, (b) the seller at the time of purchase had reason to know of this particular purpose, (c) he/she justifiably relied on the seller's skill and judgment to select the right product, (d) the seller had reason to

---

[7] *See also Hehr Int'l, Inc. v. Sika Corp.*, No. 12-1624, 2013 WL 4008810, at *3 (D.N.J. Aug. 5, 2013) ("[T]he 'Third Circuit, the New Jersey District Court, and New Jersey State Courts consistently have dismissed product liabilit[y] claims based on common law tort theories'" as subsumed by PLA) (citation omitted); *Mendez v. Shah*, No. 13-1585, 2014 WL 2921023, at *7 (D.N.J. June 27, 2014) ("New Jersey courts have not made any exception to" rule that PLA subsumes product defect claims); *Johnson v. Draeger Safety Diagnostics, Inc.*, No. 13-2439, 2013 WL 3788937, at *2-3 (D.N.J. July 19, 2013) (same for negligence claim under NJPLA); *Shannon*, 2010 WL 421096, at *2-3 (same for implied warranty and NJCFA claims).

[8] "A 'particular purpose' . . . envisages a specific use by the buyer which is peculiar to the nature of [the] business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability." Tex. Bus. & Com. Code Ann. § 2.315 cmt. 2; *see also* Okla. Stat. Ann. tit. 12A, § 2-315 cmt. 2 (same); Ga. Code Ann. § 11-2-315 cmt. 2 (same); Tenn. Code Ann. § 47-2-315 cmt. 2 (same); N.J. Stat. Ann. § 12A:2-315 cmt. 2 (same); Ala. Code § 7-2-315 cmt. 2 (same); 13 Pa. Cons. Stat. Ann. § 2315 cmt. 2 (same).

know that the buyer plaintiff was relying on the seller in this way, and (e) the product was not suitable for the particular purpose and subsequently damaged the buyer.[9]

There are no facts in the FAC plausibly demonstrating that any Plaintiff gave NIBCO notice of a use beyond the ordinary use in a home.[10]  Thus, Plaintiffs' claims for breach of warranty for a particular purpose necessarily fail as a matter of law.[11]  Moreover, without such a "particular" purpose or allegation that they interacted with NIBCO prior to purchasing the PEX products, Plaintiffs also have not alleged that NIBCO knew they intended to use their PEX products for any such particular purpose or that Plaintiffs actually relied on NIBCO's skill and judgment to pick the right tubing, fitting, or clamp plumbing components for any such purpose.[12] Accordingly, Count III must be dismissed in its entirety.

---

[9] Tex. Bus. & Com. Code Ann. § 2.315; Okla. Stat. Ann. tit. 12A, § 2-315; Ga. Code Ann. § 11-2-315; Tenn. Code Ann. § 47-2-315; N.J. Stat. Ann. § 12A:2-315; Ala. Code § 7-2-315; 13 Pa. Cons. Stat. Ann. § 2315.

[10] Indeed, any such use would likely void the express warranty, thereby undermining at least the express warranty claims.  *See* FAC Ex. 1 (stating that NIBCO warrants its PEX products when used "under normal conditions, use and service in potable water and radiant heat systems"); *id.* (listing other exclusions for "failure or resulting damage" from uses beyond product specifications).

[11] *See, e.g.*, *Strauss v. Ford Motor Co.*, 439 F. Supp. 2d 680, 686 (N.D. Tex. 2006) (dismissing claim where no specific particular purpose identified); *Gray v. Abbott Labs., Inc.*, No. 10-cv-6377, 2011 WL 3022274, at *7 (N.D. Ill. July 22, 2011) (same under Georgia law); *Hoffman v. Natural Factors Nutritional Prods. Inc.*, No. 12-7244, 2014 WL 2916452, at *6 (D.N.J. June 26, 2014) (same under New Jersey law); *Frey v. Gumbine's RV*, No. 1:10-CV-1457, 2010 WL 4718750, at *7 (M.D. Pa. Nov. 15, 2010) (same under Pennsylvania law).

[12] *See, e.g.*, *Deburro v. Apple, Inc.*, No. A-13-CA-784, 2013 WL 5917665, at *7 (W.D. Tex. Oct. 31, 2013) (implied particular purpose claim dismissed where no allegation that buyer communicated particular purpose to seller prior to purchase); *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, MDL No. 07–1873, 2008 WL 5217594, at *13 (E.D. La. Dec. 12, 2008) (same under Alabama law); *Frey*, 2010 WL 4718750, at *7 (same under Pennsylvania law); *Swift Freedom Aviation, LLC v. Aero*, No. 1:04-CV-90, 2005 WL 2246256, at *14 (E.D. Tenn. Sept. 13, 2005) (claim could not proceed against party who did not sell to plaintiff).

**C.      Plaintiffs McMahon's And McCoy's Warranty Claims Fail For Additional Reasons.**

Plaintiffs McMahon and McCoy further allege that NIBCO breached its express limited warranty as well as the implied warranty of merchantability.  These Plaintiffs cannot sustain their express and implied warranty claims because they have not fulfilled their contractual and legal duties to provide pre-suit notice of a failure and a demand for a replacement under the warranty.

