**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| KIMBERLY COLE, ALAN COLE, JAMES MONICA, LINDA BOYD, MICHAEL MCMAHON, RAY SMINKEY, JAMES MEDDERS, JUDY MEDDERS, ROBERT PEPERNO, SARAH PEPERNO, and KELLY MCCOY, on behalf of themselves and all others similarly situated, | : : : : : : : : : | Civil Action No. 3:13-cv-07871-FLW-TJB |
| | : | Motion returnable: December 1, 2014 |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| NIBCO, Inc., | : | |
| | : | |
| Defendant. | : | |
| | : | |

---

**PLAINTIFFS' RESPONSE IN OPPOSITION TO NIBCO'S PARTIAL MOTION TO
DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

---

**LITE DEPALMA GREENBERG, LLC**
Bruce D. Greenberg
Two Gateway Center, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
Email: bgreenberg@litedepalma.com

*Attorneys for Plaintiffs and Interim Co-Lead
Counsel*

[*Additional counsel on signature page*]

445239.1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

I.      INTRODUCTION ........................................................................................................1

II.     SUMMARY OF PLAINTIFFS' ALLEGATIONS ......................................................2

        A.      NIBCO and Its Representations Concerning PEX Products....................................2

                The Defects Associated With NIBCO PEX Products...............................................3

                1.      Defective PEX Tubing.................................................................................3

                2.      Defective PEX Fittings ...............................................................................4

                3.      Defective PEX Clamps ...............................................................................5

        B.      Summary of the Claims of Individual Plaintiffs ......................................................6

                1.  The Coles ....................................................................................................6

                2.  James Monica ..............................................................................................6

                3.  Linda Boyd...................................................................................................7

                4.  Michael McMahon .......................................................................................7

                5.  Ray Sminkey ................................................................................................8

                6.  The Medders .................................................................................................8

                7.  The Pepernos................................................................................................9

                8.  Kelly McCoy.................................................................................................9

III.     LEGAL STANDARD.................................................................................................10

                ARGUMENT ...........................................................................................................10

        A.      The Claims of Monica and the Coles Are Not Subsumed by Their States' Product Liability Acts.............................................................................................10

        B.      NIBCO Breached the Implied Warranty of Fitness for a Particular Purpose ........13

445357.1

C.   Plaintiffs McMahon and McCoy Were Not Required to Provide Pre-Suit Notice ............................................................................15

D.   All the Consumer Fraud Claims Should be Sustained.............................................17

   1.   Plaintiff Monica Sufficiently States an NJCFA Claim .............................17

   2.   The Pepernos Have Stated a Claim Under Pennsylvania's UTPCPL........21

      a.   The FAC Adequately Alleges NIBCO Engaged In Conduct Considered Actionable Under the UTPCPL. .................21

      b.   The FAC Alleges Justifiable Reliance. .........................................22

   3.   The Texas Plaintiffs Validly Allege Claims Under Texas's DTPA ..........................................................................23

   4.   Plaintiff Sminkey Seeks Leave to Replead His Oklahoma Law Claim...........................................................................25

E.   Plaintiffs' Negligence Claims Should be Sustained ...............................................25

F.   Plaintiffs' Unjust Enrichment Claims Should be Sustained ...................................28

G.   Plaintiffs' Claims for Declaratory and Injunctive Relief Should be Sustained .........................................................................30

CONCLUSION.....................................................................................30

445357.1

## **TABLE OF AUTHORITIES**

**Case**                                                                                        **Page(s)**

*Alin v. Am. Honda Motor Co.*
2010 U.S. Dist. LEXIS 32584, (D.N.J. Mar. 31, 2010)...............................................21

*Alloway v Gen. Mar. Indus., L.P.*
695 A2d 264 (N.J. 1997)..............................................................................................11

*Am. Fertilizer Specialists, Inc. v Wood*
635 P. 2d 592 (Ok. 1981).............................................................................................15

*Amstadt v. U.S. Brass Corp.*
919 S.W.2d 644 (Tex.1996)..........................................................................................23

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) .....................................................................................................10

*Asplundh Tree Expert Co. v. Emeritis LLC*
2006 U.S. Dist. LEXIS 45581 (N.D. Ga. Jun. 27, 2006)..............................................26

*Avram v. Samsung Elecs. Am., Inc.*
2013 U.S. Dist. LEXIS 97341 (D.N.J. Jul. 11, 2013)....................................................27

*Autozone, Inc. v Glidden Co.*
737 F. Supp. 2d 936 (W.D. Tenn. 2010) ......................................................................15

*Bagley v Mazda Motor Corp.*
864 So. 2d 301 (Ala. 2003)...........................................................................................15

*Barnett v. Coppell N. Tex. Court, Ltd.*
123 S.W.3d 804 (Tex. App. 2003).................................................................................23

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007)......................................................................................................10

*Beth Schiffer Fine Photographic Arts, Inc. v. Colex Imaging, Inc.*
2012 U.S. Dist. LEXIS 36695 (D.N.J. Mar. 19, 2012)............................................15, 19

*Branch Banking & Trust Co. v. Howard*
2013 U.S. Dist. LEXIS 32988 (S.D. Ala. Mar. 8, 2013) ..............................................28

*In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prods. Liab. Litig. v.*
*GAF Materials Corp.*
2013 U.S. Dist. LEXIS 40116 (D.S.C. Mar. 22, 2013) .................................................10

*Bosland v. Warnock Dodge, Inc.*
    964 A.2d 741 (N.J. 2009)..................................................................................17

*Burgess v. Travelers Indem. Co.*
    363 S.E. 2d 308 (Ga. 1987)..............................................................................16

*Carbon Processing & Reclamation, LLC v. Valero Mktg. & Supply Co.*
    694 F. Supp. 2d 888 (W.D. Tenn. 2010).........................................................27

*Castrol Inc., v. Pennzoil Co.*
    987 F.2d 939 (3d Cir. 1993).............................................................................19

*Caudill Seed & Warehouse Co. v. Prophet 21, Inc.*
    123 F. Supp. 2d 826 (E.D. Pa. 2000) ..............................................................26

*Clark v Aaron's, Inc.*
    914 F. Supp. 2d 1301 (N.D. Ga. 2012) ...........................................................28

*Compaq Computer Corp. v. Lapray*
    135 S.W. 3d 657 (Tex. 2004)...........................................................................16

*Consumer Prot. Corp. v. Neo-Tech News*
    2009 WL 2132694 (D. Ariz. 2009)..................................................................30

*Covington v. International Ass'n of Approved Basketball Officials*
    710 F.3d 114 (3d Cir. 2013).............................................................................27

*Craftmatic Sec. Litig. v. Kraftsow*
    890 F.2d 628 (3d Cir. 1989).............................................................................22

*Crozier v. Johnson & Johnson Consumer Cos.*
    901 F. Supp. 2d 494 (D.N.J. 2012) ..................................................................20

*Danny Lynn Elec. & Plumbing, LLC v. Veolia Es Solid Waste Southeast, Inc.*
    2011 U.S. Dist. LEXIS 78557 (M.D. Ala. July 19, 2011)................................30

*Davis v. Romney*
    490 F.2d 1360 (3d Cir. 1974)...........................................................................30

*Dean v. Barrett Homes, Inc.*
    8 A.3d 766 (N.J. 2010).....................................................................................11

*Dewey v. Volkswagen AG*
    558 F. Supp. 2d 505 (D.N.J. 2008), *rev'd on other grounds by Dewey v. Volkswagen*

iv

*Aktiengesellschaft*, 681 F.3d 170 (3d Cir. 2012) ...............................................................18

*Dicuio v. Brother Int'l Corp.*
2012 U.S. Dist. LEXIS 112047 (D.N.J. Aug. 9, 2012)....................................................20

*DiMare v. MetLife Ins. Co.*
369 Fed. App'x 324 (3d Cir. 2010)..................................................................................22

*Doe v. Boys Clubs of Greater Dallas, Inc.*
907 S.W.2d 472 (Tex. 1995).............................................................................................23

*Drelles v. Mfrs. Life Ins. Co.*
881 A.2d, 822 (Pa. Super. Ct. 2005).................................................................................23

*Fields v. JP Morgan Chase Bank*
2014 U.S. Dist. LEXIS 153837 (N.D. Tex. Oct. 29, 2014).............................................28

*First Nat'l Bank of Louisville v. Brooks Farms*
821 S.W. 2d 925 (Tenn. 1991).........................................................................................13

*First Title Co. of Waco v. Garrett*
860 S.W.2d 74 (Tex. 1993)...............................................................................................24

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*
2008 U.S. Dist. LEXIS 73690 (D.N.J. Sept. 3, 2008) ....................................................17

*Formosa Plastics Corp. v. Presidio Eng'Rs & Contrs.*
960 S.W.2d 41 (Tex. 1998)...............................................................................................26

*Franulovic v. Coca-Cola Co.*
2007 U.S. Dist. LEXIS 79732 (D.N.J. Oct. 25, 2007)....................................................15

*Gardner v. MGC Mortg., Inc.*
2013 U.S. Dist. LEXIS 29820 (M.D. Ala. Mar. 4, 2013)................................................27

*Gennari v. Weichert Co. Realtors*
691 A.2d 350 (N.J. 1997).............................................................................................17, 19

*G&F Graphic Servs. v. Graphic Innovators, Inc.*
2014 U.S. Dist. LEXIS 63463 (D.N.J. May 8, 2014) ......................................................26

*Global Ground Support, LLC v. Glazer Enters.*
581 F. Supp. 2d 669 (E.D. Pa. 2008) ...............................................................................29

*Gregory Wood Prods. v. Advanced Sawmill Mach. Equip., Inc.*
2007 U.S. Dist. LEXIS 46245 (W.D.N.C. June 25, 2007) ..............................................14

v

*Hammer v. Vital Pharms., Inc.*
  2012 U.S. Dist. LEXIS 40632 (D.N.J. Mar. 26, 2012)....................................................20

