**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

KIMBERLY COLE, ALAN COLE, JAMES
MONICA, LINDA BOYD, MICHAEL
MCMAHON, RAY SMINKEY, JAMES
MEDDERS, JUDY MEDDERS, ROBERT
PEPERNO, SARAH PEPERNO, and KELLY
MCCOY, on behalf of themselves and all
others similarly situated,

                                      Plaintiffs,

            v.

NIBCO, Inc.

                                   Defendant.

Civ. No. 3:13-cv-07871 (FLW)(TJB)
OPINION

**WOLFSON, United States District Judge:**

Plaintiffs Kimberly Cole, Alan Cole, James Monica ("Monica"), Linda Boyd ("Boyd"),

Michael McMahon ("McMahon"), Ray Sminkey ("Sminkey"), James Medders, Judy Medders,

Robert Peperno, Sarah Peperno, and Kelly McCoy ("McCoy") (collectively, "Plaintiffs"), who

are nine homeowners from seven states, bring this putative class action on behalf of themselves

and a nationwide class, or alternatively, putative New Jersey, Pennsylvania, Alabama, Georgia,

Texas, Oklahoma, and Tennessee state subclasses. Presently before the Court is a partial motion

to dismiss Plaintiffs' Complaint filed by Defendant NIBCO, Inc.'s ("NIBCO" or "Defendant"),

for failure to state a claim.

Plaintiffs' claims stem from the alleged failures of various plumbing system products

manufactured by NIBCO and installed in Plaintiffs' homes. Plaintiffs allege that NIBCO

breached an express warranty (Count I); breached the implied warranty of merchantability

(Count II); breached the implied warranty of fitness for a particular purpose (Count III); was

negligent in the design, testing, and manufacture of its products (Count IV); violated the New

Jersey Consumer Fraud Act, N.J. STAT. ANN. § 56:8–1 *et seq.* ("NJCFA") (Count V); violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 PA. CONS. STAT. ANN § 201–1, *et seq.* ("UTPCPL") (Count VI); violated the Texas Deceptive Trade Practices Act, TEX. BUS. & COM. CODE ANN. § 17.41, *et seq.* ("TDTPA") (Count VII); violated the Oklahoma Deceptive Trade Practices Act, OKLA. STAT. ANN. tit. 78 § 51–55, *et seq.* ("ODTPA"); and was unjustly enriched (Count IX). In Count X, Plaintiffs request declaratory relief and an injunction.

For the foregoing reasons, Defendant's motion is GRANTED IN PART and DENIED IN PART. Counts II, III, and IV are dismissed as asserted by Monica, and Counts I, II, III, and IV are dismissed as asserted by the Coles; both sets of plaintiffs are granted leave to file claims under the NJPLA and the TPLA, respectively. Count I is dismissed without prejudice as asserted by McCoy. Counts I and II are dismissed without prejudice as asserted by McMahon. As asserted by all Plaintiffs, Counts III, IV, VI, VII, and VIII are dismissed without prejudice, and Counts V, IX, and X are dismissed.  Count II as asserted by McCoy, however, may proceed.

## I.    FACTUAL BACKGROUND

The following factual allegations are taken from Plaintiffs' Complaint and are accepted as true for the purposes of this motion to dismiss. *See Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 457 (3d Cir. 2003); *Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). The Court need not recount all facts, and instead recounts only those relevant to the grounds asserted by Defendant in their motion.

This case concerns a putative class action by seven plaintiffs from six states, all of whom plead various causes of action proximately caused by defective plumbing system products manufactured by NIBCO, Inc., an Indiana corporation. FAC ¶¶ 9–13, 104. The three products at issue (collectively, "the PEX Products") are: (1) cross-linked polyethylene plumbing tubes

("PEX Tubing"), (2) the brass fittings that connect PEX tubes together ("PEX Fittings"), (3) and stainless steel clamps ("PEX Clamps") that join the PEX Tubes with the PEX Fittings. *Id.* ¶¶ 1, 104. Plaintiffs allege that the PEX Products all suffer from design and/or manufacturing defects that allow water to escape their homes' plumbing systems and cause damage to both the PEX Products and the homes in which they are installed. *Id.* ¶¶ 9–12. Specifically, Plaintiffs allege that (1) the PEX Tubing "is prone to premature oxidative failure and creep rupture," (2) the PEX Fittings "are prone to dezincification corrosion," and (3) the PEX Clamps "are prone to failure b chloride-induced stress corrosion cracking." *Id.* 2–4.

Plaintiffs allege that "NIBCO manufactures, warrants, advertises, and sells the PEX Products at issue and, further, that NIBCO's sales catalog advertised that, *inter alia*, its PEX tubing was the highest quality PEX tubing available, and that its cross chemical bonding process gave it 'superior characteristics.'" *Id.* ¶¶ 7–8. Plaintiffs further allege that NIBCO warrants that its PEX Tubing will be free from any defects in materials and workmanship ten years from the date of purchase when a licensed professional contractor installs the PEX Tubing. *Id.* ¶ 123. According to Plaintiffs, the warranty period for the PEX Tubing increases to twenty-five years when PEX Fittings and PEX Clamps are used in conjunction with the PEX Tubing. *Id.* at ¶ 121. However, "[c]ontrary to these affirmative statements, the PEX Products suffer from design and/or manufacturing defects." *Id.* ¶ 9. Plaintiffs allege that "NIBCO has systematically breached its warranty by failing to fully or adequately compensate property owners who have been injured as a result of the PEX Product Defects. NIBCO also failed to disclose this material information to Plaintiffs and Class Members." *Id.* ¶ 10. Further, Plaintiffs allege that "[b]efore manufacturing, warranting, advertising and/or selling the PEX Products, NIBCO failed to take appropriate steps to ensure that its products were safe for their intended use. [NIBCO] knew or

3

should have known that the PEX Products were not suitable for use within water-carrying plumbing systems and that the PEX Products suffered from the PEX Product Defects." *Id.* ¶ 11.

Each Plaintiff's alleged injuries are detailed below.

