## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| KIMBERLY COLE, ALAN COLE, JAMES MONICA, LINDA BOYD, MICHAEL MCMAHON, RAY SMINKEY, JAMES MEDDERS, JUDY MEDDERS, ROBERT PEPERNO, SARAH PEPERNO, and KELLY MCCOY, on behalf of themselves and all others similarly situated, | : : : : : : : : : | Civil Action No. 13-7871 (FLW)(TJB) |
| | : | **CLASS ACTION** |
| Plaintiffs, | : : | **JURY TRIAL DEMANDED** |
| v. | : : | |
| NIBCO, Inc., | : : | |
| Defendant. | : | |

---

### PLAINTIFFS' RESPONSE IN OPPOSITION TO NIBCO'S PARTIAL MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

---

**LITE DEPALMA GREENBERG, LLC**
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
bgreenberg@litedepalma.com

**STUTMAN LAW**
Daniel Hogan
Michael J. Hopkins
500 Office Center Drive, 301
Fort Washington, PA 19034
Telephone: (215) 283-1177
Facsimile: (215) 283-1188
HoganD@stutmanlaw.com
HopkinsM@stutmanlaw.com

**CHIMICLES & TIKELLIS LLP**
Joseph G. Sauder
Matthew D. Schelkopf
Benjamin F. Johns
Joseph B. Kenney
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
JGS@chimicles.com
MDS@chimicles.com
BFJ@chimicles.com
JBK@chimicles.com

*Attorneys for Plaintiffs and Interim Co-Lead Counsel*

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................1

II.   SUMMARY OF PLAINTIFFS' ALLEGATIONS ..........................................2

      A.    NIBCO's Defective PEX Products ........................................2

III.  LEGAL STANDARD ...................................................................2

ARGUMENT ....................................................................................3

      A.    Plaintiffs McMahon, Sminkey, and the Pepernos State Claims for
            Breach of the Implied Warranty of Merchantability Because
            Applicable Statutes of Limitations Should be Equitably Tolled ..........3

      B.    Plaintiff McCoy States a Claim for Breach of Express Warranty
            Because He Provided Defendant Reasonable Notice of the Breach .....5

      C.    Plaintiffs' Product Liability Claims Should be Sustained ...................6

            1.    Plaintiffs Can Sue for Defective NIBCO PEX Components
                  That Are Not Present in Their Homes, Since All the PEX
                  Products Are Related .................................................7

            2.    Each Plaintiff Has Identified the Specific NIBCO PEX Product
                  and Defect That Caused His, Her, or Their Property Damage ...9

            3.    Plaintiffs Monica, Boyd, McMahon, Sminkey, McCoy, and the
                  Medders Have All Stated Claims for Design Defect................11

            4.    Plaintiffs Adequately Allege a Manufacturing Defect Claim ..16

      D.    Plaintiffs have adequately alleged a negligence claim.......................19

            1.    Plaintiffs have alleged enough facts to support a negligence
                  claim.................................................................20

            2.    The economic loss doctrine does not affect Plaintiffs' claims for
                  property damage.....................................................24

538683.1

E.      Plaintiffs Have Adequately Pleaded Failure to Warn Claims.............25

F.      Mr. Sminkey Has Stated a Claim Under Oklahoma's Consumer Protection Act ......................................................................31

CONCLUSION ........................................................................35

538683.1

# TABLE OF AUTHORITIES

<u>*Cases*</u>                                                                                               <u>*Page(s)*</u>

*Alvarado v. Abijah Group, In*c.,
   2015 Tex. App. LEXIS 7772 (Tex. Ct. App. July 29, 2015) .........................4

*Am. Tobacco Co. v. Grinnell*,
   951 S.W.2d 420 (Tex. 1997) .......................................................................13

*Anderson v. Hedstrom Corp.*,
   76 F. Supp. 2d 422 (S.D.N.Y. 1999) ...........................................................23

*Andreassen v. Saf-Gard Safety Shoe Co.*,
   78 Pa D & C 4th 285 (CP 2005)...................................................................27

*Anguiano v. E.I. DuPont De Nemours & Co.*,
   44 F.3d 806 (9th Cir. 1995) .........................................................................26

*API Enterprises, Inc. v. Am. Standard, Inc.*,
   2008 U.S. Dist., LEXIS 23587 (W.D. Okla. Mar. 25, 2008) .......................34

*Avery v. Geneva County*,
   567 So 2d 282 (Ala. 1990)...........................................................................28

*Baby Neal v. Casey*,
   43 F.3d 48 (3d Cir. 1994) ..............................................................................8

*Bankers' Trust Co. v. Brown*,
   107 P.3d 609 (Okla. Ct. App. 2005).............................................................34

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................2

*Bessemer v. Novartis Pharms. Corp.*,
   2010 N.J. Super. Unpub. LEXIS 3177 (Law Div. Apr. 30, 2010)...............29

*Clancy v. Bromley Tea Co.*,
   2013 U.S. Dist. LEXIS 112722 (N.D. Cal. Aug. 9, 2013) .............................9

538683.1

*Cline v. DaimlerChrysler Company*,
114 P.3d 468 (Okla. Ct. App. 2015) ............................................................31

*Cole v. NIBCO, Inc.*,
2015 U.S. Dist. LEXIS 65960 (D.N.J. May 20, 2015) ........................5, 6, 20

*Cordy v. Sherwin Williams Co.*,
975 F. Supp. 639 (D.N.J. 1997) ....................................................................23

*Craftmatic Sec. Litig. v. Kraftsow*,
890 F.2d 628 (3d Cir. 1989) .........................................................................21

*Cunningham v. Charles Pfizer & Co.*,
532 P.2d 1377 (Okla. 1974) ..........................................................................29

*Diggs v. M&J Painting & Wallcovering*,
34 Pa D & C 4th 397 (CP 1996) ....................................................................28

*Durso v. Samsung Elecs. Am., Inc.*,
2013 U.S. Dist. LEXIS 160596 (D.N.J. Nov. 6, 2013) ....................................8

*Edwards v. Basel Pharms.*,
933 P.2d 298 (Okla. 1997) .............................................................................28

*Fouch v. Bicknell Supply Co.*,
756 S.E.2d 682 (Ga. 2014) ............................................................................28

*Goodson v. Boston Sci. Corp.*,
2011 U.S. Dist. LEXIS 149193 (N.D. Ga. Dec. 29, 2011) .............................24

*Grier v. Cochran W. Corp.*,
308 N.J. Super. 308 (App. Div. 1998) ...........................................................30

*Haas v. Pittsburgh Nat'l Bank*,
526 F.2d 1083 (3d Cir. 1975) ......................................................................8-9

*Hahn v. Richter*,
673 A.2d 888 (Pa. 1996) ...............................................................................26

iv

*Hall v. Edge*,
782 P.2d 122 (Okla. 1989).............................................................................34

*Hammonds v. Boston Sci., Inc.*,
2011 U.S. Dist. LEXIS 120943 (W.D. Okla. Oct. 19, 2011).......................34

*Hernandez v. Tokai Corp.*,
2 S.W.3d 251 (Tex. 1999) ....................................................................... 13-14

*Humble Sand & Gravel v. Gomez*,
48 S.W.3d 487 (Tex. Ct. App. 2001)............................................................30

*Humble Sand & Gravel, Inc. v. Gomez*,
146 S.W.3d 170 (Tex. 2004) .................................................................28, 30

*In re Caterpillar, Inc., C13 & C15 Engine Products Liab. Litig.*,
2015 U.S. Dist. LEXIS 98784 (D.N.J. July 29, 2015) ..................................16

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
996 F. Supp. 2d 942, 995 (S.D. Cal. 2014) ..................................................23

*Jack Henry & Assocs. v. BSC, Inc.*,
2010 U.S. Dist. LEXIS 92994 (E.D. Ky. Sept. 7, 2010)..............................23

*Jackson v. Louisville Ladder, Inc.*,
2013 U.S. Dist. LEXIS 96836 (M.D. Pa. July 11, 2013) .............................13

*Klem v. E.I. DuPont De Nemours Co.*,
19 F.3d 997 (5th Cir. 1994) .........................................................................26

*Kowalsky v. Hewlett-Packard Co.*,
2011 U.S. Dist. LEXIS 89379 (N.D. Cal. Aug. 10, 2011) ...........................26

*Lee v. Volkswagen of Am., Inc.*,
688 P.2d 1283 (Okla. 1984).........................................................................17

*Leesley v. West*,
518 N.E.2d 758 (Ill. Ct. App. 1988)............................................................26

538683.1

*Lynn v. Yamaha Golf-Car Co.*,
  894 F. Supp. 2d 606 (W.D. Pa. 2012) .....................................................13, 14

