UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KIMBERLY COLE, ALAN COLE, JAMES MONICA, LINDA BOYD, MICHAEL MCMAHON, RAY SMINKEY, JAMES MEDDERS, JUDY MEDDERS, ROBERT PEPERNO, SARAH PEPERNO, AND KELLY MCCOY, on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**NIBCO, Inc.,**<br><br>**Defendant.** | Civil Action No. 3:13-cv-07871-FLW-TJB<br><br>MEMORANDUM OPINION |
| **FRANK M. ALBRIZIO AND HARRIET ALBRIZIO, on behalf of themselves and all others similarly situated,**<br><br>**Movants,**<br><br>v.<br><br>**NIBCO, Inc.,**<br><br>**Respondent.** | |

**BONGIOVANNI, Magistrate Judge**

**Introduction**

Before the Court is intervenors', Frank M. Albrizio and Harriet Albrizio ("Albrizios"), motion to intervene. [Docket Entry No. 76]. The Albrizios seek to intervene as plaintiffs on behalf of themselves, and similarly situated individuals living in Florida, and join the current plaintiffs:

Kimberly Cole, Alan Cole, James Monica, Linda Boyd, Michael McMahon, Ray Sminkey, James Medders, Judy Medders, Robert Peperno, Sarah Peperno, and Kelly McCoy (collectively "Plaintiffs"). Defendant NIBCO, Inc. ("NIBCO") has filed opposition to the motion [Docket Entry No. 77], to which the Albrizios replied [Docket Entry No. 78]. The Court fully reviewed and considered all arguments made in support of and in opposition to the Albrizios' motion, and considered the motion without oral argument pursuant to L.Civ.R. 78.1. For the reasons set forth below, the Albrizios' motion is GRANTED.

## I. Procedural and Factual Background

The Albrizios and the Plaintiffs are homeowners alleging they purchased three plumbing related products manufactured by NIBCO, had them installed in their homes by licensed contractors, and used the products for typical home-plumbing purposes until one or more of the products failed prematurely, resulting in water damage to their homes. [Docket Entry No. 50, *Pl. Sec. Am. Cmplt.* at ¶¶14-111; *See also* Docket Entry No. 76-4, *Albrizio Cmplt. in Intervention* at ¶¶16-24]. The three products at issue are (1) cross-linked polyethylene plumbing tubes ("PEX Tubing"), (2) brass fittings that connect the PEX Tubing together (the "PEX Fittings"), and (3) the stainless steel clamps that join the PEX Tubing with the PEX Fittings (the "PEX Clamps, and collectively the "PEX Products"). [Docket Entry No. 50 at ¶1].

The Plaintiffs filed their putative products liability class action case on December 27, 2013, bringing breach of express warranty, breach of implied warranty of merchantability, and various state law claims, on behalf of themselves and a putative nationwide class of homeowners defined as:

> "All persons or entities who sustained damages proximately caused by NIBCO's defective PEX Products used in the water plumbing systems of Plaintiffs' and Class members' homes and other structures, or which otherwise were installed in the homes and structures of Plaintiffs and the Class and require remediation."

[See Docket Entry No. 50 at ¶¶1-13, 112, 147].

The Plaintiffs alternatively bring these claims on behalf of themselves and individuals and entities residing in a series of similarly defined state subclasses: New Jersey, Pennsylvania, Alabama, Georgia, Texas, Oklahoma, and Tennessee.  [See *Id.* at ¶148].

The Albrizios are Florida residents who filed their motion to intervene and the corresponding complaint-in-intervention on November 13, 2015, and wish to bring their breach of express warranty, breach of implied warranty of merchantability, negligence, and breach of the Florida Deceptive and Unfair Trade practices Act (§§501.201, Fla. Stat. Ann., *et seq*.) claims as co-plaintiffs under the banner of the Plaintiffs' nationwide class; or alternatively as a Florida state subclass.  [Docket Entry No. 76-4 at ¶¶63-96].  The Albrizios argue they have a right to intervene pursuant to Fed.R.Civ.P. ("Rule") 24(a), but should the Court find otherwise, they should be permitted to intervene pursuant to Rule 24(b).  The Albrizios have not filed a lawsuit in Florida raising the aforementioned claims.

