# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| KIMBERLY COLE, ALAN COLE, JAMES MONICA, LINDA BOYD, MICHAEL MCMAHON, RAY SMINKEY, JAMES MEDDERS, JUDY MEDDERS, ROBERT PEPERNO, SARAH PEPERNO, and KELLY MCCOY, on behalf of themselves and all others similarly situated, | Civil Action No.: 13-cv-7871(FLW)(TJB) |
| Plaintiffs, |  |
| vs. |  |
| NIBCO, Inc., |  |
| Defendant. |  |

---

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT NIBCO, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

**LITE DEPALMA GREENBERG, LLC**
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, NJ 07102
Phone: (973) 623-3000
Email: bgreenberg@litedepalma.com

***Attorneys for Plaintiffs and Interim Co-Lead Counsel***

[*Additional counsel on signature page*]

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

RELEVANT FACTUAL BACKGROUND............................................................3

I.  NIBCO's Defective PEX Products, Knowledge of Those Defects, and
    Efforts to Conceal the Defects from Customers and Auditors......................3

    1.  Tubing.................................................................................................3

    2.  Fittings................................................................................................5

    3.  Leak Prevention and Damages ...........................................................6

II. Individual Plaintiffs ....................................................................................6

ARGUMENT ..........................................................................................................6

I.  NIBCO Breached the Explicit and Unambiguous Terms of Its Warranty......6

II. Plaintiffs Can Maintain Warranty Claims For Products That Did Not Leak
    Because The Record Shows Those Products Are Already Failing ..............11

III. The Economic Loss Doctrine Does Not Bar Plaintiffs' Tort Claims for
     Products That Leaked Because All Leaks Caused Legally Cognizable
     Damage to "Other Property" .......................................................................14

IV. NIBCO's Plaintiff-Specific Grounds for Summary Judgment Should Be
    Denied, In Part ...........................................................................................17

    1.  NIBCO's Privity Argument Regarding Plaintiff McCoy is Wrong....17

    2.  NIBCO's Arguments Regarding Plaintiff Sminkey are Wrong .........18

        a.  Sminkey Satisfies the Basis of the Bargain Requirement for his
            Express Warranty Claim ...........................................................18

        b.  Sminkey's Notice Was Adequate Under Oklahoma Law ........18

i

3.  Plaintiff Boyd Has Viable Claims for Express Warranty, Strict Liability, and Negligence ...................................................................21

   a.  Boyd's Express Warranty Claim Can Be Maintained ..............23

   b.  NIBCO previously inspected Boyd's defective PEX Products 23

4.  NIBCO is not Entitled to Summary Judgment on the Coles' TPLA Failure to Warn Claims .........................................................................25

5.  NIBCO is Not Entitled to Summary Judgment On Monica's Express Warranty or Strict Liability Claims...................................................26

   a.  Monica Complied with the Express Warranty's Requirements, Which is Presumed to be a Basis of the Bargain ................................27

   b.  NIBCO is Not Entitled to Summary Judgment on Monica's Strict Liability Post-Sale Failure to Warn Claim ................................27

   c.  Monica Has Not Been Made Whole .........................................30

6.  The Evidence Supports the Pepernos' Claims for Express and Implied Warranties ...........................................................................................30

   a.  Express Warranty ....................................................................32

   b.  Implied Warranty ....................................................................32

7.  The Evidence Supports McMahon's Claims for Express and Implied Warranties ...........................................................................................34

   a.  Express Warranty ....................................................................35

   b.  Implied Warranty ....................................................................37

8.  The Evidence Supports the Medders' Claims for Express and Implied Warranties ...........................................................................................39

CONCLUSION ........................................................................................40

# TABLE OF AUTHORITIES

*Cases*

*Baleares Link Exp., S.L. v. GE Engine Servs.-Dallas, LP,*
  335 S.W.3d 833 (Tex. App. 2011) ........................................................38

*Barko Hydraulics, LLC v. Shepherd,*
  167 So. 3d 304 (Ala. 2014) ................................................................12

*Belville v. Ford Motor Co.,*
  13 F. Supp. 3d 528 (S.D.W. Va. 2014) ...............................................13

*Ben Fitzgerald Realty Co. v. Muller,*
  846 S.W.2d 110 (Tex.App.-Tyler 1993, writ denied) ..........................38

*Best v. Realty Mgmt. Corp.,*
  101 A.2d 438 (Pa. 1953) ......................................................................7

*Brooklyn Life Ins. Co. of New York v. Dutcher,*
  95 U.S. 269 (1877) .............................................................................10

*Brown v. Grass,*
  544 F. App'x 81 (3d Cir. 2013) ...........................................................28

*Buzadzhi v. Bexco Enterprises, Inc.,*
  2011 WL 43086 (N.D. Okla. Jan. 4, 2011) .........................................21

*Carrell v. Masonite Corp.,*
  775 So.2d 121 (Ala. 2000) ..................................................................16

*Chapman Custom Homes, Inc. v. Dallas Plumbing Co.,*
  445 S.W.3d 716 (Tex. 2014) ...............................................................16

*Chrysler Corp. v. Wilson Plumbing Co., Inc.,*
  208 S.E.2d 321 (Ga. Ct. App. 1974) ......................................... 17-18, 18

*Cipollone v. Liggett Grp., Inc.,*
  505 U.S. 504 (1992) .............................................................................6

iii

*Cole v. Gen. Motors. Corp.*,
  484 F.3d 717 (5th Cir. 2007) ...............................................................13

*Collins Radio Co. of Dallas v. Bell*,
  623 P.2d 1039 (Okla. Civ. App. 1980)...................................................19

*Cooper v. Samsung*,
  374 F. App'x 250 (3d Cir. 2010) ...........................................................8

*Elias v. Ungar's Food Prod., Inc.*,
  252 F.R.D. 233 (D.N.J. 2008) ...............................................................29

*El Paso *838 Assocs., Ltd. v. J.R. Thurman & Co.*,
  786 S.W.2d 17 ......................................................................................38

*Fine v. Checcio*,
  870 A.2d 850 (Pa. 2005).............................................................. 34, 35

*Fontenot v. Kimball Hill Homes Tex., Inc.*,
  No. 14–00–01375–CV, 2002 WL 834468 (Tex.App.-Houston
  [14th Dist.] May 2, 2002, no pet.) ........................................................37

*Forest City Grant Liberty Assocs. v. Genro II, Inc.*,
  652 A.2d 948 (Pa.Super.Ct.1995) ........................................................33

*Frost v. Perrigo Co.*,
  60 Pa. D. & C.4th 365 (Com. Pl. 2003) ...............................................34

*Garcia v.Chrysler Grp. LLC*,
  127 F. Supp. 3d 212 (S.D.N.Y. 2015) ...................................................9

*Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*,
  2005 WL 6778678 (N.D. Ohio Feb. 22, 2005) .....................................14

*Glob. Ground Support, LLC v. Glazer Enterprises, Inc.*,
  2008 WL 4425241 (E.D. Pa. Sept. 29, 2008).......................................13

*Goodman v. PPG Indus., Inc.*,
  849 A.2d 1239 (Pa. Super. Ct. 2004) ...................................................32

*Hanson Prod. Co. v. Americas Ins. Co.*,
   108 F.3d 627 (5th Cir. 1997) .......................................................... 36, 39

*Harbison v. Louisiana-Pac. Corp.*,
   2014 WL 469936 (W.D. Pa. Feb. 6, 2014) ........................................32

*Hartman Plastics, Inc. v. Star Intern. Ltd-USA*,
   1998 WL 23174 (E.D.Pa.1998)...........................................................33

*Hemy v. Perdue Farms, Inc.*,
   No.: 11-888 (FLW), 2011 WL 6002463 (D.N.J. Nov. 30, 2011) .......................23

*Hudson v. Wakefield*,
   645 S.W.2d 427 (Tex.1983) .......................................................... 36, 39

*Hughes v. Panasonic Consumer Elecs. Co.*,
   2011 WL 2976839 (D.N.J. July 21, 2011) ...........................................9

*In re Air Bag Prods. Liab. Litig.*,
   7 F. Supp. 2d 792 (E.D. La 1998) ................................................. 9, 13

*In re Bridgestone/Firestone Inc. Tires Prods. Liab. Litig.*,
   155 F. Supp. 2d 1069 (S.D. Ind. 2001)] ...............................................22

*In re Caterpillar, Inc., C13 & C15 Engine Products Liab. Litig.*,
   2015 WL 459123687 (D.N.J. July 29, 2015) .........................................21

*In re Complaint of Weeks Marine, Inc.*,
   2006 WL 1843130 (D.N.J. June 30, 2006) .........................................30

*In re Ford Tailgate Litig.*,
   No. 11-cv-2593-RS, 2014 WL 1007066 (N.D. Cal. Mar. 12, 2014) ..................13

*In re MyFord Touch Consumer Litig.*,
   46 F. Supp. 3d 936 (N.D. Cal. 2014)...................................................21

*In re Zurn Pex Plumb. Prods. Liab. Litig.*,
   644 F.3d 604 (8th Cir. 2011). ................................................. 13, 14, 27

