**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KIMBERLY COLE, ALAN COLE, JAMES MONICA, LINDA BOYD, MICHAEL MCMAHON, RAY SMINKEY, JAMES MEDDERS, JUDY MEDDERS, ROBERT PEPERNO, SARAH PEPERNO, and KELLY MCCOY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NIBCO, Inc.,<br><br>Defendant. | Civil Action No.: 13-cv-7871(FLW)(TJB)<br><br>Motion Returnable: August 21, 2017 |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF ROBERT JALNOS**

**LITE DEPALMA GREENBERG, LLC**
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, NJ 07102
Phone: (973) 623-3000
Email: bgreenberg@litedepalma.com

***Attorneys for Plaintiffs and Interim Co-Lead Counsel***

[*Additional counsel on signature page*]

# TABLE OF CONTENTS

I. Introduction ..... 1

II. Factual Background ..... 2

III. Legal Standard Governing Reliability of Expert Testimony ..... 3

IV. Argument ..... 6

A. Mr. Jalnos' Opinion That Plumbers Have Gone Out of Business Because of Their Use of the Cost-Per-Fixture Method Is Unreliable ..... 6

B. Mr. Jalnos' Opinion That The Cost-Per-Fixture Method Is Not An Industry Standard Is Unreliable ..... 8

C. Mr. Jalnos' Opinion That the Cost-Per-Fixture Method Does Not Work Was Directly Contradicted By His Deposition Testimony ..... 10

D. Mr. Jalnos' Opinions Unrelated to Replumbing Should Be Stricken ..... 12

V. Conclusion ..... 14

# TABLE OF AUTHORITIES

**Cases**

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993)....................................................................................11

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993)............................................................................ 4, 5, 10

*Foraker v. Schauer*,
No. 04-00363, 2005 WL 6000493 (D. Colo. Sept. 8, 2005) ................................11

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)..........................................5

*Heller v. Shaw Indus., Inc.*,
167 F.3d 146 (3d Cir. 1999)...............................................................................5

*Home Design Servs., Inc. v. Hibiscus Homes of Florida, Inc.*,
No. 6:03-1860, 2005 WL 2465020 (M.D. Fla. Oct. 6, 2005)..............................14

*In re Paoli R.R. Yard PCB Litig.*,
35 F.3d 717, (3d Cir. 1994)...........................................................................4, 5

*In re Trasylol Prod. Liab. Litig.*,
No. 1:09-01928, 2010 WL 4065436 (S.D. Fla. Aug. 6, 2010)...................... 13-14

*Kannankeril v. Terminix Int'l, Inc*,
128 F.3d 802 (3d Cir. 1997)...............................................................................5

*Kemmerer v. State Farm Ins. Co.*,
No. 2:01-5445, 2004 WL 87017 (E.D. Pa. Jan. 19, 2004) ....................................8

*Kumho Tire Co. v. Carmichael*,
526 U.S 137 (1999)..........................................................................................6

*Magistrini v. One Hour Martinizing Dry Cleaning*,
180 F. Supp. 2d 584 (D.N.J. 2002) ...................................................................6

*Oddi v. Ford Motor Co.*,
234 F.3d 136 (3d Cir. 2000)....................................................................................4, 8

*Pappas v. Sony Elecs. Inc.*,
136 F. Supp. 2d 413 (W.D. Pa. 2000).....................................................................8

*Pineda v. Ford Motor Co.*,
520 F.3d 237 (2008)...........................................................................................4, 5

*Ruggiero v. Yamaha Motor Corp., U.S.A.*,
No. 15-49 (JBS/KMW), 2017 WL 1197755 (D.N.J. Mar. 31, 2017)............. 8, 10

*Steven J. Inc. v. Landmark Am. Ins. Co*,
No. 1:14-CV-0474, 2015 WL 3849166 (M.D. Pa. June 22, 2015) ...................5, 7

*Withrow v. Spears*,
No. 12–06, 2013 WL 4510305 (D. Del. Aug. 22, 2013).....................................14

