## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KIMBERLY COLE and ALAN COLE, *et al.*,** on behalf of themselves and all others similarly situated, | : **CIVIL ACTION NO.** <br> : **13-CV-07871-FLW-TJB** |
| | : |
| **Plaintiffs,** | : **Document Electronically** <br> : **Filed** |
| | : |
| **v.** | : **Oral Argument Requested** |
| | : |
| **NIBCO INC.,** | : |
| | : |
| **Defendant.** | : |

### REPLY BRIEF IN SUPPORT OF THE MOTION FOR PARTIAL
### SUMMARY JUDGMENT OF NIBCO INC.

John McGahren
john.mcgahren@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, NJ 08540-6289
Telephone:  (609) 919-6600
Fax:  (609) 919-6701

J. Gordon Cooney, Jr. (*pro hac vice*)
gordon.cooney@morganlewis.com
Franco A. Corrado
franco.corrado@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103
Telephone:  (215) 963-5000
Fax: (215) 963-5001

Jean Paul Bradshaw (*pro hac vice*)
jbradshaw@lathropgage.com
J.A. Felton (*pro hac vice*)
jfelton@lathropgage.com
Kevin M. Kuhlman (*pro hac vice*)
kkuhlman@lathropgage.com
Rachel E. Stephens (*pro hac vice*)
rstephens@lathropgage.com
LATHROP & GAGE LLP
2345 Grand Boulevard, Suite 2800
Kansas City, MO 64108
Telephone:  (816) 292-2000
Fax:  (816) 292-2001

*Attorneys for Defendant NIBCO INC.*

# TABLE OF CONTENTS

**Page(s)**

I.    Introduction ...................................................................................... 1

II.   NIBCO Is Entitled To Summary Judgment On The Express Warranty
      Claims ............................................................................................. 3

      A.   Plaintiffs Have No Express Warranty Claims Because They
           Assert Only A Design Defect Claim And Design Defects Are
           Not Covered Under NIBCO's Limited Warranty .............................. 3

      B.   Certain Express Warranty Claims Fail For Other Reasons ................ 5

           1.   McMahon's And The Medders' Express Warranty
                Claims Fail Because They Did Not Rely On The Limited
                Warranty In Making A Purchase And Further To The
                Extent They Did Not Satisfy Its Notice Provisions .................. 5

           2.   Monica Did Not Comply With Notice Or Installation
                Requirements ...................................................................... 6

           3.   Sminkey Did Not Provide The Required Notice ...................... 7

           4.   The Pepernos Have Not Established That The Limited
                Warranty Was The Basis Of Their Bargain ............................ 8

           5.   Boyd Has Not Satisfied The Basis Of The Bargain
                Element .............................................................................. 8

III.  Summary Judgment Is Warranted With Respect To Express And
      Implied Warranty Claims Concerning Products That Have Not Failed ...... 9

IV.   Certain Plaintiffs' Implied Warranty Claims Fail For Other Reasons ........ 12

      A.   McMahon's And The Pepernos' Claims Are Time-Barred ............... 12

      B.   McMahon and the Medders Did Not Satisfy The Pre-Suit
           Notice Requirement Under Texas Law ....................................... 14

      C.   McCoy's Implied Warranty Claims Fails For Lack of Privity .......... 14

V.    Certain Plaintiffs Cannot Evade The Economic Loss Doctrine ............... 15

VI.   Monica And The Coles' Statutory Product Liability Claims Fail For
      Other Reasons ................................................................................ 18

      A.   Monica's NJ PLA Claim Fails ................................................... 18

i

     B.     The Coles' TPLA Pre-Sale Failure To Warn Claim Fails ................19

VII.  Conclusion ....................................................................................20

# TABLE OF AUTHORITIES

**Cases**                                                     **Page(s)**

*Baleares Link Exp., S.L. v. GE Engine Servs.-Dallas, LP*,
335 S.W.3d 833 (Tex. Ct. App. 2011).................................................................13

*Barko Hydraulics, LLC v. Shepherd*,
167 So.3d 304 (Ala. 2014)................................................................................10

*Bay Lines v. Stoughton Trailers, Inc.*,
838 So.2d 1013 (Ala. 2002)..............................................................................18

*Bruce Martin Constr., Inc. v. CTB, Inc.*,
735 F.3d 750 (8th Cir. 2013) ..............................................................................4

*Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*,
445 S.W.3d 716 (Tex. 2014) ............................................................................18

*Coba v. Ford Motor Co.*,
No. 16-1622, 2016 WL 5746361 (D.N.J. Sept. 30, 2016)...................................5

*Cole v. NIBCO, INC.*,
No. 13-cv-07871, 2015 WL 2414740 (D.N.J. May 20, 2015) ...............7, 11, 15

*Compaq Computer Corp. v. Lapray*,
135 S.W.3d 657 (Tex. 2004) ..............................................................................6

*Cooper v. Samsung Electronics North America, Inc.*,
374 F. App'x 250 (3d Cir. 2010) ........................................................................3

*Glob. Ground Support, LLC v. Glazer Enters., Inc.*,
No. 05-4373, 2008 WL 4425241 (E.D. Pa. Sept. 29, 2008)..............................10

