**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KIMBERLY COLE, ALAN COLE, JAMES MONICA, LINDA BOYD, MICHAEL MCMAHON, RAY SMINKEY, JAMES MEDDERS, JUDY MEDDERS, ROBERT PEPERNO, SARAH PEPERNO, and KELLY MCCOY, on behalf of themselves and all others similarly situated, *Plaintiffs*, vs. NIBCO, Inc., *Defendant*. | Civil Action No.: 13-cv-7871(FLW)(TJB) |

# PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF DONALD E. DUVALL AND ANAND R. SHAH

**LITE DEPALMA GREENBERG, LLC**
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
Email: bgreenberg@litedepalma.com

***Attorneys for Plaintiffs and Interim Co-Lead Counsel***

[*Additional counsel on signature page*]

# TABLE OF CONTENTS


Table of Authorities ........................................................................................ ii

I. INTRODUCTION ..........................................................................................1

II. ARGUMENT.................................................................................................3

A. Duvall and Shah do not Have the Qualifications or Experience to Provide Expert Opinions Regarding Plaintiffs' Plumbing Installations, and Any Such Testimony Would Serve Only to Confuse and Mislead the Jury ..........................................................................................3

B. NIBCO Fails to Identify any Independent Authority Supporting Duvall and Shah's "Minimum Carbonyl Index"..................................7

III. CONCLUSION...........................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Player v. Motiva Enterprises LLC*,
No. CIV. 02-3216 (RBK), 2006 WL 166452 (D.N.J. Jan. 20, 2006)....................3

*Puerto v. Mkt.*,
No. 14-5118, 2016 WL 7338526 (D.N.J. Dec. 19, 2016) ....................................7

*State v. Fortin*,
162 N.J. 517 (2000)..........................................................................................10

*United States v. Libutti*,
No. CRIM. 92-611 (JBS), 1994 WL 774646 (D.N.J. Feb. 8, 1994) ...................12

**Rules**

F.R.E. 403 ..........................................................................................................12

## I. INTRODUCTION

Defendant NIBCO Inc.'s ("NIBCO") opposition to Plaintiffs' motion to preclude Donald Duvall and Anand Shah, its liability experts for the 1006 PEX Tubing product, merely reinforces the fact that they are unqualified to opine on proper plumbing installation. As detailed below, Shah and Duvall oftentimes refer to an installation practice as "improper" when they admittedly have no basis to even suggest that the particular installation did not fully comport with NIBCO's own installation guidelines. This is perhaps unsurprising, as they are both failure analysts and not plumbers, nor do they have education or training in installing PEX plumbing systems or plumbing systems generally, as Plaintiffs' expert does.

Instead, Duvall and Shah identify a particular feature of the system, conclude that the feature contributed to the failure, then label that feature as "improper," even though some of these "improper" installations actually comply with NIBCO's instructions. These instructions are the only ballast Duvall and Shah for even asserting that an installation was "improper" – they point to no qualifications either possesses, independent of these guidelines, that would permit them to provide expert testimony that plumbing was properly or improperly installed. Shah even admitted at deposition that he is not a plumbing expert. Consequently, permitting Duvall and Shah to testify regarding the propriety of installation, without an adequate foundation to do so, will prejudice Plaintiffs and

distract the jury from the real issue in this case and the root cause of Plaintiffs' tubing failures: NIBCO's defective product.

With respect to Duvall and Shah's "minimum carbonyl index" requirement, neither of the independent sources NIBCO cites, and Duvall and Shah rely upon, withstand scrutiny. In reality, the idea that PEX tubing *cannot* fail as a result of oxidative degradation if the carbonyl index is less than 0.1 comes from one man and one man only: Donald Duvall. Duvall has repeated this mantra for 30 years without apparently ever revealing that the prior work he purports to base this requirement on *never said any such thing*, and no one outside of ESI has employed this methodology when conducting a failure analysis in the past 25 years.

NIBCO also fails to come to terms with the fact that the minimum requirement is not really a requirement at all, as Duvall has concluded on multiple past occasions that pipe samples were "highly degraded," and that oxidation led to the failure in that pipe, when the measured carbonyl index was well below this "magic" 0.1 number. But a scientific method, presented as absolute, that can change based on the circumstances of the investigation is no scientific method at all, and is likely to mislead and confuse the jury. The suggestion that a minimum carbonyl index of 0.1 is necessary to result in oxidative failure is unreliable, inadmissible, and should be precluded. Given that Duvall and Shah's opinion that oxidation did not cause Plaintiffs' tubing failures relies almost exclusively on this

methodology, they should be precluded from providing *any* opinion that oxidative degradation did not cause those failures.