A cause of action for breach of express warranty is contractual in nature and, therefore, the terms of the warranty itself determine whether the plaintiff stated a valid claim.  Here, NIBCO's Limited Warranty does not promise perfect or uninterrupted use of its PEX products, but rather warrants subject to certain conditions a "replacement" if necessary to address the manifestation of any "defects in materials and workmanship" that arise under normal operating conditions.  *See* FAC at Ex. 1.  NIBCO naturally cannot provide a replacement within the applicable warranty period unless the relevant customer requests such a replacement and takes the steps required in NIBCO's Limited Warranty to obtain one, including "immediately contact[ing] NIBCO" about the alleged defect and "return[ing]" the allegedly defective product to "NIBCO Inc., or an authorized representative for inspection." *Id.*  This simple point precludes the express and implied warranty claims alleged by Plaintiffs McMahon and McCoy.

In addition, pre-suit notice of the breach and a request for a remedy are conditions precedent to express and implied warranty claims under the laws of Texas (Plaintiff McMahon) and Georgia (Plaintiff McCoy).  *See* Tex. Bus. & Com. Code Ann. § 2.607(c)(1) ("[T]he buyer *must* within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.") (emphasis added); Ga. Code Ann. § 11-2-607(3)(a) (same).  Plaintiffs McMahon and McCoy do not allege that they ever contacted NIBCO to complain that their PEX products manifested a defect or required a replacement –

13

even though the products still are covered by the express warranty term.  *See* FAC ¶¶ 57-65, 103-109.  Accordingly, because they did not take the steps necessary to give NIBCO notice and an opportunity to provide a warranty remedy, their claims that NIBCO breached any express or implied warranties fail.  *See, e.g., Durso v. Samsung Elecs. Am., Inc.*, No. 12-cv-5352, 2014 WL 4237590, at *8 (D.N.J. Aug. 26, 2014) (dismissing express and implied warranty claims under Texas law because Plaintiff did not allege that he notified manufacturer of alleged defects before suing); *see also Alvarez v. Chevron Corp.*, No. CV 09-3343, 2009 WL 5552497, at *3 (C.D. Cal. Sept. 30, 2009) (same, with prejudice), *aff'd*, 656 F.3d 925 (9th Cir. 2011); *In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prods. Liab. Litig.*, No. 12-00087, 2013 WL 1194851, at *3 (D.S.C. Mar. 22, 2013) (dismissing warranty claim under Georgia law for no pre-suit notice).

Moreover, the sweeping and conclusory allegation in Paragraph 154 that NIBCO "was put on notice of the defect because it had knowledge of the existence of the PEX Product Defects at all relevant times" is insufficiently pled under *Iqbal* and *Twombly*, and cannot save these claims in any event.  It is axiomatic that a buyer must provide direct notice of a specific failure and alleged warranty breach, regardless of the seller's alleged knowledge of a product-wide defect from some other source.  *See* Tex. Bus. & Com. Code Ann. § 2.607(c)(1); Ga. Code Ann. § 11-2-607(3)(a); *see also Durso*, 2014 WL 4237590, at *8 ("Under Texas law, the critical question is not whether [manufacturer] knew that the [product] was defective, but whether [manufacturer] knew that [plaintiff] considered [manufacturer] to be in breach of contract. . . . To find otherwise would defeat the purpose of the notice requirement.") (internal citation omitted).

### D.    Plaintiffs' Various Attempts To Plead A Consumer Fraud Claim Fail Under Rule 9(b).

Some Plaintiffs claim that NIBCO violated their home state's consumer fraud laws by, *inter alia*, misrepresenting that its PEX products are of a superior quality and by failing to

14

disclose that its PEX products are defective and prone to degrade prematurely. *See generally* FAC ¶¶ 174-207 (Counts V-VIII). Each of these counts should be dismissed with prejudice, however, because these Plaintiffs have not alleged any actionable unlawful conduct that can withstand Rule 9(b) scrutiny, much less the causal relationship between any such conduct and any alleged harm to them.

### 1. **Plaintiff Monica Cannot State A Claim Under The NJCFA.**

To sustain his NJCFA claim, Plaintiff Monica must allege: "(1) unlawful conduct by [NIBCO]; (2) an ascertainable loss [by him]; and (3) a causal relationship between [NIBCO's] unlawful conduct and [his] ascertainable loss." *Crozier v. Johnson & Johnson Consumer Cos.*, 901 F. Supp. 2d 494, 506 (D.N.J. 2012). There are three types of unlawful conduct actionable under the CFA: (1) affirmative misrepresentations; (2) knowing omissions of material information; and (3) regulatory violations. *Frederico*, 507 F.3d at 202. As shown below, among other deficiencies, Plaintiff Monica has not alleged the requisite unlawful conduct by NIBCO.

### a. **The FAC Identifies No Actionable Misrepresentation Or Omission.**

Plaintiff Monica alleges that NIBCO violated the CFA by misrepresenting "that its PEX Tubing was of a superior quality," through unspecified statements that it "would honor the terms of the PEX express warranty," and by failing to disclose that its PEX products are defective. *See* FAC ¶¶ 178-181. These assertions fail in several respects.