*Harnish v. Widener Univ. Sch. of Law*
  2013 U.S. Dist. LEXIS 64104 (D.N.J. Apr. 30, 2013) ...................................................21

*Harper v. LG Electronics, USA, Inc.*
  595 F. Supp. 2d 486 (D.N.J. 2009) ...............................................................................18

*Hedley Feedlot v. Weatherly Trust*
  855 S.W.2d 826 (Tex. Ct. Civ. App. 1993) ....................................................................25

*Hofts v. Howmedica Osteonics Corp.*
  597 F. Supp. 2d 830 (S.D. Ind. 2009) ...........................................................................27

*Home Depot U.S.A., Inc. v. Wabash Nat'l Corp.*
   724 S.E.2d 53 (Ga. Ct. App. 2012)...............................................................................26

*Houck v. Ferrari*
  2014 U.S. Dist. LEXIS 150347 (D.N.J. Oct. 22, 2014)...................................................27

*Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*
  929 A.2d 1076 (N.J. 2007)..............................................................................................19

*Kirtley v. Wadekar*
  2006 U.S. Dist. LEXIS 60309 (D.N.J. Aug. 24, 2006)...................................................27

*Kuzian v. Electrolux Home Prods.*
  937 F. Supp. 2d 599 (D.N.J. 2013) ..........................................................................11, 12

*Latham v. Castillo*
  972 S.W.2d 66 (Tex.1998)...............................................................................................23

*Lieberson v. Johnson & Johnson Consumer Cos.*
  865 F. Supp. 2d 529  (D.N.J. 2011)  ........................................................................18, 19

*Lincoln Gen. Ins. Co. v Detroit Diesel Corp.*
  293 S.W. 3d 487 (Tenn. 2009).......................................................................................13

*In re L'Oreal Wrinkle Cream Mktg. & Sales Practices Litig.*
  2013 U.S. Dist. LEXIS 176969 (D.N.J. Dec. 9, 2013)...................................................28

*Lorenz v. CSX Corp.*
  1 F.3d 1406 (3d Cir. 1993).............................................................................................25

vi

*Lynch v. Gander Mt. Co.*
   2013 U.S. Dist. LEXIS 121322 (M.D. Pa. Aug. 27, 2013) ................................15

*Maniscalco v. Brother Int'l Corp. (USA)*
   627 F. Supp. 2d 494 (D.N.J. 2009) ........................................................18, 30

*Marcus v. BMW of North America, LLC*
   687 F.3d 583 (3d Cir. 2012)........................................................................28

*Miller  v. Bynum*
   797 S.W.2d 51 (Tex. Ct. App. 1990), *aff'd,* 836 S.W.2d 160 (Tex. 1992) .......................24

*Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*
   331 F.3d 406 (3d Cir. 2003)........................................................................18

*Montich v Miele USA, Inc.*
   849 F. Supp. 2d 439 (D.N.J. 2012) ........................................................11, 19

*Morris v. BMW of N. Am.*
   2014 U.S. Dist. LEXIS 24211 (D.N.J. Feb. 26, 2014) ....................................20

*Neale v. Volvo Cars of N. Am., LLC*
   2013 U.S. Dist. LEXIS 43235 (D.N.J. Mar. 26, 2013)....................................28

*Palmer v A.H. Robins Co.*
   684 P. 2d 187 (Col. 1984)............................................................................14

*Phillips v. County of Allegheny*
   515 F. 3d 224 (3d Cir. 2008)........................................................................10

*Powell v City of Snellville*
   467 S.E. 2d 540 (Ga. 1996)..........................................................................16

*Powers v. Lycoming Engines*
   2007 U.S. Dist. LEXIS 67636 (E.D. Pa. Sept. 12, 2007) ...............................29

*Quicksilver Res., Inc. v. Eagle Drilling, L.L.C.*
   2009 U.S. Dist. LEXIS 39176 (S.D. Tex. May 8, 2009) .................................27

*Rawson Food Servs. v. TD Bank, N.A.*
   2014 U.S. Dist. LEXIS 25906 (D.N.J. Feb. 28, 2014) ...................................27

*Schraeder v. Demilec (USA) LLC*
   2013 U.S. Dist. LEXIS 151995 (D.N.J. Oct. 22, 2013)...................................28

vii

*Slim CD, Inc. v. Heartland Payment Sys*.
    2007 U.S. Dist. LEXIS 62536 (D.N.J. Aug. 22, 2007)......................................17

*Smith v. Baldwin*
    611 S.W.2d 611 (Tex. 1980).........................................................................23

*Smith v. Lincoln Benefit Life Co*.
    2009 U.S. Dist. LEXIS 24941 (W.D. Pa. Mar. 23, 2009) ................................26

*Smith v. Merial Ltd*.
    2011 U.S. Dist. LEXIS 56461 (D.N.J. May 26, 2011) ....................................13

*Spring Motors Distribs. v Ford Motor Co*.
    489 A2d 660 (N.J. 1985)...............................................................................11

*Synthes, Inc. v. Emerge Med., Inc*.
    2014 U.S. Dist. LEXIS 78218 (E.D. Pa. Jun. 5, 2014)....................................26

*Talalai v. Cooper Tire & Rubber Co*.
    823 A.2d 888 (Law Div. 2001) ......................................................................21

*TBI Unlimited, LLC v. Clear Cut Lawn Decisions*, LLC
    2014 U.S. Dist. LEXIS 107756 (D.N.J. Aug. 5, 2014).....................................26
    *19*

*In re Toshiba America HD DVD Marketing and Sales Practices Litig*.
    No. 08-939, 2009 U.S. Dist. LEXIS 82833 (D.N.J. Sept. 11, 2009) .................19

*Town of Smyrna v. Mun. Gas Auth*.
    2012 U.S. Dist. LEXIS 53614 (M.D. Tenn. Apr. 17, 2012)..............................29

*Union Trust Co. of Md. v. Wakefern Food Corp*.
    1989 U.S. Dist. LEXIS 11754 (D.N.J. 1989) ..................................................19

*Vintage Homes, Inc. v Coldiron*
    585 S.W. 2d 886 (Tex. Civ. App. 1979) ........................................................17

*Wal-Mart Stores, Inc. v. Wheeler*
    586 S.E. 2d 83 (Ga. Ct. App. 2003).........................................................15, 16

*Wendling v. Pfizer, Inc*.
    2008 N.J. Super. Unpub. LEXIS 1359 (App. Div. Mar. 31, 2008) ...................12

## <u>STATUTES</u>

N.J.S.A. 2A:58C-1(b)(3) ................................................................................................11

N.J.S.A. 12A:2-315 ................................................................................................13, 15

N.J.S.A. 56:8-2.13 ................................................................................................12

Okla. Stat. Ann. tit. 15 ................................................................................................25

Tex. Bus. & Com. Code Ann. § 17.50(a) ...............................................................23, 24

## <u>OTHER AUTHORITIES</u>

Anderson Uniform Commercial Code § 2-607:14 (1971) .........................................17

## I.   <u>**INTRODUCTION**</u>

In New Jersey, and across the country, individuals and families who achieved the American dream of home ownership have seen that dream become a nightmare due to water damage stemming from defective plumbing products (together, "PEX Products") designed, manufactured and sold by NIBCO, Inc. ("Defendant" or "NIBCO").  The failures of the PEX Products are occurring in a predictable manner and are caused by a number of common design and manufacturing deficiencies in those PEX Products.

This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a putative nationwide class or, alternatively, putative New Jersey, Pennsylvania, Alabama, Georgia, Texas, Oklahoma and Tennessee state subclasses of persons or entities who sustained damages proximately caused by Defendant NIBCO's cross- linked polyethylene plumbing tubes ("PEX Tubing"), the fittings required to connect the PEX Tubing together ("PEX Fittings"), and/or the stainless steel clamps ("PEX Clamps") required for joining the PEX Tubing and PEX Fittings.  A diagram of those components appears below.



This action contends that NIBCO failed to disclose to Plaintiffs and the Class that the PEX Products suffer from common design and/or manufacturing defect(s) that lead to premature product failure.  Specifically, the PEX Tubing suffers from a design and/or manufacturing defect because it is prone to premature oxidative failure and creep rupture.  The PEX Fittings suffer

from a design and/or manufacturing defect because they are prone to dezincification corrosion. The PEX Clamps suffer from a design and/or manufacturing defect because they are prone to failure by chloride-induced stress corrosion cracking.  When any of these components fail, it leads to the same result: the release of water, which causes significant damage to surrounding property and/or prevents the plumbing system from functioning as intended.

Instead of disclosing the defects in its PEX Products, NIBCO continued to market and sell them as a superior alternative to other plumbing products.  NIBCO claims that its method of manufacturing PEX Tubing is a "superior process" which delivers "the highest quality PEX Tubing available today, while reducing the use of chemicals." Likewise, despite knowing that its fittings and clamps were prone to corrosion failures, NIBCO encouraged consumers to use them with its NIBCO PEX Tubing by substantially increasing the warranty if all NIBCO PEX Products were used during the installation.  NIBCO's marketing conduct substantially increased the likelihood that its customers would have a PEX-related water loss when utilizing its products.

## II.  SUMMARY OF PLAINTIFFS' ALLEGATIONS

### A.  NIBCO and Its Representations Concerning PEX Products

NIBCO claims to be a "recognized leading provider of valves, fittings and flow control products for commercial, industrial and institutional construction as well as residential and irrigation markets."  First Amended Complaint ("FAC"), ¶ 110.  NIBCO holds out its PEX Tubing as having "superior characteristics" due to NIBCO's unique cross-linking process:

> Many manufacturers use a chemical additive to activate the crosslinking process, but NIBCO employs a sterile, electron beam process that ***provides superior properties***. This process, which is called PEX-c, ***delivers the highest quality PEX tubing available today***, while reducing the use of chemicals.

*Id.*, ¶ 112 (emphasis added) (citations omitted).