### a. The Coles, Tennessee Plaintiffs

In 2008, a licensed professional contractor installed a residential plumbing system in the new home of Kimberley Cole and Alan Cole (collectively, "the Coles"), Tennessee residents. FAC ¶¶ 14–15, 18. This system utilized all relevant PEX Products. *Id.* at ¶ 17. The Coles claim that failure of PEX Tubing caused several water leaks in their basement between November 2010 and August 2014. *Id.* at ¶ 20–22. Upon discovery of the leaks, the Coles allegedly notified NIBCO of the PEX Tubing's failure, pursuant to the terms of NIBCO's express warranty for the PEX Products. *Id.* at ¶ 24. However, despite notice, Plaintiffs allege that NIBCO failed to honor the warranty by providing replacement products or other compensation. *Id.*

### b. James Monica, New Jersey Plaintiff

In December 2010, a licensed professional contractor installed a residential plumbing system in the new home of James Monica, a New Jersey resident. FAC ¶¶ 28–29, 31. This system utilized all relevant PEX Products. *Id.* at ¶ 30. Monica claims that on three occasions, beginning in November 2012, PEX Fittings used in his home's plumbing system failed, causing "water saturation" on his basement's ceiling and walls and leaks in his first floor plumbing. *Id.* at ¶ 33–38. Upon discovery of the leaks, Monica allegedly notified NIBCO of the failure of the PEX Fittings, pursuant to the terms of NIBCO's express warranty of the PEX Products. *Id.* at ¶ 39. Plaintiffs allege that NIBCO failed to honor this express warranty, because replacement products or other compensation were never provided. *Id.* The FAC alleges that Monica's losses

include not only the damaged PEX Fittings, but other "out-of-pocket loss associated with catastrophic plumbing failures and attempted repairs of such within his home." *Id.* at ¶ 42.

### c. Linda Boyd, Alabama Plaintiff

In June 2008, a licensed professional contractor installed a residential plumbing system in the new home of Linda Boyd, an Alabama resident. FAC ¶¶ 43–45, 47. This system utilized all relevant PEX Products. *Id.* at ¶ 46. Boyd claims that between March 26, 2013 and October 31, 2013, failure of PEX Tubing used in his home's plumbing system caused several water leaks. *Id.* at ¶ 49–51. Upon discovery of the leaks, Boyd allegedly notified NIBCO of the PEX Tubing's failure, pursuant to the terms of NIBCO's express warranty for the PEX Products. *Id.* at ¶ 53. As with the other Plaintiffs, Plaintiffs allege that NIBCO provided no relief to Boyd. *Id.*

### d. Michael McMahon, Texas Plaintiff

Michael McMahon ("McMahon"), a Texas resident, moved into a home on January 1, 2013, that was constructed in 2007. FAC at ¶¶ 57–58, 61. When the home was constructed, licensed professional contractors installed a residential plumbing system that used all relevant PEX Products. *Id.* at ¶ 59. Since 2013, McMahon has discovered six leaks in his home, all allegedly resulting from defects in PEX Tubing. *Id.* at ¶¶ 62–63. McMahon claims to have suffered "significant damages due to the PEX Product Defects," including water saturation, flooding, and damage to his walls. *Id.* ¶ 64.

### e. Ray Sminkey, Oklahoma Plaintiff

In spring 2008, a licensed professional contractor installed a residential plumbing system in the new home of Ray Sminkey ("Sminkey"), an Oklahoma resident. FAC ¶¶ 66–68, 70. This system utilized, in relevant part, only PEX Tubing. *Id.* at ¶ 69. Sminkey claims that beginning on November 5, 2013, the PEX Tubing used in his home's plumbing system began to leak and had

to be replaced by a plumber. *Id.* at ¶ 72–74. Sminkey claims to have suffered "significant damages on three separate occasions due to PEX Product Defects." *Id.* ¶ 75.

### f. The Medders, Texas Plaintiffs

In 2011, a licensed professional contractor installed a residential plumbing system in the new home of James and Judy Medders (collectively, "the Medders"), Texas residents. FAC ¶¶ 77, 79, 81. This system utilized all relevant PEX Products. *Id.* at ¶ 80. The Medders claim that the failures of various PEX Fittings caused leaks in various locations in their home between December 2013 and June 2014. *Id.* at ¶ 84–85. Upon discovery of the leaks, the Medders notified NIBCO of the problem, but allege that NIBCO failed to act under their express warranty and provide replacement PEX Fittings. *Id.* at ¶ 86.

### g. The Pepernos, Pennsylvania Plaintiffs

In 2007, a licensed professional contractor installed a residential plumbing system in the new home of Robert and Sara Peperno (collectively, "the Pepernos"), Pennsylvania residents. FAC ¶¶ 90, 92, 94. This system utilized all relevant PEX Products. *Id.* at ¶ 93. The Pepernos claim that failure of the PEX Tubing caused three leaks in their basement between December 15, 2013 and June 7, 2014. *Id.* at ¶ 96–98. Upon discovery of the leaks, the Pepernos allegedly notified NIBCO of the failure of the PEX Tubing. However, NIBCO failed to act under their express warranty and provide replacement products or other compensation. *Id.* ¶ 100.

### Kelly McCoy, Georgia Plaintiff

In 2010, a licensed professional contractor installed a residential plumbing system in the new home of Kelly McCoy ("McCoy"), a Georgia resident. FAC ¶¶ 18:103–104, 19:106.[1] This

---

[1] The Court notes that the paragraph numbering convention used by Plaintiff in the FAC is erroneous on pages 18–20. *See e.g.,* FAC at 18 (duplicate paragraph 103); *id.* at 19 (shift in

system utilized all relevant PEX Products. *Id.* at ¶ 18:105. McCoy claims that the PEX Tubing used in his plumbing system failed repeatedly and caused leaks, which necessitated six separate repairs. *Id.* at ¶ 107. As a result of the leaks, the broken PEX Tubing had to be released and a bathroom wall needed to be repaired.

Plaintiffs filed their Complaint in the District Court of New Jersey on December 27, 2013 and filed their First Amended Complaint ("FAC") on October 6, 2014. Thereafter, Defendant filed the instant partial motion to dismiss. Defendant contends that nearly all of the causes of action asserted in the FAC fail to state a claim.

## II.   STANDARD OF REVIEW

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the FAC in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the FAC, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified the Rule 12(b)(6) standard: the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 555. As the Third Circuit has stated, "[t]he Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: 'stating ... [a] claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 127 U.S. at

numbering from 109 to 104). For clarity when citing to this portion of the record, a page number is provided along with the paragraph number.

555); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citations omitted)).

In affirming that *Twombly*'s standards apply to all motions to dismiss, the Supreme Court explained several principles. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. U PMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). However, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings . . . [although a] limited exception exists for documents that are integral to or explicitly relied upon in the FAC." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 n.6 (3d Cir. 2010) *cert. denied*, 132 S.Ct. 98 (2011) (citation and internal quotation marks omitted).

The Third Circuit has reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." *Id.* at 98. That said, the Rule 8 pleading standard is applied "with the same level of rigor in all civil actions." *Id.* (quoting *Iqbal*, 556 U.S. at 684).