*Mackey v. Maremont Corp.*,
  504 A.2d 908 (Pa. Super. Ct. 1986) ...........................................................30

*Mallory v. Biomet, Inc.*,
  2014 U.S. Dist. LEXIS 173781 (M.D. Ala. Dec. 4, 2014)...........................24

*Marcus v. BMW of N. Am., LLC*,
  687 F.3d 583 (3d Cir. 2012) ...........................................................................9

*Maya v. Johnson & Johnson & McNeil-PPC, Inc.*,
  97 A.3d 1203 (Pa. Super. Ct. 2014) ............................................................29

*McAlister v. Ford Motor Co.*,
  2015 U.S. Dist. LEXIS 106543 (W.D. Okla. 2015).....................................33

*Mendez v. Shah*,
  28 F. Supp. 3d 282 (D.N.J. 2014)................................................................17

*Moraca v. Ford Motor Co.*,
  66 N.J. 454 (1975) .......................................................................................17

*Norm's, Ltd. v. Atlas Noble*,
  2015 Pa. Super. Unpub. LEXIS 1286 (Pa. Super. Ct. May 8, 2015) .............4

*Nye v. Bayer Cropscience, Inc.*,
  347 S.W.3d 686 (Tenn. 2011) ....................................................................27

*Nygren v. Greater N.Y. Mut. Ins. Co.*,
  2009 U.S. Dist. LEXIS 26078 (D. Conn. Mar. 27, 2009) ...........................23

*Owens-Illinois, Inc. v. Zenobia*,
  601 A.2d 633 (Md. 1992) ............................................................................26

*Patterson v. Beall*,
  19 P.3d 839 (Okla. 2000)........................................................................31, 32

*Parks v. AT&T Mobility, LLC*,
   2011 U.S. Dist. LEXIS 3157 (W.D. Okla. Jan. 12, 2011) ...........................33

*Parr v. Ford Motor Co.*,
   109 A3d 682 (Pa. 2014)...................................................................................27

*Phillips v. County of Allegheny*,
   515 F. 3d 224 (3d Cir. 2008) .............................................................................2

*Pittman v. Upjohn Co.*,
   890 S.W.2d 425 (Tenn. 1994) ........................................................................27

*Polando v. Sears, Roebuck & Co.*,
   2013 U.S. Dist. LEXIS 29700 (W.D. Okla. Mar. 4, 2013) ...........................24

*Rose v. Figgie Int'l, Inc.*,
   495 S.E.2d 77 (Ga. Ct. App. 1997) ...............................................................18

*Rudd v. Gen. Motors Corp.*,
   127 F. Supp. 2d 1330 (M.D. Ala. 2001).........................................................17

*Salvio v. Amgen, Inc.*,
   810 F. Supp. 2d 745 (W.D. Pa. 2011) ......................................................13, 24

*Satterfield v. Breeding Insulation Co.*,
   266 S.W.3d 347 (Tenn. 2008) ........................................................................28

*Sell v. Bertsch & Co.*,
   577 F. Supp. 1393 (D. Kan. 1984) .................................................................26

*Shaun T. Mian Corp v. Hewlett-Packard Co.*,
   237 S.W. 3d 851 (Tex. Ct. App. 2007).........................................................17

*Steen v. Medtronic, Inc.*,
   2010 U.S. Dist. LEXIS 65579 (N.D. Tex. June 25, 2010)...........................24

*Sterling Drug, Inc. v. Yarrow*,
   408 F.2d 978 (8th Cir. 1969) .........................................................................26

538683.1

*Swisher v. Stryker Corp.*,
2013 U.S. Dist. LEXIS 185998 (W.D. Okla. Mar. 14, 2013) ......................24

*Thaxton v. Ben. Mortg. Co.*,
145 P.3d 124 (Okla. Ct. App. 2006) ...............................................................4

*Toms v. J.C. Penney Co.*,
304 Fed. App'x 121 (3d Cir. 2008) ...............................................................28

*Varner v. MHS, Ltd.*,
2 F. Supp. 3d 584 (M.D. Pa. 2014) ...............................................................17

*Wal-Mart Stores, Inc. v. Wheeler*,
586 S.E. 2d 83 (Ga. Ct. App. 2003) ...............................................................5

*Werner v. Upjohn Co.*,
628 F.2d 848 (4th Cir. 1980) .........................................................................26

*Wyeth, Inc. v. Weeks*,
159 So. 3d 649(Ala. 2014)..............................................................................27

538683.1

## I.    __INTRODUCTION__

The defective plumbing products (together, "PEX Products") designed, manufactured, and sold by Defendant NIBCO, Inc. have been failing in homes and other structures nationwide.  The failures of the PEX Products are occurring in a predictable manner and are caused by a number of particular, and common, design and manufacturing deficiencies in those PEX Products.  Plaintiffs and members of the putative class have suffered serious water damage caused by these deficiencies.

On May 20, 2015, this Court granted, in part, Defendant's motion to dismiss Plaintiffs' First Amended Complaint (Dkt. No. 48).  Most claims were dismissed without prejudice, and the Court instructed that Plaintiffs' claims should be specifically pleaded under the laws of their respective home states.  Accordingly, Plaintiffs' Second Amended Complaint ("SAC") (Dkt. No. 50) pleads in detail product liability and negligence claims under the law of each Plaintiff's home state, as well as a consumer protection claim under the law of one of those states.

Defendant has now filed a partial motion to dismiss the SAC.  That motion refuses to recognize key allegations of the SAC, and relies on misperceptions of the law underlying Plaintiffs' claims.  For the reasons set forth below, NIBCO's motion should be denied in its entirety.

## II.   SUMMARY OF PLAINTIFFS' ALLEGATIONS

### A. NIBCO's Defective PEX Products

For brevity, Plaintiffs incorporate pages 2-6 of Plaintiffs' Response in Opposition to NIBCO's Partial Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. No. 44), discussing NIBCO's representations about the quality of its PEX Products and the specific defects associated with its PEX Tubing, PEX Fittings, and PEX Clamps.  Likewise, Plaintiffs incorporate pages 6-10 of that brief, for the factual basis of each Plaintiff's claims.  Also, after the dismissal of Plaintiff Kelly McCoy's express warranty claim, he gave NIBCO actual notice of his claim prior to reasserting the claim.  SAC, ¶110.  *See* Defendant's Brief in Support of Motion to Dismiss Second Amended Complaint ("Db"), Exhibit A.

## III.   LEGAL STANDARD

Pursuant to Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the Complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that the plaintiff's claims lack facial plausibility.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The SAC must contain sufficient factual allegations to raise a right to relief above the speculative level, assuming the factual allegations are true.  *Id.*; *see also Phillips v. County of Allegheny,* 515 F. 3d 224, 234 (3d Cir. 2008).  It is the role of discovery, not the pleadings, to "reveal evidence" as long as the factual allegations are enough

2

to raise the right to relief above a speculative level.  *Twombly*, 550 U.S. at 556.

The allegations of the SAC amply meet this standard and that of Rule 9(b) as well.

## ARGUMENT

### A. Plaintiffs McMahon, Sminkey, and the Pepernos State Claims for Breach of the Implied Warranty of Merchantability Because Applicable Statutes of Limitations Should be Equitably Tolled

The parties agree about the length of time afforded for Plaintiffs McMahon, Sminkey, and the Pepernos to sue under the applicable statutes of limitations.  See Db5 (four years from tender for McMahon and the Pepernos; five years from tender for Sminkey).[1]  The governing statutes in each of these four Plaintiffs' home states, however, expressly state that the statute "does not alter the law on tolling of the statute of limitations."  *See* Tex. Bus. & Com. Code Ann. § 2.725(d); 13 Pa. Cons. Stat. Ann. § 2725(d); Okla. Stat. Ann. tit. 12A, § 2725(4).  Because Plaintiffs have alleged that Defendant was aware of and fraudulently concealed the defects in the PEX Products, *see* SAC, ¶¶137, 144-146, their pleading is sufficient to equitably toll the applicable statutes of limitations at the motion to dismiss stage.

The test for equitable tolling is effectively the same in Texas, Pennsylvania, and Oklahoma.  Plaintiffs must show that they diligently pursued their rights and could not have brought suit within the applicable statute of limitations due to some

---

[1] Plaintiffs acknowledge that the implied warranty of merchantability claim on behalf of Plaintiff Boyd is barred by Alabama's privity doctrine.  Db7.