## II. Analysis

### a. **Intervention of Right**

Rule 24(a) governs requests made to intervene as of right in federal litigation.  According to Rule 24(a):

> On timely motion, the court must permit anyone to intervene who:
>
> (1) is given an unconditional right to intervene by a federal statute; or
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The Third Circuit has held that intervention under Rule 24(a)(2) is only appropriate if:

> (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or

> impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation.

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995) (quoting *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987)). Each requirement must be met in order for an applicant to intervene as of right. *Id.*

In opposing the Albrizios' motion, NIBCO essentially concedes that the Albrizios' motion is timely, focusing its opposition solely on the Albrizios' failure establish a sufficient interest in the litigation. The Court agrees with NIBCO's tacit acknowledgement and finds that the Albrizios' motion is timely. The Plaintiffs' filed their initial complaint in December 2013, and have engaged in very limited discovery as a joint discovery plan was not in place until July 6, 2015. [See Docket Entry No. 52, *Order Granting Joint Discovery Plan*]. Additionally, no class has been certified, nor has the deadline to file dispositive motions passed. [*Id*].

Therefore, the next inquiry is whether the Albrizios have a sufficient interest "relating to the property or transaction which is the subject of the action," that is "significantly protectable." *Mountain Top*, 72 F.3d at 366. Although the Third Circuit recognizes "no precise and authoritative definition of the interest" exists, generally, an "economic interest in the outcome of litigation is insufficient to support a motion to intervene." See *Kleissler v. U.S. Forest Service*, 157 F.3d 964, 969 (3d Cir. 1998)); See also *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 221 (3d Cir. 2005) (quoting *Mountain Top,* 72 F.3d at 366). The "mere fact that a lawsuit may impede a third party's ability to recover in a separate suit ordinarily does not give the third party a right to intervene." *Id*. (See also *United States v. Alcan Alum., Inc.*, 25 F.3d 1174, 1185 (3d Cir. 1994)) ("Some courts have stated that a purely economic interest is insufficient to support a motion to intervene."); *Mountain Top*, 72 F.3d at 366 (holding that the denial of the request to intervene would be correct "if the appellants'

only interest in the present case was to ensure that the [debtor] would have sufficient resources to satisfy any judgment that [the intervenor] may be able to obtain.").

The Albrizios define their interest as: "recovery for all persons with homes and other structures, physically located in the State of Florida in which Defendant's PEX Products were installed." [See Docket Entry No. 76-2, at p.6]. The Albrizios claim their interest directly relates to the property or transaction which is the subject of the action, namely the purchase and failure of NIBCO's PEX Products. [*Id.*]. The Albrizios argue that this interest, when read together with the "elasticity that Rule 24 contemplates" found in *Kleissler*, is substantial enough to merit intervention as of right. [*Id.*]

NIBCO argues that the Albrizios have no substantial interest because no class has been certified and as such, there are no interests requiring protection. NIBCO cites two cases in support of their proposition. See *Glover v. Ferrero USA, Inc.*, No. 11–1086, 2011 WL 5007805, at *2 (D.N.J. Oct. 20, 2011) (denying a motion to intervene by putative members of an uncertified class because their stated interests of (1) dismissing or transferring the case pursuant to the application of the first-to-file rule; (2) litigating in their forum of choice; (3) avoiding inconsistent rulings that might prejudice their action; and (4) avoiding delay, expense and waste from litigating duplicative actions). NIBCO particularly relies on *Worthington v. Bayer Healthcare LLC*, No. CIV.A. 11-2793 ES, 2011 WL 6303999, at *1-2 (D.N.J. Dec. 15, 2011) as persuasive authority in the class-action context about when an interest is substantial enough to meet the second prong of the test for intervention as of right.