*Jones v. Cranman's Sporting Goods*,
   237 S.E.2d 402 (Ga. Ct. App. 1977) ........................................................... 17, 18

*Lee v. Mylan Inc.*,
   806 F. Supp. 2d 1320 (M.D. Ga. 2011)........................................................17

*Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*,
   171 F.3d 818 (3d Cir. 1999) ......................................................................29

*Lindemann v. Eli Lilly & Co.*,
   816 F.2d 199 (5th Cir. 1987) .......................................................................7

*Longport v. Ocean Plaza Condo., Inc. v. Cato*,
   2002 WL 436742 (E.D. Pa. Mar. 18, 2002) ........................................................16

*Lutz Farms v. Asgrow Seed Co.*,
   948 F.2d 638 (10th Cir. 1991) ................................................................... 19, 24

*Mack Trucks, Inc. v. Borgwarner Turbo Sys., Inc.*,
   508 F. App'x 180 (3d Cir. 2012) ................................................................... 9, 10

*Magnet Res., Inc. v. Summit MRI, Inc.*,
   723 A.2d 976 (N.J. App. Div. 1998) ........................................................... 27, 28

*Martin v. Ford Motor Co.*,
   914 F. Supp. 1449 (S.D. Tex. 1996).....................................................................13

*Massey-Ferguson, Inc. v. Laird*,
   432 So. 2d 1259 (Ala. Civ. App. 1983)................................................................24

*McDonald v. Mazda Motors of Am., Inc.*,
   603 S.E.2d 456 (Ga. Ct. App. 2004) ...................................................................12

*Meadow v. NIBCO, INC.*,
   2016 WL 2986350 (M.D. Tenn. May 24, 2016) .........................................................24

*Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*,
   619 F.2d 1001 (3d Cir. 1980) .......................................................................7

*Monticello v. Winnebago Indus., Inc.*,
369 F. Supp. 2d 1350 (N.D. Ga. 2005) ................................................................18

*Murphy v. Mallard Coach Co.*,
179 A.D. 2d 187 (N.Y.1992) ................................................................................21

*Murray v. D & J Motor Co.*,
958 P.2d 823 (Okla. Civ. App. 1998) ...................................................................13

*New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*,
442 F.3d 101 (2d Cir. 2006) .................................................................................10

*Norcold, Inc. v. Gateway Supply Co.*,
798 N.E.2d 618 (Ohio Ct. App. 2003) ..................................................................20

*Oak Ridge Const. Co. v. Tolley*,
504 A.2d 1343 (Pa.Super.Ct.1985) .......................................................................33

*Orthoflex, Inc. v. ThermoTek, Inc.*,
No. 3:10-CV-2618-D, 2013 WL 4045206 (N.D. Tex. Aug. 9, 2013)....................9

*Pacemaker Yacht Co., Div. of Mission Marine, Inc. v. NLRB*,
663 F.2d 455 (3d Cir. 1981) .................................................................................11

*Pentair, Inc. v. Wis. Energy Corp.*,
662 F. Supp. 2d 1134 (D. Minn. 2009) .................................................................20

*Pfizer, Inc. v. Farsian*,
682 So.2d 405 (Ala. 1996) ...................................................................................13

*PPG Indus., Inc. v. JMB/Houston Centers Partners Ltd. P'ship*,
146 S.W.3d 79 (Tex. 2004) ............................................................................ 35-36

*Rehberger v. Honeywell Int'l, Inc.*,
2011 WL 780681 (M.D. Tenn. Feb. 28, 2011) .....................................................29

*Retail Clerks Local 455 v. NLRB*,
510 F.2d 802 (D.C. Cir. 1975)..............................................................................11

*Samuel–Bassett v. Kia Motors America, Inc.*,
   34 A.3d 1 (Pa. 2011)............................................................................33

*Sharyland Water Supply Corp. v. City of Alton*,
   354 S.W.3d 407 (Tex. 2011) ..............................................................16

*Smith v. Merial Ltd.*,
   2011 WL 2119100 (D.N.J. May 26, 2011) .........................................29

*Snyder v. Farnam Companies, Inc.*,
   792 F. Supp. 2d 712 (D.N.J. 2011).......................................................6

*Spagnol Enterprises, Inc. v. Digital Equipment Corp.*,
   568 A.2d 948 (COURT 1989) .............................................................33

*Spector v. Fireman's Fund Ins. Co.*,
   451 F. App'x 130 (3d Cir. 2011)..........................................................15

*Speed Fasteners, Inc. v. Newsom*,
   382 F.2d 395 (10th Cir. 1967) .............................................................19

*Steele v. Depuy Orthopaedics, Inc.*,
   295 F. Supp. 2d 439 (D.N.J. 2003)......................................................13

*Stephenson Oil Co. v. Citgo Petroleum Corp.*,
   2010 WL 2998604 (N.D. Okla. July 28, 2010)............................ 21-22

*Story v. RAJ Props.*,
   909 So. 2d 797 (Ala. 2005) .................................................................25

*Strickler v. Peterbilt Motors Co.*,
   2005 WL 1266674 (E.D. Pa. May 27, 2005) .......................................12

*Structural Metals, Inc. v. S & C Elec. Co.*,
   2012 WL 930816 (W.D. Tex. Mar. 19, 2012)......................................13

*Terrill v. Electrolux Home Prods.*,
   753 F. Supp. 2d 1272 (S.D. Ga. 2010) ................................................18

*Thompson v. Gardner*,
889 So.2d 596 (Ala. Civ. App. 2004)........................................................... 25, 26

*U.S. Tire-Tech, Inc. v. Boeran, B.V.*,
110 S.W.3d 194 (Tex. App. 2003) ....................................................35

*Vesta Fire Ins. Corp. v. Milam & Co. Constr., Inc.*,
901 So. 2d 84 (Ala. 2004) ....................................................26

*Weinstat v. Dentsply Internat., Inc.*,
180 Cal. App. 4th 1213 (Cal. App. 1st Dist. 2010) ............................................21

*Wikoff v. Vanderveld*,
897 F.2d 232 (7th Cir. Ill. 1990) ....................................................20

*Winston Industries, Inc. v. Stuyvesant Ins. Co.*,
317 So. 2d 493 (Ala. Civ. App. 1975)....................................................24

*Yost v. Gen. Motors Corp.*,
651 F. Supp. 656 (D.N.J. 1986)....................................................13

*Zwiercan v. Gen. Motors Corp.*,
58 Pa. D. & C.4th 251 (Com. Pl. 2002) ...........................................34

*Zwiercan v. Gen. Motors. Corp.*,
No. 99-3235, 2002 WL 1472335 (Pa. Com. Pl. May 22, 2002) .........................13

*Statutes*

13 Pa.C.S. § 2313(a)(1)....................................................33

Okla. Stat., tit. 12A, § 2-607(3) ....................................................21

Tex. Bus. & Com. Code Ann. § 2.313....................................................36

## <u>INTRODUCTION</u>

Defendant's Brief in Support of its Motion for Summary Judgment ("Db") misrepresents the factual record and governing legal authority, contending that material facts are undisputed when they are not and ignoring pertinent facts that disprove or undermine its assertions.[1] In doing so, NIBCO attempts to impose upon Plaintiffs obligations the law does not recognize and which the record does not support, often pivoting from NIBCO's own prior positions and conduct.

First, the evidence supports Plaintiffs' claims for breach of express warranty, because NIBCO warranted to every owner of a structure where its 1006 PEX Tubing (the "Tubing") and yellow brass PEX Fittings (the "Fittings") (collectively the "PEX Products")[2] were installed that those products would be free from defects in "materials," but they were not. The materials used to manufacture *both* products were defective, leading to premature failure, and NIBCO therefore breached the plain terms of its written Warranty. This is true even though Plaintiffs' negligence and strict liability claims are premised on a design defect (and, in certain instances, a failure to warn) as opposed to a manufacturing defect.

---

[1] Plaintiffs' Responsive Statement of Material Facts ("Resp. Facts"), incorporated by reference herein, responds to NIBCO's Statement of Undisputed Material Facts ("Def. Facts"). Plaintiffs' Supplemental Statement of Disputed Material Facts ("Pl. Supp. Facts"), also incorporated by reference, contains other material facts.

[2] Plaintiffs are not pursuing any claims with respect to the PEX Clamps.

1

Second, Plaintiffs state valid warranty claims for *all* PEX Products, regardless of whether any specific product has leaked in a Plaintiff's home. The record establishes that the Tubing and Fittings begin manifesting their respective defects upon installation in a potable water system; all Plaintiffs have therefore suffered an injury even where particular PEX Products have not (yet) leaked in their own homes, though all Plaintiffs in fact have suffered leaks on multiple occasions.

Third, the record evidence establishes that the economic loss doctrine does not bar the negligence and strict liability claims of Plaintiffs Sminkey, McCoy, the Pepernos, and McMahon. Similarly, the plumbing systems in the homes of Plaintiffs Boyd, McMahon, and the Medders are not "integrated construction materials," so that the economic loss doctrine does not bar their claims.