*Yarchak v. Trek Bicycle Corp.*,
208 F. Supp. 2d 470 (D.N.J. 2002) .........................................................................4

**Rules**

Fed. R. Civ. P. 26 ......................................................................................... 1, 13

Fed. R. Evid. 702 ....................................................................................... 3, 4, 6

## I. INTRODUCTION

NIBCO seeks to rely upon the opinions of Robert Jalnos to rebut the opinions of Ed Slovak, Plaintiffs' expert, pursuant to Rule 26(a)(2)(D)(ii) of the Federal Rules of Civil Procedure. Unsurprisingly, Mr. Jalnos' opinions attempt to manufacture supposed individualized issues of replumbing damages. Many of his opinions, however, are unreliable and should be excluded. He opines that the cost-per-fixture formula developed and used by Mr. Slovak "simply does not work." (Expert Report of Robert Jalnos (attached as **Exhibit 1** to the accompanying Declaration of Bruce D. Greenberg ("Greenberg Decl."), at 2.) According to Mr. Jalnos, this is because the cost-per-fixture method is allegedly "not the standard of the industry," (*id.*) "completely inaccurate and unreliable," (*id.* at 3) and "is why many plumbers using this method have gone out of business." (*id.*)

Mr. Jalnos does not have the proper background or experience to provide these opinions. His belief that plumbers using the cost-per-fixture method have "gone out of business" because of it is pure conjecture and not based on facts. His plumbing experience is limited to the San Antonio area and he admits that he has no knowledge of how the plumbing industry operates in other parts of Texas, let alone across the United States. He also has never employed the cost-per-fixture formula himself. Finally, his report includes opinions related to performing repairs

of an existing plumbing system or installing an original system, which improperly exceed the scope of a rebuttal report. Thus, these opinions should be excluded.

## II. FACTUAL BACKGROUND

### A. Robert Jalnos

Mr. Jalnos is a master plumber in San Antonio, Texas. (Ex. 1 at 8.) Mr. Jalnos founded Steve's Plumbing, a plumbing contracting firm in San Antonio, Texas, in 1978. (*See* Deposition of Robert Jalnos, May 31, 2017 (Greenberg Decl., **Exhibit 2**) at 36:9-24.) Steve's Plumbing allegedly does "anything that's plumbing." (*Id.* at 36:9-19.) Approximately one year prior to his deposition in this case, Mr. Jalnos testified that not only had he never replumbed a house with PEX products in it, but that he had never even seen a house being replumbed. (*See* Deposition of Robert Jalnos in *Christianson A/C & Plumbing v. NIBCO*, Mar. 9, 2016 (Greenberg Decl., **Exhibit 3**) at 207:17-208:1.) At his deposition in this case, however, Mr. Jalnos testified that he has personally "seen thousands of repipes." (Ex. 2 at 51:7-52:9.)

Also at his deposition, Mr. Jalnos stated that his plumbing experience is limited to the San Antonio area and he does not "know what's going on in Dallas, Austin, Houston, and areas in between." (*Id.* at 103:7-12.) Mr. Jalnos' report, however, offers opinions that go far beyond his expertise and qualifications. In addition, statements at Mr. Jalnos' deposition directly contradict the statements in

his report, including his ultimate conclusion that Mr. Slovak's opinion "simply does not work." (Ex. 1 at 2.)

### B. Ed Slovak

For the past thirty years, Mr. Slovak has exclusively performed replumbing work across the United States and has done so using only the cost-per-fixture methodology. (*See* Deposition of Ed Slovak, May 18, 2017 (Greenberg Decl., **Exhibit 4**) at 148:14-24.) This methodology consists of Mr. Slovak adding up the number of whole fixtures (supplied with both hot and cold water) and half-fixtures (supplied with only hot or cold water) and then multiplying that number by $600. (*See* Expert Report of Ed Slovak (Greenberg Decl., **Exhibit 5**), at 3-4.) Mr. Slovak is currently employed by Delta Mechanical, one of the four largest replumbing companies that compete for replumbing business across the United States. (Ex. 4 at 184:10-14.) His main competitors also employ the cost-per-fixture method at approximately the same per-fixture price as Delta Mechanical. (*Id.* at 184:18-185:1.) Mr. Slovak's opinions are limited to replumbing Plaintiffs' and the putative classes' homes and does not address repairing existing or future leaks or original plumbing system installations. (Ex. 5 at 3-4.)