*Goodman v. PPG Indus., Inc.*,
849 A.2d 1239 (Pa. Super. Ct. 2004)..................................................................8

*Ex Parte Grand Manor, Inc.*,
778 So.2d 173 (Ala. 2000)................................................................................18

*Harbison v. Lousiana-Pac. Corp.*,
No. 13-814, 2014 WL 469936 (W.D. Pa. Feb. 6, 2014) .....................................8

*Henderson v. Ford Motor Co.*,
    547 S.W.2d 663 (Tex. Ct. App. 1977) ................................................................11

*Klein v. Marvin Lumber & Cedar Co.*,
    No. 13-385, 2013 WL 12084508 (S.D. Tex. Nov. 13, 2013), *aff'd*,
    575 F. App'x 347 (5th Cir. 2014) ..............................................................17, 18

*Laney v. Am. Standard Cos., Inc.*,
    No. 07-3991, 2010 WL 3810637 (D.N.J. Sept. 23, 2010),
    *overruled in part on other grounds by Maniscalco v. Bro. Int'l*
    *(USA) Corp.*, 704 F.3d 202 (3d Cir. 2013) ........................................................10

*Lee v. Mylan Inc.*,
    806 F. Supp. 2d 1320 (M.D. Ga. 2011) ............................................................15

*Mack Trucks, Inc. v. Borgwarner Turbo Sys., Inc.*,
    508 F. App'x 180 (3d Cir. 2012) .........................................................................3

*Massey-Ferguson, Inc. v. Laird*,
    432 So. 2d 1259 (Ala. Civ. App. 1983) ..............................................................9

*McCollough Enters., LLC v. Marvin Windows & Doors*,
    No. 09-0573, 2010 WL 5014670 (S.D. Ala. Dec. 2, 2010) ...............................11

*McDonald v. Mazda Motors of Am., Inc.*,
    603 S.E.2d 456 (Ga. Ct. App. 2004) .................................................................10

*Meadow v. NIBCO INC.*,
    No. 15-1124, 2016 WL 2986350 (M.D. Tenn. May 24, 2016) ...........................9

*Monticello v. Winnebago Indus., Inc.*,
    369 F. Supp. 2d 1350 (N.D. Ga. 2005) .......................................................14, 15

*Murray v. D & J Motor Co.*,
    958 P.2d 823 (Okla. Civ. App. 1998) ...............................................................10

*Nelson v. Nissan North America, Inc.*,
    No. 11-5712, 2014 WL 7331922 (D.N.J. Dec. 19, 2014) ...................................4

*O'Sekon v. Exxon Corp.*,
    No. 00-cv-675, 2001 WL 1715783 (D.N.J. Dec. 21, 2001) ..............................19

iv

*Osburn v. Bendix Home Systems, Inc.*,
   613 P.2d 445 (Okla. 1980)................................................................11

*Peters v. LG Elecs. USA, Inc.*,
   No. 07-cv-38, 2007 WL 4591405 (D.N.J. Dec. 28, 2007) ...................8

*Robertson v. Allied Signal, Inc.*,
   914 F.2d 360 (3d Cir. 1990) .......................................................16, 19

*Schoch v. First Fidelity Bancorporation*,
   912 F.3d 654 (3d Cir. 1990) ...........................................................16

*Sharyland Water Supply Corp. v. City of Alton*,
   354 S.W.3d 407 (Tex. 2011) ...........................................................18

*Steele v. Deputy Orthopaedics, Inc.*,
   295 F. Supp. 2d 439 (D.N.J. 2003)..................................................10

*Strickler v. Peterbilt Motors Co.*,
   No. 04-3628, 2005 WL 1266674 (E.D. Pa. May 27, 2005) ...............12

*Structural Metals, Inc. v. S & C Elec. Co.*,
   No. 09-984, 2012 WL 930816 (W.D. Tex. Mar. 19, 2012) ...............10

*Woolums v. Nat'l RV*,
   530 F. Supp. 2d 691 (M.D. Pa. 2008)..............................................11

*In re Zurn PEX Plumbing Products Liability Litigation*,
   644 F.3d 604 (8th Cir. 2011) ....................................................11, 12

*Zwiercan v. Gen. Motors Corp.*,
   58 Pa. D & C.4th 251 (Pa. Com. Pl. 2002).......................................13

**Statutes**

Tex. Bus. & Com. Code § 2.725(b) ........................................................13

I.    **Introduction**

Although NIBCO's products are properly designed and manufactured, NIBCO recognizes that there may be disputed issues of fact regarding whether leaks allegedly experienced by certain of the named Plaintiffs in this case were caused by an alleged defect or other causes such as installer error or environmental operating conditions, or even other factors.   Accordingly, NIBCO limited its summary judgment motion directed to the claims of the named Plaintiffs to those grounds that it believed were appropriate for resolution at this stage of the litigation.