## II. ARGUMENT

### A. Duvall and Shah do not Have the Qualifications or Experience to Provide Expert Opinions Regarding Plaintiffs' Plumbing Installations, and Any Such Testimony Would Serve Only to Confuse and Mislead the Jury

In arguing that Duvall and Shah are qualified to opine as to whether a plumbing component or system is properly installed, NIBCO points only to their experience in failure analyses and the fact that they have performed these failure analyses on other types of plastic pipes. Db2-4, 21. But this is not the same as being qualified to opine on whether a particular installation practice was "proper" or "correct." As Plaintiffs noted in their opening memorandum, Shah has conceded that he is not a plumbing expert, and that, in the past, ESI's data "may have been used by NIBCO for a plumbing expert that they may have had in other cases." Ex. 2, at 159:6-8; *see also id.* at 159:11-13 ("I'm not sure if they did it on this case. I think in other cases our work product was shared with plumbing experts"); *see Player v. Motiva Enterprises LLC*, No. CIV. 02-3216 (RBK), 2006 WL 166452, at *5 (D.N.J. Jan. 20, 2006), *aff'd*, 240 F. App'x 513 (3d Cir. 2007) ("where a proposed expert's area of experience is adjacent to, but not actually encompassing, the subject matter of his testimony, he may be deemed unqualified").

As such, permitting Duvall and Shah to testify that certain plumbing installations were "improperly" installed is likely to mislead the jury into believing that the installations were not done in accordance with applicable industry standards and, critically, that these alleged violations were the root cause of the failures at issue, shifting the blame to the installer, rather than to the defective product itself, without adequate basis to do so. This is simply not the case, as there is no evidence that the purported installations Duvall and Shah identify as the root cause of failures resulted from any installation practices that were "improper."

By way of example, Duvall and Shah conclude that several tubing failures in the Cole residence resulted from "excessive bending." *See* Ex. 1 to Plaintiffs' Motion (Duvall/Shah Report), at 86 ("the failure locations at the Cole residence were in places where the tubing was bent"); *see also* Db22 ("In the Cole home, the repair locations that were located were all in areas where the tubing changed direction. Upon inspection of the failures, ESI discovered that many of the incident pipes exhibited circumferential cracks that indicate the bending caused the failures") (citation omitted). Duvall and Shah describe this bending as an "improper installation practice." Ex. 1, at 92.

But Duvall admits that PEX tubing is designed to be flexible and bendable, and that NIBCO includes within its installation guides a recommended minimum bend radius informing the installer to what degree the PEX tubing can be bent. Ex.

3 (Duvall Deposition), 90:19-91:12; 185:24-186:3. Duvall was unable to identify a single piece of tubing that exceeded NIBCO's minimum bend radius, *see id.*, and even conceded that he had no indication that Mr. Grzetic, also from ESI and the person who actually performed all but one of the site inspections, measured the bend in the tubing at all. *See id.* at 214:13-215:7 ("Q: Do you know if Joe Grzetic did actual measurements of the bends of pipes when he inspected the different plaintiffs in the Meadow and Cole cases? A: I don't recall seeing any, and so since I wasn't there I can't say with certainty whether he did or didn't. I don't recall seeing the results of any such"). Shah made similar concessions. Ex. 2 (Shah Deposition), at 330:4-332:23 (bend radius not quantified for any tubing installation).

Consequently, though Duvall and Shah may be qualified to express their opinion that "bending" contributed to the failures in the Cole home, they are *not* qualified to testify that such bending constituted "improper installation" when they have no training in installing PEX plumbing systems or any evidence that the bending violated NIBCO's own installation instructions.

As is also true of NIBCO's fittings expert, Eric Weishaupt, Duvall and Shah's conclusion that certain installation practices were "improper" is premised entirely on compliance or noncompliance with NIBCO's installation instructions. NIBCO does not deny this, explaining that Duvall and Shah's "opinions regarding

installation are confined to root cause analysis. They are not purporting to be plumbing inspectors who are evaluating the original installation of a plumbing system before the home is completed and the system is put into service." Db22. As a result, Duvall and Shah's qualifications can extend only to stating their opinion as to what caused a failure (bending, impingement, excessive temperature, excessive pressure, etc.), not that a particular installation practice was "proper" or "improper."

This is in sharp contrast to Plaintiff's expert, Ms. Smith, who, while at Uponor in the early- to mid-2000s, was "trained to install PEX plumbing systems" and "periodically participated in training sessions administered to plumbing contractors." Def. Ex. H (Smith Report), at 16. Duvall and Shah have no such education and training, admit they are not plumbing experts, and have demonstrably classified certain installation practices as "improper" without any adequate foundation for doing so.