*First*, New Jersey law is clear that a plaintiff asserting an NJCFA claim based on an alleged misrepresentation or omission about a product not only must identify the actual false statement or omission with particularity under Rule 9(b), but must further demonstrate that he purchased the product because of the defendant's unlawful conduct in order to plead the causation element of an NJCFA claim. *See Crozier*, 901 F. Supp. 2d at 506-07 (dismissing

NJCFA claim under Rule 9(b) because plaintiffs failed to adequately allege pre-purchase exposure to misleading advertising); *Morris v. BMW of N. Am., LLC*, No. 13-4980, 2014 WL 793550, at *6 (D.N.J. Feb. 26, 2014) (rejecting NJCFA claim because plaintiff "fail[ed] to allege when she personally saw this marketing and/or advertising by [defendant], or any other facts that would otherwise allow the Court to draw the reasonable inference that Plaintiff was personally subjected to . . . [the] unlawful conduct").  But, Plaintiff Monica does not allege that he (as opposed to the licensed contractor who installed the plumbing system) selected or purchased the PEX products, let alone plead facts plausibly demonstrating that he selected or purchased those products after and as a result of seeing, reading, or in some way relying on a NIBCO statement promising "superior quality" or the "highest quality" or that NIBCO "would honor the terms of its warranty."

*Second*, Plaintiff Monica's references to statements like "PEX Tubing was of a superior quality" and of "the highest quality" do not salvage his claim for an additional reason.  *See* FAC ¶¶ 28-42, 178, 180.  These types of subjective advertising slogans constitute non-actionable sales talk or puffery under settled New Jersey law because they are incapable of objective verification. *See In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*, No. 08-939, 2009 WL 2940081, at *9 (D.N.J. Sept. 11, 2009) (statements that product is "the best" and "a format for today, tomorrow and beyond" are non-actionable puffery) (collecting cases).

*Third*, Plaintiff Monica's NJCFA claim grounded on NIBCO's alleged distribution of a defective product without disclosing the defect likewise fails.  Logically, a plaintiff who does not actually purchase a product or contribute to the purchase decision cannot say that he/she would have acted any differently had the omitted information been disclosed.  *See Crozier*, 901 F. Supp. 2d at 506 (dismissing claim based in part on failure to disclose because plaintiff did not

allege they bought product specifically because of mistaken belief that it featured certain characteristics); *In re Toshiba*, 2009 WL 2940081, at *13 ("With respect to the alleged omissions . . . Plaintiffs similarly do not plead facts—only conclusions—when they allege that they would not have purchased the HD DVD Players or paid a premium . . . if Toshiba had disclosed" allegedly omitted facts).

*Fourth*, for an actionable omission, Plaintiff Monica also must identify "who at [NIBCO] was aware of the existence of a product-wide . . . defect, when or how they learned of such defect and/or when or how the decision was made to conceal the defect from its customers—all of which are required under the Rule 9(b) pleading standard." *Glauberzon v. Pella Corp.*, No. 10-5929, 2011 WL 1337509, at *9 (D.N.J. Apr. 7, 2011); *see also Morris*, 2014 WL 793550, at *5-6   His generalized allegations and speculation about what NIBCO might or should have known based on its unidentified testing of the product, so-called industry knowledge, and/or anecdotal tales about the experience of customers other than Plaintiff Monica (*see* FAC ¶¶ 113, 129, 132) do not show with adequate precision (1) that anyone at NIBCO had actual knowledge, let alone who at NIBCO had that knowledge, and further, (2) that NIBCO had this knowledge prior to the purchase of his PEX products but (3) intentionally failed to disclose it to him.  *See Morris*, 2014 WL 793550, at *6-7 (finding allegations that defendant knew of alleged defects based on its "own pre-and post-release testing, industry testing, warranty data, consumer complaints [defendant] received directly and/or that were posted on public online forums" were too conclusory) (citation omitted); *Pappalardo v. Combat Sports, Inc.*, No. 11-1320, 2011 WL 6756949, at *5 (D.N.J. Dec. 23, 2011) (speculation that defendant had knowledge of defect due to its testing of product was insufficient to state a claim).

17

*Fifth*, Plaintiff Monica has not identified an "ascertainable loss" from the purchase of the PEX Tubing or Clamps. These products are not alleged to have ever malfunctioned in his home, thus, he cannot possibly allege that he received less than he was promised; nor does he make any attempt whatsoever to quantify or measure what loss he has suffered as a result of these products. *See Arcand v. Brother Int'l Corp.*, No. 07–cv–4987, 2010 WL 3907333, at *5-8, *14 (D.N.J. Sept. 29, 2010) (Wolfson, J.) (finding no allegation of ascertainable loss where plaintiff pled only "hypothetical or illusory" losses over toner cartridges which operated as promised) (citation omitted) (collecting cases); *see also In re Gerber Probiotic Sales Practices Litig.*, No. 12-835, 2014 WL 5092920, at *7 (D.N.J. Oct. 10, 2014) (finding no ascertainable loss where plaintiff "failed to identify a comparable product and its cost, which would allow the Court to find the difference in value between the product as promised and the product as allegedly received").