**The Defects Associated With NIBCO PEX Products**

### 1. Defective PEX Tubing

The FAC specifically identifies the defect and failure mode associated with the PEX Tubing.  For example, Plaintiffs allege that "[d]espite NIBCO's attestations to the quality and superiority of its PEX Tubing, consumers all across the United States have experienced water damage and catastrophic PEX Tubing failures caused by slow growth cracking mechanisms consistent with oxidative failure and/or creep rupture.  These slow growth cracking mechanisms have been caused by the insufficient stabilization and/or improper cross-linking of the PEX material used by NIBCO to manufacture its PEX Tubing."  FAC, ¶ 113.

NIBCO's PEX Tubing comes with an express warranty that purports to guard against defects in the materials and workmanship of the tubing.  *Id.*, ¶ 114.  That express warranty states:

> NIBCO Inc. warrants that when NIBCO® PEX tube is used with NIBCO® PEXfittings, and NIBCO® valves and installation accessories, they will, under normal conditions, use and service in potable water and radiant heat systems, be free from defects in materials and workmanship for a period of twenty-five (25) years from the date of purchase when installed by a licensed professional contractor.  This 25-year warranty is voided if any non-NIBCO products are used in the PEX system.  NIBCO INC. warrants NIBCO PEX tube, when used under normal conditions,  use and service in potable water and radiant heat systems with brass insert fittings meeting NSF/ANSI 61, ASTM F1807 and ASTM F877 to be free from defects in materials and workmanship for a period ten (10) years form [sic] the date of purchase.

*Id.*, ¶ 114 (quoting Exhibit 1 to the FAC).

Plaintiffs allege that NIBCO'S PEX Tubing is defective because it is failing well within the warranty period and causing water damage to homes across the country.  In addition, Plaintiffs allege that NIBCO refuses to honor its warranty obligations.  *Id.*, ¶ 115.

445239.1

### 2.  **Defective PEX Fittings**

The FAC also identifies dezincification as the specific defect and failure mode associated with the PEX Fittings and alleges that NIBCO was aware of this defect and eventually withdrew the susceptible PEX Fittings from the market.  *See, e.g., id.*, ¶¶ 126-36.  "NIBCO manufactures and sells PEX Fittings that purportedly conform to ASTM standard F1807."  *Id.*, ¶ 118.  "F1807 insert fitting systems typically use a crimped stainless steel or copper ring to secure the PEX Tubing to the fitting.  The brass alloy fitting is inserted into the PEX Tubing using a special tool that crimps a copper ring or stainless steel clamp around the outside of the tubing, which, in turn, creates a seal between the PEX Tubing and the brass fitting."  *Id.,* ¶ 120.  NIBCO encourages consumers to purchase and install its PEX Fittings with the PEX Tubing.  *Id.*, ¶ 121.  NIBCO's express warranty covers 10 years if only its PEX Tubing is installed, but 25 years if its PEX Fittings, valves and installation accessories are used in conjunction with its PEX Tubing.  *Id.*

"During foreseeable and intended use, the NIBCO PEX Fittings are exposed to elements in residential and commercial plumbing systems that cause the NIBCO PEX Fittings to corrode and prematurely fail as the result of dezincification corrosion."  *Id.*, ¶¶126-127.  As a result of that corrosion, a network of holes develops in the PEX Fittings, allowing water to weep through the fitting's walls.  *Id.,*¶ 128.  Weakened fittings crack or break, causing significant water damage.  *Id.*  They become plugged with corrosion product causing a low water pressure condition.  *Id.*  Corroded fittings also allow chloride-rich water to weep through the wall of the fittings, wetting the adjacent stainless steel PEX Clamp and causing the PEX Clamp to fail due to resultant stress corrosion cracking.  *Id.*

Plaintiffs' FAC also asserts that NIBCO continued to market and sell its PEX Products despite knowing that the products were susceptible to failures as a result of dezincification and

chloride-induced stress corrosion cracking.  *Id.*, ¶ 129.  The design, materials choices, and manufacturing practices of the brass fittings and stainless steel PEX Clamps marketed and sold by Defendant have created damaged products that begin to fail on their first day of use, even if properly installed in their intended environment.  *Id.*, ¶ 130.  Defendant no longer advertises these defective PEX Fittings on its website due to the design defect and susceptibility to dezincification.  *Id.*  Currently, Defendant advertises fittings that are "dezincification resistant."[1]

### 3.  Defective PEX Clamps

Finally, with respect to the PEX Clamps, NIBCO chose a stainless steel alloy that is known to be susceptible to stress corrosion cracking in the presence of chlorides.  *Id.*, ¶ 132.  The chlorides that lead to stress corrosion cracking are routinely found in many materials used in building construction.  *Id.*, ¶ 134.  The presence of chlorides is (or should have been) anticipated and accounted for in the design and manufacture of the PEX Clamps.  *Id.*

Further, "NIBCO acknowledges that liquid and paste fluxes for soldering applications of copper and copper-alloy fittings are corrosive and that they contain chlorides of zinc and ammonia."[2]  *Id.*, ¶ 135.  Additionally, NIBCO instructs the installer to apply chloride-rich flux and then to wipe the finished brazed assembly with a rag to remove the flux.[3]  *Id.*  "NIBCO fails to warn the installer against allowing chloride-rich flux to come into contact with the stainless steel PEX Clamp."  *Id.*  NIBCO knows or should have known that it is impossible to remove all traces of flux, and that by wiping the flux with a rag it is near certain that flux will be smeared onto the adjacent stainless steel PEX Clamp.  *Id.*

---

[1] *See, e.g.*, http://www.nibco.com/PEX/PEX-Fittings/PEX-Metal-Fittings/?pageNumber=1.

[2] *See* NIBCO, NIBCO® Copper Fittings, Catalog C-CF-0513, at 37 (May 9, 2013).

[3] *See id.* at 47.

445239.1

NIBCO knew or should have known that chlorides from any source would be harmful to the stainless steel PEX Clamps.  *Id.*, ¶ 136.  NIBCO acknowledges that the PEX Clamps are "covered by international patents held by Oetiker International."  *Id.*  "Oetiker warns that chloride-rich environments can be problematic for their PEX Clamps."[4]  *Id.*  NIBCO, however, fails to disclose these vulnerabilities.  *Id.*

**B.   Summary of the Claims of Individual Plaintiffs**

**1.   The Coles**

Plaintiffs Kimberly Cole and Alan Cole live in Gadsden, Tennessee.  *Id.*, ¶ 14.  The Coles had a new home built, in which the residential plumbing system was installed by a licensed professional contractor using NIBCO PEX Products, including NIBCO PEX Tubing, PEX Fittings, PEX Clamps and installation accessories.  *Id.*, ¶¶ 15-18.  In May 2009, the Coles began using the home as their primary residence.  *Id.*, ¶¶ 17-19.  Since that time, the Coles experienced numerous water leaks, on multiple occasions, involving both defective PEX Fittings and PEX Tubing, as a result of which damage has occurred in the kitchen, laundry room, master bedroom and master bathroom.  *Id.*, ¶¶ 20-22, 25.  After discovery of the leaks, the Coles contacted NIBCO and requested replacement of the defective PEX Tubing under the express warranty.  *Id.*, ¶ 24.  In violation of that warranty, NIBCO declined to give the Coles any relief.  *Id.*

**2.   James Monica**

Plaintiff James Monica is a resident of Warren, New Jersey.  *Id.*, ¶ 28.  Monica's residential plumbing system was installed by a licensed professional contractor using NIBCO PEX Products, including PEX Tubing, PEX Fittings, PEX Clamps and other installation

---

[4]http://www.oetiker.com/en/Services/~/media/Downloads/Operating%20Instructions/Operating%20Instructions%20PEX/Installation%20Instructions%20PEX/PEX%20Clamps%20Installation%20Instructions.pdf?la=es

accessories, with that work substantially completed in December 2010.  *Id.*, ¶¶ 29-31.  Monica

then began to use that home as his primary residence.  *Id.*, ¶ 32.  Thereafter, Monica experienced

numerous water losses originating at corroded PEX Fittings.  *Id.*, ¶¶ 33-38.  After discovering the

leaks, and after finding that other exposed PEX Fittings in his basement exhibited corrosion,

Monica contacted NIBCO and requested replacement of the defective PEX Fittings under the

express warranty.  *Id.*, ¶ 39.  As was true with the Coles, NIBCO refused any relief.  *Id.*

### 3.  **Linda Boyd**

Plaintiff Linda Boyd resides in Foley, Alabama, in a new home that was substantially

completed in August 2008.  *Id.*, ¶¶ 43-44.  Boyd's residential plumbing system was installed by a

licensed professional contractor using NIBCO PEX Products, including PEX Tubing, PEX

Fittings, PEX Clamps and other installation accessories.  *Id.*, ¶¶ 46-47.  Since she began to live

in the home in December 2008, Boyd has suffered multiple water leaks originating at failed PEX

Tubing within her home.  *Id.*, ¶¶ 48-52.  As a result of the multiple PEX failures, Boyd installed

replacement plumbing throughout her entire home, installed replacement sheet rock above the

ceiling in her laundry room and repainted it as a result of the first leak, and repainted her garage

walls as a result of the second and third leaks.  *Id.*, ¶ 54.  Boyd sent a sample of the defective

PEX Tubing to NIBCO and requested replacement tubing, or reimbursement of her losses, under

NIBCO's express warranty.  *Id.*, ¶ 53.  NIBCO would not provide any relief.  *Id.*

### 4.  **Michael McMahon**

Plaintiff Michael McMahon is a resident of Rio Vista, Texas.  *Id.*, ¶ 57.  McMahon's

home there included a plumbing system installed by a professional licensed contractor using

NIBCO PEX Products, including PEX Tubing, PEX Fittings, PEX Clamps and other installation

accessories, and the home was substantially complete in August 2007.  *Id.*, ¶¶ 58-60.  McMahon

moved into the home on January 1, 2013 and began using it as his primary residence.  *Id.*, ¶ 61.