## III.  DISCUSSION

At the outset, the Court notes that Plaintiffs indicate under which state's law they have brought suit in only four of their asserted ten Counts: Counts V, VI, VII, and VII, alleging respective violations of the consumer fraud statutes of New Jersey, Pennsylvania, Texas, and Oklahoma. By contrast, Plaintiffs' asserted claims for breach of express warranty (Count I), breach of implied warranties of fitness for a particular purpose and merchantability (Counts II and III), negligence (Count IV), and unjust enrichment (Count IX) are devoid of reference to any particular state's laws. *See* FAC ¶¶ 144–73, 208–12. However, Defendant suggests, and Plaintiffs do not dispute, that the state law of each Plaintiff's home state should apply to Plaintiffs' claims. Def.'s Br. at 9 n.5; Pls.' Opp. Br. at 13 n.7. Therefore, the Court will follow the lead of the parties and will not engage in a choice of law analysis.[2] *See, e.g.*, *UBI Telecom Inc. v. KDDI Am., Inc.*, No. CIV.A. 13-1643 KSH, 2014 WL 2965705, at *9 (D.N.J. June 30, 2014) ("When the parties agree upon which state's law applies . . . the Court need not conduct [a] choice-of-law inquiry."); *see also MacDonald v. Unisys Corp.*, 951 F.Supp.2d 729, 737 & n. 5 (E.D. Pa. 2013) (Brody, J.); *Sager v. Hoffman–La Roche, Inc.*, 2012 WL 3166630, at *14 n.9 (N.J. Sup. Ct., App. Div. Aug. 7, 2012) (per curiam).

> a. *Subsumption of Tort, Warranty, and Consumer Fraud Claims for New Jersey and Tennessee Plaintiffs*

---

[2] The Court notes that, although Defendant does not raise the issue, the FAC's failure to specify which state's laws apply to their common law claims may not meet the Rule 8 pleading standard. *See, e.g.*, *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 167 (E.D. Pa. 2009) ("The plaintiffs fail to link their claim to the law of any particular state. As a result of this deficiency, the plaintiffs fail to state a cause of action . . . ."); *see also Nimley v. PTT Phone Cards Inc.*, No. CIV.A. 13-2216, 2014 WL 1464311, at *6 n.7 (E.D. Pa. Apr. 15, 2014). However, out of an abundance of caution, the Court will proceed by analyzing Defendant's arguments on the merits of the FAC, particularly because the parties appear to be in agreement that each Plaintiff's home state laws apply to each common law cause of action.

Defendant argues that the tort, implied warranty, and consumer fraud claims asserted by Monica and the tort and warranty claims asserted by the Coles "unquestionably" constitute " product[s] liability action[s]," and, thus, are subsumed by the New Jersey Products Liability Act ("NJPLA") and the Tennessee Products Liability Act ("TPLA"), respectively. Def.'s Br. at 9–10.

Plaintiffs counter that the NJPLA's plain language is insufficient to determine if the NJPLA subsumes Monica's claim and that the TPLA does not subsume claims for damages arising from products that are "merely ineffectual," as opposed to dangerous. Pls.' Opp. Br. at 17 (citing *Lincoln Gen. Ins. Co. v. Detroit Deisel Corp.*, 293 S.W. 3d 487 (Tenn. 2009)).

### i.   Monica (New Jersey)

The Court will begin by examining whether the NJPLA subsumes Monica's claims. The NJPLA was enacted "to limit the expansion of products-liability law" and "to limit the liability of manufacturers so as to balance[] the interests of the public and the individual with a view towards economic reality." *Zaza v. Marquess & Nell, Inc.*, 144 N.J. 34, 47–48 (1996) (quotations and citations omitted). The NJPLA, therefore, "established the sole method to prosecute a product liability action[,]" and after its enactment, "only a single product liability action remains." *Tirrell v. Navistar Int'l, Inc.*, 248 N.J. Super. 390, 398–99, (N.J. Super. Ct. App. Div. 1991); *see also Repola v. Morbark Industries, Inc.*, 934 F.2d 483, 492 (3d Cir. 1991) (explaining that the NJPLA "effectively creates an exclusive statutory cause of action for claims falling within its purview"). The NJPLA provides that "products liability actions" are "any claim[s] or action[s] brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim." N.J. STAT. ANN. § 2A:58C-1(b)(3); *see U-Line Corp.*, No. 13-3203, 2013 WL 5503672, at *9. Therefore, if any of Plaintiff's claims are subsumed under the NJPLA, they

will be dismissed.[3] *See, e.g.*, *McDonough v. Bayer Healthcare, LLC*, No. CIV. 10-442, 2011 WL 2119107, at *3 (D.N.J. May 26, 2011).

Indeed, courts have dismissed breach of implied warranty, NJCFA consumer fraud, unjust enrichment, and negligence claims—the claims asserted by Monica in Counts II, III, IV, V, and IX the FAC—based on NJPLA subsumption. *See Certain Underwriters at Lloyd's, London v. U-Line Corp.*, No. 13-3203, 2013 WL 5503672, at *4-5 (D.N.J. Oct. 1, 2013) (dismissing negligence claims and implied warranty claims); *Smith v. Merial Ltd.*, No. 10-439, 2011 WL 2119100, at *5 (D.N.J. May 26, 2011) (dismissing NJCFA consumer fraud and unjust enrichment claims).

However, the NJPLA's reach is limited in one significant respect: the statute excludes any causes of action arising out of a harm solely to the defective product. N.J. STAT. ANN. § 2A:58C-1b(2); *see also Estate of Knoster v. Ford Motor Co.*, No. 01-3168, 2008 U.S. Dist. LEXIS 103342, at *14 n.4 (D.N.J. Dec. 22, 2008) (holding that "economic damages for destruction of the product are not recoverable under the NJPLA"). In order to ascertain whether the NJPLA subsumes a claim in which damage as a result of a defective product is alleged, the Court must determine the type of harm the Plaintiff is alleging: whether the harm includes property damage caused by the PEX Product or whether the harm was solely to the defective PEX Product itself. [4] *Sinclair v. Merck & Co., Inc.*, 195 N.J. 51, 66, 948 A.2d 587 (N.J. 2008)

---

[3] Claims for breach of express warranty are specifically not subsumed by the NJPLA. N.J. STAT. ANN. 2A:58C–1(b)(3) (defining "products liability action" as "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty.").

[4] I note that Plaintiffs rely on a case in this district which found that the NJPLA does not subsume claims for damages consequentially caused by a defective product. *See Kuzian v. Electrolux Home Prods.,* 937 F.Supp.2d 599, 607–08 (D.N.J. 2013). The facts of this case are very similar to the instant case: both concern an allegedly defective product that malfunctioned,

("The language of the PLA represents a clear legislative intent that . . . the PLA is paramount when the underlying claim is one for harm caused by a product."); *see also Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 703 (D.N.J. 2011) ("[R]egardless of how a claim is pleaded, where the core issue is the harmfulness of the product's chemicals, the claim must be pleaded as an NJPLA claim.").