3

act or omission of the defendant or other extraordinary circumstance.[2]

Plaintiffs have done precisely that here.  The SAC amply alleges that by selling PEX Products that Defendant knew contained the defects described in the SAC and actively concealing the existence of those defects from Plaintiffs, Defendant made it impossible for Plaintiffs to bring suit – or even realize that such a suit was available to them – until the Products actually failed.  This occurred, at the earliest, in March 2013 (Boyd), "early 2013" (McMahon), November 2013 (Sminkey), and December 2013 (Pepernos).  SAC, ¶¶49, 62, 73, 97.  Allowing Defendant to escape liability due to its fraudulent and purposeful omissions regarding the PEX Products would condone the exact conduct the equitable tolling doctrine aims to prevent.  The Court should thus reject Defendant's limitations argument and allow these Plaintiffs' implied warranty claims to proceed.

---

[2] *See, e.g., Alvarado v. Abijah Group, In*c., 2015 Tex. App. LEXIS 7772, at *10 (Tex. Ct. App. July 29, 2015) ("a defendant's fraudulent concealment of wrongdoing may toll the statute of limitations after the cause of action accrues.  A party asserting fraudulent concealment must establish an underlying wrong, and that the defendant actually knew the plaintiff was in fact wronged, and concealed that fact to deceive the plaintiff") (internal quotations and citations omitted); *Norm's, Ltd. v. Atlas Noble*, 2015 Pa. Super. Unpub. LEXIS 1286, at *9 (Pa. Super. Ct. May 8, 2015) ("If through fraud or concealment the defendant causes the plaintiff to relax his or her vigilance or deviate from his or her right of inquiry, the defendant is estopped from invoking the bar of the statute of limitations"); *Thaxton v. Ben. Mortg. Co.*, 145 P.3d 124, 127 (Okla. Ct. App. 2006) (the doctrine of equitable tolling "extends the statute of limitations if the plaintiff did not have and could not with due diligence obtain the information necessary for bringing suit within the limitations period") (citation omitted).

### B. Plaintiff McCoy States a Claim for Breach of Express Warranty Because He Provided Defendant Reasonable Notice of the Breach

In its May 20, 2015 decision, the Court concluded that Mr. McCoy's breach of express warranty claim failed because he did not plead "that he provided notice or a reasonable opportunity to repair the allegedly defective PEX products to Defendant, pursuant to the terms of the warranty." *Cole v. NIBCO, Inc*., 2015 U.S. Dist. LEXIS 65960, at *25-26 (D.N.J. May 20, 2015). As detailed in the SAC, and as documented in the attachments to Defendant's brief, Mr. McCoy has corrected that deficiency and thus asserts a viable claim for breach of express warranty.

Defendant's focus on "pre-suit" notice misses the point, as Georgia does not require that notice be provided prior to filing suit so long as the notice given is reasonable. *See, e.g., Wal-Mart Stores, Inc. v. Wheeler*, 586 S.E. 2d 83 (Ga. Ct. App. 2003) (post-suit notice of breach of warranty claim through service of amended complaint more than two years after an accident at issue not unreasonable as a matter of law). The pertinent question is whether Defendant has had a reasonable opportunity to repair the PEX Products under the warranty. It has.

On May 28, 2015, Mr. McCoy, through his attorneys, provided counsel for NIBCO with written notice of the defects in his PEX Products and NIBCO's breach of warranty, requesting that NIBCO rectify the situation and "make things right." Db, Exhibit A. In a June 15, 2015 response, counsel for NIBCO stated that Mr. McCoy "should be instructed to follow the outlined process, contacting

538683.1

NIBCO, wherein a product return authorization number will be issued and your client will be instructed to return the alleged defective product(s)." *Id.*, Exhibit B.

Defendant's suggestion that Mr. McCoy's notice is deficient because he did not return the defective product for inspection is belied by the June 15 letter itself, wherein Defendant's counsel states that Mr. McCoy would be instructed to return the product after being issued a "product return authorization number." Over two months after NIBCO's letter, no such number has been issued to Mr. McCoy. Thus, despite NIBCO's knowledge of Mr. McCoy's allegations of defects in the PEX Products, it has refused to provide him a product return authorization number or to otherwise remedy the defect within a reasonable time, thereby breaching its express warranty. *See Cole*, 2015 U.S. Dist. LEXIS 65960, at *25.

Mr. McCoy has done what the Court previously said he needed to do: he has "pleaded that he provided notice or a reasonable opportunity to repair the allegedly defective PEX products to Defendant." *Id.*, at *25-26. He should be allowed to proceed with his breach of express warranty claim.

## C. **Plaintiffs' Product Liability Claims Should be Sustained**

Defendant offers several arguments in support of dismissal of Plaintiffs' product liability claims. All of those contentions lack merit.

Each Plaintiff has asserted a valid product liability claim arising out of losses caused by defective PEX Products.  Each Plaintiff has alleged the required elements of a product liability claim, including the specific NIBCO PEX Products installed in their respective homes, the dates of installation, the specific failures of the NIBCO PEX Products, the specific product involved in those failures, a description of the defect and failure mode of the PEX Products, and a description of the damage caused by the failures.  Additionally, to the extent required by applicable law, the SAC outlines how the risks associated with the design of NIBCO PEX Products outweighs the benefits and contains adequate factual descriptions of alternative designs for the NIBCO PEX Tubing, NIBCO PEX Fittings and NIBCO PEX Clamps.

    **1.  Plaintiffs Can Sue for Defective NIBCO PEX Components That Are Not Present in Their Homes, Since All the PEX Products Are Related**

NIBCO mistakenly argues that no Plaintiff can bring a product liability claim regarding defective PEX Clamps because they have no such PEX Clamps, and that Plaintiffs who have suffered failure only of either PEX Tubing or PEX Fittings cannot sue regarding the other component.  Plaintiffs, however, have alleged that NIBCO marketed and sold defective PEX Clamps, PEX Fittings, and PEX Tubing as a single product line (the PEX product line) designed to be installed as a unit.  *See, e.g.*, SAC, ¶118.  Thus, NIBCO's warranty increases from 10 years to 25 years when the PEX Tubing is also installed with "PEX fittings, and

7

NIBCO® valves and installation accessories."  SAC, ¶131.  Defendant's own

integration of the various defective PEX Products prevents any attempt to slice and

dice those PEX Products in order to narrow this case.

Moreover, the SAC alleges that the defects associated with the NIBCO PEX

Tubing and PEX Fittings are present from the moment of sale, though the failure

modes associated with those respective defects take time to develop.  SAC, ¶¶121,

135-136, 138.  The fact that some Plaintiffs do not yet have failures associated

with multiple different components of NIBCO PEX Products does not mean that

those failures will not manifest themselves in time.  Thus, it would be premature to

dismiss those claims even if the various PEX Products were not an integrated unit.

Besides, it is well-established that plaintiffs may assert claims in a

representative capacity on behalf of a class that includes individuals who

purchased distinct, but similar products.  *See Durso v. Samsung Elecs. Am., Inc.*,

2013 U.S. Dist. LEXIS 160596, at *14 (D.N.J. Nov. 6, 2013) ("This Court agrees

and finds that dismissal of Plaintiffs' claims related to products Plaintiffs did not

purchase or defects Plaintiffs did not suffer would be premature at this time."); *see*

*also Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) ("where an action

challenges a policy or practice, the named plaintiffs suffering one specific injury

from the practice can represent a class suffering other injuries, so long as all the

injuries are shown to result from the practice."); *Haas v. Pittsburgh Nat'l Bank*,

526 F.2d 1083, 1088-89 (3d Cir. 1975) (though plaintiff lacked standing to pursue

a particular claim, she could assert that claim in a putative class action where she

did have standing to pursue two closely related claims against the same defendant).

Here, Plaintiffs have established that the PEX Products were advertised and

sold as a unit and that all of the PEX Products are defective for the reasons set

forth at length in the SAC.  NIBCO is challenging the representative capacity of

Plaintiffs, which should be addressed at class certification and not on a motion to

dismiss.  *See, e.g.*, *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 599 (3d Cir.

2012) (holding that plaintiff who purchased only one type of tire satisfied

typicality requirement for a class that included "different tire models and sizes, and

different vehicles, [that] have different performance characteristics, compositions,

designs, purposes, and uses"); *Clancy v. Bromley Tea Co.*, 2013 U.S. Dist. LEXIS

112722, at *19-20 (N.D. Cal. Aug. 9, 2013) (rejecting defendant's argument that

plaintiff did not have standing to assert claims regarding products he never

purchased because "applying the concept of standing to dismiss proposed class

action allegations is a category mistake").

## 2. Each Plaintiff Has Identified the Specific NIBCO PEX Product and Defect That Caused His, Her, or Their Property Damage

Though Defendant contends that Plaintiffs have not "trac[ed] their plumbing

problems to the particular defects alleged," Db12, the SAC in fact does that in

great detail.  NIBCO has simply failed to confront those allegations.