In *Worthington*, Diana Stanley ("Stanley"), filed a putative nationwide class action in the Southern District of California, on April 22, 2011, alleging California and common law causes of action against Bayer concerning its advertising and marketing practices regarding Bayer products. *Worthington*, 2011 WL 6303999, at *1. One month later, two other plaintiffs, Robert Worthington and Dino Rikos, filed two separate actions in the United States District Court for the District of New

Jersey, alleging nationwide claims against Bayer under New Jersey law also related to the deceptive advertising and marketing of the same Bayer products at issue in Stanley's lawsuit. *Id*. at *2. Two months later, another plaintiff, Troy Yuncker, likewise filed a complaint in the District of New Jersey alleging nationwide class claims mirroring those of both Stanley's and the pre-existing New Jersey complaints. *Id*. Prior to class certification in any of the four cases, Bayer moved to dismiss the three New Jersey actions pursuant to the first-to-file rule, arguing that the three New Jersey complaints are duplicative of Stanley because they "complain […] of the same conduct by the same Defendant, on behalf of the same proposed class of consumers, and seek […] the same relief." *Id.* Stanley's four stated interests were (1) filing her own motion to dismiss or transfer by applying the first-to file rule; (2) litigating in her forum of choice; (3) avoiding inconsistent rulings that might prejudice her action; (4) and avoiding delay, expense and waste from litigating duplicative actions, were insufficient to merit intervention as of right. *Id*. at *5.

The *Worthington* court found Stanley's interests insufficient. *Id.* at *5-7. Stanley's desire to argue different or additional point to Bayer's motion to dismiss, and the Court's decision on her intervention, were insufficient because neither would impact Stanley's California case. Similarly, prior to class certification, the risk of inconsistent decisions was too remote as it would require the Court to speculate about which states' law controlled. Lastly, Stanley's costs would remain the same in California, and any delay would be *de minimis* regardless of whether the New Jersey actions went further.

Neither *Glover* nor *Worthington* are as instructive as NIBCO would have the Court believe. Both rulings were based on other grounds than whether the intervenors interests would have been sufficient had they attempted to intervene for the purpose of joining their claim with the existing New Jersey plaintiffs. Additionally, as mentioned by the Albrizios in their reply, the *Worthington* court

directly explained, albeit in brief *dicta* and without any relevant citation, that "Stanley **would** have a direct interest in the litigation if she sought to intervene for the purpose of asserting her consumer fraud act and breach of warranty claims along with Plaintiffs."  *Id.* at 6 (emphasis original).  As none of the cases cited by the parties is instructive, we require a closer examination of substantial interests found in controlling caselaw.

It is clear that *after* class certification, an absent class member-intervenor will necessarily have a significant interest in the litigation.  See *In re Cmty. Bank of Northern Virginia Mortgage Loan Litig.*, 418 F.3d 277, 314 (3d Cir. 2005) (finding when unnamed class member seeks to intervene in class action, sufficient interest factor "is satisfied by the very nature of class action litigation, intervention.").  However, no controlling authority has squarely addressed the issue at hand: whether a proposed intervenor, who is not already a plaintiff in another lawsuit, and who seeks to intervene for the purpose of joining their claims in a putative nationwide class or state subclass, has a *per se* sufficient interest to satisfy the second prong of the test for intervention as of right.

In *Mountain Top Condo*, Walter and Susan Seipel were residents ("Seipels") of the hurricane-damaged Mountain Top Condominiums and were permitted to intervene in a litigation between their condo association, the Mountain Top Condominium Association ("MTCA") and the building company hired to repair damage caused to the condos by Hurricane Hugo.  *Mountain Top,* 72 F.3d at 363-4.  Instead of appointing an insurance trustee to adjust the damage and receive the corresponding insurance proceeds, as required by the MTCA's bylaws, the MTCA Board ("Board") distributed the $1,538,613 of insurance proceeds directly to condo residents, according to the size of the residents' respective condo sizes and irrespective of the damage sustained to their condos.  *Id*. at 364.  As a result, some condo owners received a windfall.  *Id*.  After the Board appointed Dave Stabbert Master Builder ("Stabbert") to repair the hurricane damage, and Stabbert's allegedly inferior