Finally, most of the Plaintiff-specific grounds NIBCO proposes for summary judgment are unwarranted. Those arguments, addressed in detail below with respect to each Plaintiff, suffer from over-arching flaws. NIBCO repeatedly faults Plaintiffs for failing to comply with certain obligations under its written Warranty (*i.e.*, installation by a licensed plumber, notice, opportunity to inspect) while ignoring that it materially breached that warranty from the outset by delivering nonconforming goods, relieving Plaintiffs of any further obligation under the contract. Regardless, Plaintiffs often either *did* comply with their obligations or

2

were prevented from doing so by NIBCO itself. NIBCO also misstates the law of privity, reliance, and pre-suit notice in ways the state-specific authority does not support. Finally, defendant wrongly argues that Plaintiffs Boyd and Monica do not have evidentiary support for their failure to warn claims.

## RELEVANT FACTUAL BACKGROUND

I. **NIBCO's Defective PEX Products, Knowledge of Those Defects, and Efforts to Conceal the Defects from Customers and Auditors**

1. **Tubing**

PEX tubing, including NIBCO's Tubing, utilizes ███████████ ███████████ during the manufacturing process to protect against oxidative degradation from chlorinated water (among other things). Pl. Supp. Facts ¶¶ 5, 22, 24. NIBCO was indisputably aware of the importance of such protection. *Id.*, ¶ 7.

NIBCO's PEX Tubing is defective because ███████████████ ██████████, causing oxidation to occur in the typical, residential potable water systems in which it is installed. *Id.*, ¶ 14, 22, 24. Total Petrochemicals, Inc., ██ ████████████████████████, conducted analytical testing confirming that ███████████████████████████████████████████████ *Id.*, ¶ 6 (emphasis in original).

Indeed, before NIBCO even began manufacturing the Tubing in 2006, test results performed on the same product (acquired from CPI, who previously manufactured the Tubing for NIBCO) demonstrated that █████████████████

3



. Pl. Supp. Facts ¶¶ 1-2, 8; Def. Facts ¶ 7.

These problems continued after 2006, as NIBCO well knew. Testing

performed on the Tubing between 2007 and 2009 revealed that: ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*, ¶¶ 13-14, 16. ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.*, ¶¶ 9-10, 13, 15.

Aware of all that, NIBCO began to reformulate the Tubing in order to

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*, ¶ 12.

However, NIBCO *kept selling* the Tubing until it completed its reformulation in

2012. Def. Facts, ¶ 7. In the interim, its "primary approach" to maintaining third-

party certification for the Tubing was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮. Pl. Supp. Facts, ¶ 11.

NIBCO also attempted to actively deceive the third-party certifiers during

the reformulation. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



. *Id.*, ¶¶ 18-19.

. *Id.*, ¶¶ 20-21.

While recognizing the defects in its PEX products, NIBCO continued to

without sufficient basis to do so.

*Id.*, ¶¶ 29-32. In reality, the defect in the Tubing's material properties is universal –

. *Id.*, ¶¶ 24, 26.

## 2. Fittings

NIBCO's Fittings are universally vulnerable to premature failure due to

dezincification corrosion and stress corrosion cracking because they are

manufactured with an improper material: yellow brass containing greater than 15%

zinc. Pl. Supp. Facts, ¶ 23. By October 2007, NIBCO internally recognized that.

*Id.*, ¶ 17. Every Fitting Plaintiff's expert has inspected

██████████████████████████

█████████████. *Id.*, ¶ 25-26.

### 3.    Leak Prevention and Damages

The only way to prevent future leaks is to re-plumb homes to replace the

Tubing and Fittings, at a cost of $600 per fixture. Pl. Supp. Facts, ¶¶ 27-28.

## II.    Individual Plaintiffs

The facts material to NIBCO's plaintiff-specific arguments are discussed

below, with supporting references to the Resp. Facts and Pl. Supp. Facts.

## **ARGUMENT**

## I.    NIBCO Breached the Explicit and Unambiguous Terms of Its Warranty

NIBCO argues that express warranties governing "materials and

workmanship" categorically exclude all defects in the design of the product., To

support this illogical interpretation, NIBCO strains to apply inapposite case law.[3]

An express warranty is a contract, and should therefore be interpreted in

accordance with principles of contract law. *Cipollone v. Liggett Grp., Inc.*, 505

U.S. 504, 526 (1992) ("express warranty claims are said to sound in contract");

*Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 720 (D.N.J. 2011)(same);

---

[3] Plaintiffs do not dispute that their strict liability and negligence claims are premised on a design, rather than manufacturing, defect, and thus do not dispute Db Argument Section IV-B. This does not affect the analysis of plaintiffs' warranty claims, as explained below. Plaintiffs also continue to assert strict liability and negligence claims premised on a failure to warn, as discussed below.

6

*Lindemann v. Eli Lilly & Co.*, 816 F.2d 199, 202 (5th Cir. 1987) (same); *Ex parte Miller*, 693 So. 2d 1372, 1376 (Ala. 1997) ("Express warranties should be treated like any other type of contract and interpreted according to general contract principles"); Db27 n. 8 ("Application of an express warranty and whether its terms have been breached is a matter of contract").

Words in a contract should be given their plain meaning and effect, as "the sanctity of the written words of the contract is embedded in the law of contract interpretation." *Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1009 (3d Cir. 1980); *see also Best v. Realty Mgmt. Corp.*, 101 A.2d 438, 440 (Pa. 1953) ("A court is not authorized to construe a written contract in such a way as to modify the plain meaning of its words, under the guise of interpretation").

The terms of the uniform contract here could not be clearer: NIBCO expressly warranted that its PEX Products would be free from defects in "materials," and it breached that warranty. Plaintiff's expert opines that the PEX Product materials were defective. *See* Pl. Supp. Facts ¶ 22 (citing Smith Report, Ex. 5., 82-83) (concluding, with respect to PEX Tubing, that failures were ███████ ███████████████████████████████ ) *see also id.* ████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████ ); ██████████████████

██████████████████████████████████████████████

████████████████████████████████████ ") (emphases added). Ms.

Smith even pinpoints the problem; namely, ████████████████████

███████████████████████████████████████████.

*Id.* (citing Smith Report, 25) ████████████████████████

██████████████████████████████████████████████

████████████████████). In this same vein, Total Petrochemicals, Inc.,

█████████████████████████████████████████

███████████████████████████████████████████

████████████" *Id.*, ¶ 6.

Ms. Smith similarly concludes that NIBCO's PEX Fittings are defective

"████████████████████████████████████████," making them

"███████████████████████████████████████

██████████████" (emphasis added). *Id.*, ¶ 23. The record is clear: NIBCO

breached the terms of its express warranty by providing products that were not

"free from defects in materials," because the materials were defective.

The cases upon which NIBCO relies do not dictate a contrary outcome.

*Cooper v. Samsung*, 374 F. App'x 250 (3d Cir. 2010), dealt with an express

warranty that specifically warranted against "***manufacturing*** defects in materials

and workmanship." *Id.* at 253 (emphasis added). The warranty language at issue here does not contain the word "manufacturing" and thus is not so limited.

The other jurisdiction-specific authority that NIBCO cites dealt with situations where the "material" of the product itself was not inherently defective, as it is here. Those plaintiffs' theories were not premised on the materials being themselves defective, but rather the manner in which the materials were designed into the finished product. *Hughes v. Panasonic Consumer Elecs. Co.*, 2011 WL 2976839, at *19 (D.N.J. July 21, 2011) ("[a] defect in the *programming of the software* which controlled the voltage adjustments is not akin to a defect in materials or substandard workmanship used by Panasonic") (emphasis added); *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 226 (S.D.N.Y. 2015) (electrical circuitry in car prone to sudden failure); *Orthoflex, Inc. v. ThermoTek, Inc.*, No. 2013 WL 4045206, at *8 (N.D. Tex. Aug. 9, 2013) (medical wraps defective due, in part, to "excessively worn thermal electric chips" and "defective connectors," citing no Texas state law cases on point); *Mack Trucks, Inc. v. Borgwarner Turbo Sys., Inc.*, 508 F. App'x 180, 184 (3d Cir. 2012) (defective turbochargers, also dealing with "material and workmanship" warranty that covered only "deficiencies *in the execution* of the design" when independent warranty covering design was also part of basis of bargain) (emphasis added).

In none of these cases were there allegations or proof, as here,[4] that the *materials* used in the product were the explicit defect. NIBCO's premise of "manufacturing defect" vs. "design defect" breaches of an express warranty is therefore a false dichotomy given the facts of this case. Indeed, other manufacturers made non-defective PEX pipes using substantially the same "design" as NIBCO because they did not use defective materials (*i.e.*, ███████████ █████████████████) as NIBCO did.

Significantly, NIBCO's own course of conduct in dealing with warranty claims reveals that it saw a deficiency in its products' material as distinct from a manufacturing defect, and denied claims on this basis. *See* Pl. Supp. Facts ¶¶ 53-54 (████████████████████████████████████████████ ████████████████████████████████████████ ████████████████ *see New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 112 (2d Cir. 2006) ("'[t]here is no surer way to find out what parties meant, than to see what they have done'") (quoting *Brooklyn Life Ins. Co. of New York v. Dutcher,* 95 U.S. 269, 273 (1877)); *cf. Mack Trucks, Inc.*, 508 F. App'x

---

[4] *See* Plaintiffs' Second Amended Class Action Complaint, ECF Doc. 50, at ¶ 121 ("These slow growth cracking mechanisms have been caused by the ***insufficient stabilization and/or improper cross-linking of the PEX material*** used by NIBCO to manufacture its PEX Tubing"); ¶138 ("The design, ***materials choices***, and manufacturing practices of the brass fittings . . . marketed and sold by Defendant have created damaged products that begin to fail on their first day of use, even if properly installed in their intended environment").