## III. LEGAL STANDARD GOVERNING RELIABILITY OF EXPERT TESTIMONY

The admissibility of expert testimony under Rule 702 is a question of law.

*Yarchak v. Trek Bicycle Corp.*, 208 F. Supp. 2d 470, 494 (D.N.J. 2002). It demands a factual determination based on specific criteria of the opinion being offered. *See Pineda v. Ford Motor Co.*, 520 F.3d 237, 245 (2008). "When faced with a proffer of expert scientific testimony, the trial judge must make a preliminary determination, pursuant to Rule 104(a), whether the expert testimony satisfies the standard of 'evidentiary reliability' established by the rule and will assist the trier of fact to understand or determine a fact in issue." *Yarchak*, 208 F. Supp. 2d. at 494 (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993)).

"Proper exercise of this 'gatekeeping' role, as it has been further clarified by subsequent decisions of the Third Circuit Court of Appeals, entails the consideration of three basic requirements: (1) qualifications—whether the expert is qualified to speak with authority on a particular subject or issue; (2) reliability—whether the expert's methodology is sound and whether his or her opinion is supported by 'good grounds;' and (3) fit—whether there is a relevant 'connection between the scientific research or test result to be presented and particular disputed factual issues in the case.'" *Id.* (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741-743 (3d Cir. 1994)); *see also Oddi v. Ford Motor Co.*, 234 F.3d 136, 144-46 (3d Cir. 2000).

The reliability inquiry under Rule 702 focuses on the soundness of the expert's methodology and technique rather than on the expert's conclusions.

However, "conclusions and methodology are not entirely distinct from one another." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). As such, the court must also "examine the expert's conclusions in order to determine whether they could reliably flow from the facts known to the expert and the methodology used." *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 (3d Cir. 1999). A court need not admit expert testimony that is based on the *ipse dixit* of the expert. *Gen. Elec. Co.*, 522 U.S. at 146. The proponent of the expert testimony must show by a preponderance of the evidence that the expert's testimony is based on "good grounds." *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 807 (3d Cir. 1997). This standard requires more than a prima facie showing of reliability, but it is less onerous "than the merits standard of correctness." *Pineda*, 520 F.3d at 247 (quoting *Paoli*, 35 F.3d at 744).

*Daubert* provided a list of non-exclusive factors to guide a district court's evaluation of the reliability of expert testimony:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Steven J. Inc. v. Landmark Am. Ins. Co*, No. 1:14-CV-0474, 2015 WL 3849166, at *4 (M.D. Pa. June 22, 2015) (citations omitted). These factors "may or may not be

pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (citation omitted). The Supreme Court has held that trial courts' "gatekeeping" obligations extend to both scientific and nonscientific expert testimony. *Id.* at 147. It is the trial court's responsibility to "evaluate not only the principles and methodologies of the expert, but also whether the expert has properly applied those principles and methods to the facts of the case." *Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp. 2d 584, 595 (D.N.J. 2002) (citing Fed. R. Evid. 702).