The claims of the named Plaintiffs that should be permitted to proceed beyond summary judgment should be limited to: (a) those in tort for product liability and negligence where a NIBCO PEX Tubing or Fitting leaked and created injury to "other property" as defined by the relevant state law and for which a named Plaintiff has not already been fully compensated; or (b) those for implied warranty where there has been an actual leak, the claim was timely asserted, and state law notice and privity requirements are satisfied.[1]   The remaining claims in the case should be dismissed through summary judgment as a matter of law or

---

[1]   Properly limited, the Cole's TPLA design defect claim would remain; McMahon's product liability and negligence claims would remain insofar as he seeks damages for personal items he claims were damaged as a result of leaks; Sminkey's claim for damaged drywall for one leak would remain; and the Medders' implied warranty claims for their first alleged Tubing leak would remain.

based on the undisputed facts.

Plaintiffs have either conceded or failed to respond to several dispositive arguments, entitling NIBCO to judgment with regard to the following:

- All claims premised on a supposed manufacturing defect, given Plaintiffs' failure to dispute NIBCO's arguments that Plaintiffs' "expert's theory is premised exclusively on a design defect theory" (Doc. 132 at 6 n.3; Doc. 119 at 14);

- All strict liability and negligence claims involving Fittings or Tubing that have not leaked in a particular named Plaintiffs' home (Doc. 132. at 11-14; Doc. 119 at 14-16);

- Sminkey's, Boyd's, and McMahon's failure to warn claims (Doc. 132 at 23 n.10, 25 n.12, 38 n.16); the Coles' post-sale claim (*id.* at 26 n.13); and Monica's pre-sale claim (*id.* at 30 n.15), by these named Plaintiffs' express concessions;

- All of Boyd's claims to the extent they involve Fittings because she admittedly did not have any in her home (Doc. 131-1 ¶ 57); and

- Any attempt to recover the cost to re-plumb under all Plaintiffs' product liability and negligence claims because such a remedy is barred by the economic loss doctrine (*see* Doc. 132 at 11-14), and for McCoy on any theory because he received a free re-plumb (Doc. 131-1 ¶ 160).

Moreover, the arguments Plaintiffs do present do not save their remaining claims.  For instance, Plaintiffs contend that PEX Tubing and Fittings are defectively designed, and, under settled law, design defects are not covered under "materials and workmanship" warranties like the Limited Warranty.  Their argument that the defect in the design results from an improper material selection

2

does not convert their claim to a manufacturing issue covered by a "materials and workmanship" warranty, and similar attempts have been rejected by courts in this District and elsewhere.   Certain of the named Plaintiffs' express and implied warranty claims fail for the additional reasons outlined herein.   Finally, several Plaintiffs' product liability and negligence claims are barred by the economic loss doctrine because the alleged leaks they experienced caused no damage to "other property" by their own concession or under legal standards relevant to their claims.

## II.   NIBCO Is Entitled To Summary Judgment On The Express Warranty Claims.

### A.   Plaintiffs Have No Express Warranty Claims Because They Assert Only A Design Defect Claim And Design Defects Are Not Covered Under NIBCO's Limited Warranty.

Plaintiffs do not dispute that they are pursuing a "design defect theory" and that NIBCO's Limited Warranty covers only "defects in materials and workmanship."   (Doc. 131-1 ¶ 11; Doc. 132 at 6 n.3.)   Courts interpreting this phrase consistently hold that it covers only *manufacturing* defects – that is, issues over products made in a way that deviate from their design specifications.[2]   (Doc.

---

[2] Citing *Cooper v. Samsung Electronics North America, Inc.*, 374 F. App'x 250 (3d Cir. 2010), Plaintiffs incorrectly argue that a "materials and workmanship" warranty is limited to manufacturing defects only when expressly preceded by the term "manufacturing."   (Doc. 132 at 8-9.)   *Cooper* did not hold this and did not depart from the legion of authority in this Circuit and elsewhere holding that the phrase "defects in materials and workmanship" covers only manufacturing defects. 374 F. App'x at 253; *see also* Doc. 119 at 12 n.2; *Mack Trucks, Inc. v. Borgwarner*

3

119 at 12-13 & nn.2, 4.)  Plaintiffs' theory of defect dooms all claims under the Limited Warranty.

Providing no authority supporting their position, Plaintiffs quibble over whether, contrary to all of the law stating otherwise, the phrase "defects in materials and workmanship" in the express warranty should be extended to their claims because they contend NIBCO's design is faulty due to its selection of improper materials.  (Doc. 132 at 9.)  This argument routinely has been rejected as an invalid attempt to convert a design defect claim into one of manufacturing defect.  For example, in *Nelson v. Nissan North America, Inc.*, No. 11-5712, 2014 WL 7331922 (D.N.J. Dec. 19, 2014), some of Plaintiffs' same counsel in this case argued that the manufacturer's decision to use lead in wheel bushings was a defect in "materials" that breached the "materials and workmanship" warranty.  *Id.* at *3. Rejecting the argument, the court recognized that under "the vast weight of authority," a "materials and workmanship" warranty refers only to manufacturing defects, and that "using lead bushings that . . . were [alleged to be] particularly susceptible to high heat is a design defect," not a manufacturing defect affecting only certain vehicles that failed to meet design specifications.  *Id.*; *see also Bruce Martin*, 735 F.3d at 754 ("[Plaintiff] asserts that the design was defective in calling

---

*Turbo Sys.*, 508 F. App'x 180, 184 (3d Cir. 2012) (granting summary judgment because "material and workmanship" language did not cover design defects); *Bruce Martin Constr., Inc. v. CTB, Inc.*, 735 F.3d 750, 753 (8th Cir. 2013) (same).