Finally, because Duvall and Shah's opinions regarding improper installation are coextensive with the recommendations in NIBCO's installation guidelines (as they must be given their lack of specialized skill in plumbing installation), such testimony is not the proper province of expert opinion in the first place. This argument is set forth more fully in Plaintiffs' reply memorandum of law in further support of their motion to exclude Eric Weishaupt (at 5-8), and is equally

applicable to Duvall and Shah. *See Puerto v. Mkt.*, No. 14-5118, 2016 WL 7338526, at *2 (D.N.J. Dec. 19, 2016) ("Mr. Parson's report is not likely to assist the trier of fact to understand the evidence or to determine a fact in issue. While retail safety operations may implicate specialized knowledge in some cases, the report here provides nothing beyond the ken of an average juror. Mr. Parsons employs no discernable methodology beyond restating broad industry guidelines") (internal citations and quotations omitted).

**B. NIBCO Fails to Identify any Independent Authority Supporting Duvall and Shah's "Minimum Carbonyl Index" Opinion**

NIBCO contends that "ESI's method of quantifying the level of oxidative degradation testing is derived from published, peer-reviewed research." Db11. However, the sources NIBCO cites are misleading, inapposite, and even irrelevant to the analysis Duvall and Shah performed.

NIBCO first points to "a group in Sweden who worked under the direction of U.W. Gedde" that purportedly "determined that a minimum carbonyl index of 0.1 in both the first thousandth of an inch and the second thousandth of an inch is needed for pipe to be considered oxidized." *Id.* In reality, the article to which NIBCO cites describes a study designed to compare seven different methods for evaluating the oxidation present in a handful of pipe samples. *See* Def. Ex. J, at 212 ("In this paper, we present a number of methods for the detection of thermal oxidation of the material at the inner wall surface of HDPE pipes"). This Gedde

study was not designed to determine the degree of oxidation necessary to cause oxidative failure in that pipe (let alone the cross-linked PEX pipe at issue here), nor did the authors even discuss that concept. Instead, the authors merely set forth that, for purposes of that study, "[t]he pipe is *considered to be oxidized* if the carbonyl index, defined as the ratio of carbonyl absorbance at 1720 cm-1 to methylene absorbance at 1460 cm-l > 0.1." *Id.* at 213 (emphasis added). Gedde *et al*. were careful to note that "[t]his value is based on data from a limited number of pipes." Accordingly, this Gedde article in no way supports Duvall and Shah's opinion that "[t]he minimum carbonyl index value of 0.1 must be present in both the first 'layer' (a depth of 0 to 0.03 mm) and second 'layer' (0.03 to 0.06 mm) of the inner surface of the pipe to indicate sufficiently intense oxidation to affect the performance of the pipe." Db11 n.3.

NIBCO next points to S.W. Choi's doctoral thesis, prepared in close consultation with L.J. Broutman, Duvall's mentor, and Duvall himself, which was discussed in detail in Plaintiffs' initial memorandum (at 8-9, 18-19), wherein Plaintiffs explained all of the reasons that Choi's data cannot simply be transplanted onto PEX plumbing systems employed in residential potable water applications. NIBCO responds that "Choi's research was funded by the Gas Research Institute and thus monitored by a GRI project manager and an advisory group of industry experts." Db13.

This sidesteps the real problem: Choi's thesis does not support Duvall and Shah's method of assessing oxidation *here*. Again, with respect to the "0.1" number, Choi, even under the disparate conditions of his testing, did *not* assert that the minimum carbonyl index discussed above was "required," as Shah and Duvall do, for failure to occur. Instead, Choi merely noted that, for those samples, "[t]he transition region characterized by rapid decrease of failure time corresponds to carbonyl index *of about 0.1*." Ex. 5 (Choi Thesis), at 470 (emphasis added). Again, Choi did not conclude that this minimum carbonyl index was required in all instances for oxidative degradation to be the root cause of a failure in polyethylene pipe, let alone PEX pipe.

NIBCO does not point to anyone else who has *ever* employed the carbonyl index threshold Duvall uses. This is telling, as Gedde's work is nearly four decades old and Choi published his thesis a quarter century ago, yet Duvall is, apparently, the only person using his minimum carbonyl index in failure analyses. As such, NIBCO relies on a "repetition makes right" argument, noting that Duvall has personally used his minimum carbonyl index criteria a number of times, specifically pointing to 10 (apparently non-peer-reviewed) presentations and two peer-reviewed publications authored by Duvall, one of which he is the sole author and another he co-wrote with Dr. Broutman . *See* Def. Ex. K (Duvall Decl.), at Ex. 1. But the fact that Duvall continues to use this criteria does not establish that it is