### b. Plaintiff Monica Cannot Contort His Breach Of Warranty Claim Into A Violation Of The NJCFA.

Plaintiff Monica's NJCFA claim also includes a passing reference to NIBCO's alleged failure to honor its warranty. FAC ¶ 179. As discussed above, there is no CFA claim in the absence of specific allegations that NIBCO's statement about its express warranty induced Plaintiff Monica's purchases. That is not the only reason this allegation cannot support his claim.

A breach of warranty alone is not "unlawful conduct" prohibited by the NJCFA. *LaTraverse v. Kia Motors of Am.*, No. 10-6133, 2011 WL 3273150, at *5 n.7 (D.N.J. July 27, 2011) (citing *Palmucci v. Brunswick Corp.*, 710 A.2d 1045, 1049 (N.J. Super. Ct. App. Div. 1998)); *see also Morris*, 2014 WL 793550, at *5. Rather, to establish liability under the CFA, a plaintiff must also plead with particularity "substantial aggravating circumstances" in addition to the defendant's breach. *LaTraverse*, 2011 WL 3273150, at *5 n.7 (granting motion to dismiss

18

NJCFA claim based on alleged concealment of warranty breach).   This requires facts "demonstrat[ing] that the business behavior in question 'stand[s] outside the norm of reasonable business practice in that it will victimize the average consumer.'"  *Morris*, 2014 WL 793550, at *5 (alteration in original) (quoting *Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*, 655 A.2d 417, 430 (N.J. 1995)).

Plaintiff Monica makes no attempt to allege substantial aggravating circumstances beyond the rote contention that NIBCO "had no intention of honoring its [warranty] obligations to replace any defective PEX Product."  FAC ¶ 179.  At most, he alleges that one component of a plumbing system installed in his home leaked and should have been replaced under NIBCO's warranty—not that he was actively misled through any direct interaction NIBCO.  Courts have held under similar circumstances that, "[w]ithout more, such allegations do not show behavior that so 'stand[s] outside of the norm of reasonably business practice in that it will victimize the average consumer.'"  *Morris*, 2014 WL 793550, at *8 (alteration in original) (quoting *Turf*, 655 A.2d at 430) (dismissing NJCFA claim based, in part, on breach of warranty where plaintiff identified no specific aggravating circumstance).  Therefore, the NJCFA claim cannot stand to the extent it is premised on NIBCO's alleged breach of Plaintiff Monica's warranty.

## 2.    The Pepernos Cannot State A Claim Under Pennsylvania's UTPCPL.

The Pepernos cannot proceed with their UTPCPL claim without facts substantiating (1) that NIBCO engaged in "unfair methods of competition" or "unfair or deceptive acts or practices," (2) that they "justifiably relied" on NIBCO's unlawful conduct, and (3) that they suffered harm as a result of that justifiable reliance.  *See* 73 Pa. Cons. Stat. Ann. §§ 201-2, 201-2(4); *Post v. Liberty Mut. Grp., Inc.*, No. 14-CV-238, 2014 WL 2777396, at *2-4 (E.D. Pa. June 18, 2014).   Their claim is fatally deficient.

### a. The FAC Does Not Adequately Allege That NIBCO Engaged In Conduct Considered Actionable Under The UTPCPL.

The UTPCPL enumerates two types of "unfair methods of competition" or "unfair or deceptive acts or practices" – (1) fraudulent conduct under 73 Pa. Cons. Stat. Ann. §§ 201-2(4)(i) through (xx) and (2) "deceptive conduct" under § 201-2(4)(xxi). *See Post*, 2014 WL 2777396, at *3. A showing of "fraudulent conduct" must meet Rule 9(b)'s heightened pleading standards, and *both* types of conduct require allegations that the defendant intentionally misled the plaintiff. *See id.* at *4.

The Pepernos do not satisfy either burden, and instead offer quintessential examples of the sort of "[t]hreadbare recitals of the elements of [their] cause of action" that are not sufficient under Supreme Court precedent. *Iqbal*, 556 U.S. at 678. Indeed, they muster only generalized assertions that NIBCO violated the UTPCPL by making (1) misrepresentations about the "characteristics, uses, benefits, and qualities" and the "particular standard, quality, and grade" of its PEX Products, (2) "advertising the PEX Products with the intent not to sell them as advertised," and (3) engaging in other "unfair, misleading, false, or deceptive" acts. FAC ¶ 186. Without allegations plausibly demonstrating NIBCO's intent to engage in unlawful conduct, however, the Pepernos' UTPCPL claim must be dismissed. *See Post*, 2014 WL 2777396, at *4 (rejecting similar conclusory allegations of intent for failure to plead substantiating facts).