Starting in early 2013, leaks from the PEX Tubing occurred on approximately six separate

occasions in that home.  *Id.*, ¶ 62.  On each occasion, the plumber informed McMahon that the

tubing had "split" and water was leaking from the tubing as a result.  *Id.*, ¶ 63.  The leaking water

saturated the walls of his garage, damaged personal property located in the garage, damaged the

walls of his home, and flooded the first floor of his home as well.  *Id.*, ¶ 64.

### 5.  **Ray Sminkey**

Plaintiff Ray Sminkey resides in Elgin, Oklahoma.  *Id.*, ¶ 66.  Construction of Sminkey's

home, including installation of a residential plumbing system by a licensed professional

contractor using NIBCO PEX Tubing, was substantially completed by early 2009 when Sminkey

began to use the home as his primary residence.  *Id.*, ¶¶ 68-71.  On or about November 5, 2013,

Sminkey saw a water leak in the residential hot water line coming off of the hot water heater in

his garage.  *Id.*, ¶ 72.  The following week, he observed two additional water leaks in the same

residential hot water line coming off of the hot water heater in his garage.  *Id.*, ¶ 73.  All three

leaks caused significant damage.  *Id.*, ¶75.  A plumber who inspected the leaks told Sminkey that

the tubing had burst, causing the water to leak from the tubing, and the plumber replaced all the

sections of the tubing that had leaked.  *Id.*, ¶ 74.

### 6.  **The Medders**

Plaintiffs James and Judy Medders reside in Morgan Mill, Texas.  *Id.*, ¶ 77.  Their home

there, completed in early 2012, included a residential plumbing system that was installed by

licensed professional contractors using NIBCO PEX Products, including PEX Tubing, PEX

Fittings, and PEX Clamps.  *Id.*, ¶¶ 78-82.  On or about December 5, 2013, the Medders observed

a leak in a NIBCO Tee Fitting in the attic of the utility room of their home.  *Id.*, ¶ 83.  On or

about December 8, 2013, the Medders retained a plumber to inspect and repair the water leak and resultant damage. *Id.* To date, the Medders have experienced significant damage on three separate occasions due to Defective PEX Products. *Id.,* ¶¶ 83-85, 87. Promptly after the losses, the Medders notified NIBCO of the failures of its PEX Products, but NIBCO has failed to repair or replace the PEX Products or otherwise fulfill its warranty obligations. *Id.*, ¶ 86.

### 7. **The Pepernos**

Plaintiffs Robert and Sara Peperno reside in Old Forge, Pennsylvania. *Id.*, ¶ 90. Construction of their home there, including a residential plumbing system installed by a licensed professional contractor using NIBCO PEX Tubing, PEX Fittings, and PEX Clamps, was substantially completed in February of 2008, when the Pepernos moved in. *Id.*, ¶¶ 91-95. Since that time, the Pepernos suffered three separate water losses originating from PEX Tubing. *Id.*, ¶¶ 96-99. On all three occasions, the Pepernos called a plumber to inspect the water leak and resultant damage, and were told that the tubing had "split" and water was leaking as a result. *Id.* The Pepernos contacted NIBCO and requested replacement of the defective PEX Products under the express warranty. *Id.*, ¶ 100. As with the other Plaintiffs who contacted NIBCO, NIBCO refused to replace the Pepernos' defective PEX Tubing, in breach of the express warranty. *Id.*

### 8. **Kelly McCoy**

Plaintiff Kelly McCoy lives in Marietta, Georgia. *Id.*, ¶ 103. Due to a fire, McCoy's home, his primary residence, had to be rebuilt in 2010. *Id.*, ¶ 104. A residential plumbing system was installed by a licensed professional contractor using NIBCO PEX Products, including PEX Tubing, PEX Fittings, and PEX Clamps. *Id.*, ¶¶ 105-106. Thereafter, the NIBCO tubing repeatedly failed, requiring six repairs. *Id.*, ¶ 107. The NIBCO tubing split lengthwise on the hot water side. *Id.* Among other repairs that were required by those failures, a bathroom

wall had to be torn out and replaced. *Id.* Additionally, the failed tubing had to be replaced. *Id.* Plaintiff McCoy hired the same licensed professional contractor who had installed the plumbing system to make the necessary repairs and to replace the defective PEX Tubing. *Id.*

## II.   <u>LEGAL STANDARD</u>

Pursuant to Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the Complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that the plaintiff's claims lack facial plausibility. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The FAC must contain sufficient factual allegations to raise a right to relief above the speculative level, assuming the factual allegations are true. *Id.*; *see Phillips v. County of Allegheny,* 515 F. 3d 224, 234 (3d Cir. 2008). While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009). It is the role of discovery, not the pleadings, to "reveal evidence" as long as the factual allegations are enough to raise the right to relief above a speculative level. *Twombly*, 550 U.S. at 556. The allegations of the FAC amply meet this standard and, as will be discussed below, the FAC sufficiently pleads fraud under Rule 9(b).

<u>ARGUMENT</u>

### A.  The Claims of Monica and the Coles Are Not Subsumed by Their States' Product Liability Acts

Plaintiff Monica's claims are not subsumed by the NJPLA. Contrary to NIBCO's assertion, Db 9, the NJPLA does not subsume all claims that relate in any way to a product defect. Instead, subsumption is limited to certain, delineated categories of harm that the Legislature has decided are best determined under tort (rather than contract) principles.

Specifically, the NJPLA defines a product liability action as "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim,

10

except actions for harm caused by breach of an express warranty."[5]  N.J.S.A. 2A:58C-1(b)(3).  In turn, the relevant type of "harm" caused by a product is defined to include "[a] physical damage to property, *other than to the product itself*…." N.J.S.A. 2A:58C-1(b)(2) (emphasis added).  Thus, "what kind of 'harm' a defective product causes is dispositive of whether the NJPLA governs claims brought for that harm."  *Kuzian v. Electrolux Home Prods.*, 937 F. Supp. 2d 599, 607-08 (D.N.J. 2013).

The NJPLA's definition of "harm" does not include the price paid for the product, damages stemming from its inability to be used as intended, or the cost necessary to repair or replace the product.  *See, e.g., Montich v Miele USA, Inc.,* 849 F. Supp. 2d 439, 457 (D.N.J. 2012) (finding that plaintiff's claims for breach of implied warranty and unjust enrichment were not subsumed by the NJPLA because "[p]laintiff's damages, if any, flow from the price she paid for the Miele washing machine and the fact that she cannot now use her washing machine for its particular purpose or that it requires repair").

Consequential damages similarly fall outside the scope of the NJPLA.  *See Dean v. Barrett Homes, Inc.*, 8 A.3d 766, 772 (N.J. 2010) ("'[T]ort principles, such as negligence, are better suited for resolving claims involving unanticipated physical injury . . . . Contract principles, on the other hand, are generally more appropriate for determining claims for consequential damage that the parties have, or could have, addressed in their agreement.'" (quoting *Spring Motors Distribs. v Ford Motor Co.*, 489 A2d 660, 672 (N.J. 1985)); *see also Alloway v Gen. Mar. Indus., L.P.*, 695 A2d 264, 268 (N.J. 1997) (similar).

In line with this reasoning, *Kuzian* ruled that the NJPLA does not subsume claims for harm nearly identical to what Plaintiff Monica alleges:

---

[5] NIBCO concedes that Plaintiff Monica's express warranty claim is not subsumed.  Db10.

> In this case, plaintiffs allege that the defective ice makers failed to produce ice. They also allege that the ice makers leaked water into the refrigerators causing the electrical components to short out and malfunction, which caused the refrigerators to warm to unsafe temperatures. This alleged harm is physical damage to the product itself, and it is explicitly excluded from the NJPLA. Thus, these claims are not subsumed by the NJPLA and cannot be dismissed on that basis.
>
> Plaintiffs also allege, however, that the defective ice makers and resulting leaks caused food to spoil and caused damage to flooring, walls and other personal property beyond the refrigerator itself. Electrolux argues that these damages show "physical damage to property, other than to the product itself," which makes plaintiffs' claims be explicitly subsumed by the NJPLA.
>
> Electrolux's attempt to transform plaintiffs' claims into product defect tort claims is unavailing. Even though spoiled food and damage to floors, walls, and other property do not strictly constitute harm to the refrigerator itself, they are consequential, anticipated economic losses resulting from the defect in the refrigerator. As such, they are not subsumed by the NJPLA.

937 F. Supp. 2d at 608.

Like the plaintiff in *Kuzian*, Plaintiff Monica seeks damages for the price paid for the PEX Products, the damage the defect has caused to the products themselves, the costs incurred to repair and replace the defective products, and damages resulting from "consequential, anticipated economic losses resulting from the defect" in the PEX Products. His claims are therefore not subsumed by the NJPLA, and NIBCO's motion to dismiss on this basis should be denied.[6]

---

[6]This is especially so of Monica's New Jersey Consumer Fraud Act ("NJCFA") claims. *See Wendling v. Pfizer, Inc*., 2008 N.J. Super. Unpub. LEXIS 1359, at *20-22 (App. Div. Mar. 31, 2008) (rejecting defendant's subsumption argument as to plaintiffs' NJCFA claims, finding that "there is a difference between a PLA failure to warn claim and a CFA violation where a misrepresentation was relied upon resulting in actual damages"); N.J.S.A. 56:8-2.13 ("The rights, remedies and prohibitions accorded by the provisions of [the NJCFA] are hereby declared to be in addition to and cumulative of any other right, remedy or prohibition accorded by the common law or statutes of this State, and nothing contained herein shall be construed to deny, abrogate or impair any such common law or statutory right, remedy or prohibition.").