Here, it is clear from Plaintiffs' factual allegations that Monica's claims all sound in products liability and, moreover, that the harm alleged is not solely harm to the PEX Products themselves. Monica alleges that the PEX Fittings used in the construction of his home suffered from inherent design flaws. When the PEX Fittings failed, severe "water saturation" resulted. FAC at ¶ 33. The FAC specifically indicates that Monica's losses included both the destroyed PEX Fittings, as well as "loss associated with [the] catastrophic plumbing failure[]." *Id.* at ¶ 41. The FAC makes clear, then, that the physical replacement of the broken PEX Fittings or Monica's the inability to use the PEX Fittings is not the thrust of Monica's injury. Instead, the injury primarily consists of the "catastrophic plumbing failure" that caused damage and water

---

broke, and caused water damage. *Id.* at 604–05. The plaintiff in *Kuzian* asserted various breaches of warranty and fraud claims, and those claims were determined to not have been subsumed by the NJPLA. *Id.* at 607–08. Plaintiffs analogize the instant case to the *Kuizan* case and argue that the NJPLA should similarly decline to subsume Plaintiffs' claims. Plaintiffs assert that, like the plaintiff in *Kuzian*, they have alleged harm to the product itself and consequential damage to Plaintiffs' property.

However, the Court does not find this reasoning persuasive. *Kuzian* contradicts other cases in this district that have discussed this issue. *Montich v. Miele USA, Inc.*, 849 F.Supp.2d 439, 456–57 (D.N.J. 2012) (a complaint alleging harm caused by a defective product would be subsumed by the NJPLA); *U-Line Corp.*, No. 13-3203, 2013 WL 5503672, at *4-5 (rejecting *Kuzian*). Further, tellingly, the *Kuzian* Court granted reconsideration of its decision on this very issue. *Kuzian v. Electrolux Home Prods.*, No. 12-3341 (NLH), 2013 WL 6865083 at *1 (D.N.J. Dec. 30, 2013) ("finding after review of the submissions that it should re-examine the issue of whether plaintiffs' claims concerning the damages caused by the allegedly faulty ice makers to property other than the product itself, e.g., food, floors and walls are consequential, economic losses, but rather sound in tort and are subsumed by the NJPLA").

saturation throughout his home. *Id.* at ¶¶ 33, 41. As Monica's true harm is not to the product itself, his claims fall within the ambit of the NJPLA. *See Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 703 (D.N.J. 2011). For this reason, Monica's tort and implied warranty claims, in Counts II, III, and IV, are subsumed by the NJPLA. Monica's claim under the New Jersey Consumer Fraud Act, ("NJCFA"), in Count V, is also subsumed by the NJPLA.[5] Accordingly, Counts II, III, IV, and V as asserted by Monica, are dismissed. However, Monica is given leave to re-plead his claims as a single claim under the NJPLA.

### ii. The Coles (Tennessee)

Next, the Court examines whether the Coles' claims are subsumed by the TPLA. As the Sixth Circuit has noted,

> [T]he TPLA governs products liability actions in Tennessee and defines "product liability actions" as "all actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packing, or labeling of any product." The TPLA also encompasses several different theories of products liability: "strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation, concealment, or nondisclosure, whether negligent or innocent; or under any other substantive legal theory in tort or contract whatsoever.

*Strayhorn v. Wyeth Pharm., Inc.*, 737 F.3d 378, 392 (6th Cir. 2013) (internal citation and quotation marks omitted). "The TPLA's definition of 'product liability action' has been interpreted broadly." *Id.* at 402.

---

[5] Plaintiffs argue that Monica's NJCFA claim cannot be subsumed by the NJPLA. But Defendant is correct: "there is no exception for NJCFA claims where, as here, the gravamen of the claim is that the challenged statements or omissions led to harm that falls within the scope of the NJPLA." Def.'s Reply Br. at 12; *see Sun Chem. Corp. v. Fike Corp.*, No. CIV. 13-4069 FSH, 2015 WL 881961, at *3 (D.N.J. Mar. 2, 2015) (collecting cases); *Indian Brand Farms v. Novartis Crop Prot., Inc.*, 890 F.Supp.3d 524, 547–48; *McDarby v. Merk & Co.*, 949 A.2d 223, 277–78 (N.J. Super. Ct. App. Div. 2008).

Here, just as with Monica's claims, the Coles' claims clearly sound in products liability by alleging property damage caused by or resulting from the manufacture, design, and marketing of the PEX Products. Plaintiffs' argument that the Coles merely assert "economic loss" is inapposite: the "economic loss" doctrine relates to the interplay between tort and contract law and has no place in this analysis, which is solely focused on whether Plaintiffs' claims are subsumed by the TPLA. *See Lincoln Gen. Ins. Co. v. Detroit Diesel Corp.*, 293 S.W. 3d 487, 488 (Tenn. 2009); the Coles clearly allege property damage in the form of "water saturation and damage throughout their home." FAC ¶¶ 22. Therefore, Coles' claims in Counts I,[6] II, III, and IV are dismissed. However, the Coles are given leave to re-plead their claims as a single claim under the TPLA.

>   *b.* *Counts I and II - Express Warranty and Implied Warranty of Merchantability*
>
>   *Claims – McMahon (Texas) and McCoy (Georgia)*

Defendants next argue that McMahon and McCoy fail to state claims for breach of an express warranty and breach of the implied warranty of merchantability because they "have not fulfilled their contractual and legal duties to provide pre-suit notice of a failure and a demand for a replacement under the warranty." Def.'s Br. at 13. Specifically, Defendants argue that Texas and Georgia, the home states of McMahon and McCoy, respectively, require pre-suit notice of the breach and a request for a remedy as conditions precedent to asserting express and implied warranty claims under those state's laws.

NIBCO's express warranty, attached to the FAC, states that "[i]n the event that any defect occurs which the owner believes is covered by this warranty, the owner should

---

[6] Unlike the NJPLA, the TPLA subsumes claims for breach of an express warranty. *Strayhorn*, 737 F.3d at 392. Therefore, unlike for Monica, the Coles' claim of breach of express warranty in Count I is dismissed.

immediately contact NIBCO Technical Services, either in writing or by telephone . . . The owner will then be instructed to return said [product], at the owner's expense, to NIBCO . . . . In the event said inspection discloses to the satisfaction of NIBCO . . . that said [product] is defective, a replacement shall be mailed free of charge to the owner." NIBCO Warranty.

Neither McMahon nor McCoy allege that they contacted NIBCO about any of the alleged defective PEX Products prior to filing this suit.[7] Both Georgia and Texas laws regarding the breach of the implied warranty of merchantability are taken from the same UCC provision. That provision states that "[t]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Ga. Code Ann. § 11-2-607; Tex. Bus. & Com. Code Ann. § 2.607.