538683.1

The SAC alleges that PEX Tubing is defective because it is susceptible to premature oxidative failure and creep rupture caused by insufficient product stabilization and improper cross linking of PEX materials. *See* SAC, ¶¶ 2, 121. The SAC alleges that consumers have experienced water leakage, and resulting damage, as a result of that defect. SAC, ¶121.

The SAC alleges that NIBCO PEX Fittings are defective because they are prone to dezincification corrosion. SAC, ¶3. The SAC details the process and negative impact of the dezincification corrosion of NIBCO's PEX Fittings and asserts that water losses are occurring across the county as a result of the defect. *See* SAC, ¶¶134-138.

Finally, the SAC alleges that the NIBCO PEX Clamps are defective because they are prone to chloride-induced stress corrosion cracking. SAC, ¶4. The SAC also describes at length the process and negative impact of chloride induced stress corrosion cracking and asserts that water losses are occurring as a direct result of that defect. SAC, ¶¶138-144.

In addition to factually describing the various defects, the SAC outlines which defective NIBCO PEX Product failed and caused damage in each of the respective Plaintiffs' homes to date:

| Plaintiff | Defective PEX Product | Defect That Caused Damage |
|---|---|---|
| Coles | NIBCO PEX Fittings and Tubing | SAC, ¶¶20, 21, 22, 25 |
| Monica | NIBCO PEX Fittings | SAC, ¶¶33, 34, 40 |
| Boyd | NIBCO PEX Tubing | SAC, ¶¶46, 49-51, 53 |
| McMahon | NIBCO PEX Tubing | SAC, ¶¶59, 62-64, 66 |
| Sminkey | NIBCO PEX Tubing | SAC, ¶¶70, 73-77 |
| Medders | NIBCO PEX Fittings | SAC, ¶¶81, 84-86, 88-89 |
| Peperno | NIBCO PEX Tubing | SAC, ¶¶94, 97-100, 101-102 |
| McCoy | NIBCO PEX Tubing | SAC, ¶¶106, 108-109 |

With the foregoing factual predicate, each Plaintiff has sufficiently alleged that their respective damages were caused by an identified defect in a particular NIBCO PEX Product. Therefore, Counts III though X state plausible claims for relief and should be sustained.

### 3. Plaintiffs Monica, Boyd, McMahon, Sminkey, McCoy, and the Medders Have All Stated Claims for Design Defect

Defendant erroneously contends that the above Plaintiffs did not plead (1) the existence of a safer alternative design available to NIBCO at the time the PEX Products were installed in Plaintiffs' homes, or (2) that the risk inherent in the design of the PEX Products outweighed their utility. Plaintiffs have alleged both

11

of those things.

With respect to risk/utility of NIBCO's PEX Products, paragraph 184 of the SAC specifically alleges that the risk associated with the NIBCO PEX Products exceed the benefits associated with their design:

> 184. NIBCO PEX Products are defective in design in that they are not reasonably fit, suitable or safe for their intended purpose and/or their foreseeable risks exceed the benefits associated with their design. NIBCO PEX Products are defective in design and manufacture for the reasons set forth in paragraphs 121-144 above.

[SAC, ¶184].

Paragraph 184 of the SAC, which itself is not a mere conclusion but is expressly premised on the detailed allegations of paragraphs 121-144, is specifically incorporated by reference in the product liability Counts of Plaintiffs Boyd, McMahon, the Medders, Sminkey, and McCoy.  SAC, ¶¶198, 210, 219, 238. Therefore, each of those claims contains the allegation that the risks posed by the various NIBCO PEX Products outweigh their utility.  The SAC also details the risks associated with the NIBCO PEX Products that lead to their premature failure during normal and anticipated use.  *See* SAC ¶2 (generally); ¶¶121-124 (regarding NIBCO PEX Tubing); ¶¶ 3, 4, 125-144 (as to NIBCO PEX Fittings and Clamps).

Defendant demands dismissal because the SAC supposedly does not allege alternative designs for the PEX Products.  But requiring Plaintiffs to plead a reasonable alternative design at this stage of the litigation is premature.  NIBCO

relies on *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 427 (Tex. 1997) a *summary judgment* decision that benefitted from a full factual record.  The court there granted summary judgment only after considering expert testimony regarding a reasonable alternative design.  *Id.* at 433 (quoting expert deposition transcripts).

Similarly, Pennsylvania courts routinely require expert testimony regarding the existence of a reasonable alternative design.  *See, e.g.*, *Jackson v. Louisville Ladder, Inc.*, 2013 U.S. Dist. LEXIS 96836, at *18 (M.D. Pa. July 11, 2013) (discussing the findings of plaintiffs' expert and deposition testimony regarding a reasonable alternative design); *Lynn v. Yamaha Golf-Car Co.*, 894 F. Supp. 2d 606, 629-30 (W.D. Pa. 2012) (holding plaintiff produced sufficient evidence on summary judgment for a jury to conclude a reasonable alternative design was available after expert discovery and testimony).[3]  Indeed, the necessity of establishing a reasonable alternative design requires the use of a "risk-utility" balancing test in which the current design is measured against a hypothetical alternative design.  *See, e.g.*, *id.* at 633; *Hernandez v. Tokai Corp.*, 2 S.W.3d 251,

---

[3] NIBCO relies on *Salvio v. Amgen, Inc.*, 810 F. Supp. 2d 745 (W.D. Pa. 2011), for the notion that plaintiffs must plead the existence of a reasonable alternative design at the 12(b)(6) stage.  In *Salvio*, the plaintiff brought a wrongful death action based on the use of a prescription drug that warned of the risk of infection.  The plaintiff's complaint failed to identify a drug that would treat her without the same risk of infection.  Ultimately, the effectiveness of the drug for its intended use was not disputed.  In contrast, Plaintiffs have alleged the PEX Products are unsuitable for their intended use because they fail for their essential purpose: to carry water without leaking.  *E.g.*, SAC, ¶11.  *Salvio* is not analogous.

538683.1

256-257 (Tex. 1999) (discussing "the risk-utility analysis Texas has for years employed in determining whether a defectively designed product is unreasonably dangerous").

When considering a reasonable alternative design, courts consider the following factors:

> (1) the magnitude and probability of the foreseeable risks of harm; (2) the instructions or warnings accompanying the product; (3) the nature and strength of consumer expectations regarding the product, including expectations arising from product portrayal and marketing; and (4) the relative advantages and disadvantages of the product as designed compared to as it alternatively could have been designed (i.e., the likely effects of the alternative design on production costs, the effects on product longevity, maintenance, repair, and aesthetics, and the range of consumer choice among products).

[*Lynn*, 894 F. Supp. 2d at 631]. As the fourth factor plainly indicates, this analysis must include a comparison of the original product's manufacturing and design costs to an alternative. In order to perform such an analysis, Plaintiffs need discovery to identify "product costs, the effects on product longevity, maintenance, repair, and aesthetics" of the PEX Products before a reasonable alternative design can be proposed. *Id.* The Court should reject NIBCO's argument as premature.

Regardless, the SAC *does* contain ample allegations of feasible alternative designs for NIBCO's PEX Tubing, Fittings and Clamps. With respect to the NIBCO PEX Tubing, the SAC alleges:

14

121.  Despite NIBCO's attestations to the quality and superiority of its PEX Tubing, consumers all across the United States have experienced water damage and catastrophic  PEX Tubing failures caused by slow growth cracking mechanisms consistent with  oxidative failure and/or creep rupture. *These slow growth cracking mechanisms have been caused by the insufficient stabilization and/or improper cross-linking of the PEX material used by NIBCO to manufacture its PEX Tubing.*

[SAC, ¶121 (emphasis added)].  Thus, the SAC alleges PEX Tubing that is sufficiently stabilized and properly cross-linked as a feasible alternative to NIBCO's PEX Tubing.

With respect to NIBCO PEX Fittings, the SAC alleges:

138.  The design, materials choices, and manufacturing practices of the brass fittings and stainless steel PEX Clamps marketed and sold by Defendant have created damaged products that begin to fail on their first day of use, even if properly installed in their intended environment.  Upon information and belief, Defendant no longer advertises these defective PEX Fittings on its website due to the design defect and susceptibility to dezincification. *Currently, Defendant advertises fittings that are "dezincification resistant."*

[(SAC, ¶138 (emphasis added)].  Dezincification-resistant fittings are thus at least one feasible design alternative to NIBCO's defective PEX Fittings.