work spurned the underlying lawsuit; the remaining $250,000 in insurance proceeds were put into an escrow fund, pending the resolution of the litigation.  *Id*.  When it became apparent to the Seipels that any settlement between the Board and Stabbert might deplete the remaining funds allocated for repairing the damage, the Seipels sought to intervene in the mediation process between the Board and Stabbert.  *Id*. at 365.  The Circuit Court found the District Court's denial of the Seipels' intervention was improper because the MTCA bylaws mandated the $250,000 in remaining insurance proceeds were to be held in an insurance trust for the express benefit of the condo owners.  *Id.*  Therefore, the Seipels had a substantial legal interest in the *corpus* of the trust, namely the remaining trust assets.  *Id*. at 367-8.  ("While the Seipels may not have an interest in the merits of the claims pending between MTCA […] and Stabbert, they do have an interest in the property over which the court has taken jurisdiction. Clearly they have an interest in being heard with respect to the disposition of that fund.").

Subsequently, *Kleissler*, allowed a series of intervenors to intervene in a litigation brought by six environmentalists against the United States Forrest Service ("Service").  See *Kleissler*, 157 F.3d at 971.  The plaintiffs claimed the Service violated provisions of the National Environmental Policy Act by approving two logging projects that permitted substantial tree cutting in the Allegheny National Forest.  *Id*.  The plaintiffs asked for an injunction on the logging activity, and the suspension or termination of the logging contracts between the Service and logging companies.  *Id*.  The Third Circuit eschewed a mechanical approach in favor an elastic approach to determining whether an intervenors interest was sufficient.  *Id*. at 970; See also *Treesdale,* 419 F.3d at 225 ("We agree with Liberty Mutual's contention that *Kleissler* 'stands only for the proposition that a Court should not apply a mechanical approach when evaluating the relevant interests for intervention, but instead should examine the facts to determine whether the suit would directly alter contractual or other legally protectable rights of the proposed intervenors.").  In using this approach, the Third Circuit found a

logging company had a sufficient interest in the litigation, as the company had won the government logging contract bids underlying the litigation, and their business would be directly impaired by the environmentalist plaintiffs' injunction on their logging activities.  See *Kleissler*, 157 F.3d at 973. ("Ridgway Lumber had more than a mere expectancy of obtaining a contract in the future. It was already a successful bidder […] [and] would now be a party to a remunerative contract for logging but for the institution of this litigation.").  The Circuit also found other logging companies, who had not won logging contract bids, had a sufficient interest because the other companies had such a longstanding dependence upon uninterrupted logging, that their continued existence would be jeopardized.  See *Id*. ("Brookville Wood Products and Northeast Hardwoods may not have received contracts under the projects challenged by plaintiffs, but the district court found that they are 'very dependent on timber contracts with the Service to cut timber' in the forest and 'their continued existence may be jeopardized' if plaintiffs prevail.")  Similarly school districts, who received partial proceeds resulting from the sale of the cut timber, had a sufficient interest because the injunction would reduce the funds they received and heavily relied on because of the school districts' limited tax bases. See *Id.*  ("The school districts and municipalities [in these sparse areas with limited tax bases] have direct interests in this litigation because state law commands the Commonwealth, through its political subdivisions, to forward to them federal grant money generated through timber harvesting each year, money that they will lose, at least temporarily and perhaps permanently, if plaintiffs are successful in this lawsuit.").