180, 184-85 ("the parties' course of performance makes clear the specifications

warranty—not the material and workmanship warranty—was intended to cover

design defects . . . BorgWarner made clear to Mack representatives the material

and workmanship warranty did *not* cover design defects") (emphasis in original).

Under the law of contract interpretation, when a party warrants that it will

provide a product with "materials" that are not defective, and those "materials" *are*

in fact defective, that party has breached the express terms of that contract.

NIBCO's own course of conduct in responding to warranty claims supports this.  A

contrary conclusion, when NIBCO was subjectively aware that the materials in its

PEX products were defective, would render the warranty worthless.  As such,

NIBCO's *current* reading violates the "settled rule of contract interpretation that

contract language should not be interpreted to render the contract promise illusory

or meaningless."  *Pacemaker Yacht Co., Div. of Mission Marine, Inc. v. NLRB*, 663

F.2d 455, 459 (3d Cir. 1981) (quoting *Retail Clerks Local 455 v. NLRB*, 510 F.2d

802, 806 n.15 (D.C. Cir. 1975)).

For these reasons, summary judgment should be denied as to Plaintiffs'

express warranty claims.

## II. Plaintiffs Can Maintain Warranty Claims For Products That Did Not Leak Because The Record Shows Those Products Are Already Failing

NIBCO's argument for summary judgment on any claims for products that

have not yet leaked, Db14, misunderstands the factual record and the requirements

for breach of warranty. First, as Plaintiffs' expert has opined, all of the PEX

Products are defective when they leave NIBCO's manufacturing plant and begin

failing once they are exposed to potable water. Pl. Supp. Facts, ¶ 25 (citing Ex. 14,

Smith Dep.) ("I have yet to see a NIBCO field returned brass fitting that did not

show evidence of the failure mechanism in process, which is exactly what we

would expect for alloys containing greater than 15 percent zinc and that every

NIBCO brass fitting out there that contains greater than 15 percent zinc has the

inherent defect that renders it vulnerable to this failure mechanism -- these failure

mechanisms."); *id.*, ¶ 24 ("I have never seen a field returned NIBCO pipe that did

not exhibit oxidation at the interior surface of the pipe. Based on the formulation of

this pipe and the empirical experience, I believe that it would be impossible for a

crack to form in the absence of oxidation because I believe that they are going to

be oxidizing from day one."). NIBCO has therefore *already* breached its warranty

with respect to these Plaintiffs: the products are defective, are manifesting that

defect, are in the process of failing, and need to be replaced.[5]

---

[5] *See, e.g.*, *McDonald v. Mazda Motors of Am., Inc.*, 603 S.E.2d 456, 462 (Ga. Ct. App. 2004) ("When a product leaves the retailer's control in a condition which does not conform to the representations of the warranty of merchantability, such defective condition constitutes evidence of a breach of warranty"); *Strickler v. Peterbilt Motors Co.*, 2005 WL 1266674, at *2 (E.D. Pa. May 27, 2005) (finding issue of fact with express warranty claim "if engine defects are still present" despite finding that "the supposed defects have not prevented Plaintiff from driving his tractor"); *see also Barko Hydraulics, LLC v. Shepherd*, 167 So. 3d 304, 310 (Ala. 2014) (stating "the crux of all express warranty claims is that the goods did

Second, all the authority NIBCO cites in support of this argument addresses situations where there was no evidence of actual product failures. Db15 nn. 5 & 6.[6] That is not the case here: for both the Tubing and Fittings, multiple Plaintiffs have

---

not conform to the warranty,");; *Murray v. D & J Motor Co.*, 958 P.2d 823, 829 (Okla. Civ. App. 1998) (stating "[a]n express warranty relates to the conformity of the item and considers its quality, characteristics and condition"); *Steele v. Depuy Orthopaedics, Inc.*, 295 F. Supp. 2d 439, 456 (D.N.J. 2003) (denying summary judgment on nonconformance of product in breach of express warranty claim); *Structural Metals, Inc. v. S & C Elec. Co.*, 2012 WL 930816, at *4 (W.D. Tex. Mar. 19, 2012), *on reconsideration in part*, 2012 WL 5208543 (W.D. Tex. Oct. 22, 2012) ("Upon review of . . . [the] deposition testimony, the Court concludes that genuine issues of material fact exist regarding whether the equipment complied with the express warranty."); *Glob. Ground Support, LLC v. Glazer Enterprises, Inc.*, 2008 WL 4425241, at *3 (E.D. Pa. Sept. 29, 2008) (holding "conflicting expert reports [on nonconformance] create a genuine issue of material fact with regard to whether the goods were nonconforming").

[6] *Belville v. Ford Motor Co.*, 13 F. Supp. 3d 528, 542 (S.D.W. Va. 2014) (finding the reasoning in *In re Zurn*, cited below, persuasive but distinguishable because those facts were absent there, as they are here); *In re Ford Tailgate Litig.*, No. 11-cv-2593-RS, 2014 WL 1007066, at *3 (N.D. Cal. Mar. 12, 2014) (no allegation that any plaintiff experienced any failure at any time; *In re Air Bag Prods. Liab. Litig.*, 7 F. Supp. 2d 792, 804, 806 (E.D. La 1998) (no facts "that alleged that a single air bar 'functioned improperly under normal use,' which is a prerequisite for recovery under this theory"); *Martin v. Ford Motor Co.*, 914 F. Supp. 1449, 1455 (S.D. Tex. 1996) (observing "Plaintiffs speculate as to evidence that could be obtained through additional discovery which, they contend, may prove damages in the form of a diminution of market value of the motor vehicles and in other forms as well" but finding speculation insufficient); *Cole v. Gen. Motors. Corp.*, 484 F.3d 717, 729 (5th Cir. 2007) (class certification decision observing vehicles performed satisfactorily with no manifestation of any defect); *Pfizer, Inc. v. Farsian*, 682 So.2d 405, 407 (Ala. 1996) (holding "fear" of failure in future, "without more," insufficient); *Yost v. Gen. Motors Corp.*, 651 F. Supp. 656, 658 (D.N.J. 1986) ("[Plaintiff] has not stated that the engine in his vehicle is defective in any way."); *Zwiercan v. Gen. Motors. Corp.*, No. 99-3235, 2002 WL 1472335, at *4 (Pa. Com. Pl. May 22, 2002) (finding no manifestation of defect).

experienced multiple leaks. NIBCO does not contest that the Tubing and Fittings are designed and manufactured in the same, uniform manner, and Plaintiffs have put forth evidence that these uniform products are *actually failing*.

Thus, even if "manifestation of the defect" is co-extensive with "leaking," which Plaintiffs' expert refutes as a factual matter, these are not the no-injury plaintiffs upon which NIBCO stakes its argument. *See, e.g.*, *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 2005 WL 6778678, at *11-12 (N.D. Ohio Feb. 22, 2005) ("[t]he record does not contain *any* evidence of any steel peel failures . . . to reach a jury, the record must contain *some* evidence of . . .. steel peel failures.") (emphasis added). *See also In re Zurn Pex Plumb. Prods. Liab. Litig.,* 644 F.3d 604, 617 (8th Cir. 2011) (based on expert testimony that fittings began deteriorating as soon as they were exposed to potable water, "the district court did not err in determining that the dry plaintiffs were not 'no injury' parties simply because their plumbing systems had not yet leaked").

### III.    The Economic Loss Doctrine Does Not Bar Plaintiffs' Tort Claims for Products That Leaked Because All Leaks Caused Legally Cognizable Damage to "Other Property"

The economic loss doctrine does not bar the tort claims of McCoy, Sminkey, the Pepernos, or Monica. NIBCO selectively cites allegedly "undisputed" evidence, Db17, but ignores portions of the record that defeat its argument:

- Sminkey testified that leaking water in his garage damaged property that he ultimately had to throw away; that he was forced to pull up carpeting in his master bedroom due to leaking; and that he undertook the labor and bore the cost to repair and replace water-damaged drywall in his home (Pl. Supp. Facts, ¶ 56).

- The videos produced by the Pepernos show water spraying all over their water heater and basement floor, and one video shows the basement wall and floor, and numerous personal belongings, saturated (*id.*, ¶ 60).

- Leaks resulted in water pooling in McCoy's home, damaging the floor joists and soaking his crawlspace twice, and separately causing mold to grow (*id.*, ¶¶ 61-62.

- NIBCO concedes that Monica suffered property damages for every leak other than the first and, in the testimony cited by NIBCO, Monica stated that water from the first leak had saturated the ceiling between the basement and the first floor and the basement wall (*id.*, ¶ 40).