## IV. ARGUMENT

### A. Mr. Jalnos' Opinion That Plumbers Have Gone Out of Business Because of Their Use of the Cost-Per-Fixture Method Is Unreliable

In his report, Mr. Jalnos opines that the cost-per-fixture method is completely "inaccurate and unreliable" and "[t]his is why many plumbers using this method have gone out of business." (Ex. 1 at 3.) Mr. Jalnos, however, has never employed this method personally. (*Id.* at 4.) During his deposition, Mr. Jalnos testified that his experience with plumbers who have used that method is limited to a handful of conversations he had with other plumbers in the San Antonia area who allegedly employed this method and went out of business *because* of it. (Ex. 2 at 91:20-95:14 (describing conversation with Master Craft plumbing CEO who allegedly went out of business because he used the cost-per-

fixture method).) Asked about the basis for his opinion, Mr. Jalnos admitted he did not know why these plumbers went out of business, he did not inquire as to why they went out of business, and was merely speculating that their use of the cost-per-fixture method caused them to go out of business. (*Id.* at 118:16-120:14 ("Q: 'Okay. For any of those companies, do you have direct knowledge of why each of those companies went out of business?' A:'The only direct knowledge I have is what I hear from the supply houses; that they didn't have the money to pay their bills, and suppliers would file liens on the property they were working on because they didn't have money, their cash flow and such.'").) Moreover, Mr. Jalnos admitted that he believed these plumbers were talking about original installations of plumbing systems, not repiping, because "repiping jobs – that's not a common thing." (*Id.* at 96:2-97:1.) Put differently, Mr. Jalnos has admitted he has no basis for this opinion.

In *Steven J. Inc.*, the Middle District of Pennsylvania found a proposed expert's opinions to be unreliable based on information discovered during the expert's deposition. 2015 WL 3849166, at *6. There, the expert opined that a building experienced "extensive water infiltration damage" based on information provided to him. *Id.* at *5. During his deposition, the expert testified that he "was unable to verify these representations" and that he did not "for example, review weather reports, rain gauges, or any other technical documents." *Id.* at *6. The

expert was also "unable to ascertain how much damage resulted from Superstorm Sandy as opposed to subsequent storms" because he failed to explain what led him to certain conclusions and not others. *Id.* *5-6. As a result, the court excluded the expert's testimony "to the extent that [he] opines on the cause of the damage to the property" because it amounted to "nothing more than an 'educated guess,' [and] wholly untestable." *Id.*

Here, Mr. Jalnos' opinion as to why these plumbers went out of business does not even amount to an educated guess, is unreliable, and should be excluded. It is insufficient for an expert to offer an opinion that is based on no more than subjective belief or an unsupported speculation. *Oddi*, 234 F.3d at 158; *see also Kemmerer v. State Farm Ins. Co.*, No. 2:01-5445, 2004 WL 87017, at *3 (E.D. Pa. Jan. 19, 2004) (noting that expert's opinion testimony is inadmissible if it expresses only possibilities); *Ruggiero v. Yamaha Motor Corp., U.S.A.*, No. 15-49 (JBS/KMW), 2017 WL 1197755, at *7 (D.N.J. Mar. 31, 2017) ("Speculation is not methodology."); *Pappas v. Sony Elecs. Inc.*, 136 F. Supp. 2d 413, 425, n.16 (W.D. Pa. 2000) (expert testimony based on knowledge and experience requires an expert to establish the methodology is reliable).

### B. Mr. Jalnos' Opinion That The Cost-Per-Fixture Method Is Not An Industry Standard Is Unreliable

Mr. Jalnos' report also states that "[i]t is not the standard of the industry to put a Flat-Rate price per fixture in bidding plumbing jobs, or in repairing a

damaged system, particularly one that applies without adjustment across various geographic locations." (Ex. 1 at 2.) This opinion lacks foundation and is also unreliable.

Mr. Jalnos' experience is limited to only the San Antonio area and at his deposition he admitted he does not even know what plumbers are doing in Dallas or Houston, let alone the rest of the United States. (Ex. 2 at 103:7-12.) In preparing his report, Mr. Jalnos made no effort to investigate if other plumbing companies used the cost-per-fixture method in Texas or throughout the United States. Despite being a rebuttal expert and having an opportunity to review Mr. Slovak's report and deposition, Mr. Jalnos did not research Mr. Slovak's company, Delta Mechanical, which is one of the four largest plumbing companies that perform replumbing work throughout the United States. (*Id.* at 128:10-21 (responding "no" when asked if was "familiar with a company called Delta Mechanical" and after being reminded that Mr. Slovak worked there, stating he knew only that Mr. Slovak "worked there or was getting maybe a paycheck from there or what").) Mr. Jalnos also admitted he has not even heard of the other three companies, and he knew of Mr. Slovak's company only through his expert report. (*Id.* at 128:7-129:16.)