4

for unsuitable materials, essentially arguing that the defect is both one of design and one of material.  This admission is ultimately fatal to [plaintiff's] warranty claim, for a design defect cannot also be a defect in material and workmanship." (citing, *inter alia*, *Mack Trucks, Inc.*, 508 F. App'x at 184)); *Coba v. Ford Motor Co.*, No. 16-1622, 2016 WL 5746361, at *10 (D.N.J. Sept. 30, 2016) (holding allegation that fuel tank's coating was inadequate to withstand acid exposure was claim for design defect).

Plaintiffs here plainly contend that the selection of "[p]roduct materials" rendered them susceptible to degrade prematurely when produced according to specifications.  (Doc. 132 at 7-8.)  That is a quintessential "design defect" theory, requiring judgment on each express warranty claim on this basis.

### B.   Certain Express Warranty Claims Fail For Other Reasons.

Not only do all Plaintiffs' express warranty claims fail because the Limited Warranty does not cover design defects, there also are additional grounds for entering judgment on the claims against certain of the named Plaintiffs.

#### 1.   McMahon's And The Medders' Express Warranty Claims Fail Because They Did Not Rely On The Limited Warranty In Making A Purchase And Further To The Extent They Did Not Satisfy Its Notice Provisions.

McMahon and the Medders do not dispute that that they did not know about any express warranty when buying their homes, much less "rely" on it as required

5

by Texas law when making their purchases.  (Doc. 119 at 34-35; Doc. 131-1 ¶¶ 75-76, 78-81, 111-14, 129.)   Their express warranty claims thus fail.   *Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 676 (Tex. 2004) (imposing reliance requirement for express warranty that came with computer).  Plaintiffs muster no response to *Compaq*, and judgment should be entered against their claims.

Moreover, McMahon does not contest that he has not satisfied certain conditions in the Limited Warranty, including those related to notice for any leak other than the third leak he claims to have experienced, and/or the requirement that the product be installed by a licensed plumber.  (Doc. 119 at 34-35; Doc. 131-1 ¶¶ 76-77, 85-86; Doc. 132 at 35-36.)  Likewise, the Medders do not contest that, with the exception of their first leak, they did not provide notice or an opportunity to inspect a failed component.  (Doc. 119 at 39; Doc. 131-1 ¶¶ 124-27; Doc. 132 at 39-40.)   Their argument – that they should be excused from meeting these obligations because NIBCO delivered an allegedly defective product – is meritless.  *See* Section III and footnote 5, *infra*.  Thus, on these bases, NIBCO is entitled to judgment on McMahon's express warranty claim and, with the exception of their first alleged leak, the Medders' express warranty claim.

### 2.     Monica Did Not Comply With Notice Or Installation <u>Requirements.</u>

Monica's express warranty claim fails because he did not comply with the

conditions precedent in the Limited Warranty.  (Doc. 119 at 27-28.)  He does not dispute that he never returned to NIBCO any Fittings that he believes leaked, despite NIBCO's request that he do so.  (Doc. 131-1 ¶¶ 30, 41.)  Nor does he dispute that his PEX was not "installed" by a licensed plumber, which is an express requirement for coverage under the Limited Warranty.  (*Id.* ¶¶ 11, 26-27.)  Each is an independent reason to enter judgment for NIBCO as to Monica's express warranty claim.  (Doc. 119 at 27-28.)

### 3. <u>Sminkey Did Not Provide The Required Notice</u>.

Having strenuously argued that the Limited Warranty is a contract that must be enforced according to its terms (Doc. 132 at 6-7), Sminkey's claim for breach of the Limited Warranty necessarily fails because there is no dispute that he did not contact NIBCO to request a repair or replacement in accordance with its provisions.  (Doc. 119 at 21; Doc. 131-1 ¶¶ 11, 102.)  There has thus been no "breach" of the warranty, as this Court already concluded in dismissing the claims of other named Plaintiffs.  *Cole v. NIBCO, INC.*, No. 13-cv-07871, 2015 WL 2414740, at *8-9 (D.N.J. May 20, 2015) (dismissing warranty claim for failure to satisfy notice provisions and stating that breach occurs only upon failure to replace or replace); *see also* Section III and footnote 5, *infra*.

### 4. The Pepernos Have Not Established That The Limited Warranty Was The Basis Of Their Bargain.

The Pepernos have not established the "basis of the bargain" element of their express warranty claim under the applicable standard (Doc. 119 at 31-32) because they admittedly were unaware of the Limited Warranty when the NIBCO PEX products were purchased and installed in their home. (Doc. 131-1 ¶¶ 142-43, 148.) Their express warranty claim thus fails under *Goodman v. PPG Indus., Inc.*, 849 A.2d 1239, 1245-46 (Pa. Super. Ct. 2004); *see also Peters v. LG Elecs. USA, Inc.*, No. 07-cv-38, 2007 WL 4591405, at *4 (D.N.J. Dec. 28, 2007) (applying *Goodman* rule in consumer context). The Pepernos argue this Court should ignore *Goodman* in favor of *Harbison v. Lousiana-Pac. Corp.*, No. 13-814, 2014 WL 469936, at *4 (W.D. Pa. Feb. 6, 2014). (Doc. 132 at 32.) But unlike the Pepernos, the plaintiff there alleged he was aware of the warranty terms through an agent.