reliable when its purported bases – the work performed by Gedde and Choi – do not actually reinforce it. Nor does the fact that no one has apparently, to date, informed Duvall that these purported published, peer-reviewed sources do not actually say what Duvall contends they do change the contents and import of those publications or make them any more supportive of Duvall and Shah's methodology. Again, it appears *no one else* has utilized this technique, nor has it been incorporated into any industry standard or practice. *See State v. Fortin*, 162 N.J. 517, 527 (2000) ("Concerning consensus on acceptance of 'linkage analysis' in the scientific community, the other experts mentioned by Hazelwood in his testimony were either current or former co-workers. In this respect, there are no peers to test his theories and no way in which to duplicate his results"). As such, Duvall and Shah's opinions regarding their FTIR work and the impact the oxidation they measured had on the incident pipe failures is unreliable and cannot form the basis for their opinion that oxidation did not contribute to those failures. Further, the very concept of applying the carbonyl index to assess the impact of the existing oxidation's impact on the life of the pipe is specifically cautioned against in the industry standards. *See* ASTM F2102 § X1.8 ("there is no clear correlation between the extent of oxidation or the oxidation profile present in a sample of UHMWPE and its functional characteristics. For this reason, no maximum SOI, MOI, or BOI has been specified in this document").

NIBCO's attempt to explain why Duvall and Shah did not perform certain additional testing that would have been more probative on oxidative failure merely highlights how nebulous their position is. NIBCO states that "in other investigations, when it has found the carbonyl index exceeds the 0.1 threshold in both the first two layers, ESI has performed additional tests, such as OIT and tensile testing," but that "here, none of the samples met that criteria, making additional testing was unnecessary [*sic.*]." Db17; *see also* Def. Ex. K, at ¶ 18. This is false. *See* Ex. 4 (Duvall/Edwards Report), at 42 (concluding that crack initiation in a pipe sample was facilitated by oxidation, even though carbonyl index was only .0006); *id.* at 62 (confirming, for that same pipe sample, that OIT testing was performed); *id.* (noting that Sample 3, from Central Maui, was "highly degraded" based on results from OIT testing, though carbonyl index measured via Shah and Duvall's FTIR method was only .003).

Far from being a sound, reliable scientific principle, ESI's use of the minimum carbonyl index criteria is apparently amorphous enough to mean different things[1] in different contexts: here it means oxidation could *not* have contributed to these failures, whereas in the 2009 Duvall and Edwards report, even

---

[1] *See* Carroll, Lewis, *Through The Looking Glass* (1871), Chapter 6 ("'When I use a word,' Humpty Dumpty said, in rather a scornful tone, 'it means just what I choose it to mean — neither more nor less'").

miniscule carbonyl index measurements were sufficient to find pipe to be severely degraded after additional testing was performed. It seems that when the minimum carbonyl index criteria is employed in a research context, it is not the be-all-and-end-all, but in the context of litigation, particularly where the results Duvall and Shah obtained using the FTIR method they employed were below the 0.1 threshold for the majority of samples, it is gospel.

Placing this minimum carbonyl index methodology before the jury will only lead to confusion, adding a lengthy explanation as to why it should disregard this unreliable, unsupported, and misleading criterion for assessing oxidation onto what is already a complex products liability trial. *See* F.R.E. 403 (evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence"); *United States v. Libutti*, No. CRIM. 92-611 (JBS), 1994 WL 774646, at *7 (D.N.J. Feb. 8, 1994) ("Expert testimony which is confusing is unhelpful to the jury and it is precluded by Rule 702's 'helpfulness' standard. It is also precluded by Rule 403, because its negligible probative value is substantially outweighed by its tendency to confuse the jury and waste time").

## III. CONCLUSION

For the foregoing reasons as well as those set forth in Plaintiffs' initial moving papers, Plaintiffs respectfully request that this Court enter an order precluding Defendant NIBCO, Inc. from relying on any opinion proffered by either Donald E. Duvall or Anand R. Shah that: (1) the NIBCO PEX tubing at issue in the Plaintiffs' homes was improperly installed; (2) Plaintiffs' PEX tubing failures did not result from oxidative degradation; or (3) in the alternative, that there is a "required minimum carbonyl index" in order for NIBCO PEX tubing to fail as a result of oxidative degradation.

**LITE DEPALMA GREENBERG, LLC**

Dated: September 1, 2017

*/s/ Bruce D. Greenberg*

Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
Email: bgreenberg@litedepalma.com

**MCCUNEWRIGHT LLP**
Joseph G. Sauder
555 Lancaster Avenue
Berwyn, PA 19312
Email: JGS@mccunewright.com

**CHIMICLES & TIKELLIS, LLP**
Steven A. Schwartz
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Email: SAS@Chimicles.com

***Counsel for Plaintiffs and the Class***