### b. In Any Event, The Pepernos Fail To Allege Justifiable Reliance.

The Pepernos' vague and conclusory allegations of unlawful conduct are not all that doom their UTPCPL claim. They still would need to plead justifiable reliance, *i.e.*, that they *personally* were exposed to such unlawful conduct before their PEX products were purchased and that they acted based on that personal exposure to such conduct. *See Hunt v. U.S. Tobacco*

*Co.*, 538 F.3d 217, 221 (3d Cir. 2008) ("[A] private plaintiff pursuing a claim under the [UTPCPL] must prove justifiable reliance").

The FAC is devoid of the crucial facts pertaining to the Pepernos' purchase experience necessary to plead justifiable reliance under the UTPCPL. *See Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa. 2001) (explaining that "plaintiff must allege reliance, that he purchased [the product] because he heard and believed [defendant's] false advertising . . ." to state UTPCPL claim). In telling fashion, nowhere do Plaintiffs identify allegedly false or misleading statements they saw before the PEX products were purchased and installed at their house, much less allege that they made the decision to purchase those products based on those statements. *See* FAC ¶¶ 90-103. Thus, the UTPCPL claim must be dismissed. *See Kee v. Zimmer, Inc.*, 871 F. Supp. 2d 405, 412 (E.D. Pa. 2012) (citation omitted) ("Plaintiff fails to allege facts supporting the nature of her reliance or specific representations Defendant made relating to the reliance. Plaintiff fails to allege . . . the date, time, and place of the alleged fraud, or, alternatively, inject any precision or measure of substantiation into her fraud allegations that would 'place the defendant on notice of the precise misconduct with which it is charged.'"); *Militello v. Allstate Prop. & Cas. Ins. Co.*, No. 14-cv-00240, 2014 WL 2892386, at *4 (M.D. Pa. June 26, 2014) (granting motion to dismiss UTPCPL claim under catch-all provision for failure to plead justifiable reliance and causation).[13]

### 3.    The Medders And Plaintiff McMahon Have Not Stated A Claim Under The TX DTPA.

The Medders' and Plaintiff McMahon's statutory fraud claims likewise are deficient because they have not adequately pled that (1) NIBCO engaged in "[f]alse, misleading, or

---

[13] *See also Floyd v. Brown & Williamson Tobacco Corp.*, 159 F. Supp. 2d 823, 833 (E.D. Pa. 2001) (dismissing UTPCPL claim because "Plaintiff has not alleged any specific misrepresentation upon which he relied"); *Schmidt v. Ford Motor Co.*, 972 F. Supp. 2d 712, 720-21 (E.D. Pa. 2013) (dismissing UTPCPL claim because the complaint "fail[ed] to plead any facts or circumstances that might support this bare allegation of justifiable reliance").

deceptive acts or practices," which (2) caused their harm.  Tex. Bus. & Com. Code Ann. § 17.46(a); *Omni USA, Inc. v. Parker-Hannifin Corp.*, No. H-10-4728, 2012 WL 1038642, at *4 (S.D. Tex. Mar. 27, 2012).  As with the other consumer fraud claims discussed above, Rule 9(b) presents the gating standard for these Texas plaintiffs.  *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009) (citation omitted) ("It is well-established that '[c]laims alleging violations of the DTPA are subject to the requirements of Rule 9(b).'").  And, like the other Plaintiffs, the Texas Plaintiffs' allegations do not come close to meeting this standard.

Although the Medders and Plaintiff McMahon allege that NIBCO violated Sections 17.46(5) and (7) of the TX DTPA, respectively, by misrepresenting that PEX products have characteristics or benefits they do not have and are of a particular quality or grade (*see* FAC ¶¶ 192-93), NIBCO and the Court are left to speculate over the particular statements that these Plaintiffs allege violate the statute.  Without more, their claim should be dismissed.  *See Omni*, 2012 WL 1038642, at *7 (dismissing TX DTPA claim which did not "assert any facts to explain, no less support, the DTPA sections it claims [defendant] violated").

Not only that, but the few statements actually identified in the FAC are subjective "puffing" incapable of supporting a TX DTPA claim.  *Compare* FAC ¶¶ 7-8, 112, 114, 123 (alleging that NIBCO represented PEX products to be of "highest quality" and of "superior quality") *with Omni*, 2012 WL 1038642, at *6 (citation omitted) (noting "statements that . . . claim superiority are not actionable misrepresentations" under Texas law and dismissing TX DTPA claim) (collecting cases) *and Deburro*, 2013 WL 5917665, at *5 (citation omitted) (rejecting TX DTPA claim based on statements of product superiority, such as "state of the art").  This too warrants dismissal of the TX DTPA claim.

22

Setting aside Plaintiff McMahon's and the Medders' wholesale failure to identify any prohibited conduct, their TX DTPA claim fails for the additional and independent reason that they have not alleged, with the requisite particularity, that they actually saw the alleged misrepresentations, when they saw those alleged misrepresentations, or that those misrepresentations influenced *their* purchase decision in any way (if, indeed, they were the ones who purchased the products in the first place, which is especially improbable for Plaintiff McMahon who is not even the original owner of his home).  *See* FAC ¶¶ 57-65, 77-89.  Their purposely vague allegation that they "would not have purchased and installed" NIBCO's PEX products without NIBCO's representations about them (*id.* ¶ 189) is not enough to stave off dismissal.  *See Deburro*, 2013 WL 5917665, at *5 (dismissing TX DTPA claim because, among other reasons, "neither Plaintiff claims to have seen any of the representations . . . prior to purchasing [the product], nor have Plaintiffs alleged such representations actually induced them to purchase the product").  Count VII for violation of the TX DTPA must therefore be dismissed.