For similar reasons, the TLPA does not subsume the Coles' claims.[7]  In *Lincoln Gen. Ins. Co. v Detroit Diesel Corp.*, 293 S.W. 3d 487 (Tenn. 2009), the Tennessee Supreme Court reaffirmed its application of the "economic loss" rule, a "judicially created principle that reflects an attempt to maintain separation between contract law and tort law by barring recovery in tort for purely economic loss." *Id.* at 488.  The court concluded that damages arising from products that are "merely ineffectual," as opposed to dangerous, must be assessed in accordance with contract principles, not under the TPLA.  *Id.* at 493.  Such damages include not only the purchase price and cost of damage to the product itself, but also "repair and replacement costs and, in appropriate circumstances, consequential economic loss."  *Id.*; *see also First Nat'l Bank of Louisville v. Brooks Farms,* 821 S.W. 2d 925, 930-31 (Tenn. 1991) (holding actions under the TPLA limited to those brought on account of personal injury, death, or property damage and do not include actions for pecuniary loss).  These are the same damages that the Coles seek here.[8]

### B.  NIBCO Breached the Implied Warranty of Fitness for a Particular Purpose

In arguing that Plaintiffs have failed to plead the elements of an implied warranty for a particular purpose, NIBCO implies that the "particular" purpose at issue must be different from the "ordinary" use of the product, and that the two are mutually exclusive.  Not so.

As Comment 2 to N.J.S.A. 12A:2-315 explains, "a 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer

---

[7]  Plaintiffs assume, for purposes of this argument, that the Court would apply the law of Plaintiffs' respective home states to their common law claims.  Should the Court ultimately find that New Jersey law applies to these claims, Plaintiff Monica's anti-subsumption argument, *supra*, would apply with equal force to the Coles.

[8]  NIBCO's reliance on *Smith v. Merial Ltd.*, 2011 U.S. Dist. LEXIS 56461 (D.N.J. May 26, 2011), is misplaced.  *Smith* did not address damage to the product itself (a flea and tick treatment for pets) or consequential economic losses stemming from the product defect but rather the harm to the plaintiffs' pets, including death, that resulted from the treatment.  *See id.* at *14-15.

which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question." The Comment offers an example: "shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains." Though the latter must be sufficient to tread upon ordinary ground, and may still be used for the ordinary purpose of shoes to provide protection to the feet, they must *also* be fit for the more demanding task of mountain climbing.

The same is true here. NIBCO warrants that the PEX products contain "superior characteristics," making them "the highest quality PEX tubing available today." FAC, ¶¶ 8, 112. Indeed, NIBCO is so confident in the performance and longevity of the PEX products that it warrants them for anywhere from 10 to 25 years. *Id.*, ¶ 8. NIBCO touts its PEX Products as "energy-efficient," "economical," "chlorine-resistant," "corrosion resistant," and "freeze-damage and abrasion resistant."[9] In other words, PEX Products are not only good for getting around town, they will help you climb a mountain. *See, e.g., Palmer v A.H. Robins Co.,* 684 P. 2d 187, 208-09 (Col. 1984) ("This is not to say, however, that implied warranties of merchantability and fitness for a particular purpose are mutually exclusive . . . . [T]hese warranties may coexist when there is sufficient evidence to support the creation of each warranty."); *Gregory Wood Prods. v. Advanced Sawmill Mach. Equip., Inc*., 2007 U.S. Dist. LEXIS 46245, at *15-16 n.4 (W.D.N.C. June 25, 2007) ("[T]he two warranties are not mutually exclusive . . . . A good may be defective in regards to both the 'ordinary purpose' for which it is generally used and the more specific 'particular purpose' for which the buyer intends to use it.").

---

[9] *See* http://www.nibco.com/PEX/.

14

NIBCO was aware of the particular purpose for which Plaintiffs purchased the PEX Products (enhanced performance and longevity in residential plumbing application) and relied on NIBCO's skill and judgment – through its representations regarding the superior quality of the PEX products as compared to other, comparable plumbing equipment – to select goods appropriate for this purpose. [10]  Plaintiffs have therefore stated a valid claim for breach of the implied warranty of fitness for a particular purpose.  *See, e.g., Beth Schiffer Fine Photographic Arts, Inc. v. Colex Imaging, Inc*., 2012 U.S. Dist. LEXIS 36695, at *28-36 (D.N.J. Mar. 19, 2012) (finding plaintiff adequately pled claims for breach of warranty for ordinary *and* particular purpose where complaint alleged that equipment at issue was not suitable for ordinary use as photograph printing and processing machine or in accordance with defendant's additional representation that the equipment was "professional grade").[11]

### C.  Plaintiffs McMahon and McCoy Were Not Required to Provide Pre-Suit Notice

Contrary to NIBCO's argument as to Plaintiffs McCoy and McMahon, neither Georgia nor Texas law requires dismissal for lack of pre-suit notice of the defects.  Georgia holds that notice of a breach is not a prerequisite to bringing suit.  *Wal-Mart Stores, Inc. v. Wheeler*, 586 S.E. 2d 83 (Ga. Ct. App. 2003), considered a consumer's claim for breach of the implied warranties of merchantability and fitness for a particular purpose against (among others) Wal-

---

[10] NIBCO undoubtedly had knowledge as to the particular purpose for which the PEX Products would be used since NIBCO actively promoted them for use in the most demanding residential plumbing applications.  *See, e.g., Franulovic v. Coca-Cola Co.,* 2007 U.S. Dist. LEXIS 79732, at *12-13 (D.N.J. Oct. 25, 2007) ("[T]he buyer need not bring home to the seller actual knowledge of the particular purpose for which the goods are intended or of his reliance on the seller's skill and judgment, if the circumstances are such that the seller has reason to realize the purpose intended or that the reliance exists.") (quoting N.J.S.A. 12A:2-315, Cmt. 1)).

[11] To similar effect are *Autozone, Inc. v Glidden Co.*, 737 F. Supp. 2d 936, 948-50 (W.D. Tenn. 2010); *Bagley v Mazda Motor Corp.*, 864 So. 2d 301, 315 (Ala. 2003); *Am. Fertilizer Specialists, Inc. v Wood*, 635 P. 2d 592, 595-96 (Ok. 1981); *Lynch v. Gander Mt. Co*., 2013 U.S. Dist. LEXIS 121322, at *12-13 (M.D. Pa. Aug. 27, 2013).

Mart. *Id.* at 84-85. Wal-Mart did not receive notice of the claim until it was served with the

amended complaint more than two years after the accident giving rise to the suit. *Id.* at 85. The

court rejected Wal-Mart's claim that the consumer had not given reasonable notice:

> The time of notification is to be determined by applying commercial standards to
> a merchant buyer. "A reasonable time" for notification from a retail consumer is
> to be judged by different standards so that in his case it will be extended, for the
> rule of requiring notification is designed to defeat commercial bad faith, not to
> deprive a good faith consumer of his remedy.

*Id.* at 85 (citations omitted). *Wheeler* found that service of the amended complaint provided

Wal-Mart adequate notice absent any showing of prejudice, and that even a delay of two years

prior to filing suit could not be considered unreasonable as a matter of law. *Id.* at 86-87.[12]

NIBCO has shown no prejudice as a result of McCoy providing notice of breach through

this lawsuit. In fact, given that NIBCO has been aware of the defect in its PEX Products from

numerous complaints, including those by other Plaintiffs here, and repeatedly refused to remedy

the situation for other consumers, pre-suit notice would have been futile. *Powell v City of

Snellville*, 467 S.E. 2d 540, 542 (Ga. 1996) ("a court in equity will not require pursuit of the

remedy if to do so would be a futile act"); *see also Burgess v. Travelers Indem. Co.*, 363 S.E. 2d

308, 309 (Ga. 1987) (failure to give "futile and useless" notice not a bar to recovery).

The Texas Supreme Court has not said whether pre-suit notice is required for a remote

manufacturer. *Compaq Computer Corp. v. Lapray*, 135 S.W. 3d 657, 674 n.14 (Tex. 2004)

(noting that Court has not decided the issue). But at least one Texas appellate court held it is not:

> The subject of the Appellant's fourth point of error is that contrary to these Code
> provisions, which require notification, the Coldirons never notified the

---

[12] NIBCO's only authority to the contrary is a South Carolina case addressing, in the context of a
statute of limitations defense, whether language in a particular warranty could be construed as
creating a contract for future performance. *In re Bldg. Materials Corp. of Am. Asphalt Roofing
Shingle Prods. Liab. Litig. v. GAF Materials Corp.*, 2013 U.S. Dist. LEXIS 40116, at *9-10
(D.S.C. Mar. 22, 2013).

445239.1

> Appellant/manufacturer as to the alleged breach of the implied covenant of merchantability and therefore were barred from asserting any remedy to which the breach would otherwise give rise.  We will overrule the point for the reason that the notice requirement of Section 2.607 applies only as between a buyer and his immediate seller.

*Vintage Homes, Inc. v Coldiron*, 585 S.W. 2d 886, 888 (Tex. App. 1979) (citing 2 Anderson Uniform Commercial Code § 2-607:14 (1971)) ("A person not in privity with the defendant, assuming that he is permitted to sue the defendant, is not barred for having failed to give notice to the defendant for the Code only requires that the plaintiff give the notice to 'his seller.'").  Especially since NIBCO was already on notice of the pervasive problems with its products, the pre-suit notice issue should not bar McMahon's claims either.

### D.  All the Consumer Fraud Claims Should be Sustained

#### 1.    Plaintiff Monica Sufficiently States an NJCFA Claim

The NJCFA was intended to "give New Jersey one of the strongest consumer protection laws in the nation."  *E.g.*, *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 748 (N.J. 2009) (citing legislative history).  For this reason, this District has recognized that a motion to dismiss an NJCFA claim must be approached "with hesitation."  *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 73690, at *84 (D.N.J. Sept. 3, 2008).

Given those standards, the FAC unquestionably states a viable NJCFA claim.  "When the alleged consumer fraud violation consists of an affirmative act, it is not necessary for the plaintiff to prove that the defendant intended to commit an unlawful act."  *Slim CD, Inc. v. Heartland Payment Sys.*, 2007 U.S. Dist. LEXIS 62536, at *32 (D.N.J. Aug. 22, 2007) (citing *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 365 (N.J. 1997)).  Where the alleged fraud is based on an omission, "intent is an essential element."  *Id.* The FAC identifies both knowing omissions (*see* ¶¶ 42, 138, 181) and affirmative misstatements. (*see* ¶¶ 7-8, 110-112).  These allegations suffice

17

to state an NJCFA violation.  *See Harper v. LG Electronics, USA, Inc.*, 595 F. Supp. 2d 486, 491 (D.N.J. 2009) (denying motion to dismiss NJCFA and other state law claims where plaintiffs alleged that defendant "marketed defective washing machines as providing superior quality, and knowingly failed to disclose the defects in an attempt to sell more washing machines.").