### 1.   McMahon (Texas)

"To recover on a breach of warranty claim in Texas, 'the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.'" *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 705 (5th Cir. 2014) (citing Tex. Bus. & Com. Code § 2.607(c)(1)). Texas law applies Tex. Bus. & Com. Code Ann. § 2.607 to breach of express warranty and breach of implied warranty claims, and "'commencement of litigation' does not satisfy the notice requirement" for either express or implied warranty claims. *See McKay*, 751 F.3d at 706.

"Although the Texas Supreme Court has not decided [the] issue of [whether notice must be given to a remote manufacturer or seller to satisfy § 2.607's requirements], the weight of

---

[7] Unlike McMahon, the Medders, the other Texas plaintiffs, alleged that "[w]ithin a reasonable amount of time following the losses, the Medders provided NIBCO with actual notice of the failures of its PEX Products and NIBCO failed to replace the PEX Products within the Medders' home or otherwise fulfill its warranty obligations." FAC ¶ 86.

intermediate Texas authority interprets the applicable version of § 2.607 to require" such notice. *Id.* at 707. The Texas appellate case that Plaintiffs cite for the opposite proposition, *Vintage Homes, Inc. v. Coldiron*, 585 S.W.2d 886, 888–89 (Tex.Civ.App.-El Paso 1979, no writ), interpreted a prior version of the statute at issue and goes against the clear majority of the Texas appellate courts that have considered the issue. *See, e.g.*, *Bailey v. Smith*, No. 13–05–085–CV, 2006 WL 1360846, at *4–5 (Tex.App.-Corpus Christi May 18, 2006, no pet.); *U.S. Tire–Tech, Inc. v. Boeran, B.V.*, 110 S.W. 3d 194, 199 (Tex.App.-Houston [1st Dist.] 2003, pet. denied); *Wilcox v. Hillcrest Memorial Park of Dall.*, 696 S.W.2d 423, 424 (Tex. App.-Dallas 1985, writ ref'd n.r.e).

McMahon does not allege that he provided pre-suit notice to Defendant before bringing his breach of warranty claims, as required under Texas law. Thus, his breach of express warranty and breach of the implied warranty of merchantability claims, asserted in Counts I and II, are dismissed without prejudice. *See, e.g.*, *Martin v. Home Depot U.S.A., Inc.*, 369 F. Supp. 2d 887, 893 (W.D. Tex. 2005).

### 2. McCoy (Georgia)

Georgia courts analyze breach of written, or express, warranty and breach of implied warranty claims differently; accordingly, the Court will do the same. "Georgia law imposes two conditions before a breach of a written warranty can exist: (1) notice of the defect and (2) a reasonable opportunity to repair the defect." *Knight v. Am. Suzuki Motor Corp.*, 272 Ga. App. 319, 321–22 (2005). Accordingly, a warranty is not breached simply because a vehicle is found "on delivery or at some time thereafter within the warranty period to have a defective part or [an] operational deficiency." *Id.* (citing *Olson v. Ford Motor Co.*, 575 S.E.2d 743 (Ga. App. 2002) (citation and footnote omitted)). "Assuming the purchaser has maintained his vehicle in the

16

manner specified, it is the *refusal to remedy* within a reasonable time, or a *lack of success* in the attempts to remedy [that] would constitute a breach of warranty." *Id.* (citing *Olson,* 575 S.E.2d 743); *Culberson v. Mercedes-Benz USA, Ltd.*, 274 Ga. App. 89, 91 (2005) ("When a warrantee brings a breach of express warranty claim, the terms of the written warranty control. Thus, a warrantee can succeed on a breach of the warranty claim only if she has first satisfied the express conditions precedent for enforcement "as prescribed" by the warranty.").

Here, because McCoy has not pleaded that he provided notice or a reasonable opportunity to repair the allegedly defective PEX products to Defendant, pursuant to the terms of the warranty, his breach of an express warranty claim must fail. *See, e.g.*, *id.* Accordingly, Count I as asserted by McCoy is dismissed without prejudice.

The Court now turns to McCoy's implied warranty of merchantability claim. The Georgia Court of Appeals has found that "delay alone [in providing reasonable notice to the seller] without prejudice caused by such delay is insufficient to bar relief to the plaintiff" under Georgia's statute pertaining to the breach of the implied warranty of merchantability. *Wal-Mart Stores, Inc. v. Wheeler*, 262 Ga. App. 607, 608 (2003) (analyzing a situation in which the plaintiff had only provided notice to Wal-Mart upon filing a lawsuit, two years after the breach allegedly took place). Thus, the reasonable notice inquiry under Georgia law turns on whether the defendant has demonstrated prejudice as a result in the delayed notice.

Here, the Court lacks the requisite facts at the motion to dismiss stage to determine whether filing this lawsuit constitutes reasonable notice of McCoy's breach of the implied warranty of merchantability claim. Accordingly, the Court declines to dismiss Count II as asserted by McCoy. *See, e.g.*, *In re Ford Motor Co. E-350 Van Products Liab. Litig. (No. II)*, No. CIV. A. 03-4558, 2010 WL 2813788, at *34 (D.N.J. July 9, 2010) *amended,* No. CIV.A. 03-4558 GEB,

17

2011 WL 601279 (D.N.J. Feb. 16, 2011) (applying Georgia law regarding reasonable notice of breach of warranty claims on a motion for summary judgment); *see also Terrill v. Electrolux Home Prods.*, 753 F.Supp.2d 1272, 1287, (S.D. Ga. 2010).

       *c. Count III - Implied Warranty of Fitness*

Next, Defendant argues that "[e]ach Plaintiff's claim for breach of the implied warranty of fitness for a particular purpose (Count III) fails because Plaintiffs used the PEX products for their ordinary purpose in residential plumbing systems and have failed to plead the requirements of a particular purpose claim" Def.'s Reply Br. at 3. Plaintiffs, however, claim that a "particular" purpose and an "ordinary" purpose are not mutually exclusive. Pls.' Opp. Br. at 13.

While Plaintiffs assert breach of implied warranty of fitness claims under various states' laws, it does appear that all of the states mentioned require that the product at issue be used for a "particular" purpose in order for a plaintiff to raise such a claim.[8] All of the relevant states utilize the following Uniform Sales Act provision to define a breach of the implied warranty of fitness:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

Tex. Bus. & Com. Code Ann. § 2.315; Okla. Stat. Ann. Tit. 12A, § 2-315; Ga. Code Ann. § 11-2-315; Tenn. Code Ann. § 47-2-315; N.J.S.A. § 12A:2-315; Ala. Code § 7-2-315; 13 Pa. Cons. Stat. Ann. § 2315.