Finally, with respect to NIBCO PEX Clamps, the SAC alleges:

140.  The failing PEX Clamps are manufactured from a stainless steel alloy that is known to be susceptible to stress corrosion cracking in the presence of chlorides, and these clamps are used in a design where simultaneous exposure to static tensile stress and chlorides is (or should have been) reasonably anticipated. Stress corrosion cracking could not occur in the PEX Clamps if the clamps were manufactured from a material that is not susceptible to chloride induced stress corrosion cracking.  *Alternate materials that are generally immune to chloride induced stress corrosion cracking (exhibiting little or no susceptibility) and that are approved for plumbing applications in the United States were readily available at little or*

15

538683.1

*no additional cost at the time the failing clamps were manufactured.*

[SAC, ¶140 (emphasis added)].

The foregoing allegations sufficiently plead feasible alternative designs for each of the NIBCO PEX Products.  NIBCO's request to dismiss the product liability claims contained in Counts IV, VI, VII, VIII, and X should be denied.

### 4.  Plaintiffs Adequately Allege a Manufacturing Defect Claim

At the pleading stage, a plaintiff is not required to differentiate between defects in design and manufacture.  *In re Caterpillar, Inc., C13 & C15 Engine Products Liab. Litig.*, 2015 U.S. Dist. LEXIS 98784, at *65-66 (D.N.J. July 29, 2015) (whether alleged repeated engine failures were caused by defective design or defective manufacture is a factual question that court cannot resolve on a motion to dismiss); *New Hope Pipe Liners v. Composite One, LLC,* 2009 U.S. Dist. LEXIS 111217, at *13 (D.N.J. 2009) (allegation that a product did not work as represented is sufficient to support an inference that the product suffered from a design or manufacturing defect).  Regardless, the SAC sufficiently alleges a manufacturing defect.

The SAC alleges the defects in NIBCO PEX Tubing, Fittings and Clamps, the representations made by NIBCO with respect to the superiority of its products, the numerous product failures within the anticipated useful life of NIBCO PEX Products, and the damages caused by those failures.  Those facts alone are

16

sufficient to place NIBCO on notice of a plausible claim of manufacturing defect.

NIBCO argues that each Plaintiff's claim for manufacturing defect should be dismissed because of the absence of an allegation as to how the failed NIBCO PEX Products deviated from the product's design specification.  Defendant seeks to hold Plaintiffs to an impossible standard since, without discovery, Plaintiffs have no access to design specifications (and NIBCO has not produced a single design specification despite numerous requests from Plaintiffs).  In fact, under the law of Plaintiffs' home states, Plaintiffs are not required to identify the precise nature of the manufacturing defect as Defendant demands.  Instead, Plaintiffs may establish a manufacturing defect using circumstantial evidence, as opposed to direct evidence of deviation from specifications.[4]

---

[4] *Moraca v. Ford Motor Co.,* 66 N.J. 454, 458 (1975) (to establish a manufacturing defect, injured plaintiff need only show, "in a general sense and as understood by a layman, that something was wrong with the product.") (citations omitted); *Mendez v. Shah*, 28 F. Supp. 3d 282, 297 (D.N.J. 2014)  (allegation that the medical records indicate that the device had a "hardware failure" suggested a plausible claim that the device as manufactured did not conform to standards of other units of the same kind); *Rudd v. Gen. Motors Corp.,* 127 F. Supp. 2d 1330, 1345 (M.D. Ala. 2001) (Alabama law allows plaintiffs to show a product was defective or unreasonably dangerous despite a lack of direct evidence identifying a specific defect): *Varner v. MHS, Ltd.,* 2 F. Supp. 3d 584 (M.D. Pa. 2014) (under the "malfunction theory" of liability, applied to claims of manufacturing defect under Pennsylvania law, plaintiffs may use circumstantial evidence, rather than direct evidence, to show that product was defective); *Shaun T. Mian Corp v. Hewlett-Packard Co.,* 237 S.W. 3d 851 (Tex. Ct. App. 2007) (plaintiff may use circumstantial evidence that a product contains a manufacturing defect and need not show by direct proof how the product became defective or identify a specific engineering or structural defect); *Lee v. Volkswagen of Am., Inc.*, 688 P.2d 1283, 1285-86 (Okla. 1984) (in product

Plaintiffs' SAC highlights NIBCO's product warranties, which guarantee that PEX Tubing will be "free from defects in materials and workmanship for a period of twenty-five (25) years from the date of purchase when installed by a licensed professional contractor…" or "…NIBCO INC. warrants NIBCO PEX tube, when used under normal conditions, use and service in potable water and radiant heat systems with brass insert fittings meeting NSF/ANSI 61, ASTM F1807 and ASTM F877 to be free from defects in materials and workmanship for a period ten (10) years form [sic] the date of purchase." SAC, ¶122.  Likewise, with respect to PEX Fittings and Clamps, NIBCO warrants the following: "NIBCO Inc. warrants that when NIBCO® PEX tube is used with NIBCO® PEX fittings, and NIBCO® valves and installation accessories, they will, under normal conditions, use and service in potable water and radiant heat systems, be free from defects in materials and workmanship for a period of twenty-five (25) years from the date of purchase when installed by a licensed professional contractor."  SAC, ¶131.

Each Plaintiff has alleged that NIBCO's PEX Products were installed by a licensed contractor (SAC, ¶¶18, 31, 47, 60, 71, 82, 95, 107) and failed long before the expiration of NIBCO's warranty.  The Coles experienced their first failure 18

---

liability actions against manufacturers, circumstantial evidence, coupled with proper inferences drawn from it, is sufficient, since actual or absolute may be only within the possession or peculiar knowledge of the defendant); *Rose v. Figgie Int'l, Inc.,* 495 S.E.2d 77, 81 (Ga. Ct. App. 1997) (existence of a manufacturing defect in a products liability case may be inferred from circumstantial evidence).

months after installation (SAC, ¶20), Mr. Monica's first failure was 23 months after installation (SAC, ¶¶29, 33), Mr. Boyd's first failure was less than five years after installation (SAC, ¶¶ 45, 49), McMahon's first failure was less than six years after installation (SAC, ¶¶58, 62), Mr. Sminkey's first failure was less than five years after installation (SAC, ¶¶69, 73), the Medders' first failure was less than two years after installation (SAC, ¶¶80, 84), the Pepernos' first failure was slightly more than six years after installation (SAC, ¶¶93, 97) and Mr. McCoy's first failure was within five years after installation (SAC ¶¶ 105, 108, 110).

At a minimum, the fact that each plumbing system was installed by a licensed contractor, was used in its anticipated fashion, and failed well within the warranty period is sufficient circumstantial evidence of a manufacturing defect to support a plausible claim for relief at the pleadings stage.  Therefore, Plaintiffs' product liability claims based on manufacturing defect should be sustained.

### D. **Plaintiffs have adequately alleged a negligence claim.**

Ignoring the SAC's detailed allegations, NIBCO argues that Plaintiffs' negligence claims should be dismissed because Plaintiffs have failed to plead facts regarding NIBCO's internal and non-public product development and testing procedures and because Plaintiffs have failed to identify alternative designs that, by nature, require discovery into NIBCO's internal and non-public product development and testing procedures.  Plaintiffs debunked the "alternative design"

argument *supra* at 12-16, and Plaintiffs respectfully incorporate that discussion here.  The SAC's allegations relating to defective PEX Products go well beyond the pleading requirements of Rule 8(a).  Thus, Plaintiffs' negligence claims should be sustained.[5]

### 1.  Plaintiffs have alleged enough facts to support a negligence claim

NIBCO mirrors its argument on the negligence claims from the Court's first ruling.  Db20.  The Court, however, rejected Plaintiffs' negligence claims because they were jointly pled under one Count, as opposed to separate Counts based on each state's laws.  *See Cole*, 2015 U.S. Dist. LEXIS 65960, at *30.  Plaintiffs addressed these issues in the SAC and, as set forth below, NIBCO's attempt to identify specific pleading deficiencies for any Plaintiff's negligence claim fails.

Next, Defendant misguidedly seeks to impose a burden on Plaintiffs to allege specific facts detailing the flaws with NIBCO's internal and confidential procedures regarding the design, manufacture, testing, and product evaluation of the PEX Products.  Db20-21.  NIBCO, however, cites no case that imposes a duty on plaintiffs, at the pleading stage, to identify flaws in a defendant's non-public internal testing and product evaluation procedures.

Plaintiffs' SAC describes with great specificity: the failure of Plaintiffs'

---

[5] Plaintiffs concede that Ms. Boyd's, Mr. McCoy's, and the Pepernos' claims for negligent marketing and/or testing cannot proceed under the respective state laws applicable to those claims.  *See* Db24-25.