Lastly, in *Treesdale*, the plaintiffs sued a manufacturer, PMP, for injuries allegedly sustained in connection with exposure to asbestos-containing products.  *Treesdale,* 419 F.3d at 220–21.  In a separate action, the manufacturer's insurer, Liberty Mutual, sought a declaratory judgment against PMP, arguing it had no further duty to indemnify PMP.  *Id.*  The plaintiffs in the asbestos action

sought to intervene in PMP's declaratory judgment action, claiming the court's decision could affect their ultimate right to recovery.  *Id*.  Affirming the district court's denial of the motion to intervene, the Third Circuit concluded that the plaintiffs' interest in the disputed insurance policies was insufficient to circumvent the general rule that "a mere economic interest in the outcome of litigation is insufficient to support a motion to intervene."  *Id.* (quoting *Mountain Top Condo* 72 F.3d at 366).  The asbestos plaintiffs argued the potential recovery for their injuries could be impacted or eliminated because of the ruling in the related coverage case.  Nevertheless, the Court denied intervention.  Summarizing its ruling, the Third Circuit stated: "[a]ppellants here have no property interest in the Liberty Mutual policies nor do they have any other legally protectable interest in the policies. Rather, they have the kind of economic interest in the insurance proceeds that we have held does not support intervention as a matter of right.  *Id*. at 222;

This precedent suggests two independent bases for a sufficient interest in the litigation.  Intervenors may have an interest in property at issue, much like the intervenors in *Mountain Top Condo* who had an actual definable legal interest in the *res* of an insurance trust created for their express benefit; but also intervenors will have a substantial interest if they can demonstrate a definable right would be affected or a harm suffered, such as the non-bid-winning logging companies and school districts found in *Kleissler*. In that sense the Third Circuit alludes the third element of the test for intervention of right, that an interest will be affected, can aid in defining whether there is a sufficient interest at all.  See also *Old Colony Trust Co. v. Penrose Industries Corp*., 387 F.2d 939, 941 (3d Cir. 1968) (Court held a "*would-be* purchaser" did not have an adequate interest for intervention in a declaratory judgment action over the commercial reasonableness of the sale price of collateral (emphasis added));  See also *EEOC v. AT&T*, 506 F.2d 735, 741–42 (3d Cir. 1974)  (Union was permitted to intervene to contest a proposed consent decree between the government and an employer

that *could have affected the terms* of a collective bargaining agreement (emphasis added);   See also *Harris v. Pernsley*, 820 F.2d 592, 599-603 (3d Cir. 1987) (Court denied intervention to a district attorney in a suit brought to alleviate overcrowding and other conditions in the local penal institution because the district attorney did not administer the prison and that a consent decree placing a ceiling on the prison population *would only tangentially affect* his ability to prosecute (emphasis added);   But see *United States v. Alcan Aluminum, Inc*., 25 F.3d 1174, 1183-86 (3d Cir. 1994) (Held that an adequate interest for intervention had been established where a right of contribution for expenses incurred in cleaning up a hazardous waste site *could have been* jeopardized by a proposed consent decree (emphasis added);   See also *Brody By & Through Sugzdinis v. Spang*, 957 F.2d 1108, 1116-17 (3d Cir. 1992) (Proposed intervenors group of students and parents had no interest in litigating the merits of the school's policies, but to the extent a remedy fashioned in a decree *might infringe* on their First Amendment rights, the parents and students could be eligible for participation in the suit (emphasis added);   See also *Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc*., 54 F.3d 156, 162 (3d Cir. 1995) (Plaintiff member of a nonprofit corporation permitted to intervene to protect the continued viability and tax exempt status of the corporation);   See also *Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pennsylvania*, 701 F.3d 938, 944 (3d Cir. 2012) (Mental facility residents had no sufficient interest in maintaining their current form of care as it was not directly in jeopardy in this litigation because the current parties deliberately defined the class and the relief sought so that Intervenors' right to choose institutional treatment would not be affected and *they will not be personally bound by anything that is decided in this litigation* (emphasis added).

      Based on this interpretation discussed *supra*, we disagree with the Albrizios characterization of *Worthington*. Even had Stanley intervened to join her existing claims with the New Jersey plaintiffs, the *Worthington* court's denial of her intervention would not have affected her California lawsuit.