As such, NIBCO is not entitled to summary judgment on these claims because there is ample factual support for these damages to other property. *See, e.g., Spector v. Fireman's Fund Ins. Co.*, 451 F. App'x 130, 134 (3d Cir. 2011) (affirming district court's denial of summary judgment because genuine issue of material fact existed regarding damages even though plaintiff "did not present with certainty the amount spent on water damage").

NIBCO also argues that the economic loss doctrine bars tort claims in Texas and Alabama based on NIBCO's erroneous theory that plumbing systems are "integrated construction" materials. Db18. This is incorrect, as the cases NIBCO cites, neither of which address Alabama law, dealt with litigation between commercial entities and the claims and warranties related to an indivisible, entire

15

structure, not just a component part as here.  *See, e.g., Longport v. Ocean Plaza Condo., Inc. v. Cato*, 2002 WL 436742, at *5 (E.D. Pa. Mar. 18, 2002). Here, of course, NIBCO did not construct Plaintiffs' homes.  Thus, the idea that "the entire successfully renovated building should be considered the purchased product," *id.* at *6, has no application in this case, as Texas and Alabama cases state. *See Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718-19 (Tex. 2014) (holding economic loss doctrine did not bar claim where plumbing leaks caused damage to newly constructed home); *Ex parte Grand Manor, Inc.*, 778 So.2d 173, 185 (Ala. 2000) (Johnstone, J., concurring) ("The mere-economic-loss rule of *Carrell v. Masonite Corp.,* 775 So.2d 121 (Ala. 2000), as it applies to homes, bars recovery only for a particular *component* of a home which fails in such a way as to damage only the component itself") (emphasis in original).

Moreover, under Texas law, "purely economic losses may be recovered in cases involving fraud." *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 419 (Tex. 2011). Plaintiffs have presented evidence that NIBCO took active steps to conceal product defects not only from customers but from third-party certifiers, and in fact entirely reformulated its Tubing because of those defects, as discussed above. Even if the economic loss doctrine *did* apply to a plumbing system installed in a Texas residence, then, there is a material question of fact as to

16

whether NIBCO's intentional deception provides an exception to the general rule.[7]

And, for Plaintiff McMahon, there *was* damage to other property. Pl. Supp. Facts, ¶

55 (personal items, including family bible, damaged).

## IV. NIBCO's Plaintiff-Specific Grounds for Summary Judgment Should Be Denied, In Part

### 1. NIBCO's Privity Argument Regarding Plaintiff McCoy is Wrong

Though Georgia generally requires direct privity between a seller and buyer

for implied warranty of merchantability claims, Georgia courts recognize an

exception to this general rule. If the manufacturer expressly warrants to the

ultimate consumer that the product will perform in a certain way or that it meets

particular standards, privity with that ultimate consumer is deemed to exist." *Lee v.*

*Mylan Inc.*, 806 F. Supp. 2d 1320, 1326 (M.D. Ga. 2011) (citing *Jones v.*

*Cranman's Sporting Goods*, 237 S.E.2d 402, 405 (Ga. Ct. App. 1977)).

NIBCO's express warranty specifically extended to end-users who had PEX

Products installed in their homes or other structures, including McCoy. Def. Facts

¶ 11 (written Warranty repeatedly directed to "owner"). Privity therefore exists for

McCoy's implied warranty claim. *See Lee*, 806 F. Supp. 2d at 1327-28 ("Because

privity is established by the alleged express warranty . . . the Plaintiff also may

bring claims for the implied warranties of merchantability . . . ."); *Chrysler Corp.*

---

[7] To the extent NIBCO reiterates or incorporates the arguments in Db Argument Sections A-D with respect to specific Plaintiffs, Plaintiffs direct the Court's attention back to Argument Sections I-III herein.

*v. Wilson Plumbing Co., Inc*., 208 S.E.2d 321, 323 (Ga. Ct. App. 1974) (where an express warranty exists, privity is established and claims for breach of implied warranties of merchantability can be asserted).

While NIBCO may argue that certain Georgia federal cases, including one cited in its opening brief,[8] hold that express warranties do not create privity, these cases have been deemed inconsistent with Georgia state court decisions. *See, e.g., Terrill v. Electrolux Home Prods.,* 753 F. Supp. 2d 1272, 1288 (S.D. Ga. 2010) (rejecting certain prior Georgia federal court decisions ignoring *Chrysler Corp.* and *Jones*, and holding that "[t]his Court must follow the opinions of the Georgia Court of Appeals in matters of Georgia law 'unless there is "persuasive data" that the Supreme Court of Georgia might render a decision contrary to [the Court of Appeals].' The Court does not have such persuasive data" (internal citations omitted)).

>     2.   **NIBCO's Arguments Regarding Plaintiff Sminkey are Wrong**
>
>          a.  **Sminkey Satisfies the Basis of the Bargain Requirement for his Express Warranty Claim.**

Express warranty claims under Oklahoma law do not, as NIBCO contends, require proof of reliance in order to demonstrate that the warranty became the basis of the bargain where, as here, the warranty is extended to a buyer or consumer. *See*

---

[8] *Monticello v. Winnebago Indus., Inc.*, 369 F. Supp. 2d 1350, 1361 (N.D. Ga. 2005)

*Collins Radio Co. of Dallas v. Bell*, 623 P.2d 1039, 1053 (Okla. Civ. App. 1980)

("The U.C.C. does not require a buyer to prove that he relied on the assertions

constituting a warranty when the warranty is express . . . ."); *Lutz Farms v. Asgrow*

*Seed Co.,* 948 F.2d 638, 645 (10th Cir. 1991) (noting that "as a general rule no

evidence of reliance by the buyer is necessary other than the seller's statements

were of a kind which naturally would induce the buyer to purchase the goods and

that he did purchase the goods").

NIBCO's citation to *Speed Fasteners, Inc. v. Newsom*, 382 F.2d 395 (10th

Cir. 1967), Db20, highlights a critical distinction between different types of

express warranties, as that case involved advertising statements in a pamphlet, not

a written Warranty like NIBCO's. *Speed Fasteners* also did not involve a

consumer purchase: the plaintiff was an employee of a company that bought

allegedly defective industrial-grade studs, he never owned the product, and his

employer did not make any warranty claims. *Id*. at 396. Regardless, thirteen years

after *Speed Fasteners*, the 10th Circuit reiterated the general rule that where there

is a written express warranty, no reliance is needed. *See Collins Radio,* 623 P.2d at

1053.

With respect not only to Sminkey but to *all* Plaintiffs, NIBCO wrongly

equates *written express warranties* with warranties that become the basis of the

parties' bargain through reliance (*i.e.*, advertising materials, product packaging, or

other affirmative attestations of fact made by the seller).  Because Plaintiffs' claims are premised on uniform written express warranties, they are contractual in nature and, as such, there is no reliance element. This is why, for example, the Seventh Circuit clearly holds that reliance, which is governed by the "basis of the bargain" rule outlined in § 2-313 of the U.C.C., "is not applicable to situations where the warranties are clear and express." *Wikoff v. Vanderveld*, 897 F.2d 232, 241 (7th Cir. Ill. 1990); *see also Norcold, Inc. v. Gateway Supply Co.*, 798 N.E.2d 618, 601 (Ohio Ct. App. 2003) (the basis of the bargain rule "is relevant to the question of whether an express warranty has been created, and [] *is not applicable to situations where written warranties are clear and express*") (emphasis added).

> As one federal court has explained:

> [T]here are express factual representations that may or may not be warranties and then there are "express warrant[ies] . . . given in express terms as a part of the contract of sale . . . ." Without widely recognized terms for distinguishing between "reliance-created" express warranties and "express" express warranties, it is not surprising that the distinction is not always clearly articulated.

*Pentair, Inc. v. Wis. Energy Corp.*, 662 F. Supp. 2d 1134, 1143-1144 (D. Minn. 2009) (internal citations omitted).

Here, because NIBCO's written Warranty is made part of every purchase, most Plaintiffs' express warranty claims, including Sminkey's, "do[ ] not require a showing of reliance because it is *presumed* that such a warranty is a basis of the

bargain." *In re Caterpillar, Inc.*, *C13 & C15 Engine Products Liab. Litig.*, 2015 WL 459123687, at *25 (D.N.J. July 29, 2015) (emphasis added). Any other finding "would, in effect, render almost all consumer warranties an absolute nullity." *Murphy v. Mallard Coach Co.*, 179 A.D. 2d 187, 193 (N.Y.1992).[9]

### b. Sminkey's Notice Was Adequate Under Oklahoma Law

NIBCO argues that Sminkey failed to provide pre-suit notice per Okla. Stat., tit. 12A, § 2-607(3). Db21. However, recent decisions applying Oklahoma law instruct that the filing of Plaintiff's lawsuit sufficed as notice to NIBCO. *See Buzadzhi v. Bexco Enterprises, Inc.*, 2011 WL 43086, at *2 (N.D. Okla. Jan. 4, 2011) ("The court is persuaded that the 'reasonable notice' requirement of Section 2–607(3)(a) should be viewed under a more relaxed standard than that expected of commercial purchasers. This is so because a retail consumer is not likely to be aware of the notice requirement, is not primarily concerned with replacement of nonconforming shipment of goods, and because there can be no issue of commercial bad faith on the part of the retail consumer"); *Stephenson Oil Co. v.*

---

[9] *See also In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 972-73 (N.D. Cal. 2014) ("Also, many of the cases cited by Ford are distinguishable because they did not involve written warranties delivered in connection with a sale (as here). Where there is an express written warranty, an assertion that the warranty was not part of the deal between the issuing party and receiving party is far less persuasive."); *Weinstat v. Dentsply Internat., Inc.*, 180 Cal. App. 4th 1213, 1230 (Cal. App. 1st Dist. 2010) ("Under Dentsply's view of express warranty law, the company would not be obliged to stand by any statement it made in the Directions, including the printed 'limited warranty' guaranteeing against defects in manufacture and workmanship. *Surely this is not the law*.") (emphasis added).