Thus, Mr. Jalnos simply has no basis to opine that the cost-per-fixture method is not an industry standard because he has no familiarity with the plumbing

industry outside the San Antonio area and conducted no research, or did anything at all, that would give him a proper foundation for this opinion. *See, e.g.*, *Ruggiero*, 2017 WL 1197755, at *8 (finding testimony unreliable because, *inter alia*, it relied on "one portion of a voluntary industry standard" as opposed to the actual industry standards assembled by industry leaders, regulators, and experts). Because "knowledge connotes more than subjective belief or unsupported speculation," there is no reliable foundation for Mr. Jalnos' expert opinion as whether the cost-per-fixture method is an industry standard. *Daubert*, 509 U.S. at 590; *see also* *Ruggiero*, 2017 WL 1197755, at *7 (Speculation is not methodology.").

### C. Mr. Jalnos' Opinion That the Cost-Per-Fixture Method Does Not Work Was Directly Contradicted By His Deposition Testimony

Next, Mr. Jalnos' report, in no uncertain terms, states that "[a] price per fixture system simply does not work." (Ex. 1 at 2.) He repeats this statement throughout his report. (*Id.* at 3 (stating this method is "completely inaccurate and unreliable," stating "Mr. Slovak's methodology is unsound and unreliable," and stating "Mr. Slovak's methodology would and could not be accurate."); *id.* at 6 ("There are too many variables making this methodology inherently inaccurate and unreliable. It will not approximate the actual cost to replumb any home.").) According to Mr. Jalnos' report, Mr. Slovak's cost-per-fixture method *cannot work under any circumstances*.

At his deposition, however, Mr. Jalnos testified:

> Q. So would you agree with me if a company
> that was using the cost per fixture method was keeping
> track of rising costs in terms and labor and keeping
> track of or accounting for individual situations that
> require more materials and labor, if they were doing
> that, that using that estimation technique would work?
> […]
> THE WITNESS: Yeah. I don't know if I -- I
> mean, yes and no. Whatever means you can figure out
> cost by. So to figure out cost, they are having to
> put a bill of materials together which is the right
> way to do an estimate. They can't lump sum that. So
> here they are going to the effort after the fact, why
> not go to it from the beginning and ensure that you're
> going to cover your ground.

(Ex. 2 at 121 (omitting counsel's objections).) Mr. Jalnos also testified that he has "always felt[,] you know[,] unless you do tremendous volume and really watch what you're doing, you know, you're ready to lose your business." (*Id.* at 94:12-15.) These statements directly contradict the sweeping conclusion in his expert report that the cost-per-fixture method *cannot* work. As such, Mr. Jalnos' opinion is unreliable and should be excluded. *See, e.g.*, *Foraker v. Schauer*, No. 04-00363, 2005 WL 6000493, at *19 (D. Colo. Sept. 8, 2005) ("Additionally, Boswell appeared to have contradicted his own opinion in response to questioning from defense counsel, and his contradictions undermine the reliability of his opinion."); *see Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) ("When an expert opinion is not supported by sufficient facts to validate it

in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict.").