### 5. Boyd Has Not Satisfied The Basis Of The Bargain Element.

Boyd's express warranty claim also fails because it was not the basis of any bargain. (Doc. 119 at 23.) Boyd argues that Alabama law does not require proof of reliance (Doc. 132 at 24-25), but her argument addresses the wrong standard. NIBCO is not arguing that she needed to prove actual reliance, but that Alabama law requires that she must have been at least ***aware of*** the Limited Warranty prior to any purchase of PEX. This is the same test recognized by a case she cites.

8

*Massey-Ferguson, Inc. v. Laird*, 432 So. 2d 1259, 1261 (Ala. Civ. App. 1983) (ruling written warranty was part of basis of bargain because plaintiff "knew about the express warranty prior to the delivery of" product).  Boyd does not dispute that she was unaware of NIBCO's Limited Warranty at the time she purchased her home.  (Doc. 131-1 ¶¶ 58-59.)  Her express warranty claim thus fails, as another court applying Alabama law held at the motion to dismiss stage under similar circumstances.  *Meadow v. NIBCO INC.*, No. 15-1124, 2016 WL 2986350, at *3-4 (M.D. Tenn. May 24, 2016) (dismissing Alabama plaintiff's claim for breach of the NIBCO Limited Warranty).

## III.   Summary Judgment Is Warranted With Respect To Express And Implied Warranty Claims Concerning Products That Have Not Failed.

Plaintiffs' warranty claims (express and implied) also cannot proceed based on components that have not leaked in their homes.  (Doc. 119 at 14-16.)  Plaintiffs who have Tubing and/or Fittings that have not leaked have no warranty claims for those products.  Plaintiffs argue that Tubing and Fittings may be "in the process of failing" and, thus, might leak at some indeterminate time in the future.  (Doc. 132 at 12.)  This approach has been rejected by the majority rule – applicable in the relevant states here – holding that a warranty is not "breached" until any putative latent defect has manifested and actually caused the potential harm – in this case, through a leak.  (Doc. 119 at 15-16 & nn. 5, 6 (citing cases).)

9

Plaintiffs' own cases do not support finding "breach" where a product *might* leak a later date. Many of Plaintiffs' cases involved products that stopped working altogether or caused physical injury.[3] That has not occurred here for PEX products that have not leaked and continue to carry water without incident.

Moreover, contrary to Plaintiffs' argument, a "repair or replace" warranty – like the Limited Warranty here – is not breached by delivering an allegedly non-conforming good that has not failed. (Doc. 132 at 12-13.) This is true even when, as here, the Limited Warranty states that the products will "be free from defects in materials and workmanship" because, as construed by relevant law, the operative promise is that NIBCO will provide a repair or replacement if the user experiences a covered problem with the product. (Doc. 131-1 ¶ 11.) *See Laney v. Am. Standard Cos., Inc.*, No. 07-3991, 2010 WL 3810637, at *10 (D.N.J. Sept. 23, 2010) (repair and replace warranty "do[es] not promise that [product] is free from defects" but rather that manufacturer repair or replace defects shown to exist),

---

[3] *See Murray v. D & J Motor Co.*, 958 P.2d 823, 826 (Okla. Civ. App. 1998) (plaintiff's car "completely broke down"); *Steele v. Deputy Orthopaedics, Inc.*, 295 F. Supp. 2d 439, 441 (D.N.J. 2003) (medical device caused physical injury); *Glob. Ground Support, LLC v. Glazer Enters., Inc.*, No. 05-4373, 2008 WL 4425241, at *2 (E.D. Pa. Sept. 29, 2008) (product collapsed, causing personal injury and damage); *Barko Hydraulics, LLC v. Shepherd*, 167 So.3d 304, 310 (Ala. 2014) (equipment "stopped working"; manufacturer refused repair); *Structural Metals, Inc. v. S & C Elec. Co.*, No. 09-984, 2012 WL 930816, at *1 (W.D. Tex. Mar. 19, 2012) (air conditioning system overheated); *McDonald v. Mazda Motors of Am., Inc.*, 603 S.E.2d 456, 460 (Ga. Ct. App. 2004) (vehicle rattled and "r[an] rough").

10

*overruled in part on other grounds by Maniscalco v. Bro. Int'l (USA) Corp.*, 704 F.3d 202, 207 (3d Cir. 2013).[4]  As this Court held in dismissing McCoy's claim, "it is the ***refusal to remedy*** within a reasonable time, or a ***lack of success*** in the attempts to remedy [that] would constitute breach."  *Cole*, 2015 WL 2414740, at *8-9 (citation omitted).[5]

Plaintiffs' citation to *In re Zurn PEX Plumbing Products Liability Litigation*, 644 F.3d 604, 617 (8th Cir. 2011), is also unhelpful because *Zurn* applied Minnesota law, which is not at issue for the named Plaintiffs' claims.  Minnesota law also contradicts the majority rule that it is not enough to allege that a failure