### 4.  Plaintiff Sminkey Cannot State A Claim Under The OK DTPA.

In Count VIII, Plaintiff Sminkey purports to assert a claim under the OK DTPA, Okla. Stat. Ann. tit. 78, §§ 51-55.  *See* FAC ¶¶ 199-207.[14]  But, this cause of action is not available to him.  The DTPA "protect[s] competing business[es]" from one another; it "*do[es] not present a basis for suit by consumers*."  *Thomas v. Metro. Life Ins. Co.*, 540 F. Supp. 2d 1212, 1228 (W.D. Okla. Jan. 10, 2008) (emphasis added) (citations omitted) (dismissing consumer's OK DTPA claim with prejudice).  Plaintiff Sminkey does not allege that he is a business competitor of

---

[14] Count VIII's caption erroneously references an "Oklahoma **Consumer** Deceptive Trade Practices Act," but no such act by this title exists under Oklahoma law.  The statutory sections quoted and cited therein pertain to the Oklahoma Deceptive Trade Practices Act, Okla. Stat. Ann. tit. 78, §§ 51-55, thus, NIBCO addresses the claim as pled.  *See* FAC ¶¶ 201-202.

NIBCO, but rather that he was injured as an alleged purchaser of its products; consequently, his OK DTPA claim must be dismissed with prejudice.  *Id.*

E.  **Plaintiffs' Negligence Claim Is Fatally Deficient.**

Plaintiffs' negligence claim likewise is flawed.  The duty breached and resulting harm are co-extensive with Plaintiffs' theory that NIBCO has failed to honor the terms of its express warranty, and Plaintiffs cannot recast their contract claim into a negligence claim.  Even if one were to read some duty not subsumed by contract into their negligence claims, Plaintiffs' vague and ambiguous allegations that NIBCO knew or should have known about the alleged defects and failed to exercise due care are not enough to survive a motion to dismiss.

1.  **Plaintiffs Cannot State A Negligence Claim Because It Is Premised On A Breach Of NIBCO's Contractual Duty To Provide A Warranty Remedy.**

It is axiomatic that the breach of a duty allegedly founded by contract cannot also form the basis of a cause of action sounding in negligence.  *See, e.g.*, *Bealer v. Mutual Fire, Marine & Inland Ins. Co.*, 242 F. App'x 802, 804 (3d Cir. 2007) (affirming dismissal of negligence claim under Pennsylvania law because "[t]he gist of the action doctrine bars . . . a tort claim for damages that merely replicates a claim for breach of an underlying contract" and the "gravamen" of plaintiff's negligent claim "is in contract") (citation omitted).[15]

---

[15] The laws of Pennsylvania, Alabama, Texas, Oklahoma, Georgia, New Jersey, and Tennessee are in accord at least with respect to this principal.  *Cooper v. Sw. Marine &  Gen. Ins. Co.*, No. 13-cv-1651, 2014 WL 769394, at *12 (N.D. Ala. Feb. 26, 2014) (dismissing negligence claim under Alabama law because duty allegedly breached arose from contract); *Rice v. JPMorgan Chase Bank NA*, No. 14-cv-00318, 2014 WL 3889472, at *8 (N.D. Ala. Aug. 5, 2014) (dismissing negligence claim because "Alabama law does not recognize a tort-like cause of action for breach of a duty created by a contract") (alteration in original) (citation omitted); *Garcia v. Bank of Am., N.A.*, No. 12-CV-360, 2014 WL 3696269, at *6-7 (S.D. Tex. July 23, 2014) (rejecting negligence claim under Texas law because duty allegedly breached arose from contract); *Murchison v. Progressive N. Ins. Co.*, 572 F. Supp. 2d 1281, 1284 (E.D. Okla. 2008) (dismissing negligence claim under Oklahoma law because duty allegedly breached arose from contract); *Brannigan v. Bank of Am. Corp.*, No. 13-CV-00129, 2013 WL 6510787, at *6 (N.D.

Plaintiffs' negligence claims are barred because the duties allegedly breached and the resulting harm derive from NIBCO's alleged failure to provide a warranty remedy.  As pled, Plaintiffs assert (1) failures "caused by poor and improper workmanship and manufacture," and (2) harm resulting from NIBCO's failure to "cure its breaches of its duty to exercise ordinary care, thus requiring Plaintiffs . . . to take corrective action at their own cost and expense . . . including the cost of repairing and replacing the PEX products . . ." despite notice of its breaches.  FAC ¶¶ 170-72.  The gravamen of Plaintiffs' express warranty claims is comprised of these same essential allegations, *i.e.*, that NIBCO "warranted that the PEX Products would be free from defects in materials and workmanship"; that "NIBCO took no action to cure said breaches of warranties"; and that "Plaintiffs . . . took corrective action at their own cost and expense . . . ." *Id.* ¶¶ 149, 152.  Thus, Plaintiffs' negligence claim is, at its core, based on breach of contractual duties rooted in the express warranty, and it is therefore barred as a matter of law.