NIBCO's contention that the FAC does not satisfy Rule 9(b) fails.  "The purpose of Rule 9(b) is to provide notice, not to test the factual allegations of the claim."  *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.,* 331 F.3d 406, 414 n.2 (3d Cir. 2003).  A complaint satisfies Rule 9(b) when it puts "'the [D]efendant[s] on notice of the precise misconduct with which [they are] charged.'"  *See Dewey v. Volkswagen AG,* 558 F. Supp. 2d 505, 526 (D.N.J. 2008), *rev'd on other grounds by Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170 (3d Cir. 2012).  Plaintiffs have done so here.  *See Henderson v. Volvo Cars of N. Am*., No. 09-4146, 2010 U.S. Dist. LEXIS 73624, at *9-10 (D.N.J. July 21, 2010) (Rule 9(b) was satisfied with respect to plaintiffs' consumer fraud claims based on omissions where they averred "that the class product has a common defect, that Defendant was aware of the defect and that Defendant failed to disclose it."); *Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 500-01 (D.N.J. 2009) (NJCFA claim sufficiently pled under Rule 9(b) where plaintiffs alleged, among other things*,* that the defendant intentionally concealed that product was likely to fail before expected useful life, and unconscionably limited its warranty).

NIBCO's representations about the "superior properties" and "superior characteristics" of its defective products are also actionable under the NJCFA as affirmative misstatements. NIBCO's attempt to downplay these statements as mere puffery misses the mark.  As this Court has explained, "'[t]he NJCFA distinguishes between actionable misrepresentations of fact and 'puffery.'"" *Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 540  (D.N.J.

18

2011) (quoting *In re Toshiba America HD DVD Marketing and Sales Practices Litig.*, 2009

U.S. Dist. LEXIS 82833, at * 9 (D.N.J. Sept. 11, 2009)).  Puffery includes vague, highly

subjective advertising claims, as opposed to specific factual assertions that can actually be

verified.  *Id.* (citing cases).  The FAC cites to NIBCO's product catalogs and other materials,

which claim that its PEX tubing possess "superior characteristics," "superior properties," and

"delivers the highest quality PEX tubing available today."  *See* FAC ¶ 112.  Such claims address

product attributes that are of importance to consumers, and are specific and measurable.  They

are also capable of verification through comparative research.  *See Castrol Inc., v. Pennzoil Co.*,

987 F.2d 939, 945-46 (3d Cir. 1993) (involving claims about a product's superiority that were

"specific and measurable by comparative research"); *see also Gennari*, 691 A.2d at 363-64, 366

(misrepresentations as to builder's quality were not "mere puffery").  As such, they are

actionable affirmative misstatements under the NJCFA.  *Lieberson,* 865 F. Supp. 2d at 540.

Next, NIBCO argues the FAC does not allege that Monica was the one who personally

purchased the NIBCO products and, therefore, was not directly exposed to its omissions and

misstatements.  *See* Db15-16.  But the NJCFA "does not require proof that a consumer has

actually relied on a prohibited act in order to recover."[13]  *Montich*, 849 F. Supp. 2d at 446

(*quoting Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 929

A.2d 1076 (N.J. 2007)). The cases cited by NIBCO – both of which involved the dismissal of an

NJCFA claim without prejudice – do not support a contrary result.

---

[13] Nor does the NJCFA require that the parties be in privity; the statute has been interpreted to
cover the acts of remote suppliers whose products are passed on to an indirect buyer like Plaintiff
Monica here.  *See Beth Schiffer Fine Photographic Arts, Inc. v. Colex Imaging, Inc.,*  2012 U.S.
Dist. LEXIS 36695, at *40-42 (D.N.J. Mar. 19, 2012) (collecting cases).

19

*Morris v. BMW of N. Am.*, 2014 U.S. Dist. LEXIS 24211 (D.N.J. Feb. 26, 2014), involved allegations that BMW had made affirmative misstatements about its Navigation System in its marketing and advertising materials. *Id.* at *15. The complaint did not, however, actually identify which particular misrepresentations were made by BMW in which particular advertisement, "or any other facts that would otherwise allow the Court to draw the reasonable inference that Plaintiff was personally subjected to BMW's alleged unlawful conduct in this regard." *Id.* Similarly, the defendant in *Crozier v. Johnson & Johnson Consumer Cos.*, 901 F. Supp. 2d 494 (D.N.J. 2012), was alleged to have misled consumers into believing that its Neosporin sprays contained antibiotic ingredients when they actually did not. *See id.* at 497. But the plaintiffs there did not even allege the "gravamen" of the their claims: that they "bought the spray specifically because its advertising…[led] them to believe that the product contained antibiotics." *Id.* at 506. In sum, the complaints in those cases did not contain basic allegations about how the defendant's misconduct caused any harm to the plaintiffs. In sharp contrast to these cases, Plaintiffs have clearly done so here. *See, e.g.,* FAC ¶¶ 7-12.

NIBCO's contention that Monica has not pled an ascertainable loss is also unpersuasive. *See* Db18. The FAC clearly alleges that Monica has, on three occasions, incurred out of pocket damages as a result of NIBCO's defective products (*see* FAC, ¶¶ 40-41) and that, had NIBCO not concealed these material facts, he never would have had these products installed in his home. FAC, ¶ 183. This is a sufficient ascertainable loss under the NJCFA. *See Dicuio v. Brother Int'l Corp.*, 2012 U.S. Dist. LEXIS 112047, at *25 (D.N.J. Aug. 9, 2012); *Hammer v. Vital Pharms., Inc.*, 2012 U.S. Dist. LEXIS 40632, at *22-24 (D.N.J. Mar. 26, 2012). NIBCO's

20

related argument that Monica has not demonstrated an ascertainable loss because he does not "make any attempt" to quantify his damages is similarly unavailing.[14]

Finally, NIBCO contends that Monica's NJCFA claim is nothing more than a dressed up breach of warranty claim. *See* Db18-19. This argument misstates Monica's claim. As shown above, Monica's NJCFA claim is based on NIBCO's affirmative misstatements and knowing omissions regarding its defective PEX Products. These are sufficient "substantial aggravating circumstances" to be actionable under the NJCFA. *See Alin v. Am. Honda Motor Co.*, 2010 U.S. Dist. LEXIS 32584, at *20-24 (D.N.J. Mar. 31, 2010) (rejecting similar argument where plaintiff alleged that the defendant "affirmatively acted in concealing a flaw in its vehicles;" "knew or should have known of the various defects;" and "intentionally failed to disclose the defects to plaintiff."). The NJCFA claim should be sustained.

## 2.   The Pepernos Have Stated a Claim Under Pennsylvania's UTPCPL

The Pepernos have properly pled their UTPCPL claim. First, the Pepernos have alleged at length that NIBCO has engaged in both unfair methods of competition and unfair or deceptive acts or practices. Second, reliance has been adequately alleged and is also presumed based on NIBCO's acts and representations. As such, the Pepernos' UTPCPL claim should be sustained.

### a.   The FAC Adequately Alleges NIBCO Engaged In Conduct Considered Actionable Under the UTPCPL.

Contrary to NIBCO's arguments, Db20, the FAC satisfies both Rules 8 and 9(b). The FAC is replete with allegations regarding the specific defects of each NIBCO PEX Product purchased by the Pepernos. FAC, ¶¶ 113-116 (describing oxidative failure and/or creep rupture

---

[14] *See Talalai v. Cooper Tire & Rubber Co.*, 823 A.2d 888 (Law Div. 2001) ("[O]ne has suffered an ascertainable loss under the New Jersey Consumer Fraud Act where that loss is measurable— even though the precise amount is not known."); *Harnish v. Widener Univ. Sch. of Law*, 2013 U.S. Dist. LEXIS 64104, at *8 (D.N.J. May 3, 2013) (citing authority that recognizes "New Jersey's broad standard for ascertainable loss").

susceptibility of the PEX Tubing due to insufficient stabilization and/or improper PEX cross-

linking); 117-136 (describing corrosion and dezincification of PEX Fittings and the resultant

PEX Clamp failure due to chloride induced stress corrosion cracking caused by the PEX Fittings

failure). Plaintiffs also allege that NIBCO knew or should have known of the defective nature of

both the PEX Tubing and the PEX Fittings and Clamps, and that it failed to disclose that its PEX

Products were susceptible to premature failure. *Id*., ¶¶ 129, 178-181, 186. These allegations

were made after expert consultation, and include actual photos of the defective components.

The specific facts constituting the scope of NIBCO's knowledge, and the resulting

fraudulent conduct prohibited by the UTPCPL, are available to Plaintiffs only through discovery:

> Courts must be sensitive to the fact that application of Rule 9(b) prior to discovery
> may permit sophisticated defrauders to successfully conceal the details of their
> fraud . . . Particularly in cases of corporate fraud, plaintiffs cannot be expected to
> have personal knowledge of the details of corporate internal affairs . . . Thus,
> courts have relaxed the rule when factual information is peculiarly within the
> defendant's knowledge or control.

*Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (internal quotation marks

and citations omitted); *see also DiMare v. MetLife Ins. Co.*, 369 Fed. App'x 324, 330 (3d Cir.

2010). Such a situation exists here.

### b. The FAC Alleges Justifiable Reliance.

The Pepernos have also alleged justifiable reliance on NIBCO's representations. NIBCO

not only represented it complied with various industry standards, such as NSF/ANSI 61, ASTM

F1807, and ASTM F877 (FAC, ¶ 114), but also represented that its PEX Tubing exceeded

industry standards (*id*., ¶ 112).