In a comment regarding the most recent iteration of the provision, it is noted that

A "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature

---

[8] *See* Tex. Bus. & Com. Code Ann. § 2.315 cmt. 2; Okla. Stat. Ann. Tit. 12A, § 2-315 cmt. 2; Ga. Code Ann. § 11-2-315 cmt. 2; Tenn. Code Ann. § 47-2-315 cmt. 2; N.J.S.A. § 12A:2-315 cmt. 2; Ala. Code § 7-2-315 cmt. 2; 13 Pa. Cons. Stat. Ann. § 2315 cmt. 2.

of his business whereas the ordinary purposes for which goods are used are those
envisaged in the concept of merchantability and go to uses which are customarily
made of the goods in question. For example, shoes are generally used for the
purpose of walking upon ordinary ground, but a seller may know that a particular
pair was selected to be used for climbing mountains.

*Id.* cmt. 2. The FAC merely alleges that the PEX products, which are ordinarily used in the
course of installing a plumbing system, were used as such by Plaintiffs, and Plaintiffs concede as
much in their opposition brief. However, Plaintiffs argue that the ordinary purpose *was* a
particular purpose in that NIBCO advertised its PEX products as containing "superior
characteristics," making them "the highest quality PEX tubing available today . . . In other
words, PEX products are not only good for getting around town, they will help you climb a
mountain." Pls.' Br. at 14.

Plaintiffs' argument is unconvincing. The cases to which Plaintiffs cite (to the extent they
are relevant, as the cited cases regard laws of states that are not at issue here) do not support
Plaintiffs' position that "ordinary purpose" and "particular purpose" need not be mutually
exclusive; they state that a product can be used for *both* an ordinary and a particular purpose, not
that an ordinary purpose can be the same as a particular purpose. *See, e.g.*, *Palmer v. A.H. Robins
Co.*, 684 P.2d 187, 208–09 (Col. 1984); *Gregory Woods Prods. v. Advanced Sawmill Mach.
Equip., Inc.*, 2007 U.S. Dist. LEXIS 46245 (W.D.N.C. 2007). Further, Plaintiffs do not plead any
facts in their Amended Complaint to show that Defendant had any reason to know that the PEX
products were to be used by Plaintiffs for a particular purpose. *See generally* FAC. Therefore,
Plaintiffs' implied warranty of particular fitness claim in Count III is dismissed without
prejudice.

      *d.   Count IV - Negligence*

Next, Defendants argue that Plaintiffs' negligence claims must be dismissed.[9]

The FAC states that "Defendant owed Plaintiffs . . . a duty to exercise reasonable and ordinary care in the formulation, testing, design, manufacture, warranting and marketing of the PEX Products." Further, "[t]he failure of the PEX Products . . . was caused by poor and improper workmanship and manufacture, negligence, and lack of reasonable and ordinary care by NIBCO . . . . Defendant failed to properly test and/or evaluate the PEX Products to ensure they would not fail when they were used for their intended purpose." Finally, "[a]fter being notified of the foregoing breaches, NIBCO took no action to cure its breaches of its duty . . .As a direct and proximate result of NIBCO's negligence . . . Plaintiffs . . . have been caused to suffer losses and damages . . . ." FAC ¶¶ 169–172.

This laundry list of duties that Defendant allegedly breached does not suffice for asserting a negligence claim, particularly for asserting separate negligence claims under Plaintiffs' respective home states. Each state's negligence jurisprudence varies; for example, Texas courts appear to have found that where the gravamen of a plaintiff's claim sounds in products liability, a plaintiff's general negligence claim may not be permitted. *See Ford Motor Co. v. Miles*, 141 S.W.3d 309, 315 (Tex. App. 2004). However, Pennsylvania law appears to allow for such claims, *see, e.g.*, *Salvio v. Amgen, Inc.*, 810 F. Supp. 2d 745, 755 (W.D. Pa. 2011). Plaintiffs do not adequately specify how their allegations meet the elements of each relevant state's conception of negligence, and, as such, Count IV must be dismissed without prejudice for failure to state a claim.[10] *See, e.g.*, *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 167 (E.D.

---

[9] The Court has already dismissed the negligence claims of Monica and the Coles as subsumed under those plaintiffs' respective state products liability acts. See *supra* Section III.a.

[10] Defendant argues that under the "gist of the action" doctrine, Plaintiffs' negligence claims are really breach of warranty claims and, as such, should be dismissed. However, a review of Count

Pa. 2009); *see also Nimley v. PTT Phone Cards Inc.*, No. CIV.A. 13-2216, 2014 WL 1464311, at *6 (E.D. Pa. Apr. 15, 2014).

> e. *Counts V, VI, VII, and VIII - Statutory Consumer Fraud Claims*

Next, Defendants argue that the New Jersey, Pennsylvania, Texas, and Oklahoma statutory consumer fraud claims, asserted in Counts V, VI, VII, and VIII, respectively,[11] should be dismissed for failure to state a claim.

"Independent of the standard applicable to Rule 12(b)(6) motions," Rule 9(b) of the Federal Rules of Civil Procedure requires a heightened pleading standard for claims sounding in fraud or mistake. *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.,* 311 F.3d 198, 216 (3d Cir. 2002); *see also* FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). All of the relevant consumer fraud claims are governed by Rule 9(b)'s heightened pleading requirements. *Crozier v. Johnson & Johnson Consumer Cos.*, 901 F.Supp. 2d 494, 506 (D.N.J. 2012) (analyzing the NJCFA); *Post v. Liberty Mut. Grp., Inc.*, Civ. No. 14-CV-238, 2014 WL 2777385, at *2–4 (E.D. Pa. June 18, 2014) (analyzing the PUTPCPL); *Berry v. Indianapolis Ins. Co.*, 608 F.Supp. 3d 785, 800 (N.D. Tex. 2009) (analyzing the TDTPA).

The Third Circuit has adopted a flexible approach for evaluating whether a plaintiff's fraud claim meets Rule 9(b)'s heightened pleading standard. *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir. 1984) ("Rule 9(b) requires plaintiffs to plead

---

IV reveals that Plaintiffs' Count IV's allegations go beyond the scope of breach of warranty. *See* FAC ¶¶ 169–172.

[11] Specifically, Plaintiffs assert claims under the NJCFA, the Pennsylvania Unfair Trade Practices and Consumer Protection Law (the "UTPCPL"), the Texas Deceptive Trade Practices Act ("TDTPA"), and the Oklahoma Consumer Deceptive Trade Practices Act ("ODTPA").

with particularity the 'circumstances' of the alleged fraud.... It is certainly true that allegations of 'date, place or time' [suffice], but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud."); *see also Frederico v. Home Depot,* 507 F.3d 188, 200 (3d Cir. 2007) ("Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which it is charged.'" (quoting *Lum v. Bank of America,* 361 F.3d 217, 223–24 (3d Cir. 2004)).

### i.   Count V – Monica's NJCFA Claim

The Court decided *supra* that Monica's NJCFA claim sounded in product liability, and, as such, dismissed Count V as being subsumed by the NJPLA. Accordingly, the Court need not engage in further analysis of Count V.