538683.1

PEX Products (SAC, ¶¶14-111); after consultation with experts, the specific defects that led to the failures of the PEX Products, ¶121 (slow growth cracking consistent with oxidative failure and/or creep rupture of the PEX Tubing); ¶¶135-138 (dezincification of the PEX Fittings); ¶¶139-144 (chloride-induced stress corrosion cracking of the PEX Clamps)); and the duties of care NIBCO breached to Plaintiffs and all consumers when designing PEX Products that are prone to these failures (*see, e.g.*, *id.*, ¶¶ 251-254).  Defendant demands that the Court dismiss Plaintiffs' claims for failing to plead facts that detail the deficient or absent testing procedures of the PEX Products.  Plaintiffs, however, "cannot be expected to have personal knowledge of the details of corporate internal affairs."  *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989).[6]  Plaintiffs' negligence claims provide a sufficient factual basis to "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 555 (2007)).

NIBCO also argues that Plaintiffs' negligence claims regarding the defective PEX Clamps should be dismissed because none of the Plaintiffs experienced the failure of a PEX Clamp.  Plaintiffs disposed of this argument *supra* at 7-9

---

[6] *See also Kowalsky v. Hewlett-Packard Co.*, 2011 U.S. Dist. LEXIS 89379, at *14 (N.D. Cal. Aug. 10, 2011) ("Here, the charge is that HP knew about the defect from testing the product and falsely advertised to consumers or, alternatively, did not test the product but made specific claims about the product without any reasonable basis for doing so.  In either case, the SAC gives HP sufficient notice of the charge in order to defend against it.").

regarding their product liability claims.

NIBCO also rehashes its earlier argument that Plaintiffs' specific factual allegations regarding the PEX Clamps' predisposition to chloride-induced stress corrosion cracking are "vague" and not detailed enough to support a claim that NIBCO was negligent.  Db21.  Such an argument should be rejected for the same reasons set forth *supra*, as Plaintiffs have pled, with great specificity, the nature of the defect inherent in the PEX Clamps.  Again, NIBCO has failed to identify a single case that places the burden on Plaintiffs to identify and correct any flaws in NIBCO's design and manufacturing procedures before discovery on those specific procedures has been completed.

NIBCO also argues that Plaintiffs' allegation that "NIBCO manufacturers and sells PEX Fittings that *purportedly* conform to ASTM standard F1807" somehow weakens their negligence claims.[7]  Db21-22 (emphasis added). Plaintiffs' allegations make clear that NIBCO *advertises* that the PEX Fittings conform to ASTM standard F1807, not that the PEX Fittings *actually conform* to such standards.  SAC, ¶126.  Defendant's advertisements and warranty statements that the PEX Fittings conform to ASTM standard F1807 are contrasted with the experiences of Plaintiffs, such as Mr. Monica, who experienced dezincification

---

[7] NIBCO says that Plaintiffs "concede NIBCO has met industry standards" regarding the PEX Fittings.  Db 22 n.19.  As shown in the accompanying text and in the SAC, Plaintiffs have made no such concession.

corrosion of his ASTM F1807 PEX Fitting that led to complete failure and leaking. *See, e.g.*, SAC, ¶¶37-39.

Put simply, NIBCO's claim that the PEX Fittings conform to ASTM standard F1807 is undermined by Plaintiffs' experiences, the specific defect allegations in the SAC, and the fact that NIBCO has ceased selling them.  Thus, Plaintiffs' allegations have created an issue of fact as to whether the PEX Fittings actually conform to ASTM standard F1807.[8]  And even if NIBCO could prove that the defective PEX Fittings comply with ASTM F1807, "industry standards are not dispositive of negligence issues. . . ."  *Cordy v. Sherwin Williams Co.*, 975 F. Supp. 639, 645 (D.N.J. 1997) (citation omitted).

NIBCO reiterates that Plaintiffs' negligence claims in both Alabama (Count XI) and Georgia (Count XV) fail for the same reasons that Defendant offered in seeking to dismiss Plaintiffs' product liability claims.  Db24 (citing Db Section

---

[8] *See, e.g.*, *Anderson v. Hedstrom Corp.*, 76 F. Supp. 2d 422, 450 (S.D.N.Y. 1999) (concluding that the question of whether the ANSI or ASTM requirements constitute the industry standard and the question of whether the defendant's compliance or lack of compliance with the appropriate standard should result in liability should be left to the jury); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 995 (S.D. Cal. 2014) (finding a question of fact where plaintiffs alleged Sony warranted it would utilize industry-standard encryption but failed to do so); *Jack Henry & Assocs. v. BSC, Inc.*, 2010 U.S. Dist. LEXIS 92994, at *16 (E.D. Ky. Sept. 7, 2010) (resolving conformity with industry standards is a question of fact for the jury); *Nygren v. Greater N.Y. Mut. Ins. Co.*, 2009 U.S. Dist. LEXIS 26078, at *13 (D. Conn. Mar. 27, 2009) ("the Court believes that it is best left to the jury to decide whether any industry standards or practices have been violated.").

IV.C).  Plaintiffs addressed those arguments in discussing their product liability claims.  *Supra* at 6-19.  Defendant's contentions fare no better in connection with the negligence claims.

In sum, NIBCO has failed to demonstrate that Plaintiffs' detailed allegations do not state a claim upon which relief can be granted.[9]  Plaintiffs' negligence claims should be sustained.

### 2. The economic loss doctrine does not affect Plaintiffs' claims for property damage

As Defendant recognizes, the economic loss doctrine is not applicable to

---

[9] NIBCO cites, without analysis, a handful of factually inapposite cases, in which the pleadings fell far short of the SAC here.  In *Mallory v. Biomet, Inc.*, 2014 U.S. Dist. LEXIS 173781, at *13-14 (M.D. Ala. Dec. 4, 2014), the plaintiff failed to allege any "factual content" of a defect and even failed to allege her injury was caused by the defendant's product.  *Swisher v. Stryker Corp.*, 2013 U.S. Dist. LEXIS 185998, at *6 (W.D. Okla. Mar. 14, 2013), a Class III medical device case, was a case where the plaintiff failed to allege a manufacturing defect, which was especially problematic in light of the FDA's "rigorous Pre-Market Approval ("PMA") process and the [FDA's] continued strict oversight over Class III devices."  *Id.*  Moreover, the plaintiff failed to identify any causal connection between the non-identified defect and injury.  *Id.*, at *8-9.  Similarly, in *Polando v. Sears, Roebuck & Co.*, 2013 U.S. Dist. LEXIS 29700, at *3 (W.D. Okla. Mar. 4, 2013), the plaintiff's sole factual allegation was that the product failed, with no allegations describing any defect.  In *Goodson v. Boston Sci. Corp.*, 2011 U.S. Dist. LEXIS 149193 (N.D. Ga. Dec. 29, 2011), the plaintiff did "not describe *how* the [medical devices] were defective."  *Id.*, at *11 (emphasis in original). The plaintiff in *Steen v. Medtronic, Inc.*, 2010 U.S. Dist. LEXIS 65579, at *5 (N.D. Tex. June 25, 2010), also failed to offer "factual allegations showing how the pacemaker was [defective]."  *Salvio v. Amgen, Inc.*, 810 F. Supp. 2d 745, was addressed *supra* at 14 n.3.  In contrast, the SAC identifies the specific defect in each of the PEX Products and connects those defects to the failures of Plaintiffs' own Products.

Plaintiffs' claims for property damage arising out of the failure of the PEX Products.  *See* Db25-26.  Plaintiffs acknowledge, however, that the economic loss doctrine prevents them from recovering the economic cost to repair or replace their PEX Products.

### E.  Plaintiffs Have Adequately Pleaded Failure to Warn Claims

Defendant sets up a standard for failure to warn claims that finds little if any support from the controlling authority, misreads and misapplies the principles of duty and causation, and impermissibly attempts to avoid the consequences of its complete failure to provide any warning at all of the defects inherent in the PEX Products to Plaintiffs.  NIBCO gave no such warning to Plaintiffs, or even to the contractors or other workmen who installed the Products in Plaintiffs' homes.

In the SAC, Plaintiffs allege that:

1.)  Defendant failed to provide *any warnings whatsoever*, whether to Plaintiffs, contractors, installers, or anyone else, regarding the defective nature of the PEX products and the risk of water loss and damages associated with the use of the Products, *see* SAC, ¶¶177, 194-196, 207, 216, 226, 235, 246, 254; and

2.)  Defendant's failure to warn proximately caused Plaintiffs' injuries, including extensive damage to their plumbing systems and surrounding property, *see* SAC, ¶¶179, 190, 197, 209, 218, 228, 237,

538683.1

248, 255.