Stanley would have been unable to demonstrate a specific interest in the property or transaction before the *Worthington* court, as the intervenors in *Kleissler* could. Similarly, the Albrizios have not demonstrated a significant interest in the property or transaction that is presently *before this Court*. This Court's denial of the Albrizios intervention will not affect their rights as the Albrizios still may file their claims unobstructed in Florida. The Albrizios will necessarily not have an interest until a class is certified. Upon certification, the stage will be set for either a nationwide class, which would include the Albrizios, necessarily giving them an interest; or alternatively for a Florida state-subclass, also necessarily giving the Albrizios an interest. Even assuming a Florida state-subclass was not included in the class-definition, the Albrizios would have an interest because the exclusion of the Florida state-subclass could prevent the Albrizios from raising their separate and distinct Florida state law claims. Until then however, the Albrizios have not demonstrated their stated interest rises above the "mere economic interest" of a "generalized nature" that is insufficient to merit intervention as of right.

"Each [Rule 24(a)(2)] requirement[ ] must be met to intervene as of right." *Mountain Top*, 72 F.3d at 366. Consequently, as the Albrizios have not met the second prong of the test for intervention as of right, this Court need not analyze their arguments under the third or fourth prongs of that test. The Albrizios' request to intervene as of right is denied.

      b. **Permissive Intervention**

The Albrizios alternatively seek to intervene as a matter of permission under Rule 24(b). [See Docket Entry No. 76-2, at p.8]. They briefly argue they satisfy the requirements of permissive intervention because their claims against NIBCO share questions of law and fact with the existing Plaintiffs, their application was timely, and their participation in the lawsuit would neither unduly delay the proceedings nor prejudice the adjudication of the rights of the original parties. [*Id*.].

Permissive intervention is governed by Rule 24(b). Under Rule 24(b) the intervenor may be

permitted to intervene if "(1) the motion is timely; (2) an [intervenors] claim or defense and the main action have a question of law or fact in common; and (3) the intervention may not cause undue delay or prejudice to the original parties' rights." *King v. Christie*, 981 F. Supp. 2d 296, 309 (D.N.J. 2013), *aff'd*, 767F.3d 216 (3d Cir. 2014) *cert denied*, 135 S. Ct. 2048 (2015). Whether to allow a party to permissively intervene is left to the sound discretion of the Court. See *Worthington*, 2011 WL 6303999, at *8.

NIBCO has taken no position as to whether the Albrizios meet the requirements for intervention under Rule 24(b)(1)(B). [See Docket Entry No. 77 at p.4]. Instead, NIBCO only wishes to highlight the distinction between the standard for establishing the existence of a common claim or defense for purposes of permissive joinder, and the rigorous standards applicable to class-certification under Rule 23(a) and Rule 23(b)(3). [See *Id*.]. NIBCO also reserves all rights to defend against the merits of the Albrizios' claims, including dismissing the Albrizios' complaint. [*Id*.].

As the class certification rules have no bearing on this Court's consideration of the Albrizios motion, the Court need not address them herein. Additionally, the Court has considered the timeliness factor in the intervention as of right analysis. Likewise, in comparing the Albrizios' complaint with the Plaintiffs' complaint, there is no doubt that there would be ample common questions of law and fact, as the PEX Products at issue are the same for both the Albrizios and the Plaintiffs. Finally, as NIBCO has taken no position as to whether or not the Albrizios meet the requirements for permissive joinder, and NIBCO has reserved all rights in defending against the Albrizios' complaints, they essentially concede that they will not be prejudiced. For those reasons, Albrizios meet the requirements for permissive intervention.

## IV.  CONCLUSION

For the reasons stated above, the Albrizios' motion to intervene is GRANTED.  An appropriate Order follows.

Dated: March 31, 2016

                                              /s/ Tonianne J. Bongiovanni
                                 **HONORABLE TONIANNE J. BONGIOVANNI**
                                 **UNITED STATES MAGISTRATE JUDGE**

[Docket Entry No. 76 is hereby terminated.]