*Citgo Petroleum Corp.*, 2010 WL 2998604 at *12 (N.D. Okla. July 28, 2010)

("[F]iling a lawsuit can, under certain circumstances, constitute sufficient notice"

predicting that "Oklahoma courts would hold that § 2-607(3) does not, in all

circumstances, require pre-suit notice.").

    *Stephenson Oil Co.* adopted the reasoning of *In re Bridgestone/Firestone*

*Inc. Tires Prods. Liab. Litig.*, 155 F. Supp. 2d 1069, 1109-10 (S.D. Ind. 2001),and

held "the plain language of the statute does not require that notice be given prior to

filing suit, only that notice be given within a reasonable time. Neither are the main

policies behind the notice of breach requirement . . . necessarily frustrated if notice

is given by filing suit." 2010 WL 2998604, at *38, 42-43. Those polices include

"protecting defendants from stale claims, opening the way for normal settlement

through negotiation (Comment 4 to U.C.C. § 2-607), and giving the defendant the

opportunity to correct any defect-necessarily frustrated if notice is given by filing

suit." *Bridgestone*, 155 F. Supp. 2d at 1110.

    Thus, courts have found filing a lawsuit satisfies pre-suit notice include

"where Defendants had ample notice of the defect in the products well before the

lawsuit was filed . . . ." *Id.* at 1109. NIBCO's extensive knowledge of the defects

with its PEX Products years before this suit was filed, has been documented above.

Thus, any additional notice by Sminkey would not have advanced the policies

behind Oklahoma's pre-suit notice requirement and would have been futile since

NIBCO has denied 997% of warranty claims for failed Tubing and Fittings, as discussed above [10]

### 3. Plaintiff Boyd Has Viable Claims for Express Warranty, Strict Liability, and Negligence

#### a. Boyd's Express Warranty Claim Can Be Maintained.

NIBCO wrongly asserts that Boyd conceded that the PEX Products in her home were not installed by a licensed plumber. Db23 & Def. Facts ¶ 56. But Boyd merely said that when she tried to contact the subcontractor, Monroe's Value Plumbing, LLC, she learned it had gone out of business. *Id.* NIBCO ignores Boyd's testimony that the contractor that built her home hired a licensed plumber to install the PEX Products.  Pl. Supp. Facts, ¶ 47 ("Adams Homes hired a licensed professional [plumbing subcontractor]."). Documents from the Alabama Secretary of State and Plumbers and Gas Fitters Board websites confirm that . *See id.*, ¶ 49 (Ruel Monroe is "Member" of Monroe's Value Plumbing); ¶ 50 (Ruel Monroe was licensed "MP," or Master Plumber, at time Boyd's home was built).[11]

---

[10] Plaintiffs concede that the evidence does not support Sminkey's strict liability and negligence claims to the extent they are premised on a failure to warn.

[11] The documents relating to Monroe's are from websites operated and maintained by the government of the state of Alabama. Accordingly, these are public documents of which this court may take judicial notice. *See, e.g., Hemy v. Perdue Farms*, Inc., 2011 WL 6002463, at *6 (D.N.J. Nov. 30, 2011).

Next, as with Sminkey, NIBCO argues that Boyd did not rely on the written Warranty and, therefore, that the Warranty did not form the basis of the bargain. Db23. Like the other jurisdictions discussed above, however, Alabama has abandoned any reliance requirement for express warranty claims. *See, e.g., Massey-Ferguson, Inc. v. Laird*, 432 So. 2d 1259, 1261 (Ala. Civ. App. 1983) (argument that plaintiff did not rely on express warranty without merit); *Winston Industries, Inc. v. Stuyvesant Ins. Co.*, 317 So. 2d 493, 497 (Ala. Civ. App. 1975) (reliance not determining factor for express warranty); *see also Lutz Farms*, 948 F.2d at 645 ("For other jurisdictions which have abandoned the requirement of reliance, *see . . . Winston . . . .*").

 NIBCO cites *Meadow v. NIBCO, INC.*, 2016 WL 2986350 (M.D. Tenn. May 24, 2016), but *Meadow* misinterpreted Alabama express warranty law. *Meadow* mistakenly concluded, contrary to *Winston* and *Massey-Ferguson*, that reliance *was* necessary even for an express written warranty accompanying the product, that the Alabama plaintiff in that case was not the intended beneficiary of the warranty, and that there was no allegation that plaintiff was an intended third-party beneficiary. *Id.* at *3.

Boyd, like all other Plaintiffs, *was* the intended beneficiary of the warranty, Def. Facts ¶ 11, and at no point during her warranty submission process did NIBCO contend that the warranty did not apply to her.  Pl. Supp. Facts, ¶ 52.

NIBCO has conveniently changed its approach to and reading of its written

Warranty for litigation purposes.[12]

### b.  NIBCO previously inspected Boyd's defective PEX Products

NIBCO next argues that summary judgment should be granted against Boyd

for failure to maintain the defective PEX Products so NIBCO could inspect them.

Db25. NIBCO cites *Thompson v. Gardner*, 889 So.2d 596 (Ala. Civ. App. 2004),

but in *Thompson* the defendant did not have an opportunity to inspect the allegedly

defective product prior to replacement. *Id*. at 600. NIBCO, on the other hand, did

have that opportunity when Boyd sent Tubing samples in conjunction with her

warranty claim.  Pl. Supp. Facts, ¶ 51.

Furthermore, in analyzing spoliation claims, Alabama courts look to

culpability of a party accused of spoliation (*i.e.* whether it was "purposeful" or

"wrongful"), fundamental fairness, and alternative sources from which destroyed

evidence can be obtained in analyzing spoliation. *Story v. RAJ Props.*, 909 So. 2d

797, 802-803 (Ala. 2005) (citation omitted). Here, Boyd sent PEX Products when

submitting her warranty claim, NIBCO performed any testing it deemed necessary,

concluded Boyd's PEX Products were not defective, and denied Boyd's warranty

claim.  Pl. Supp. Facts, ¶¶ 51-52.  Only after that did Boyd discard the Tubing, in

connection with re-plumbing her home due to the numerous PEX leaks, and due to

---

[12] Plaintiffs concede that the evidence does not support Boyd's strict liability and
negligence claims to the extent they are premised on a failure to warn.

concern over future damage (and before she contemplated initiating this lawsuit).

*Id.*  In these circumstances, Boyd cannot be penalized with dismissal.  *See Vesta*

*Fire Ins. Corp. v. Milam & Co. Constr., Inc.*, 901 So. 2d 84, 97 (Ala. 2004)

(reversing summary judgment, noting that "a wealth of relevant evidence

survives," whereas in *Thompson* and other similar cases "all relevant evidence was

destroyed with full appreciation of its significance . . . .").  This is especially true

given ████████████████████████████████████████████████

███████████████████████████.  *See* Pl. Supp. Facts ¶¶ 30-32.

### 4. NIBCO is not Entitled to Summary Judgment on the Coles' TPLA Failure to Warn Claims

NIBCO's arguments regarding the Coles' pre-sale failure to warn claims are

misplaced.[13] Kimberly Cole attests that she would not have used PEX Tubing or

Fittings had NIBCO provided an adequate warning of the dangers inherent to these

products – a warning that would have been communicated to her by her contractor

(Roger Cobb, her father) prior to installing the products in her home.  Pl. Supp.

Facts, ¶¶ 33-34.  Indeed, Ms. Cole testified that the only reason Mr. Cobb installed

PEX Products in her home was because "he had been told . . . it had . . . a lifetime

warranty, and that it was supposed to be really good."  *Id.*, ¶ 35.

---

[13] The Coles do not contest dismissal of their post-sale duty to warn claim.

### 5.   NIBCO is Not Entitled to Summary Judgment On Monica's Express Warranty or Strict Liability Claims

#### a.   Monica Complied with the Express Warranty's Requirements, Which is Presumed to be a Basis of the Bargain

As discussed above, NIBCO breached its warranty when it delivered non-conforming goods, so that its arguments about whether Monica (or any other Plaintiff) used a licensed plumber or provided notice are immaterial. *See, e.g., In re Zurn*, 267 F.R.D. at 563, *aff'd*, 644 F.3d 604 ("[i]f Plaintiffs can ultimately prove that their fittings were not merchantable at the time of purchase, evidence regarding . . . improper installation is not relevant"). In New Jersey, "[i]t is black letter contract law that a material breach by either party to a bilateral contract excuses the other party from rendering any further contractual performance," *Magnet Res., Inc. v. Summit MRI, Inc.*, 723 A.2d 976, 981 (N.J. App. Div. 1998).