**D. Mr. Jalnos' Opinions Unrelated to Replumbing Should Be Stricken**

Finally, Mr. Jalnos is being offered as a rebuttal expert to Mr. Slovak. As such, Mr. Jalnos' report cannot exceed the scope of Mr. Slovak's report, which is limited in scope to a complete replumb of Plaintiffs' and the putative classes' plumbing systems. Mr. Slovak does not discuss the cost to repair existing or future leaks. (Ex. 5 at 3-4.) Mr. Jalnos, however, repeatedly asserts that the cost-per-fixture method is inappropriate for repairing leaks. (*See, e.g.*, Ex. 1 at 2 ("Access to the system plays an integral part in successfully and accurately bidding a project and approximating its cost because access controls what type of effort will be needed to *repair* or replace the system, and what cost will be associated with then repairing the home to its original state. It is not the standard of the industry to put a Flat-Rate price per fixture in bidding plumbing jobs, or in *repairing* a damaged system, particularly one that applies without adjustment across various geographic locations.") (emphasis added); *id.* ("As noted above, the level of access to the system plays an important role in estimating the cost of repairing or replacing the plumbing system, but the type of home is equally, if not more important."); *id.* ("For example, whatever the type of home, when assessing the cost to repair or replace a plumbing system, the plumber must consider . . . ."); *id.* at 3 ("These

questions cannot be ignored in preparing an estimate to repair or replace a plumbing system . . . ."); *id.* ("Slovak claims that the standard cost to repair a full plumbing fixture (hot & cold water) to be $600.00 per fixture and a half-fixture (hot or cold only) to be $300.00 per fixture."); *id.* at 4 ("This contradicts his previous footnote number 1 that a price per fixture cost works in every situation to figure out the price to replace and repair the homes with leaks in them.").)

In addition, Mr. Jalnos testified that his basis for opining the reason plumbers have gone out of business is because they used the cost-per-fixture method for doing *original installations* for plumbing systems, not for replumbing existing systems. (Ex. 2 at 96:2-8 (stating, in part, that he was "sure he is talking about original installation" because "repiping jobs – that's not a common thing").) Mr. Slovak's report, however, does not opine about what is an appropriate method for calculating the cost for installing an original plumbing system, as this is not an issue in this litigation. (*See generally* Ex. 5 at 3-4.)

A rebuttal expert report must "*solely* contradict or rebut evidence on the same subject matter" identified by the opposing expert. Fed. R. Civ. P. 26(a)(2)(D) (emphasis added). Because Mr. Jalnos improperly opines on repairing existing plumbing systems and installing original plumbing systems, which Mr. Slovak does not address in his report, those opinions should be stricken. *See, e.g.*, *In re Trasylol Prod. Liab. Litig.*, No. 1:09-01928, 2010 WL 4065436, *2 (S.D. Fla. Aug.

6, 2010) ("Rebuttal testimony is permitted only when it directly addresses an assertion raised by an opponent's experts."); *Home Design Servs., Inc. v. Hibiscus Homes of Florida, Inc.*, No. 6:03-1860, 2005 WL 2465020, at *5 (M.D. Fla. Oct. 6, 2005) ("Non-rebuttal, expert evidence which casts doubt on an opposing expert's report cannot be admitted under the thirty-day period for rebuttal evidence provided in Rule 26(a)(2)."); *Withrow v. Spears*, No. 12–06, 2013 WL 4510305, at *12 (D. Del. Aug. 22, 2013) (stating that while rebuttal and reply reports "may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert . . . expert reports that simply address the same general subject matter as a previously-submitted report, but do not directly contradict or rebut the actual contents of that prior report, do not qualify as proper rebuttal.").

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an order precluding Defendant NIBCO, Inc. from relying on any opinion proffered by Robert Jalnos relating to: (1) the cost-per-fixture method has caused plumbers to go out of business; (2) the cost-per-fixture method is not an industry standard; (3) the cost-per-fixture method categorically "does not work"; and (4) repairing existing plumbing systems or installing original plumbing systems.

**LITE DEPALMA GREENBERG, LLC**

Dated: July 28, 2017

*/s/ Bruce D. Greenberg*
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, NJ 07102
Phone: (973) 623-3000
Email: bgreenberg@litedepalma.com

**MCCUNE WRIGHT AREVALO LLP**
Joseph G. Sauder
555 Lancaster Avenue
Berwyn, PA 19312
Email: JGS@mccunewright.com

**CHIMICLES & TIKELLIS, LLP**
Steven A. Schwartz
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Phone: (610) 642-8500
Email: SAS@Chimicles.com

***Counsel for Plaintiffs and the Class***