---

[4] *See also McCollough Enters., LLC v. Marvin Windows & Doors*, No. 09-0573, 2010 WL 5014670, at *9-10 (S.D. Ala. Dec. 2, 2010) ("[T]he critical question is whether the seller proves . . . willing to abide by its promise to repair or replace that original product with conforming product . . .  after the defect is brought to its attention. . . . plaintiffs' focus on the allegedly nonconforming status of the original windows is unhelpful."); *Woolums v. Nat'l RV*, 530 F. Supp. 2d 691, 698-99 (M.D. Pa. 2008) (no breach of repair or replace warranty where "defects were successfully repaired or never presented to [defendant]"); *Henderson v. Ford Motor Co.*, 547 S.W.2d 663, 668 (Tex. Ct. App. 1977) ("[T]he question is not whether defects existed in the automobile at the time it was purchased, but whether or not Ford and Pollard  .  .  .  would repair or replace any part found to be defective"); *Osburn v. Bendix Home Systems, Inc.*, 613 P.2d 445, 450 (Okla. 1980) (same).

[5] Accordingly, Monica, Sminkey, McMahon, the Medders, and the Pepernos' argument that they should be excused from complying with the Limited Warranty's notice requirements because NIBCO breached the Limited Warranty by delivering non-conforming goods is simply wrong.  (Doc. 132 at 2, 12 n.5, 33, 36-37.)  A contrary holding would eviscerate established law because the crux of nearly every warranty claim is delivery of allegedly non-conforming goods.

11

manifested in other, identical products.  (Doc. 119 at 15-16.)  And, *Zurn* did not hold as a matter of law that a non-leaking product violated the express warranty. 644 F.3d at 618.[6]

Thus, NIBCO is entitled to summary judgment against the named Plaintiffs over any express and implied warranty claims for products that have not leaked for them:  (1) Monica for Tubing; (2) Boyd for Fittings; (3) McMahon for Fittings; (4) Sminkey for Fittings; (5) the Medders for Tubing; (6) the Pepernos for Fittings; and (7) McCoy for Fittings.  (Doc. 119 at 16.)

## IV.   Certain Plaintiffs' Implied Warranty Claims Fail For Other Reasons.

As discussed above, Plaintiffs cannot maintain implied warranty claims over products that did not fail in their homes.  There are further individualized reasons to dismiss the implied warranty claims of McMahon, the Pepernos, and Boyd.

### A.   McMahon's And The Pepernos' Claims Are Time-Barred.

McMahon's implied warranty claim is barred by the four-year statute of limitations.  (Doc. 119 at 36.)  McMahon does not dispute that his PEX was tendered in 2007, so his lawsuit six years later was too late.  (Doc. 131-1 ¶ 73.)

McMahon tries to invoke the discovery rule (Doc. 132 at 37-38), but it does

---

[6] Plaintiffs also cite *Strickler v. Peterbilt Motors Co.*, No. 04-3628, 2005 WL 1266674 (E.D. Pa. May 27, 2005), which is distinguishable on the ground that plaintiff submitted a tractor to the manufacturer for repair and there was a dispute over whether the repair was effective.  *Id.* at *1-2.

12

not apply to implied warranty claims under Texas's UCC.  *See* Tex. Bus. & Com. Code § 2.725(b) ("A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach.  A breach of warranty occurs when tender of delivery is made").  Indeed, the case he cites, *Baleares Link Exp., S.L. v. GE Engine Servs.-Dallas, LP*, 335 S.W.3d 833, 837-38 (Tex. Ct. App. 2011), involved a services contract, not sales of goods under the UCC.

The Pepernos' implied warranty claim fares no better.  Their PEX was installed in 2007, and thus needed to be filed by 2011 at the latest.  (Doc. 131-1 ¶ 138; Doc. 119 at 32 & n.10.)  The Pepernos do not dispute that their case was filed outside of the four-year statute of limitations and, instead, argue that the limitations period should be tolled for them because NIBCO failed to disclose that its products were defective.  (Doc. 132 at 34.)  But, NIBCO had no duty to disclose under these circumstances.  (Doc. 119 at 33.)  The Pepernos' reliance on *Zwiercan v. Gen. Motors Corp.*, 58 Pa. D & C.4th 251 (Pa. Com. Pl. 2002), to establish a duty to disclose does not help them.  The rule in *Zwiercan* is inapplicable because it expressly limited any duty of disclosure to "life threatening latent defects," and did so to avoid the imposition of a wholesale and burdensome duty upon manufacturers to disclose all known issues and information "because manufacturers always have 'superior knowledge' of the facts."  *Id.* at *4.  NIBCO therefore had no duty to disclose under the law the Pepernos cite.

13

**B.    McMahon and the Medders Did Not Satisfy The Pre-Suit Notice Requirement Under Texas Law.**

To establish a claim for breach of implied warranty, Texas law plainly requires that a purchaser provide a remote manufacturer both pre-suit notice and an opportunity to inspect the allegedly defective product.  (Doc. 119 at 35.)  As demonstrated above, McMahon' implied warranty claim is time-barred in its entirety.  Moreover, the majority of McMahon's claim fails for the additional reason that he contends he provided notice and submitted Tubing only for his third alleged leak.  (Doc. 132 at 37-39; Doc. 131-1 ¶¶ 82, 85-86.)  Likewise, the Medders contend only that they provided notice of the first leak and their insurance carrier submitted a sample from one leak but no others.  (Dkt. 131-1 ¶¶ 124-27.)  To the extent not otherwise barred as set forth herein, this forecloses their implied warranty claims for any leaks other than McMahon's third and the Medders' first.