### 2.    Regardless, The Negligence Claim Does Not Meet The Pleading Standards Of *Iqbal* And *Twombly*.

The negligence claim fares no better even if it could be read as casting a wider net to include extra-contractual duties.  Although Plaintiffs broadly question whether NIBCO exercised due care in the "formulation, testing, design, manufacture, warranting and marketing of the PEX Products," FAC ¶ 169, Plaintiffs' averments are far too vague and conclusory to state a plausible claim for relief based on this laundry list of "duties."

---

Ga. Dec. 12, 2013) (same under Georgia law); *TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC*, No. 12-3355, 2014 WL 3853900, at *5-6 (D.N.J. Aug. 5, 2014) (same under New Jersey law); *Werner Kammann Maschinenfabrik v. Max Levy Autograph, Inc.*, No. 01-1083, 2002 WL 126634, at *6 (E.D. Pa. Jan. 31, 2002) (dismissing negligence claim because "duties allegedly breached were . . . grounded in" express warranty); *Williams v. Suntrust Mortg., Inc.*, No. 12-CV-477, 2013 WL 1209623, at *3-4 (E.D. Tenn. Mar. 25, 2013) (same under Tennessee law); *Mhoon v. U.S. Bank Home Mortg.*, No. 12-cv-03053, 2013 WL 6858680, at *4 (W.D. Tenn. Dec. 30, 2013) (same).

Although Plaintiffs baldly claim that NIBCO knew or should have known about problems associated with the design and manufacturing of its NIBCO products, virtually all of their specific allegations focus on the PEX Clamps, the effects of chlorides on the stainless steel used for the Clamps, and the unremarkable statement that chlorides allegedly exist in many environments.  *See id.* ¶¶ 131-136.  Yet, no Plaintiff claims to have experienced a failure of their PEX Clamps and, thus, they cannot plausibly allege some breach of care in the design or manufacture of the Clamps or even that they have been damaged by such so-called breaches of care.  Moreover, vague and attenuated claims about unspecified alternatives to stainless steel that exhibit *less* susceptibility to chlorides are not enough to support a claim against NIBCO that its PEX Clamps should have been designed or manufactured differently at the time Plaintiffs' PEX Clamps were purchased.[16]  As the Supreme Court has explained, a "pleading must contain something more . . . than . . . a statement of facts that merely creates the *suspicion* [of] a legally cognizable cause of action."  *Twombly*, 550 U.S. at 555 (alteration in original) (emphasis added).

The negligence claim further fails because, although it alleges that NIBCO's PEX Tubing and Fittings should have been designed, tested, or manufactured differently (*see* FAC ¶ 169), the FAC includes no facts about how these products were designed, manufactured, or tested, let alone that there was some objectively better alternative means available at the time rendering NIBCO negligent with regard to its design and manufacturing processes.  *See generally id.* ¶¶ 108-136, 169.  For the PEX Tubing, the FAC generally avers problems related to "insufficient stabilization and/or improper cross-linking of the PEX material," but it does not allege any critical facts about the design or manufacturing processes to allow the Court to plausibly infer

---

[16] It also bears mentioning that not all Plaintiffs claim to have a water system that utilizes PEX Clamps or Fittings.  Plaintiff Sminkey, for instance, alleges only that his system uses PEX Tubing.  FAC ¶ 69.

that these alleged problems are attributable to negligent conduct in some way or that Plaintiffs are entitled to relief. *Id.* ¶¶ 113-116; *Iqbal*, 556 U.S. at 679.

Moreover, Plaintiffs expressly allege that NIBCO's PEX Fittings are manufactured in conformance with "ASTM standard F1807," which they concede is the "globally recognized" "standard appli[cable] to metal insert fittings" to be used with PEX tubing products. FAC ¶ 118-21.[17] Thus, there are no facts from which it can be plausibly inferred that NIBCO breached the duty of care for this PEX product because the only specific facts that are pleaded about this product are that it *complied* with industry standards. *Iqbal*, 556 U.S. at 679.

### F.   No Plaintiff Has Stated A Viable Unjust Enrichment Claim.

While there are specific grounds to reject each named Plaintiff's unjust enrichment claim based on variances in state law, each fails generally for one of two reasons.