The Pepernos allege that NIBCO's material misrepresentations regarding the PEX

Products deceived them regarding the true performance and characteristics of the PEX Products.

*Id*., ¶ 187. They further allege that had NIBCO disclosed the true performance and

22

characteristics of its PEX Products, they would not have purchased and installed the PEX

Products in their home.  *Id.*, ¶ 189.  Defendant had a duty to disclose the true performance and

characteristics of its PEX Products.  As such, the Pepernos' UTPCPL claim should be upheld.[15]

### 3.      The Texas Plaintiffs Validly Allege Claims Under Texas's DTPA

The Medders and McMahon have adequately alleged facts which entitle them to relief

under the Texas Deceptive Trade Practices Act ("DTPA").  "The DTPA grants consumers a

cause of action for false, misleading, or deceptive acts or practices." *Amstadt v. U.S. Brass*

*Corp.,* 919 S.W.2d 644, 649 (Tex.1996); *see* Tex. Bus. & Com. Code Ann. § 17.50(a); *see also*

*id.* §§ 17.45(5), 17.46(b).  The elements of a DTPA claim are: (1) the plaintiff was a consumer;

(2) the defendant either engaged in false, misleading, or deceptive acts (i.e., violated a specific

laundry-list provision of the DTPA) or engaged in an unconscionable action or course of action;

and (3) the DTPA laundry-list violation or unconscionable action was a producing cause of the

plaintiff's injury.  *Amstadt,* 919 S.W.2d at 649; *see Doe v. Boys Clubs of Greater Dallas, Inc.,*

907 S.W.2d 472, 478 (Tex. 1995).  Courts must liberally construe the DTPA to promote its

underlying goals, which include protecting consumers against false, misleading, and deceptive

business practices and unconscionable actions.  *See* Tex. Bus. & Com. Code Ann. § 17.44(a);

*Latham v. Castillo,* 972 S.W.2d 66, 68 (Tex. 1998).

A party need not prove intent to make a misrepresentation claim under §§ 17.46(b)(5) or

17.46(b)(7); rather, the act of making the false representation is itself actionable.  *Smith v.*

*Baldwin,* 611 S.W.2d 611, 616–17 (Tex. 1980); *Barnett v. Coppell N. Tex. Court, Ltd.,* 123

---

[15] If the Court disagrees and finds that the Pepernos have not adequately alleged reliance under
the UTPCPL, the claim should still not be dismissed as "[t]he right to rely upon a representation
is generally held to be a question of fact" and "the issue of justifiable reliance cannot be resolved
without considering the relationship of the parties involved and the nature of the transaction."
*Drelles v. Mfrs. Life Ins. Co.*, 881 A.2d, 822, 841 (Pa. Super. Ct. 2005).

S.W.3d 804, 822 (Tex. App. 2003).  When a seller makes an affirmative representation, he or she has a duty to know whether the statement is true.  *First Title Co. of Waco v. Garrett,* 860 S.W.2d 74, 76 (Tex. 1993).  A seller is liable under the DTPA for affirmative misrepresentations, notwithstanding the lack of notice or falsity.  .  *Miller v. Bynum,* 797 S.W.2d 51, 55 (Tex. App. 1990), *aff'd,* 836 S.W.2d 160 (Tex. 1992).

NIBCO apparently concedes that the Texas Plaintiffs are consumers under the DTPA.  With respect to the second element of a DTPA claim, the Medders and McMahon specifically identify two separate false, misleading, and deceptive business practices on the part of NIBCO.  Plaintiffs have asserted a violation of § 17.46(b)(5) of the DTPA, which defines a deceptive trade practice as "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have."  Tex. Bus. & Com. Code § 17.46(b)(5).  Likewise, Plaintiffs allege a violation of § 1746(7), which prohibits representing "that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another…"  Tex. Bus. & Com. Code § 17.46(b)(7).

The Medders and McMahon allege ample factual detail to support their misrepresentation claims.  They identify specific misrepresentations of the characteristics and superiority of NIBCO's PEX Products on its website, in two separate NIBCO PEX catalogs, and in NIBCO's product warranty.  FAC, ¶¶ 110, 112, 114.  Further, Plaintiffs allege that NIBCO made these misstatements when it knew, or should have known, that its PEX Products were failing as a result of premature oxidative failure and creep rupture, dezincification and chloride-induced stress corrosion cracking.  *Id.* at ¶¶ 2-4, 11, 113, 126-128.  Finally, each Plaintiff alleges that NIBCO's false, misleading and deceptive trade practice caused their injuries and that they would not have purchased NIBCO's products absent the deceptive conduct.   *Id.* at ¶¶ 65, 88-89, 198.

24

Defendant's characterization of its misstatements as "puffing" is incorrect.  Texas law regarding puffing looks at "the specificity of the statement," a comparison of "the knowledge of the buyer and the seller," and whether a representation relates to a "future event or condition," since "[r]epresentations of future conditions or performances of a good or service are actionable under the DTPA." *Hedley Feedlot v. Weatherly Trust*, 855 S.W.2d 826, 839 (Tex. App. 1993). NIBCO's specific statements about its supposedly superior manufacturing methods, the disparity between NIBCO's knowledge and that of the Texas Plaintiffs, and the fact that NIBCO's representations related to the future performance of the PEX Products, defeats any puffing claim. NIBCO's motion to dismiss Count VII should be denied.

### 4.    Plaintiff Sminkey Seeks Leave to Replead His Oklahoma Law Claim

Plaintiffs improperly cited to Oklahoma's Deceptive Trade Practices Act, Okla. Stat. Tit. 78 Sec. 51-55, *et seq*., rather than Oklahoma's Consumer Protection Act ("OCPA"), Okla. Stat. Tit. 15, Sec. 751, *et seq*.  The OCPA applies to "consumer transactions," which includes purposes that are "personal, household or business oriented."  OKLA. STAT. ANN. tit. 15, § 752. A seller is liable under the OCPA for false representations about the characteristics or benefits of the subject of a consumer transaction, or for committing an "unfair or deceptive trade practice." OKLA. STAT. ANN. tit. 15, § 753.  Finally, the OCPA gives aggrieved consumers a private cause of action.  OKLA. STAT. ANN. tit. 15, § 761.1.  Thus, leave to amend to plead an OCPA claim should be granted.  *Lorenz v. CSX Corp.* 1 F.3d 1406, 1413-14 (3d Cir. 1993) (right to amend should be freely given absent substantial prejudice to opposing party).

### E.  Plaintiffs' Negligence Claims Should be Sustained.

NIBCO contends that the Pepernos' negligence claims should be dismissed pursuant to the gist of the action doctrine.  Db24.  But "[c]ourts are cautioned against deciding whether the

'gist of the action' is in contract or tort at the motion to dismiss stage." *Asplundh Tree Expert Co. v. Emeritis LLC*, 2006 U.S. Dist. LEXIS 45581, at *13 (N.D. Ga. Jun. 27, 2006) (citing *Caudill Seed & Warehouse Co. v. Prophet 21, Inc.*, 123 F. Supp. 2d 826, 834 (E.D. Pa. 2000)).

Moreover, the gist of the action doctrine is not as broad as NIBCO claims. Under Pennsylvania law, the "simple existence of a contractual relationship between two parties does not preclude one party from bringing a tort claim against the other." *Synthes, Inc. v. Emerge Med., Inc.*, 2014 U.S. Dist. LEXIS 78218, at *278 (E.D. Pa. Jun. 5, 2014) (citations omitted). It simply forecloses the ability to pursue a tort action for a mere breach of contract, "'without any separate or independent event giving rise to the tort.'"[16] *Id.* (quoting *Smith v. Lincoln Benefit Life Co.*, 2009 U.S. Dist. LEXIS 24941, at *20 (W.D. Pa. Mar. 23, 2009)). Courts have found that where the tort is based on fraud on the inducement, as opposed to a tort committed during performance of the contract, the doctrine does not apply to bar the claim.[17] *Id.* at *279-80. That describes the situation here. As discussed above, NIBCO's misconduct went beyond a mere breach of contract: it made fraudulent statements and material omissions designed to induce sales of its defective PEX products.[18] *See* FAC ¶¶ 8, 112. These affirmative statements were made outside of the four corners of NIBCO's Limited Warranty, attached as Exhibit 1 to the FAC.[19]

---

[16] The cases relied on by NIBCO recognize this concept as well. *See TBI Unlimited, LLC v. Clear Cut Lawn Decisions*, *LLC*, 2014 U.S. Dist. LEXIS 107756, at *15 (D.N.J. Aug. 5, 2014) ("…where a plaintiff and defendant are parties to a contractual relationship, a tort remedy will not arise from [the parties'] contractual relationship <u>unless the breaching party owes an independent duty imposed by law</u>.") (emphasis supplied; internal citations omitted).

[17] Fraud in the inducement is also a recognized exception to the economic loss rule. *See G&F Graphic Servs. v. Graphic Innovators, Inc.*, 2014 U.S. Dist. LEXIS 63463, at *17 n.8 (D.N.J. May 8, 2014).

[18] The other applicable states that follow the gist of the action doctrine and/or the economic loss rule recognize a similar fraud in the inducement exception. *Formosa Plastics Corp. v. Presidio Eng'Rs & Contrs.*, 960 S.W.2d 41, 46-47 (Tex. 1998); *Home Depot U.S.A., Inc. v. Wabash Nat'l*

26

NIBCO's *Twombly* argument also fails.  Negligence claims are subject to the notice pleading standard of Rule 8.  *Rawson Food Servs. v. TD Bank, N.A*., 2014 U.S. Dist. LEXIS 25906, at \*12 (D.N.J. Feb. 28, 2014).  Each of the relevant states has the same elements for a negligence claim: "(1) duty of care, (2) breach of that duty, (3) proximate cause, and (4) damages suffered by the plaintiff."  *Houck v. Ferrari,* 2014 U.S. Dist. LEXIS 150347, at \*23 (D.N.J. Oct. 22, 2014) (citation omitted).  The FAC, ¶¶ 169-172, sufficiently pleads each of these elements.  *See also Grubb v. Green Tree Servicing, LLC*, 2014 U.S. Dist. LEXIS 100886, at \*8-9 (D.N.J. July 24, 2014) ("a 'claimant does not have to 'set out in detail the facts upon which he bases his claim.' ... The pleading standard 'is not akin to a 'probability requirement,'' ... to survive a motion to dismiss, a complaint merely has to state a 'plausible claim for relief'") (quoting *Covington v. International Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013)).