### ii.   Count VI – The Pepernos' UTPCPL Claim

"The UTPCPL generally prohibits unfair methods of competition and deceptive acts or practices in the conduct of trade or commerce." *Slapikas v. First Am. Title Ins. Co.*, 298 F.R.D. 285, 292 (W.D. Pa. 2014) (citing 73 Pa. Stat. § 201–3); *see also Gardner v. State Farm Fire & Casualty Co.,* 544 F.3d 553, 564 (3d Cir. 2008)."The UTPCPL lists twenty specifically prohibited practices in § 201–2(4)(i)-(xx), and also contains a catch-all provision." *Garczynski v. Countrywide Home Loans, Inc.*, 656 F.Supp. 2d 505, 509 (E.D. Pa. 2009). The catchall provision provides a "private right of action in persons upon whom unfair methods of competition and unfair or deceptive acts or practices are employed and who, as a result, sustain an ascertainable loss." 73 Pa. Stat. § 201–9.2; *Slapikas*, 298 F.R.D. at 292.

"To establish liability under the UTPCPL's catchall provision a plaintiff must present evidence showing: (1) a deceptive act that is likely to deceive a consumer acting reasonably

under similar circumstances; (2) justifiable reliance; and (3) that the plaintiff's justifiable reliance caused ascertainable loss." *Slapikas*, 298 F.R.D. at 292 (citing *Seldon v. Home Loan Servs.*, 647 F.Supp.2d 451, 470 (E.D. Pa. 2009); *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 223 (3d Cir. 2008), *as amended* (Nov. 6, 2008)).

Defendants argue that the Pepernos fail to state a claim under the UTPCPL because they (1) do not identify a deceptive act with requisite specificity and (2) do not allege justifiable reliance.

The FAC states that

Defendant has engaged in deceptive business practices prohibited by the UTPCPL, including (1) representing that the PEX Products have characteristics, use, benefits, and qualities which they do not have, (2) representing that PEX Products are of a particular standard, quality, and grade when they are not, (3) advertising the PEX Products with the intent not to sell them as advertised, and (4) engaging in acts and practices which are otherwise unfair, misleading, false, or deceptive to the consumer.

FAC ¶ 186. While the FAC further states that "NIBCO's unfair or deceptive practices were likely to and did in fact deceive reasonable consumers, including the Pepernos, about the true performance and characteristic of the PEX Products," FAC 187, the Pepernos include no specific factual allegations stating that they chose to have PEX Products installed in their home because of Defendant's allegedly deceptive business practices, let alone factual allegations about when, where, and how they were exposed to Defendant's allegedly deceptive practices. *See* FAC ¶¶ 90–103. Therefore, regardless of whether Pepernos have adequately alleged that NIBCO engaged in deceptive business practices, presumably by advertising their products were of high quality, their UTPCPL claim fails because they do not allege justifiable reliance on such practices. *See, e.g.*, *Kee v. Zimmer, Inc.*, 871 F.Supp. 2d 405, 412 (E.D. Pa. 2012); *see also Militello v. Allstate Prop. & Cas. Ins. Co.*, 2014 WL 2892386, at *4 (M.D. Pa. June 26, 2014)

("Plaintiff's UTPCPL claim . . . lacks supporting factual allegations demonstrating that Plaintiff justifiably relied on Defendant's representations or conduct."). Accordingly, Count VI is dismissed without prejudice.

### i. Count VII – McMahon and the Medders' TDTPA Claim

The TDPTA "grants consumers a cause of action for false, misleading, or deceptive acts or practices." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996); *see also* Tex. Bus. & Com Code Ann. § 17.50(a)(1) (2009). "The elements of a DTPA cause of action are: (1) the plaintiff is a consumer; (2) the defendant committed acts 'in connection with the purchase or lease of any goods or services'; (3) the defendant's acts were false, misleading or deceptive; and (4) the acts were a producing cause of plaintiff's injuries." *Cushman v. GC Servs., LP*, 657 F. Supp. 2d 834, 842 (S.D. Tex. 2009) *aff'd sub nom. Cushman v. GC Servs., L.P.*, 397 Fed. App'x 24 (5th Cir. 2010) (quoting *Amstadt*, 919 S.W.2d at 649); *see also Washington v. U.S. HUD*, 953 F.Supp. 762, 777 (N.D. Tex. 1996). "A producing cause is synonymous with natural result and has been defined as an efficient, exciting or contributing cause that, in a natural sequence, produced the complained of injuries or damages." *McClung v. Wal-Mart*, 866 F. Supp. 306, 310 (N.D. Tex. 1994).

Defendants argue that the Texas plaintiffs do not allege with requisite particularity (1) the allegedly unlawful acts in which Defendant engaged under the TDTPA, and (2) that any such acts caused their injuries.

In the FAC, Plaintiffs allege that "NIBCO's actions as set forth above occurred in the conduct of trade or commerce, and constitute deceptive trade practices under the TDPTA" and that "[a]ll procedural requisites, including notice, have been met." FAC ¶¶ 194, 196.  Further, "[a] causal relationship exists between Defendant's unlawful, false, deceptive, and misleading

conduct and Plaintiffs' and Texas Class members' injuries . . . . Had Defendant not engaged in the aforementioned deceptive conduct, Plaintiffs and the Texas Class would not have purchased and installed Defendant's PEX Products in their residential and commercial properties." FAC ¶ 198.

However, similar to the Pepernos, the Texas Plaintiffs do not provide factual allegations in support of their conclusory statement that Defendant's allegedly false, deceptive, or misleading conduct was a producing cause of Plaintiff's injuries. The Medders and McMahon merely state that their residential plumbing system was installed using NIBCO PEX Products and conclusorily allege that ""a causal relationship exists" between Defendant's conduct and their damages—they provide no specificity about any false, misleading, or deceptive statements or actions by Defendants and how such behavior would constitute a "producing cause" of their decision to install PEX Products in their home. FAC ¶¶ 59, 80. Therefore, regardless of whether Plaintiffs have identified allegedly false, misleading, or deceptive behavior on the part of Defendant, their claim fails on the TDTPA's causal element. *See, e.g., Robinson v. Match.com, L.L.C.*, No. 3:10-CV-2651-L, 2012 WL 5007777, at *10 (N.D. Tex. Oct. 17, 2012) *aff'd sub nom. Malsom v. Match.com, L.L.C.*, 540 Fed. App'x 412 (5th Cir. 2013). Accordingly, Count VI is dismissed without prejudice.