Under the law of each Plaintiff's home state, a manufacturer or supplier of a product has a duty to warn *someone* about defects inherent in the product.[10] Typically, this is the end user, like Plaintiffs here. *See* Restatement (Second) of Torts § 402A ("Special Liability of Seller of Product for Physical Harm to User or Consumer") ("[I]t is not necessary that the ultimate user or consumer have acquired the product directly from the seller, although the rule applies equally if he

---

[10] Whether the failure to warn is considered in the context of negligence or product liability, the majority of courts have determined that the outcome is the same. *See Anguiano v. E.I. DuPont De Nemours & Co.*, 44 F.3d 806, 811-12 (9th Cir. 1995) (stating that "the question whether a manufacturer has a duty to warn under strict liability depends on the standards for determining a duty to warn under a negligence action pursuant to [Restatement (Second)] section 388"; *Klem v. E.I. DuPont De Nemours Co.*, 19 F.3d 997, 1001-03 (5th Cir. 1994) (holding that failure-to-warn claims in strict liability and in negligence duplicate one another); *Werner v. Upjohn Co.*, 628 F.2d 848, 858 (4th Cir. 1980) (stating that although the negligence and strict liability theories may be phrased differently the issue is generally the same: "was the warning adequate?"), *cert. denied*, 449 U.S. 1080 (1981); *Sterling Drug, Inc. v. Yarrow*, 408 F.2d 978, 992-93 (8th Cir. 1969) (holding that the duties imposed by §§388 and 402A of the Restatement are the same regardless of characterization, because the manufacturer must give a warning that is reasonable under the circumstances); *Sell v. Bertsch & Co.*, 577 F. Supp. 1393, 1397 (D. Kan. 1984) (stating "A failure to warn may be negligence under Restatement § 388 or may make the product 'defective' under Restatement § 402 A. … Under either theory, the duty to warn is one of ordinary care."); *Leesley v. West*, 518 N.E.2d 758, 761 (Ill. Ct. App. 1988) (holding that where the issue regards a manufacturer's failure to warn, "the manufacturer's duty is essentially the same under either a negligence or [a] strict liability theory"); *Owens-Illinois, Inc. v. Zenobia*, 601 A.2d 633, 640 (Md. 1992) (embracing negligence principles in strict liability causes of action for failure to warn); *Hahn v. Richter*, 673 A.2d 888 (Pa. 1996) (stating that § 388's reasonable care standard was applicable to a cause of action alleging strict liability failure to warn).

26

does so. He may have acquired it through one or more intermediate dealers. *It is not even necessary that the consumer have purchased the product at all . . . . * The liability stated is one in tort, and does not require any contractual relation, or privity of contract, between the plaintiff and the defendant") (emphasis added).[11]

    In certain cases, a defendant may discharge its duty by providing warnings to "learned" or "sophisticated" intermediaries, though most jurisdictions have limited this doctrine to the specific context of pharmaceuticals. *See, e.g., Pittman v. Upjohn Co.*, 890 S.W.2d 425, 429 (Tenn. 1994) ("a majority of jurisdictions now recognize that the manufacturer of an unavoidably unsafe prescription drug can discharge its duty to warn by providing the physician with adequate warnings of the risks associated with the use of its drug"); *Wyeth, Inc. v. Weeks*, 159 So. 3d 649, 673 (Ala. 2014) ("A prescription-drug manufacturer fulfills its duty to warn the ultimate users of the risks of its product by providing adequate warnings to the learned intermediaries who prescribe the drug."); *but see Andreassen v. Saf-Gard Safety Shoe Co.,* 78 Pa D & C 4th 285, 302 (CP 2005) ("As a guarantor of its product, the duty to warn of any defects extends to the ultimate users and notice to

---

[11] This section applies not only to physical harm to the user or consumer's person but also to his or her property.  *See id.*  Each Plaintiff's home state has adopted the reasoning of § 402A.  *See, e.g., Sinclair v. Merck & Co., Inc.*, 195 N.J. 51, 64 (2008).; *Nye v. Bayer Cropscience, Inc.,* 347 S.W.3d 686, 692 (Tenn. 2011); *Caudle v. Patridge*, 566 So.2d 244, 246-47 (Ala. 1990); *Genie Indus., Inc. v. Matak*, 462 S.W.3d 1, 6 n.9 (Tex. 2015); *Parr v. Ford Motor Co.*, 109 A3d 682, 688 (Pa. 2014); *Mather v. L'Oreal USA, Inc.,* 695 S.E.2d 693, 695 (Ga. Ct. App. 2010); *Swift v. Serv. Chem.*, 310 P.3d 1127, 1131 (Okla. Ct. App. 2013).

a third party of such warnings will not serve to make the user aware of the defect in the product").

Regardless, in every jurisdiction, Defendant has a duty to provide warnings to foreseeable users of the product.[12]  Foreseeability itself is typically a question best left for the finder of fact, and Defendant simply cannot establish as a matter of law that Plaintiffs (and similarly situated consumers) were not foreseeable end users of products Defendant specifically designed and manufactured for use in residential plumbing applications.

Furthermore, while Defendant takes issue with Plaintiffs' allegations that its failure to warn proximately caused their injuries, to establish causation Plaintiffs must simply allege that they "would have avoided the risk had [they] been warned of it by the seller."  *Diggs v. M&J Painting & Wallcovering*, 34 Pa D & C 4th 397, 411 (CP 1996).  Plaintiffs' SAC alleges exactly that: had NIBCO warned them (or,

---

[12] *See, e.g., Toms v. J.C. Penney Co.*, 304 Fed. App'x 121, 126-127 (3d Cir. 2008) (under New Jersey law, manufacturers have a duty to warn foreseeable users of all hidden or latent dangers that would arise out of a reasonably anticipated use of their products) (internal quotations and citation omitted); *Avery v. Geneva County*, 567 So 2d 282, 287 (Ala. 1990); *Fouch v. Bicknell Supply Co.*, 756 S.E.2d 682, 689-690 (Ga. 2014) ("[w]hether a duty to warn exists depends upon foreseeability of the use in question, the type of danger involved, and the foreseeability of the user's knowledge of the danger. Such matters generally are not susceptible to summary adjudication and should be resolved by a trial in the ordinary manner"); *Edwards v. Basel Pharms.*, 933 P.2d 298, 300 (Okla. 1997); *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 362-63 (Tenn. 2008); *Humble Sand & Gravel, Inc. v. Gomez*, 146 S.W.3d 170, 172 (Tex. 2004) ("Generally, a product supplier must warn expected users of foreseeable risks that make the product unreasonably dangerous").

for that matter, a knowledgeable intermediary such as the contractor(s) who performed the work) of the defects inherent in the PEX Products, Plaintiffs would not have purchased the Products and, accordingly, would have avoided the exact harm they encountered when the Products failed.  *See* SAC, ¶¶151, 292.

Moreover, New Jersey, Pennsylvania, and Oklahoma have expressly adopted the "heeding presumption," establishing a presumption of proximate cause in favor of plaintiff in the absence of an adequate warning (or, as here, any warning).  *See Bessemer v. Novartis Pharms. Corp.*, 2010 N.J. Super. Unpub. LEXIS 3177, at *37 (Law Div. Apr. 30, 2010) ("[t]he heeding presumption provides the plaintiff with a rebuttable presumption on the issue of proximate cause that, if an adequate warning or instruction had been given, such warning or instruction would have been heeded by the plaintiff") (internal quotations and citations omitted); *Maya v. Johnson & Johnson & McNeil-PPC, Inc.*, 97 A.3d 1203, 1218 (Pa. Super. Ct. 2014); *Cunningham v. Charles Pfizer & Co.*, 532 P.2d 1377, 1382 (Okla. 1974). The presumption further defeats Defendant's causation argument at the pleadings stage with respect to the Mr. Monica, Mr. Sminkey, and the Pepernos.

Finally, while Defendant improperly goes beyond the SAC and speculates in a footnote that some of the installers of the PEX Products might have received warnings about the risks associated with PEX Clamps, it is black letter law that the duty to warn is non-delegable, and NIBCO cannot rely on a third-party entity to

provide warnings it should have provided itself.  *See Grier v. Cochran W. Corp.*, 308 N.J. Super. 308, 319 n.3 (App. Div. 1998) ("We agree with plaintiff's statement that a manufacturer may not delegate its duty to warn"); *Mackey v. Maremont Corp.,* 504 A.2d 908, 916 (Pa. Super. Ct. 1986) ("a duty to warn is non-delegable and runs to the ultimate user of the product"); *Humble Sand & Gravel v. Gomez*, 48 S.W.3d 487, 494 (Tex. Ct. App. 2001) ("[t]he duty to warn is nondelegable" subject to certain exceptions not applicable here), *rev'd on other grounds by Humble Sand & Gravel, Inc. v. Gomez*, 146 S.W.3d 170 (Tex. 2004).