In any event, the record establishes that the NIBCO products in Monica's home were installed by employees of a licensed plumber under that plumber's supervision. Pl. Supp. Facts, ¶¶ 37 (Mr. Roman is a licensed Master Plumber); 38 (Roman would "check on the men, see what they did, what progress they made" and attended inspections of the plumbing installation). Whether Monica materially breached his obligations under the Limited Warranty when the physical installation work was supervised and inspected, rather than physically performed, by a licensed

27

is a question of fact for a jury. *Brown v. Grass*, 544 F. App'x 81, 85 (3d Cir. 2013) (materiality of breach is jury question).[14]

NIBCO's express warranty further states that "[t]he owner will be instructed to return said tube, fittings or accessories." However, there is no evidence in the record that Monica was ever given such instructions. Instead, after Monica told a NIBCO representative about the leaks and expressed a desire to resolve the situation, the representative simply said "'Well, if you have to sue us, do what you have to do,' and hung up the phone." Pl. Supp. Facts, ¶ 41. At that point, NIBCO failed to honor the terms of its express warranty a *second, separate time*. That creates additional genuine issues of material fact with respect to Monica's ongoing obligations – including notice and delivery obligations – under the express warranty. *Magnet Res., Inc.*, 723 A.2d at 981.

Finally, New Jersey, like the other states discussed above, rejects NIBCO's argument that reliance, or even awareness, is necessary to make a written express warranty the basis of the bargain:

> Defendants assert that 'in order for a statement to become the basis of the bargain—as is required to sustain a breach of express warranty claim—the plaintiff buyer must be aware of the representation.' But this line of reasoning does not comport with established case law in the class action context. Plaintiffs simply do not have to prove

---

[14] The import of this requirement is further muddied by the portion of the warranty pertaining to delivery and performance, which provides that the products should be "installed by a licensed professional *contractor*," rather than a plumber, in apparent contradiction of the "licensed plumber" clause. *See* Def. Facts ¶ 11.

> reliance in the manner stated by defendants. As a rule, no proof of the buyer's reliance on the warranty is necessary other than that the seller's statements were of a kind which naturally would induce the purchase.

*Elias v. Ungar's Food Prod., Inc.*, 252 F.R.D. 233, 239 (D.N.J. 2008) (internal citations omitted); *see also Smith v. Merial Ltd.,* 2011 WL 2119100, at *7 (D.N.J. May 26, 2011) (noting that to establish a breach of an express warranty plaintiff need not prove privity or traditional reliance, and that New Jersey's flexible approach to the basis of the bargain requirement requires only that the alleged express warranties were of a kind that naturally would induce the purchase) (internal quotation omitted).

This Court should not follow *Rehberger v. Honeywell Int'l, Inc.*, 2011 WL 780681 (M.D. Tenn. Feb. 28, 2011), which dismissed the plaintiff's express warranty claim because "the Complaint does not allege that the plaintiff read the owner's guide, or otherwise saw the express warranty, before buying the [product]," *id.* at *6, as it contradicts *Elias* and *Smith*. And *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 171 F.3d 818 (3d Cir. 1999), dealt with extended service plans for vehicle purchases, not explicit written express warranties, and thus the court had to determine whether statements contained therein constituted express written warranties by looking, in part, to whether they became the "basis of the bargain" through some action taken by the parties. *Id.* at *825. Monica's express warranty claim should stand.

29

### b.  NIBCO is Not Entitled to Summary Judgment on Monica's Strict Liability Post-Sale Failure to Warn Claim

With respect to post-sale warnings,[15] NIBCO misrepresents Monica's testimony by suggesting that he said he would not have "done anything differently" had he received a warning from NIBCO. Though Monica pointed out that it was difficult to speculate on what precise actions he would take in response to a vague and hypothetical warning, he also testified that he "would have taken some more proactive steps" and "more aggressively tried to get the fittings replaced" – in other words, he would have heeded the warning.  Resp. Facts, ¶ 45. As a result, a genuine issue of fact exists regarding whether NIBCO's failure to warn caused Monica's damages.

### c.  Monica Has Not Been Made Whole

NIBCO contends that a party who has been made whole "may not pursue further recovery of damages." *In re Complaint of Weeks Marine, Inc.*, 2006 WL 1843130, at *9 (D.N.J. June 30, 2006), *as amended* (Aug. 1, 2006), *aff'd*, 270 F. App'x 97 (3d Cir. 2008). But unlike in *Weeks Marine*, there is a material factual dispute as to whether Monica has been made whole for his losses.

Monica received $12,750 from the plumber who installed his NIBCO products. Def. Facts ¶ 47 and Def. Ex. 18 (Release). However, the Release relates

---

[15] Plaintiffs concede that the evidence does not support Monica's pre-sale failure to warn claim.

30

to a complaint that primarily alleged the plumber's failure to install various plumbing fixtures, including body sprayers, radon pipes, and discharge lines that he failed to install. Def. Ex. 14 at ¶¶ 11, 13. Monica also testified that he has never had any reason to believe that his plumber improperly installed the PEX Products (Pl. Supp. Facts, ¶ 43), and the Release specifically states that it "do[es] not release any potential claims against NIBCO . . . for the damage to [Monica's] home," Def. Ex. 18.

Further, though Monica has received insurance payments related to past leaks, his damages go far beyond those expenses. As Ms. Smith has explained, the NIBCO system is a ticking time bomb.  Pl. Supp. Facts ¶¶ 23 (all NIBCO brass insert fittings made from yellow brass alloys containing greater than 15% zinc are defectively designed due to improper material selection for the intended application and inherently vulnerable to premature failure due to dezincification corrosion and stress corrosion cracking); 27 (the only way to prevent future leaks is to replace the Tubing). Monica is therefore seeking damages to repair and replace "the entire plumbing system, both fittings that have ruptured to date and tubing and those that have not, but may."  *Id.*, ¶ 44. These costs "would be pretty significant." *Id.*, ¶ 45; *see also id.*, ¶ 27 (cost to re-plumb system would be $600 per fixture).

As a result, a genuine issue of material fact exists as to the total amount of Monica's damages and whether he was made whole by the settlement with his plumber.

### 6. The Evidence Supports the Pepernos' Claims for Express and Implied Warranties

#### a. Express Warranty

As discussed above, the written Warranty is expressly directed to the "owner" of the property in which the PEX Products are installed, Def. Facts ¶ 11, and the Pepernos have owned their home at all relevant times, Pl. Supp. Facts, ¶ 59. Thus, the Pepernos need not rely on third-party beneficiary status, and NIBCO's argument on that basis is misplaced.

*Goodman v. PPG Indus., Inc.*, 849 A.2d 1239 (Pa. Super. Ct. 2004), cited by NIBCO, involved a warranty made by a subcontractor of a component part (PPG) solely to the manufacturer (Marvin Windows), and was neither directed at nor disclosed to any ultimate consumer. More applicable is *Harbison v. Louisiana-Pac. Corp.*, 2014 WL 469936, at *4 (W.D. Pa. Feb. 6, 2014), *aff'd*, 602 F. App'x 884 (3d Cir. 2015) (rejecting analogous argument "where the express warranty explicitly states, '[s]hould the product fail within ten years of the date of installation, ABTco, Inc. after investigation and verification, will replace the defective trim on the following basis: ABTco will compensate the ***owner*** for the

repair and replacement'"). In any event, privity of contract is not required for recovery for breach of warranty in Pennsylvania. *Spagnol Enterprises, Inc. v. Digital Equipment Corp.,* 568 A.2d 948, 950 (Pa.Super.Ct.1989).

NIBCO also wrongly assumes, again, that the Pepernos must show that they relied upon the warranty for it to become the basis of their bargain. As the Pennsylvania Supreme Court explained:

> A written express warranty that is part of the sales contract is the seller's promise which relates to goods, and it is part of the basis of the bargain. *This statement of law is not qualified by whether the buyer has read the warranty clause and relied on it in seeking its application.*

*Samuel–Bassett v. Kia Motors America, Inc.*, 34 A.3d 1, 25 (Pa. 2011) (citing 13 Pa.C.S. § 2313(a)(1)) (emphasis added). In other words, reliance is not required, and whether the Pepernos were aware of the warranty terms when they purchased NIBCO products is irrelevant and does not form a basis for summary judgment.

Finally, as noted above, NIBCO breached its warranty when it delivered non-conforming goods. In Pennsylvania, one party's material breach of a contract excuses the non-breaching party's duty to perform under the contract, and materiality is a question of fact. *Hartman Plastics, Inc. v. Star Intern. Ltd-USA,* 1998 WL 23174, at *3 (E.D.Pa.1998); *Forest City Grant Liberty Assocs. v. Genro II, Inc.,* 652 A.2d 948, 951 (Pa.Super.Ct.1995); *Oak Ridge Const. Co. v. Tolley,* 504 A.2d 1343, 1348 (Pa.Super.Ct.1985). As a result, whether the Pepernos gave

NIBCO notice and an opportunity to cure their defective PEX Products is not dispositive of their express warranty claim, especially given NIBCO's consistent policy of denying warranty claims, which made notice futile.