**C.    McCoy's Implied Warranty Claims Fails For Lack of Privity.**

McCoy's implied warranty claim fails for the additional reason that he lacks privity with NIBCO, which is a requirement under Georgia law.  (Doc. 119 at 19-20.)  McCoy admits that his Tubing was not purchased directly from NIBCO (Doc. 131-1 ¶¶ 153-54), but cites an apparent split among federal courts applying Georgia law pertaining to whether the existence of an express warranty moots the need for privity.  *Compare, e.g.*, *Monticello v. Winnebago Indus., Inc.*, 369 F.

14

Supp. 2d 1350, 1361 (N.D. Ga. 2005) (holding that existence of express warranty does not establish privity for implied warranty claim) *with Lee v. Mylan Inc.*, 806 F. Supp. 2d 1320, 1326 (M.D. Ga. 2011). As McCoy acknowledges, the Georgia Supreme Court has not ruled on the issue. (Doc. 132 at 17-18.) Moreover, Plaintiffs cite *Lee*, but that case did not address a situation where, as here, the plaintiff was not aware of the express warranty. *Lee*, 806 F. Supp. 2d at 1326. *Lee* also does not hold that a plaintiff like McCoy can use an express warranty to establish privity for an implied warranty claim when his express warranty claim already has been dismissed. *See Cole*, 2015 WL 2414740, at *8-9. Under the circumstances here, *Lee* is distinguishable and this Court should follow the approach taken in *Monticello*.

## V. <u>Certain Plaintiffs Cannot Evade The Economic Loss Doctrine.</u>

The economic loss doctrine bars certain Plaintiffs' product liability and negligence claims where they have no evidence that any alleged leak caused damage to other property. First, the Pepernos, McCoy, Sminkey, and Monica (for his first leak) experienced no compensable physical damage. (Doc. 119 at 17; Doc. 119-2 ¶¶ 31, 98, 100, 147, 157.) Plaintiffs do not dispute that they must prove physical damage to recover, and their attempts to manufacture factual disputes regarding a supposed existence of physical damage are quickly dispensed:

- The Pepernos were asked directly whether any leak caused damage to their

15

home or personal property, and unequivocally responded "*no*": "*Q: In this case was there damage to your home? A: No. Q: Damage to any personal property you had down in the basement? A: No.*" (Doc. 119-43 at 27:13-17; Doc. 119-2 ¶ 60; *see also* Doc. 119-43 at 38:6-20, 44:16-45:1, 50:12-17; Doc. 119-2 ¶ 147 (citing testimony admitting same for other leaks).)  The only argument they muster in response is that a video of *one leak* showed "water spraying" and saturating the basement walls and floor and some belongings.  (Doc. 132 at 15.)  But, this does not create any genuine issue of material fact because (1) the Pepernos were asked about this very leak *and admitted that it caused no actual damage* (Doc. 119-43 at 44:16-45:1, 50:12-17), and (2) it would not help them avoid summary judgment on the other leaks.

- McCoy similarly conflates the fact of a leak with evidence of "damage to other property."  (Doc. 132 at 15.)  He testified that the wet floor joists in the crawlspace simply "dr[ied] out" and needed no repair or replacement, and that no personal items were damaged.  (Doc. 119-47 at 33:5-14, 40:4-21, 48:8-19, 54:24-53:9, 59:18-23, 66:18-23; Doc. 119-2 ¶ 157.)  McCoy also testified he was "just speculating" about the presence of mold, and that he did not have (and has not presented) evidence of mold.  (Doc. 119-47 at 106:9-15; Doc. 119-2 ¶ 157.)  Such speculation does not provide grounds to avoid summary judgment.  *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 383 n.12 (3d Cir. 1990).

- Sminkey does not dispute that he experienced no property damage from the second leak.  (Doc. 119-32 at 38:11-17.)  He argues that he has demonstrated "damage to other property" for the first leak because he "was forced to pull up carpeting."  (Doc. 132 at 15.)  But the carpet did not need to be replaced or discarded; the water simply dried without cost.  (Doc. 119-32 at 32:2-23; Doc. 119-2 ¶ 100.)  Sminkey also could not identify a single personal belonging that he discarded.  (Doc. 119-32 at 31:7-32:1 32:16-23.)  Thus, he has no evidence sufficient to withstand summary judgment.  *Schoch v. First Fidelity Bancorporation*, 912 F.3d 654, 657 (3d Cir. 1990) ("unsupported allegations" cannot defeat summary judgment).  Sminkey also claims that he had to replace drywall in his house as a result of a third plumbing leak, but this would not in any way support a claim over the other two leaks.

- Monica argues that the first leak "saturated the ceiling" in his basement. (Doc. 132 at 15.)  But, he testified that the only repair necessary for that leak was the replacement of PEX.  (Doc. 119-2 ¶ 31.)  A wet ceiling that simply dries

16

without any need to repair or replace any portion of the ceiling certainly is not "damage to other property," and Monica cites no authority to the contrary.