*First*, under the laws of their respective states, Plaintiff McCoy (Georgia), Plaintiff McMahon and the Medders (Texas), Plaintiff Boyd (Alabama), and the Coles (Tennessee) cannot maintain their unjust enrichment claim, *even in the alternative*, because they allege the existence of an actual contract (the express warranty) governing their relationship with NIBCO. *See* FAC, Count I (breach of express warranty); *see also In re Atlas Roofing Corp.-Chalet Shingle Prods. Liab. Litig.*, No. 13-CV-2195, 2014 WL 3360233, at *3 (N.D. Ga. July 9, 2014) (rejecting attempt to plead both unjust enrichment and express warranty claim because "[p]laintiffs may only prevail on an unjust enrichment claim in the absence of a contract, not just in the absence of a successful contract claim"); *Johnson v. Wells Fargo Bank, NA*, 999 F. Supp. 2d 919, 929-30 (N.D. Tex. 2014) (dismissing unjust enrichment claim because parties had

---

[17] Plaintiffs' claim that NIBCO has at some point transitioned to dezincification resistant PEX Fittings does not help them because Plaintiffs concede NIBCO has met industry standards and further because they do not allege that these new fittings were the standard or available at the time their PEX Fittings were purchased.

contractual relationship); *Branch Banking & Trust Co. v. Howard*, No. 12-0175, 2013 WL 951652, at *5 & n.10 (S.D. Ala. Mar. 8, 2013) ("Alabama law is clear that quasi-contractual, equitable remedies such as unjust enrichment are not cognizable in the presence of an express contract between the parties that governs the same subject matter."); *Jim Schumacher, LLC v. Spireon, Inc.*, No. 12-cv-00625, 2014 WL 3508002, at *6 (E.D. Tenn. July 14, 2014) (dismissing unjust enrichment claim where plaintiff also alleged contractual relationship).

*Second*, the unjust enrichment claims for Plaintiff Boyd (Alabama), Plaintiff Monica (New Jersey), and the Pepernos (Pennsylvania) fail because their home states do not recognize a claim for unjust enrichment against defendants from whom the plaintiff did not directly purchase the product. *See Danny Lynn Elec. & Plumbing, LLC v. Veolia ES Solid Waste Se., Inc.*, No. 09-cv-19, 2011 WL 2893629, at *6 (M.D. Ala. July 19, 2011) (dismissing claim under Alabama law because complaint failed to allege "money paid *by* the plaintiffs *to* the named individuals"); *Maniscalco v. Brother Int'l Corp.*, 627 F. Supp. 2d 494, 505-06 (D.N.J. 2009) (Wolfson, J.) (dismissing claim under New Jersey law because Plaintiff purchased product from third-party retailer not defendant-manufacturer); *Nelson v. Xacta 3000 Inc.*, No. 08-5426, 2009 WL 4119176, at *7 (D.N.J. Nov. 24, 2009) (same); *Schmidt*, 972 F. Supp. 2d at 721-22 (dismissing claim under Pennsylvania law because plaintiffs did not allege they purchased the product from defendant).  There is no allegation suggesting that Plaintiffs Boyd or Monica or the Pepernos purchased their PEX products at all (as opposed to homes completed with some NIBCO PEX), let alone that they did so directly from NIBCO.  *See id.* ¶¶ 28-56, 90-103.  Accordingly, their unjust enrichment claims fail as a matter of law.

28

**G.    The Claim For Declaratory And Injunctive Relief Must Be Dismissed Because These Are Remedies, Not Stand-Alone Causes Of Action.**

Plaintiffs' final claim for declaratory and injunctive relief (Count X) must be dismissed because the declaratory judgment and injunction that Plaintiffs seek are remedies for Plaintiffs' other causes of action, not stand-alone causes of action.  "[A]n injunction is a remedy rather than a cause of action, so a separate claim for injunctive relief is unnecessary."  *Chruby v. Kowaleski*, 534 F. App'x 156, 160 n.2 (3d Cir. 2013) (affirming dismissal of injunctive relief claim); *see also VNB Realty, Inc. v. U.S. Bank, N.A.*, No. 13-04743, 2014 WL 1628441, at *7 (D.N.J. Apr. 23, 2014) (dismissing injunctive relief claim).

Moreover, as this Court has previously ruled, the "declaration that Plaintiffs seek . . . is duplicative of a favorable finding for Plaintiffs" on their other claims, so an "*actual judgment*, rather than a mere declaration," suffices.  *Maniscalco*, 627 F. Supp. 2d at 504-05 (dismissing declaratory judgment claim); *see also* FAC ¶ 214 (seeking a declaration that the PEX products are defective and NIBCO knew of defects).  Here, as in *Maniscalco*, Plaintiffs have not identified a basis in any of their claims "whereby the Court must grant declaratory relief as a prerequisite for a finding of liability."  627 F. Supp. 2d at 505.  Therefore, Count X for declaratory and injunctive relief must be dismissed.

V.      **CONCLUSION**

For the reasons set forth above, NIBCO respectfully requests that this Court dismiss, with prejudice: Counts I-IV and IX for the Coles, and Counts II-V and IX for Plaintiff Monica; Counts I-III for Plaintiffs McMahon and McCoy; Count V for Plaintiff Monica; Count VI for the Pepernos; Count VII for Plaintiff McMahon and the Medders; Count VIII for Plaintiff Sminkey; and Counts III, IV, IX, and X for all Plaintiffs.

Respectfully Submitted:

MORGAN, LEWIS & BOCKIUS, LLP

KELLEY JASONS McGOWAN SPINELLI
HANNA & REBER, LLP

BY: */s/ Franco A. Corrado*
           Franco A. Corrado

30