NIBCO's demand, unsupported by any authority, for dismissal of the negligence claims because Plaintiffs offer no facts about how NIBCO "designed, manufactured, or tested" the products, and do not identify "objectively better alternative means" for a different product, Db26, fails.  No such standards apply at the pleading stage.  *See Hofts v. Howmedica Osteonics Corp*., 597 F. Supp. 2d 830, 841 (S.D. Ind. 2009) ("It is not reasonable to expect a plaintiff to be able to specify in his complaint exactly how a product defect occurred").  "There is no *per se* rule that

---

*Corp*., 724 S.E.2d 53, 59 (Ga. Ct. App. 2012); ("misrepresentation exception" under Georgia law); *Quicksilver Res., Inc. v. Eagle Drilling, L.L.C.*, 2009 U.S. Dist. LEXIS 39176, at \*40 (S.D. Tex. May 8, 2009) (noting that Oklahoma's economic loss rule applies only to "the full range of unintentional torts"); *Kirtley v. Wadekar*, 2006 U.S. Dist. LEXIS 60309, at \*13 (D.N.J. Aug. 24, 2006); *cf. Gardner v. MGC Mortg., Inc.*, 2013 U.S. Dist. LEXIS 29820 at \*7-8 (M.D. Ala. Mar. 4, 2013) (dismissing negligence and fraud claims when no fraud plead); *Carbon Processing & Reclamation, LLC v. Valero Mktg. & Supply Co.*, 694 F. Supp. 2d 888, 908 (W.D. Tenn. 2010)).

[19] Plaintiffs do not concede, however, that these statements themselves did not create an express warranty.  *See Avram v. Samsung Elecs. Am., Inc*., 2013 U.S. Dist. LEXIS 97341, at \*24-28 (D.N.J. Jul. 11, 2013) (Energy Star logo on a refrigerator label created an express warranty regarding its energy efficiency).

Plaintiffs must, under all circumstances, provide a reasonable alternative design."  *Schraeder v. Demilec (USA) LLC*, 2013 U.S. Dist. LEXIS 151995, at *7 (D.N.J. Oct. 22, 2013).

NIBCO also suggests that Plaintiffs cannot assert a negligence claim with respect to the PEX Clamps because "no Plaintiff claims to have experienced a failure of their PEX Clamps." Db26.  This District has rejected largely identical arguments, finding that a party who bought one type of defective product from a defendant has standing to assert claims related to other products that are similarly defective.  *In re L'Oreal Wrinkle Cream Mktg. & Sales Practices Litig.*, 2013 U.S. Dist. LEXIS 176969, at *18 (D.N.J. Dec. 9, 2013) ("Since Plaintiffs are alleging that the advertising campaign for each line repeats the same false or misleading statements, the basis of Plaintiffs claims is the same with respect to all 30 products.").[20]  Plaintiffs allege that all types of PEX Products are defective.  FAC ¶¶ 2-6, 9.  The negligence claims should be sustained.

### F.  Plaintiffs' Unjust Enrichment Claims Should be Sustained

NIBCO's assertion that Plaintiffs McCoy, McMahon, the Medders, Boyd, and the Coles cannot allege unjust enrichment because they also have warranty claims is in error.  Courts in each of these Plaintiffs' home states hold that unjust enrichment may be pled in the alternative to contract and/or warranty claims, though plaintiffs can recover on only one of those theories.  *See, e.g., Clark v Aaron's, Inc.*, 914 F. Supp. 2d 1301, 1309 (N.D. Ga. 2012); *Fields v. JP Morgan Chase Bank*, 2014 U.S. Dist. LEXIS 153837, at *9-10 (N.D. Tex. Oct. 29, 2014); *Branch Banking & Trust Co. v. Howard*, 2013 U.S. Dist. LEXIS 32988, at *24 (S.D. Ala. Mar. 8, 2013)

---

[20] *See also Marcus v. BMW of North America, LLC*, 687 F.3d 583, 599 (3d Cir. 2012) (when a class includes purchasers of a variety of different products, a named plaintiff that purchases only one type of product can bring claims on behalf of purchasers of the other products if the claims apply uniformly across the different product types); *Neale v. Volvo Cars of N. Am., LLC*, 2013 U.S. Dist. LEXIS 43235, at *26-27 (D.N.J. Mar. 26, 2013) (rejecting argument that "slight variations in some vehicle models" precluded certification of a class including all of them, where "all of the proposed class vehicles have sunroof drainage systems with a uniform design.").

(granting summary judgment on unjust enrichment count but noting that it "may have been appropriately pleaded at the inception of this action pursuant to notions of pleading in the alternative"); *Town of Smyrna v. Mun. Gas Auth.*, 2012 U.S. Dist. LEXIS 53614, at *38-39 (M.D. Tenn. Apr. 17, 2012).  Plaintiffs challenge the limited remedy provisions of NIBCO's PEX Warranty as "unconscionable and unenforceable."  FAC ¶¶ 116, 125, 214.  Thus, it is unclear that the warranty will govern, and dismissal of the unjust enrichment claims is improper.

Nor is the fact that Plaintiffs Boyd, Monica, and the Pepernos did not buy PEX Products directly from NIBCO fatal.  Having alleged that they had NIBCO PEX Products installed in their homes and that, once those products failed, they contacted NIBCO and invoked the express warranty to no avail, FAC, ¶¶ 39, 53, 100, these Plaintiffs have shown both a direct relationship and course of dealing between the parties and NIBCO's unjust retention of benefits.  That is all New Jersey law requires.  *See Union Trust Co. of Md. v. Wakefern Food Corp.*, 1989 U.S. Dist. LEXIS 11754, at *62 (D.N.J. 1989) ("unjust enrichment requires a relationship or course of dealings between parties which, if left undisturbed by the intervention of the law, permits one party to obtain 'unjust enrichment or unconscionable advantage' over the other").

Under Pennsylvania law, a plaintiff need not buy directly from a defendant to confer benefits on that defendant.  *Powers v. Lycoming Engines*, 2007 U.S. Dist. LEXIS 67636, at *10 (E.D. Pa. Sept. 13, 2007) (allowing unjust enrichment claim by a purchaser of an airplane part who did not buy directly from the manufacturer); *see Global Ground Support, LLC v. Glazer Enters.*, 581 F. Supp. 2d 669, 676 (E.D. Pa. 2008) (unjust enrichment requires that plaintiff confer benefits on defendant but "does not require that plaintiff 'directly confer' those benefits").

As to Alabama, NIBCO's cited case is distinguishable because "[n]o direct line ha[d] been established" between money paid by the plaintiffs and the benefit received by allegedly

445239.1

enriched parties. *Danny Lynn Elec. & Plumbing, LLC v. Veolia Es Solid Waste Southeast, Inc.*, 2011 U.S. Dist. LEXIS 78557, at *16-17 (M.D. Ala. July 19, 2011). Here, NIBCO's unjust enrichment is direct and demonstrable, consisting of the price paid for the PEX Products installed in Plaintiffs' homes. Accordingly, Plaintiffs' unjust enrichment claims should stand.

### G.  **Plaintiffs' Claims for Declaratory and Injunctive Relief Should be Sustained**

A declaration that NIBCO's limitations on its limited warranties are unenforceable, FAC, ¶214(c), is properly sought here. "Inasmuch as a declaration could aid Plaintiff[s] in the pursuit of injunctive relief, it is not duplicative." *Consumer Prot. Corp. v. Neo-Tech News*, 2009 WL 2132694, *3 (D. Ariz. July 16, 2009). Declaratory relief is appropriate even though Plaintiffs also seek damages and injunctive relief. *See Davis v. Romney*, 490 F.2d 1360, 1370 (3d Cir. 1974).

The FAC, ¶241(d), (e), seeks to compel NIBCO to re-assess previously denied warranty claims and to implement an inspection program designed to lead to replacement of faulty PEX Products. Counts I-IX do not specifically provide for such remedies. Count X is not duplicative.

Finally, *Maniscalco* is readily distinguishable. There, the Court found that the only declaratory relief sought that was not duplicative of relief requested elsewhere was not actually pleaded in any Count, but was mentioned only in a summary in the complaint's introduction. 627 F. Supp. 2d at 504-05 & n.9. Here, the re-assessment of previously denied warranty claims and the inspection program are explicitly stated in Count X, ¶214, of the FAC and do not duplicate remedies sought elsewhere in the FAC. Accordingly, Count X should be sustained.

### CONCLUSION

For the reasons set forth above, it is respectfully submitted that Defendant's motion to dismiss the First Amended Complaint should be denied in its entirety.

445239.1

Dated: November 12, 2014      **LITE DEPALMA GREENBERG, LLC**

*/s/ Bruce D. Greenberg*
Bruce D. Greenberg
Two Gateway Center, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
Email: bgreenberg@litedepalma.com

**CHIMICLES & TIKELLIS LLP**
Joseph G. Sauder
Matthew D. Schelkopf
Benjamin F. Johns
Joseph B. Kenney
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
E-mail: JGS@chimicles.com
       MDS@chimicles.com
       BFJ@chimicles.com
       JBK@chimicles.com

**STUTMAN LAW**
Daniel Hogan
Michael J. Hopkins
500 Office Center Drive, 301
Fort Washington, PA 19034
Telephone: (215) 283-1177
Facsimile: (215) 283-1188
Email: HoganD@stutmanlaw.com
       HopkinsM@stutmanlaw.com

***Attorneys for Plaintiffs and Interim Co-Lead
Counsel***

31

445239.1