*ii.   Count VIII – Sminkey's ODPTPA Claim*

Regarding Plaintiff's Sminkey's fraud claim under the ODTPA, Sminkey acknowledges in Plaintiff's opposition brief that the Oklahoma Deceptive Trade Practices Act does not create a private right of action for consumers, *see Thomas v. Metro. Life Ins. Co.*, 540 F. Supp. 2d 1212, 1228 (W.D. Okla. Jan 10, 2008), and seeks leave to re-plead his claim under the Oklahoma

Consumer Protection Act ("OCPA"). Pl.'s Opp. Br. at 27. As such, Count VIII is dismissed without prejudice.

### f. Count IX - Unjust Enrichment

Defendants next argue that Plaintiffs' unjust enrichment claims must fail for one of two reasons. First, the unjust enrichment claims asserted by McCoy, McMahon, the Medders, Boyd, and the Coles must fail, because "under the laws of their respective states, Plaintiff[s] . . . cannot maintain their unjust enrichment claim . . . because they allege the existence of an actual contract (the express warranty) governing their relationship" with Defendant. Def.'s Br. at 27. Second, Defendants argue that the unjust enrichment claims asserted by Boyd, Monica, and the Pepernos fail "because their home states do not recognize a claim for unjust enrichment against defendants from whom the plaintiff did not directly purchase the product." Def.'s Br. at 28. The Court will address each state's unjust enrichment laws in turn.

In Texas, Georgia, Tennessee, and Alabama, unjust enrichment actions may not succeed in the face of a governing contract, such as an express warranty. *In re Atlas Roofing Corp. Chalet Shingle Products Liab. Litig.*, No. 1:13-CV-2195-TWT, 2014 WL 3360233, at *3 (N.D. Ga. July 9, 2014) ("Under Georgia law, 'unjust enrichment is available only when there is no legal contract.'") (quoting *American Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.*, 426 F.Supp.2d 1356, 1372 (N.D. Ga. 2006));[12] *Johnson v. Wells Fargo Bank*, *NA*, 999 F. Supp. 2d 919, 929

---

[12] Plaintiffs points to *Clark v. Aaron's, Inc.*, 914 F. Supp. 2d 1301, 1309 (N.D. Ga. 2012), for the proposition that an unjust enrichment claim may be pled in the alternative under Georgia law. *See also WESI, LLC v. Compass Envtl., Inc.,* 509 F.Supp.2d 1353, 1363 & n. 12 (N.D.Ga.2007). While case law on this issue appears to be mixed, the Georgia Court of Appeals has found that an unjust enrichment claim, pled as an alternative to recovery under a contract claim, fails as a matter of law if a governing contractual provision is indisputably in place. *Tidikis v. Network for Med. Commc'n & Research LLC,* 274 Ga.App. 807, 619 S.E.2d 481, 486 (Ga. Ct. App. 2005); *see also Huddle House, Inc. v. Two Views, Inc.*, No. 1:12-CV-03239-RWS, 2013 WL 1390611, at *4 (N.D. Ga. Apr. 4, 2013). Because the parties do not dispute the validity or the applicability

(N.D. Tex. 2014) ("Because a claim for unjust enrichment is "based on quasi-contract," it is "unavailable when a valid, express contract governing the subject matter of the dispute exists."); *Branch Banking & Trust Co. v. Howard*, No. CIV.A. 12-0175-WS-N, 2013 WL 951652, at *5 (S.D. Ala. Mar. 8, 2013) ("Alabama law is clear that quasi-contractual, equitable remedies such as unjust enrichment are not cognizable in the presence of an express contract between the parties that governs the same subject matter."). Because the parties here do not dispute the existence of a governing express warranty, Count IX as asserted by McCoy, McMahon, the Medders, Boyd, and the Coles must be dismissed.

Meanwhile, in New Jersey, Pennsylvania, and Alabama, it is necessary to assert a "sufficiently direct relationship" between the plaintiff and the defendant to recover on an unjust enrichment claim. *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 724 (D.N.J. 2011) ("Since Plaintiffs have failed to allege that they purchased the Products directly from Defendants, they cannot rightfully expect any remuneration from Defendants, since they never directly conferred a benefit on Defendants."). *Schmidt v. Ford Motor Co.*, 972 F. Supp. 2d 712, 721 (E.D. Pa. 2013) ("The 'benefit' must be conferred by the plaintiff directly—indirect benefits bestowed by third parties will not support a claim for unjust enrichment."); *Danny Lynn Elec. & Plumbing, LLC v. Veolia ES Solid Waste Se., Inc.*, No. 2:09CV192-MHT, 2011 WL 2893629, at *6 (M.D. Ala. July 19, 2011) ("[T]he plaintiffs' unjust-enrichment claim should be dismissed as to the individual defendants because the plaintiffs did not confer a direct benefit on those individuals. In Alabama, 'the essence of unjust enrichment is that a plaintiff can prove facts showing that defendant holds money which, in equity and good conscience, belongs to plaintiff or holds money which was improperly paid to defendant because of mistake or fraud.'" (quoting

of the express warranty at issue here, the Court finds that an unjust enrichment claim cannot survive the Rule 12(b)(6) analysis even if pled in the alternative.

*Hancock–Hazlett General Const. Co., Inc. v. Trane Co.*, 499 So.2d 1385, 1387 (Ala. 1986)). Here, a direct relationship between Plaintiffs and Defendants do not exist, because Plaintiffs did not directly purchase the PEX Products from Defendant. Therefore, Count IX, as asserted by Monica and the Pepernos,[13] must be dismissed.

Because each Plaintiff's state law bars a claim for unjust enrichment under the circumstances, Count IX is dismissed in its entirety.

### g.  Count X - Declaratory and Injunctive Relief

Finally, in Count X, Plaintiffs include a claim for "declaratory and injunctive relief." FAC ¶¶ 213–214. However, declaratory relief and injunctive relief, as their names imply, are remedies, not causes of action. Accordingly, the Court dismisses Count X. *See Chruby v. Kowaleski*, 534 Fed. App'x 156, 160 n.2 (3d Cir. 2013) (affirming dismissal of a claim that was solely for a remedy).

## V.  CONCLUSION

For the foregoing reasons, Defendants' Partial Motion to Dismiss is GRANTED IN PART. Counts II, III, and IV are dismissed as asserted by Monica, and Counts I, II, III, and IV are dismissed as asserted by the Coles; both sets of plaintiffs are granted leave to file claims under the NJPLA and the TPLA, respectively. Count I is dismissed without prejudice as asserted by McCoy. Counts I and II are dismissed without prejudice as asserted by McMahon. As asserted by all Plaintiffs, Counts III, IV, VI, VII, and VIII are dismissed without prejudice, and Counts V, IX, and X are dismissed.  Count II as asserted by McCoy, however, may proceed.

An appropriate order shall follow.

---

[13] The Court already *supra* dismissed Boyd's unjust enrichment claim under Alabama law, on the basis of the existence of a governing express contract.

Dated: May 20, 2015                           /s/ Freda L. Wolfson
                                         The Honorable Freda L. Wolfson
                                         United States District Judge