All of this demonstrates the error in Defendant's argument that "the Court is left to guess as to what warnings NIBCO provided, how those warnings may have been deficient, and whether Plaintiffs . . . would have acted any differently if a different warning were provided."  Db16.  Plaintiffs' response is straightforward: NIBCO provided *no* warning regarding the defect, the warning was deficient because it did not exist, and Plaintiffs would not have utilized, or would not have continued utilizing, the PEX Products in their plumbing systems had they (or their installers) been warned of the defects that would later cause the Products to fail.

Defendant's suggestion that its failure to warn could not have caused Plaintiffs any injury because they "failed to read any of the alleged inadequate warnings," Db17, is a red herring because *there was no warning*.  Notably, each of the cases Defendant relies on for this proposition dealt with a situation where *some*

warning was provided but the plaintiff either failed to allege *how* the content of that warning was deficient or that he or she actually saw the warning at issue. Here, there was no warning to see.  And even if Plaintiffs could not have viewed or relied upon any warning prior to purchase, they certainly could have relied upon such warning after installation in order to avoid the injuries to their property (and attendant costs) that ensued when the Products actually failed.

As a result, the allegations in the SAC are more than sufficient for Plaintiffs to proceed on their failure to warn claims.

### F.  Mr. Sminkey Has Stated a Claim Under Oklahoma's Consumer Protection Act

Mr. Sminkey has adequately alleged facts that entitle him to relief under the Oklahoma Consumer Protection Act, Okla. Stat. Ann. tit. 15, §751 *et seq*.  To establish a prima facie case under the OCPA, a plaintiff is required to show, for example, "that the defendant engaged in an unlawful practice as defined at Okla. Stat. Ann. tit. 15, §753."  *Patterson v. Beall*, 19 P.3d 839, 846 (Okla. 2000).  These "unlawful practices include false or misleading representations; deceptive practices; practices which offend public policy and practices considered immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *Cline v. DaimlerChrysler Company*, 114 P.3d 468, 474 (Okla. Ct. App. 2015).  The OCPA is remedial in nature it is to be liberally construed to effectuate its underlying purpose."  *Patterson*, 19 P.3d at 849.

31

The four elements of a consumer's private action under the OCPA are: (1) that the defendant engaged in an unlawful practice as defined at Okla. Stat. Ann. tit. 15, §753; (2) that the challenged practice occurred in the course of defendant's business; (3) that the plaintiff, as a consumer, suffered an injury in fact; and (4) that the challenged practice caused the plaintiff's injury.  *Patterson,* 19 P.3d at 846.

Mr. Sminkey identifies two separate false, misleading, and deceptive business practices on the part of NIBCO.  He asserts a violation of  Okla. Stat. Ann. tit. 15, §753(5), which defines a deceptive trade practice as "[k]nowingly mak[ing] a false representation as to the characteristics, ingredients, uses, benefits or quantities of goods or services or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith."  Likewise, Mr. Sminkey alleges a violation of §753(7), which prohibits conduct that "[r]epresents that goods or services are a particular standard, quality, or grade, or that goods are a particular style or model, if they are another."

The SAC specifically identifies NIBCO's representations with respect to the quality of its PEX Tubing.  The SAC cites to NIBCO's warranty, product catalogs, website and other materials, which claim that its PEX tubing possesses "superior characteristics," "superior properties," and "delivers the highest quality PEX tubing available today."  *See* SAC, ¶122.  Mr. Sminkey identifies specific misrepresentations of the characteristics and superiority of NIBCO's PEX Products

32

on its website, in two separate NIBCO PEX catalogs, and in NIBCO's product warranty.  SAC, ¶¶120, 122.  Further, he alleges that NIBCO made these misstatements when it knew, or should have known, that its PEX Products were failing as a result of premature oxidative failure and creep rupture, dezincification, and chloride-induced stress corrosion cracking.  *Id.* at ¶¶2-4, 11, 121, 134-136.

Finally, Mr. Sminkey alleges that NIBCO's false, misleading and deceptive trade practice caused his injuries and that he would not have purchased NIBCO's products absent the deceptive conduct.  SAC, ¶ 292. Moreover, the SAC alleges that NIBCO's actions affect the public interest because Plaintiffs were injured in exactly the same way as thousands of others purchasing NIBCO's PEX products as a result of NIBCO's generalized course of deception.  SAC,  ¶290.

Based on the foregoing allegations, Mr. Sminkey's OCPA claim is virtually identical to *McAlister v. Ford Motor Co*, 2015 U.S. Dist. LEXIS 106543 (W.D. Okla. 2015).  There, the court refused to dismiss the plaintiff's OCPA claim where it was alleged that the defendant knew of a defect and failed to disclose it in violation of the public policy of vehicle safety.  *See also Parks v. AT&T Mobility, LLC*, 2011 U.S. Dist. LEXIS 3157 (W.D. Okla. Jan. 12, 2011)  (refusing to dismiss OCPA claim at the pleading stage where it was alleged that the defendant's advertising circular and customer service summary omitted material facts that deceived plaintiff and could have reasonably been expected to deceive others).

*Hammonds v. Boston Sci., Inc.*, 2011 U.S. Dist. LEXIS 120943 (W.D. Okla. Oct. 19, 2011), cited by NIBCO, actually supports Mr. Sminkey.  In *Hammonds,* the court dismissed the plaintiff's OCPA claims because she failed to identify what warranties and misrepresentations were made.  *Id*., at *5.  Here, Mr. Sminkey specifically identifies both the warranties and misrepresentations made by NIBCO.

Defendant's "puffing" argument is incorrect.  A representation is puffing when it is an opinion or made with respect to some future event.  *Bankers' Trust Co. v. Brown*, 107 P.3d 609, 614 (Okla. Ct. App. 2005).  Even some representations as to the future can be actionable, however, since such representations "always carry an implied representation that the speaker knows of no facts which will prevent it from being accomplished; and as in the case of any other opinion, it has been held that there may be reasonable reliance upon the assertion where the speaker purports to have special knowledge of facts which would justify the expectations he is raising."  *Hall v. Edge*, 782 P.2d 122, 128 n. 4 (Okla. 1989).  Thus, the fact that statements relate to the future will not preclude liability for fraud if such statements were intended and accepted as representations of fact and involved a matter peculiar within the speaker's knowledge.  *API Enterprises, Inc. v. Am. Standard, Inc.,* 2008 U.S. Dist., LEXIS 23587, at *9-10 (W.D. Okla. Mar. 25, 2008) (holding that whether statements of future performance constituted fraudulent misrepresentations or were puffing was a

34

factual question for the jury).

NIBCO's specific statements about its supposedly superior manufacturing methods,[13] the disparity between NIBCO's knowledge and that of Mr. Sminkey, and the fact that NIBCO's representations related to the future performance of the PEX Products were made at a time when NIBCO was aware that its PEX Products were failing prematurely as a result of design and manufacturing defects, defeat any puffing argument.  Therefore, Mr. Sminkey's OCPA claim should be upheld.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully submit that Defendant's partial motion to dismiss the SAC should be denied in its entirety.

Dated:  August 31, 2015                    **LITE DEPALMA GREENBERG, LLC**

                                           */s/ Bruce D. Greenberg*
                                           Bruce D. Greenberg
                                           570 Broad Street, Suite 1201
                                           Newark, NJ 07102
                                           Telephone: (973) 623-3000
                                           Facsimile: (973) 623-0858
                                           Email: bgreenberg@litedepalma.com

---

[13] Defendant's representations that its PEX Products possess "superior characteristics," "superior properties," and "delivers the highest quality PEX tubing available today," *see* SAC, ¶122, make an explicit comparison between NIBCO's products and those of others as to which products, on the basis of objective science, have "superior characteristics [and/or] properties" or are of "the highest quality."  As this Court ruled in *Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 540 (D.N.J. 2011), claims that are "specific and measurable," as are Defendant's claims regarding the superiority of its Products compared to others, are not puffery.

**CHIMICLES & TIKELLIS LLP**
Joseph G. Sauder
Matthew D. Schelkopf
Benjamin F. Johns
Joseph B. Kenney
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
E-mail: JGS@chimicles.com
        MDS@chimicles.com
        BFJ@chimicles.com
        JBK@chimicles.com

**STUTMAN LAW**
Daniel Hogan
Michael J. Hopkins
500 Office Center Drive, 301
Fort Washington, PA 19034
Telephone: (215) 283-1177
Facsimile: (215) 283-1188
Email: HoganD@stutmanlaw.com
       HopkinsM@stutmanlaw.com

***Attorneys for Plaintiffs and Interim Co-Lead Counsel***

36