### b.  Implied Warranty

The four-year statute of limitations governing Pennsylvania warranty claims is tolled by the doctrine of fraudulent concealment when a defendant, "through fraud or concealment, [] causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts." *Fine v. Checcio*, 870 A.2d 850, 860 (Pa. 2005) "The doctrine does not require fraud in the strictest sense encompassing an intent to deceive, but rather, fraud in the broadest sense, which includes an unintentional deception." *Id*. "Where, as in the present case, there is a duty to disclose known risks, the failure to do so constitutes an affirmative independent act of concealment." *Frost v. Perrigo Co.*, 60 Pa. D. & C.4th 365, 371 (Com. Pl. 2003)

NIBCO summarily asserts that it has no such duty. However, "a duty to speak exists, in the context of a business transaction with an ordinary non-business consumer, when the seller has superior knowledge of a material fact that is unavailable to the consumer." *Zwiercan v. Gen. Motors Corp.*, 58 Pa. D. & C.4th 251 (Com. Pl. 2002). Again, NIBCO was well aware of the defects in its products. Pl. Supp. Facts, ¶¶ 1-17.  And it did not simply remain silent, it took affirmative

steps to conceal these defects from certifiers (and therefore customers as well). *Id.*, ¶¶ 18-21.

Viewing this evidence in a light most favorable to the Pepernos, there is a genuine issue of material fact regarding whether NIBCO fraudulently concealed its products' defects from them, thereby tolling the statute of limitations. *See Fine*, 870 A.2d at 861-62 (denying summary judgment in light of issues of fact regarding the defendant's fraudulent concealment and what reasonable inference the plaintiff should have drawn regarding causation).

### 7.  The Evidence Supports McMahon's Claims for Express and Implied Warranties

#### a.  Express Warranty

NIBCO's complaint that McMahon had no information about its products or its warranty misses the mark, and his status as the third owner of the home in which the NIBCO products were installed is simply not dispositive. *U.S. Tire-Tech, Inc. v. Boeran, B.V.*, 110 S.W.3d 194, 198 (Tex. App. 2003) ("privity of contract is not required in order to sustain a breach of express-warranty claim for purely economic losses. To hold otherwise could allow unscrupulous manufacturers who make public representations about their product's performance to remain insulated from express-warranty liability if consumers did not purchase the product directly from them"). In Texas, "express warranties pass with the goods," *PPG Indus., Inc. v. JMB/Houston Centers Partners Ltd. P'ship*, 146

S.W.3d 79, 88 (Tex. 2004), and NIBCO's written Warranty expressly extends to the owners of the homes in which the PEX Products are installed.

> Lastly, the comments to the Texas UCC state:

> [N]o particular reliance on such statements need be shown in order to weave them into the fabric of the agreement. Rather, any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof. *The issue normally is one of fact*.

Tex. Bus. & Com. Code Ann. § 2.313 cmt. 3 (emphasis added). Accordingly, because NIBCO warranted the goods to the "owner," and McMahon was and is indisputably the owner of the home in which NIBCO's defective PEX products are installed, genuine issues of fact exist as to whether the warranty was a basis of the bargain, and those should be reserved for the jury.

NIBCO's arguments regarding installation by a licensed plumber and the fact that McMahon did not send a Tubing sample to NIBCO for evaluation fail for similar reasons to those for Monica and the Pepernos because NIBCO first breached the warranty when it delivered the non-conforming goods that were installed in the McMahons' home. *Hanson Prod. Co. v. Americas Ins. Co.*, 108 F.3d 627, 631 (5th Cir. 1997) (describing the maxim that "a material breach by one contracting party excuses performance by the other party" as a "fundamental principle of contract law"); *Hudson v. Wakefield*, 645 S.W.2d 427, 430 (Tex.1983) ("Whether a breach is material is a question of fact for a jury to decide").

### b.  Implied Warranty

Though NIBCO argues that McMahon's implied warranty claim fails for lack of pre-suit notice, it does not dispute that he provided NIBCO notice of the failures after the third leak occurred at his home. Def. Facts ¶ 85. Thus, McMahon *did* in fact provide NIBCO notice of the first three leaks that occurred. And though NIBCO further suggests that McMahon failed to "provide NIBCO with an opportunity to inspect and cure," Db35, there is no dispute that McMahon filed a pre-suit warranty claim and that claim was denied by NIBCO. Pl. Supp. Facts, ¶¶ 53-54.  In any event, such a condition precedent could only arguably relate to the requirements of NIBCO's *express* warranty (from which McMahon was excused for the reasons explained above).

As to tolling, NIBCO misses the mark completely. Because the defects at issue in this case were inherently undiscoverable absent product failure, the discovery rule applies and McMahon's implied warranty claim is not time-barred:

> In one case, the defendant installed a gas line running to a home and allegedly damaged a water line in the process, causing a leak and subsequent foundation problems. *Fontenot v. Kimball Hill Homes Tex., Inc.,* No. 14–00–01375–CV, 2002 WL 834468, at *3 (Tex.App.-Houston [14th Dist.] May 2, 2002, no pet.) (not designated for publication). The Houston Fourteenth Court of Appeals held that the particular type of underground injury was inherently undiscoverable, and thus that the discovery rule applied to the plaintiffs' claim for breach of implied warranty. *Id.* at *4–5. In another case involving structural problems with a building, the El Paso Court of Appeals stated, "Actions for breach of express or implied warranties are also governed by the four-year statute of limitations *and the discovery*

37

*rule.*" *El Paso \*838 Assocs., Ltd. v. J.R. Thurman & Co.,* 786 S.W.2d 17, 20–21 (Tex.App.-El Paso 1990, no writ) (emphasis added). In a case involving a homebuilder's implied warranty of good and workmanlike construction, the Tyler Court of Appeals stated, "A homeowner's action against a builder for breach of implied warranties is barred four years from the time the homeowner knew of the alleged defect." *Ben Fitzgerald Realty Co. v. Muller,* 846 S.W.2d 110, 118 (Tex.App.-Tyler 1993, writ denied).

*Baleares Link Exp., S.L. v. GE Engine Servs.-Dallas, LP*, 335 S.W.3d 833, 837–38 (Tex. App. 2011). In *Baleares*, the court ultimately determined that the discovery rule did not apply to the plaintiff's implied warranty claim for two reasons: the injury at issue was not "by its nature, unlikely to be discovered within the prescribed limitations period" and "the evidence establishe[d] that the plaintiff actually discovered its injury within the limitations period." *Id.* Not so here, as, first, the oxidative degradation and dezincification corrosion occurring within the PEX Products are, by their very nature, essentially impossible to detect until a product fails absent ripping out the then-functioning plumbing system and, second, though the goods were tendered (installed in McMahon's home) in 2007, he did not discover the injury until December 2013, outside the limitations period, when his Tubing burst. Def. Facts ¶¶ 73, 82. McMahon's implied warranty claim is timely.[16]

---

[16] McMahon concedes that the evidence does not support his claims for strict liability and negligence to the extent they are premised on a failure to warn.

### 8.   The Evidence Supports the Medders' Claims for Express and Implied Warranties

NIBCO's arguments that the express warranty was not the basis of the bargain, and that the Medders failed to comply with their obligations under the Limited Warranty, fail for identical reasons to those discussed above with respect to McMahon: the warranty passed with the goods to the Medders as owners and NIBCO's material breach of the warranty excused the Medders' future performance. *See* Argument Section IV(7)(a), *supra*.

In addition, Mr. Medders called NIBCO the first time he experienced a leak. Pl. Supp. Facts, ¶ 57. However, NIBCO refused to honor its warranty, instead telling Mr. Medders: "You talk to the contractor or insurance company." *Id.*, ¶ 58. NIBCO's failure to inspect its product and honor its warranty was yet *another* breach of the express warranty preceding any alleged failure by the Medders to comply with its terms, and whether this was a material breach excusing Mr. Medders of any continuing obligations thereunder (including notice of future leaks) is a question of fact for the jury. *Hanson Prod. Co.*, 108 F.3d at 631; *Hudson,* 645 S.W.2d at 430.

The same is true of NIBCO's arguments regarding pre-suit notice and an opportunity to inspect and cure in relation to the Medders' implied warranty claim. *See* Argument Section IV(7)(b). There is no dispute that Mr. Medders contacted NIBCO after the first Fitting leak, Def. Facts ¶ 124, but NIBCO refused to remedy

the situation. And there is simply no condition precedent that the Medders send any failed Fittings to NIBCO under an implied warranty claim (an effort that would have, apparently, been fruitless anyway).

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court deny NIBCO's motion for summary judgment as provided in the accompanying proposed form of Order.

LITE DEPALMA GREENBERG, LLC

Dated: July 28, 2017

*/s/ Bruce D. Greenberg*
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, NJ 07102
Phone: (973) 623-3000
Email: bgreenberg@litedepalma.com

MCCUNEWRIGHT LLP
Joseph G. Sauder
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Email: JGS@mccunewright.com

CHIMICLES & TIKELLIS, LLP
Steven A. Schwartz
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Phone: (610) 642-8500
Email: SAS@Chimicles.com

*Counsel for Plaintiffs and the Class*