Thus, the product liability and negligence claims of these named Plaintiffs are barred in whole or in part by the economic loss doctrine. (Doc. 119 at 17.)

Second, the product liability and negligence claims of McMahon, Boyd, and the Medders also are barred because the only property damage they assert is damage to the surrounding areas of their home and any such alleged damage does not constitute "other property" to avoid the economic loss doctrine under the particular law applicable to their claims. (Doc. 119 at 18; Doc. 131-1 ¶¶ 65, 82-84, 117.)  With regard to McMahon and the Medders' claims under Texas law, Plaintiffs do not address *Klein v. Marvin Lumber & Cedar Co.*, No. 13-385, 2013 WL 12084508 (S.D. Tex. Nov. 13, 2013), *aff'd*, 575 F. App'x 347 (5th Cir. 2014), which applied Texas law and barred claims against a window manufacturer for damage to adjacent areas of a home caused by leaks because "[p]laintiff did not bargain separately for the windows and the windows were installed prior to Plaintiffs' purchase of the home," and so "any damage that occurred surrounding the windows is not damage to 'other property.'"  *Id.* at *5-6.  *Klein* is on point, applies Texas law, and compels entry of judgment in NIBCO's favor against McMahon and the Medders because they bargained for the finished structure (*i.e.*,

17

the home) **not for PEX**.[7]   The same result is warranted under Alabama law for

Boyd.  *See Bay Lines v. Stoughton Trailers, Inc.*, 838 So.2d 1013, 1019-20 (Ala.

2002) (dismissing tort claims over defective fiberglass panels over injury to

integrated product).[8]

## VI.   Monica And The Coles' Statutory Product Liability Claims Fail For Other Reasons.

### A.   Monica's NJ PLA Claim Fails.

NIBCO is entitled to judgment on Monica's NJ PLA claim because he

already has been compensated for his alleged damages.  Monica does not dispute

that he already recovered over $23,000 from his plumber and through insurance

proceeds, and that this amount exceeds his out-of-pocket costs to repair alleged

property damage.  (Doc. 131-1 ¶¶ 33-36, 47-48; Doc. 119 at 30.)  His argument

that the settlement payment from his plumber "primarily" related to issues other

---

[7] Rather than address *Klein*, Plaintiffs cite two inapposite decisions.  *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718-19 (Tex. 2014), considered whether homeowners could recover in tort against an installing plumber for failure to perform under a contract, not manufacturer liability for failure of integrated construction materials.  Moreover, *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 418-19 (Tex. 2011), held that economic losses may be recovered for certain tort claims such as fraud, however, it does not address "whether purely economic losses may ever be recovered in negligence or strict liability cases," and there is no cause of action for fraud pled in this case.  *Id.* at 419.

[8] Plaintiffs cite the dissent in *Ex Parte Grand Manor, Inc.*, 778 So.2d 173, 185 (Ala. 2000), which remarked that the economic loss doctrine should not bar damage to the home, but cite no Alabama decision adopting this reasoning.

than leaks in NIBCO PEX (Doc. 132 at 30-31) does not help him because the lawsuit resolved claims over PEX leaks caused by improper installation.  (Doc. 131-1 ¶¶ 22, 46.)  The same is true of the insurance proceeds, which paid him approximately $11,000 for two separate claims related to PEX leaks and water damage remediation.  (*Id.* ¶ 48.)

Monica's post-sale failure to warn claim also independently fails.  (Dkt. 119 at 29.)  He speculates that he "would have taken more proactive steps" if NIBCO had issued a post-sale warning.  (Doc. 132 at 30.)  But this self-serving speculation is belied by his failure to take adequate "proactive steps" to prevent further leaks. *O'Sekon v. Exxon Corp.*, No. 00-cv-675, 2001 WL 1715783, at *4 (D.N.J. Dec. 21, 2001) ("[A] party cannot rely upon self-serving conclusions . . . .").  There is no genuine dispute that a post-sale warning would not have prevented future leaks.

### B.   The Coles' TPLA Pre-Sale Failure To Warn Claim Fails.

The Coles' TPLA claim based on a pre-sale failure to warn fails because they admittedly had no role in selecting the PEX products for their home.  (Doc. 131-1 ¶¶ 13-16.)  The Declaration submitted by Ms. Cole speculates that her contractor (her father, Roger Cobb) would have told her about a warning.  (Doc. 131-11.)  This is mere speculation, and a "self-serving conclusion[], unsupported by specific facts in the record" cannot defeat summary judgment.  *O'Sekon*, 2001 WL 1715783, at *4; *Robertson*, 914 F.2d at n.12 ("[S]peculation. . . does not create

a material factual dispute").

**VII.   <u>Conclusion</u>**

For the reasons stated herein and in NIBCO's Opening Brief, NIBCO respectfully requests that the Court enter partial summary judgment in its favor.

Respectfully Submitted:

MORGAN, LEWIS & BOCKIUS, LLP
LATHROP & GAGE LLP

Dated:  August 28, 2017                 BY:  */s/ Franco A. Corrado*
                                              Franco A. Corrado