**LITE DEPALMA GREENBERG, LLC**
Bruce D. Greenberg
Susana Cruz Hodge
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Telephone: (973) 623-3000
bgreenberg@litedepalma.com
scruzhodge@litedepalma.com

*Counsel for Plaintiffs*

[Additional Counsel listed on signature page]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| KIMBERLY COLE, ALAN COLE, JAMES MONICA, LINDA BOYD, MICHAEL MCMAHON, RAY SMINKEY, JAMES MEDDERS, JUDY MEDDERS, ROBERT PEPERNO, SARAH PEPERNO, KELLY MCCOY, LESA WATTS, CHAD MEADOW, JOHN PLISKO, SUSAN PLISKO, KENNETH McLAUGHLIN, RYAN KENNY, ALEXANDER DAVIS, and ANDREA DAVIS, on behalf of themselves and all others similarly situated, | : Civil Action No. 3:13-cv-07871-FLW-TJB :<br>:<br>:<br>:<br>:<br>:<br>:<br> **THIRD AMENDED CLASS ACTION COMPLAINT** :<br>:<br>:<br>**JURY TRIAL DEMANDED** :<br>: |
| *Plaintiffs*, | : :<br>: |
| v. | :<br>: |
| NIBCO, Inc., | :<br>: |
| *Defendant*. | : : |

Plaintiffs Kimberly Cole, Alan Cole, James Monica, Linda Boyd, Michael McMahon, Ray

Sminkey, James Medders, Judy Medders, Robert Peperno, Sarah Peperno, Kelly McCoy, Lesa

Watts, Chad Meadow, John Plisko, Susan Plisko, Kenneth McLaughlin, Ryan Kenny, Alexander

Davis and Andrea Davis (together "Plaintiffs"), on behalf of themselves and all persons similarly

situated ("the Class"), by and through their attorneys, allege as follows upon personal knowledge

1

as to facts pertaining to themselves, and upon information and belief (based on the investigation of their counsel) as to all other matters.

<u>**NATURE OF THE ACTION**</u>

1.      This case concerns cross-linked polyethylene plumbing tubes (herein "PEX Tubing"), the brass fittings required to connect the PEX Tubing together (herein "PEX Fittings"), and the stainless steel clamps (herein "PEX Clamps") required for joining the PEX Tubing and PEX Fittings.  As discussed below, the PEX Tubing, the PEX Fittings and the PEX Clamps at issue are all manufactured or distributed by Defendant NIBCO, Inc. ("NIBCO" or "Defendant") and suffer from undisclosed design and/or manufacturing defects that inevitably cause them to fail prematurely.



2.      Specifically, the PEX Tubing suffers from a design and/or manufacturing defect because it is prone to premature oxidative failure and creep rupture.

3.      The PEX Fittings suffer from a design and/or manufacturing defect because they are prone to dezincification corrosion.

4.      The PEX Clamps suffer from a design and/or manufacturing defect because they are prone to failure by chloride-induced stress corrosion cracking.

5.      When any of these components fail, it leads to the release of water, which can cause significant damage to surrounding property and/or prevents the plumbing system from functioning as intended.

6.      Unless specified otherwise below, the phrase "PEX Products" will collectively refer to NIBCO's defective PEX Tubing, PEX Clamps and/or PEX Fittings.

7.      NIBCO has manufactured and advertised its PEX Products for use in plumbing systems throughout the United States.  It has repeatedly represented that consumers should trust NIBCO to provide the highest quality PEX Products because the company has over 100 years of industry experience and is an industry leader in the manufacture of PEX Products.

8.      NIBCO manufactures, warrants, advertises and sells the PEX Products at issue. NIBCO's sales catalog advertised that, *inter alia*, its PEX tubing was the highest quality PEX tubing available and that its cross chemical bonding process gave it "superior characteristics." NIBCO warranted that its PEX tubing would be free from any defects in materials and workmanship for a period ranging from ten (10) years to twenty-five (25) years, dependent upon whether NIBCO PEX fittings and NIBCO valves and installation accessories were also used in the installation.

9.      Contrary to these affirmative statements, the PEX Products suffer from design and/or manufacturing defects.  Specifically, and as a result of such defects, the PEX Tubing is predisposed to premature oxidative failure and creep rupture, the PEX Fittings are predisposed to prematurely fail as a result of dezincification corrosion, and the PEX Clamps are predisposed to prematurely fail as a result of chloride-induced stress corrosion cracking (collectively, the "PEX Product Defects").

10.     NIBCO has systematically breached its warranty by failing to fully or adequately compensate property owners who have been injured as a result of the PEX Product Defects. NIBCO also failed to disclose this material information to Plaintiffs and Class members.

11.     Before manufacturing, warranting, advertising and/or selling the PEX Products, NIBCO failed to take appropriate steps to ensure that its products were safe for their intended use. Defendant knew or should have known that the PEX Products were not suitable for use within water-carrying plumbing systems and that the PEX Products suffered from the PEX Product Defects.

12.     The PEX Product Defects have caused plumbing systems to catastrophically fail and release water, which has caused and will continue to cause Plaintiffs and the Class to incur damages through no fault of their own. All Plaintiffs and Class members have also been injured at the time of sale by virtue of paying more for the PEX Products than they would have had the existence of the PEX Product Defects been disclosed.

13.     Plaintiffs seek relief for damages sustained by Plaintiffs and the Class that were proximately caused by NIBCO's Defective PEX Products used in Plaintiffs' and Class members' homes and other structures, or which otherwise were installed in the homes and structures of Plaintiffs and the Class.  They seek relief to remedy NIBCO's breach of express warranty, breach of implied warranty, strict liability, negligence and unjust enrichment.  They also seek relief pursuant to the products liability acts and doctrines of Tennessee, New Jersey, Alabama and Texas. Plaintiffs and the Class additionally seek declaratory and injunctive relief, as described below.

## PARTIES

### The Coles

14.     Plaintiffs Kimberly Cole and Alan Cole ("the Coles") are husband and wife. Both are citizens of Tennessee and both reside in Gadsden, Tennessee. As a result of Defendant's conduct as alleged herein, the Coles have been injured.

15.     Construction of the Coles' new home in Gadsden, Tennessee began in August of 2008 and was substantially completed in May of 2009.

16.     A hot water line was installed as a part of the residential plumbing system.  Water was supplied to their home from a local, municipally treated water source.

17.     The Coles' residential plumbing system was installed using NIBCO PEX Products, PEX Tubing, PEX Fittings, PEX Clamps and installation accessories.

18.     The Coles hired a licensed professional contractor to install the plumbing system.

19.     After construction was completed in May 2009, the Coles moved into their home in Gadsden and began using it as their primary residence.

20.     In November 2010, only eighteen months after installation, the Coles experienced a water leak as the result of a failure to a PEX Fitting assembly.

21.     In May 2012, the Coles observed another leak and retained a licensed plumber who discovered a leak in the plumbing around the master bedroom and master bathroom area of their home.  Upon further investigation, the plumber discovered the leak originated from a crack in the PEX Tubing.  Similar tubing was used throughout their home.

22.     Since the initial leak in the PEX Tubing, the Coles have continued to discover additional leaks that have caused areas of water saturation and damage throughout their home. Damage has occurred in the kitchen, laundry room, master bedroom and master bathroom.  The

Coles subsequently learned that all of the water damage inside their home was caused by water leakage from cracks that developed within the PEX Tubing.

23.     On two occasions, and in order to repair the leaks, the Coles were forced to leave their home because of the severity of the leaks caused by the PEX Tubing.  There were numerous other occasions when the PEX Tubing leaked, but the Coles were unable leave their home during repairs, despite desiring to do so, for personal and/or financial reasons.

24.     After discovery of the leaks, the Coles contacted Defendant NIBCO and requested replacement of the defective PEX Tubing within their home under the terms of the express warranty.  Despite the Coles fulfilling all of their warranty obligations, NIBCO has declined to replace the Coles' defective PEX Tubing (or otherwise compensate them for the substantial damages this product caused), thereby violating the terms of the express warranty.

25.     To date, the Coles have experienced significant damages on multiple separate occasions due to the PEX Product Defects.

26.     The Coles have suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the PEX Products, including but not limited to out-of-pocket loss associated with catastrophic plumbing failures and attempted repairs of such within their home.

27.     At no time did Defendant or any of its agents, dealers or other representatives inform the Coles of Defendant's omission and/or misrepresentations related to the PEX Product Defects.

**James Monica**

28.     Plaintiff James Monica is a citizen of New Jersey, and a resident of Warren, New Jersey.  As a result of Defendant's conduct as alleged herein, Plaintiff Monica has been injured.

6

29.     On or about September 2010, the installation of a residential plumbing system began within Plaintiff Monica's home, located in Warren, New Jersey.   Installation of the plumbing system was substantially completed in December 2010.  A hot water line was installed as a part of the residential plumbing system.  Water was supplied to his home from a local, municipally treated water source.

30.     Plaintiff Monica's residential plumbing system was installed using NIBCO plumbing accessories, including NIBCO PEX Tubing, NIBCO PEX Fittings, NIBCO PEX Clamps and other installation accessories.

31.     Plaintiff Monica hired a licensed professional contractor to install the plumbing system in his home.

32.     After installation of the plumbing system had been completed, Plaintiff Monica moved into his home in Warren, New Jersey and began using it as his primary residence.

33.     In November of 2012, Plaintiff Monica discovered water saturation on the walls and ceiling in the basement area of his home.

34.     Plaintiff Monica retained a licensed plumber who discovered a leak coming from the basement ceiling of his home.  Upon further investigation, the plumber discovered the leak originated as the result of a NIBCO PEX Fitting assembly.   Similar NIBCO PEX Fitting assemblies were used throughout his home.  The failed PEX Fitting assembly was replaced with another NIBCO PEX Fitting assembly, which also subsequently failed prematurely in November 2013.

35.     The below photograph depicts the outside surface of a single NIBCO brass fitting from Monica's home where clear evidence of dezincification corrosion is seen.  The white deposit on the exterior surface of the fitting is the result of water that has wept through the corroded fitting.

As the water evaporates, scale and/or zinc-rich corrosion product from the brass fitting is left behind.   The brass fitting appears coppery-red because the zinc contained in the brass has selectively leached into the water (giving rise to the term "dezincification").   This form of corrosion causes the material to change from a solid brass material to a spongy copper-rich structure, grossly weakening the fitting.



36.   The below photograph is a side view of a NIBCO ASTM-F1807 PEX Fitting from Monica's home which demonstrates the corrosion and scale affecting the NIBCO brass fittings.



37.     The below photograph is a top view of a NIBCO ASTM-F1807 brass PEX fitting from Monica's home which demonstrates meringue-type dezincification corrosion.  This particular form of corrosion causes the interior of the brass fitting to become plugged with corrosion product. The fitting shown in this view is approximately 75% plugged, which causes a significant loss of water pressure.  When the system becomes plugged and the water pressure decreases the plumbing system no longer functions as intended.



38.     Since the initial leak in the NIBCO brass PEX Fittings, Plaintiff Monica has experienced at least two additional leaks that he is aware of as a result of the NIBCO PEX Fittings in his first floor plumbing.

39.     After discovery of the water leaks, and after finding that other exposed PEX Fittings in Monica's basement are exhibiting similar corrosion, Plaintiff Monica contacted NIBCO and requested replacement of the defective NIBCO PEX Fittings under the terms of the express warranty.  Despite Plaintiff Monica fulfilling all of his warranty obligations, NIBCO has declined to replace Plaintiff Monica's Defective NIBCO PEX Products (or otherwise compensate him for the substantial damages this product caused), thereby violating the terms of the express warranty.

40.     To date, Plaintiff Monica has experienced significant damages on three separate occasions due to PEX Product Defects.

41.     Plaintiff Monica has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the PEX Products, including, but not limited to, out-of-pocket loss associated with catastrophic plumbing failures and attempted repairs of such within his home.

42.     At no time did Defendant or any of its agents, dealers or other representatives inform Plaintiff Monica of Defendant's omissions and/or misrepresentations related to the PEX Product Defects.

**Linda Boyd**

43.     Plaintiff Linda Boyd is a citizen of Alabama, and is a resident of Foley, Alabama. As a result of Defendant's conduct as alleged herein, Plaintiff Boyd has been injured.

44.     Construction of the Plaintiff Boyd's new home in Foley, Alabama began during the early summer of 2008 and was substantially completed in August, 2008.

45.     On or about June, 2008 the installation of a residential plumbing system began within Plaintiff Boyd's home located in Foley, Alabama.  Installation of the plumbing system was substantially completed in July, 2008.  A hot water line was installed as a part of the residential plumbing system.  Water was supplied to her home from a local, municipally treated water source.

46.     Plaintiff Boyd's residential plumbing system was installed using NIBCO plumbing accessories, including NIBCO PEX Tubing, NIBCO PEX Fittings, NIBCO PEX Clamps and other installation accessories.

47.     Plaintiff Boyd hired a licensed professional contractor to install the plumbing system in her home.

10

48.     After installation of the plumbing system had been completed, Plaintiff Boyd moved into her home in Foley, Alabama in December, 2008 and began using it as her primary residence.

49.     On or about March 26, 2013, Plaintiff Boyd observed a water leak in the attic above her laundry room.

50.     On or about September 15, 2013, Plaintiff Boyd observed another water leak in the tubing above her hot water heater in her garage.

51.     On or about October 31, 2013, Plaintiff Boyd observed a third leak in the cold water tubing near the hot water heater in her garage.

52.     On all three occasions, Plaintiff Boyd called a plumber to inspect the water leak and resultant damage.  On all three occasions, the plumber informed Plaintiff Boyd that the tubing had "split" and water was leaking as a result.

53.      To date, Plaintiff Boyd has experienced significant damages on three separate occasions due to PEX Product Defects.  Plaintiff Boyd installed replacement plumbing throughout her entire home, installed replacement sheet rock above the ceiling in her laundry room and repainted it as a result of the first leak, and repainted her garage walls as a result of the second and third leaks.

54.     Plaintiff Boyd has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the PEX Products, including, but not limited to, out-of-pocket loss associated with catastrophic plumbing failures and attempted repairs of such within her home.

55.     At no time did Defendant or any of its agents, dealers or other representatives inform Plaintiff Boyd of Defendant's omissions and/or misrepresentations related to the PEX Product Defects.

**Michael McMahon**

56.     Plaintiff Michael McMahon is a citizen of the State of Texas and is a resident of Rio Vista, Texas.  As a result of Defendant's conduct as alleged herein, Plaintiff McMahon has been injured.

57.     Construction of Plaintiff McMahon's home in Rio Vista, Texas began in early 2007 and was substantially completed in August 2007.

58.     On or about May 2007 the installation of a residential plumbing system began within Plaintiff McMahon's home, located in Rio Vista, Texas.  Installation of the plumbing system was substantially completed in July 2007.  A hot water line was installed as a part of the residential plumbing system.  Water was supplied to his home from a local, municipally treated water source.

59.     Plaintiff McMahon's residential plumbing system was installed using NIBCO plumbing accessories, including NIBCO PEX Tubing, NIBCO PEX Fittings, NIBCO PEX Clamps and other installation accessories.

60.     Licensed professional contractors were hired to install the plumbing system in Plaintiff McMahon's home.

61.     Plaintiff McMahon moved into his home in Rio Vista, Texas on January 1, 2013 and began using it as his primary residence.

62.     Starting in early 2013, approximately six leaks in NIBCO's Dura-Pex tubing has occurred in Plaintiff McMahon's home.  The first four leaks were located at the top of his garage. The two most recent leaks caused significant damage inside Plaintiff McMahon's home.

63.     Plaintiff McMahon called a plumber to come inspect the water leaks and resultant damage.  On all six occasions, the plumber informed Plaintiff McMahon that the tubing had "split" and water was leaking as a result.

64.     To date, Plaintiff McMahon has experienced significant damages on three separate occasions due to PEX Product Defects.  The leaking water saturated the walls of his garage, damaged personal property located in the garage, damaged the walls of his home, and flooded his first floor and garage.

65.     Following the second water loss, Plaintiff McMahon provided NIBCO with actual notice of the failures of its PEX Products within a reasonable amount of time and NIBCO has failed to repair or replace the PEX Products within the McMahon home or otherwise fulfill its warranty obligations.

66.     Plaintiff McMahon has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the PEX Products, including, but not limited to, out-of-pocket loss associated with catastrophic plumbing failures and attempted repairs of such within his home.

**Ray Sminkey**

67.     Plaintiff Ray Sminkey is a citizen of the State of Oklahoma and is a resident of Elgin, Oklahoma. As a result of Defendant's conduct as alleged herein, Plaintiff Sminkey has been injured.

68.     Construction of Plaintiff Sminkey's home began in early 2008 and was substantially completed by early 2009.

69.     During spring of 2008, the installation of a residential plumbing system began within Plaintiff Sminkey's home, located in Elgin, Oklahoma.  Installation of the plumbing system was substantially completed before December 2008.  A hot water line was installed as a part of the residential plumbing system.  Water is supplied to Plaintiff Sminkey's home from a city-owned well.

70.     Plaintiff Sminkey's residential plumbing system was installed using NIBCO PEX Tubing.

71.     Plaintiff Sminkey hired a licensed professional contractor to install the plumbing system in his home.

72.     After installation of the plumbing system had been completed, Plaintiff Sminkey moved into his home in Elgin, Oklahoma in February, 2009 and began using it as his primary residence.

73.     On or about November 5, 2013, Plaintiff Sminkey observed a water leak in the residential hot water line coming off of the hot water heater in Plaintiff Sminkey's garage.

74.     The following week, Plaintiff Sminkey observed two additional water leaks in the same residential hot water line coming off of the hot water heater in Plaintiff Sminkey's garage.

75.     A plumber came out to inspect the aforementioned water leaks in Plaintiff Sminkey's home and informed Plaintiff Sminkey that the tubing had burst, causing the water leaks. The plumber replaced the sections of Plaintiff Sminkey's tubing that were leaking on all three occasions.

76.     To date, Plaintiff Sminkey has experienced significant damages on three separate occasions due to PEX Product Defects.  The dry wall and insulation were soaked and replaced as a result of the water leaks and some household goods that were stored in the garage were ruined and needed to be replaced.

77.     Plaintiff Sminkey has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the PEX Products, including, but not limited to, out-of-pocket loss associated with catastrophic plumbing failures and attempted repairs of such within his home.

**The Medders**

78.     Plaintiffs James and Judy Medders (hereinafter, the "Medders") are citizens of the State of Texas and currently reside near Morgan Mill, Texas.  As a result of Defendant's conduct as alleged herein, the Medders have been injured.

79.     Construction of the Medders' home near Morgan Hill, Texas began in June 2011.

80.     On or about July 1, 2011, the installation of a residential plumbing system began within the Medders' home, located in Morgan Mill, Texas.  Installation of the plumbing system was substantially completed on or about February 25, 2012.  Water was supplied to their home from a private well and is not treated.

81.     The Medders' residential plumbing system was installed using NIBCO plumbing accessories, including NIBCO PEX Tubing, NIBCO PEX Fittings, NIBCO PEX Clamps and other installation accessories.

82.     Licensed professional contractors were hired to install the plumbing system in the Medders' home.

83.    The Medders moved into their home near Morgan Mill, Texas on March 3, 2012 and began using it as their primary residence.

84.    On or about December 5, 2013, the Medders observed a leak in a NIBCO Tee Fitting in the attic of the utility room of their home.  On or about December 8, 2013, the Medders retained a plumber to inspect and repair the water leak and resultant damage.

85.    On or about May 31, 2014, the Medders observed a leak in a NIBCO nipple located behind a wall in the master bathroom of their home.  Mr. Medders repaired the leak that day.  A contractor was called to repair the damage and replace the exterior and interior coverings of the exterior wall of the bathroom, including replacing the cabinets.

86.    On or about June 10, 2014, the Medders observed a leak caused by a NIBCO Tee Fitting located in the attic of their home resulting in damage to the ceiling of the master bathroom. On or about June 10, 2014, the Medders retained a plumber to inspect and repair the resultant damage.  A contractor was called to repair the damage to the ceiling.

87.     Within a reasonable amount of time following the losses, the Medders provided NIBCO with actual notice of the failures of its PEX Products and NIBCO has failed to repair or replace the PEX Products within the Medders' home or otherwise fulfill its warranty obligations.

88.    To date, the Medders have experienced significant damages on three separate occasions due to PEX Product Defects.

89.    The Medders have suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the PEX Products, including, but not limited to, out-of-pocket loss associated with catastrophic plumbing failures and attempted repairs of such within their home, including the physical damage caused to their home.

90.    At no time did Defendant or any of its agents, dealers or other representatives inform the Medders of Defendant's omissions and/or misrepresentations related to the PEX Product Defects.

**The Pepernos**

91.    Plaintiffs Robert and Sara Peperno (hereinafter, "the Pepernos") are citizens of Pennsylvania and residents of Old Forge, Pennsylvania.  As a result of Defendant's conduct as alleged herein, the Pepernos have been injured.

92.    Construction of the Pepernos' new home in Old Forge, Pennsylvania began during the July of 2007 and was substantially completed in February of 2008.

93.    On or about September, 2007 the installation of a residential plumbing system began within the Pepernos' home located in Old Forge, Pennsylvania.  Installation of the plumbing system was substantially completed by October, 2007.  Water was supplied to the Pepernos' home from a local, municipally treated water source.

94.    The Pepernos' residential plumbing system was installed using NIBCO plumbing accessories, including NIBCO PEX Tubing, NIBCO PEX Fittings, NIBCO PEX Clamps and other installation accessories.

95.    The Pepernos hired a licensed professional contractor to install the plumbing system in their home.

96.    After installation of the plumbing system had been completed, the Pepernos moved into their home in Old Forge, Pennsylvania in February, 2008 and began using it as their primary residence.

97.    On or about December 15, 2013, the Pepernos observed a water leak in the tubing located in the basement of their home.

98.     On or about April 19, 2014 the Pepernos observed another water leak in the tubing in the basement of their home.

99.     On or about June 7, 2014, the Pepernos observed a third leak in the tubing in the basement of their home.

100.    On all three occasions, the Pepernos called a plumber to inspect the water leak and resultant damage.  On all three occasions, the plumber informed the Pepernos that the tubing had "split" and water was leaking as a result.

101.     To date, the Pepernos have experienced damages on three separate occasions due to PEX Product Defects.  The Pepernos installed replacement plumbing in their basement to replace the tubing that had leaked on the above-referenced three occasions.

102.    The Pepernos have suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the PEX Products, including, but not limited to, out-of-pocket loss associated with catastrophic plumbing failures and attempted repairs of such within her home.

103.    At no time did Defendant or any of its agents, dealers or other representatives inform the Pepernos of Defendant's omissions and/or misrepresentations related to the PEX Product Defects.

**<u>Kelly McCoy</u>**

104.    Plaintiff Kelly McCoy is a citizen of Georgia and a resident of Marietta, Georgia. As a result of Defendant's conduct as alleged herein, Plaintiff McCoy has been injured.

105.    Plaintiff McCoy's home suffered a fire, which required his home to be rebuilt.  That reconstruction occurred in 2010.  From and after the time of that reconstruction, Plaintiff McCoy has used that home as his primary residence.

18

106.    Plaintiff McCoy's residential plumbing system was installed using NIBCO plumbing accessories, including NIBCO PEX Tubing, NIBCO PEX Fittings, NIBCO PEX Clamps and other installation accessories.  A hot water line was installed as a part of the residential plumbing system.  Water was supplied to Plaintiff McCoy's home from a local, municipally treated water source.

107.    Plaintiff McCoy hired a licensed professional contractor to install the plumbing system in his home.

108.    Thereafter, however, the NIBCO tubing repeatedly failed, requiring six repairs. The NIBCO tubing split lengthwise, on the hot water side.  Among other repairs that were required by those failures, a bathroom wall had to be torn out and replaced.  Additionally, the failed tubing had to be replaced.  Plaintiff McCoy hired the same licensed professional contractor who had installed the plumbing system to make the necessary repairs and to replace the defective NIBCO tubing.

109.    Plaintiff McCoy has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the PEX Products, including, but not limited to, out-of-pocket loss associated with catastrophic plumbing failures and attempted repairs of such within his home.

110.    On or about May 28, 2015, Plaintiff McCoy provided NIBCO with actual notice of the failures of its PEX Products and NIBCO has failed to repair or replace the PEX Products within the McCoy home or otherwise fulfill its warranty obligations.

111.    At no time did Defendant or any of its agents, dealers or other representatives inform Plaintiff McCoy of Defendant's omissions and/or misrepresentations related to the PEX Product Defects.

**Lesa Watts**

112.    Plaintiff Lesa Watts is a citizen of Alabama and a resident of Huntsville, Alabama. As a result of Defendant's conduct as alleged herein, Plaintiff Watts has been injured.

113.    Construction of the Plaintiff Watts's new home in Huntsville, Alabama began during the spring of 2006 and was substantially completed in November, 2006.  Plaintiff Watts's home was built by a large, regional homebuilder.

114.    Plaintiff Watts's residential plumbing system was installed using NIBCO plumbing accessories, including NIBCO PEX Tubing.

115.    After installation of the plumbing system and construction of the home had been completed, Plaintiff Watts moved into her home in Huntsville, Alabama and began using it as her primary residence.

116.    Homes in Plaintiff Watts's development, which were built by the same homebuilder, have experienced leaks in the NIBCO PEX Tubing installed in those homes.

117.    Plaintiff Watts is concerned that she may experience a leak in her NIBCO PEX Tubing in the future.

118.    At no time did Defendant or any of its agents, dealers or other representatives inform Plaintiff Watts of Defendant's omissions and/or misrepresentations related to the PEX Product Defects.

**Chad Meadow**

119.    Plaintiff Chad Meadow is a citizen Tennessee and a resident of Murfreesboro, Tennessee.

120.    Plaintiff Meadow is the original owner of a home built in late-2006 with NIBCO's PEX Products, including ½ inch and ¾ inch hot and cold PEX Tubing, PEX Fittings and PEX Clamps.

121.    Plaintiff Meadow's PEX Tubing has experienced six (6) leaks since August 2014. Each of these leaks was in the wall of the respective piece of PEX Tubing, away from the fittings. The leaks caused damage to the walls, ceilings and floors of Meadow's home and resulted in the formation of mold.

122.    Plaintiff Meadow's first leak occurred in or around August 2014 in the ceiling and wall of Plaintiff Meadow's laundry room and downstairs bathroom.  The leaking section of PEX Tubing was removed and replaced.  Plaintiff Meadow sent the damaged piece of PEX Tubing from this leak to NIBCO as part of his warranty claim.

123.    The second leak occurred in October 2014 in the wall and floor of Plaintiff Meadow's upstairs bathroom.  The leaking section of PEX Tubing was removed and replaced.

124.    The third leak occurred in October 2014 in between Plaintiff Meadow's garage ceiling and kitchen floor, causing the floor to buckle.  This PEX Tubing line was shut off.

125.    The fourth leak occurred in November 2014 in the same area as the first leak, disabling the use of the upstairs shower.  This PEX Tubing line was shut off.

126.    These leaks caused mold to form in the area between the first floor ceiling and the floor of the second level.

127.    Plaintiff Meadow received an estimate of nearly $20,000 for the repair of all damage and re-plumbing of the home.  This estimate specifically excluded mold remediation.

128.    After the third leak occurred, Plaintiff Meadow contacted NIBCO to submit a warranty claim.  As part of his claim, Plaintiff Meadow sent NIBCO the damaged piece of PEX Tubing from his first leak.

129.    NIBCO denied Plaintiff Meadow's warranty claim, stating that it did not find Plaintiff Meadow's PEX Tubing to be defective and giving the excuse that Plaintiff Meadow's PEX Tubing was "overstressed at some point."  However, Plaintiff Meadow's water system was equipped with a pressure reduction valve on the main PEX intake line and a pressure relief valve on his water heater.

130.    After receiving the warranty claim denial, Plaintiff Meadow had Bradley Plumbing, Inc. check the pressure on Plaintiff Meadow's water system at Meadow's expense.  The testing revealed that the system was functioning properly and the water pressure was well within NIBCO's specifications.

131.    Plaintiff Meadow experienced a fifth leak in March 2015.  This leak was located in the PEX Tubing leading to his downstairs shower.

132.    Following the fifth leak, Plaintiff Meadow replaced all but two of his hot water PEX Tubing lines in winter 2015.  The two he did not replace at that time were low-usage lines in difficult to access areas.

133.    In August 2015, Plaintiff Meadow experienced a sixth leak, in one of the two hot water lines that he had not previously replaced.

134.    Plaintiff Meadow would not have purchased and installed the PEX Products and exposed his real and personal property to flooding and water damage, as well as exposing himself to a risk of personal injury due to mold, had NIBCO disclosed the propensity for the PEX Products to fail.

22

**John and Susan Plisko**

135.     Plaintiffs John and Susan Plisko are citizens of South Carolina and residents of Clover, South Carolina.

136.     The Pliskos are the original owners of a home built in 2008 with NIBCO's PEX Products, including ¾ inch PEX Tubing and PEX Fittings.

137.     The Pliskos' PEX Tubing has had at least five (5) leaks since August 2014.  The leaks caused damage to the walls, ceilings and floors of the Pliskos' home.

138.     The Pliskos' first leak occurred in August 2014 near the Pliskos' water heater and resulted in water spraying out of the PEX Tubing onto the ceiling and expansion tank.

139.     The second leak occurred in September 2014 when the PEX Tubing in the wall behind the Pliskos' water heater split, causing water to leak down into the Pliskos' living room.

140.     In November 2014, another piece of PEX Tubing in the wall behind the Pliskos' water heater leaked, again causing water to leak down into the Pliskos' living room.

141.     The fourth leak occurred in February 2015 in an area in Pliskos' laundry room wall near the second and third leaks.  In order to repair this leak, the Pliskos had to replace PEX Fittings, along with the PEX Tubing.

142.     The fifth leak occurred in March 2015 in the Pliskos' first floor bathroom.

143.     In March 2015, the Pliskos contacted NIBCO to file a warranty claim.  As part of the claim, on March 24, 2015, the Pliskos sent NIBCO a piece of their PEX Tubing that had leaked.

144.     After testing the Pliskos' PEX Tubing, NIBCO issued an Evaluation Response Letter in April 2015 stating that "the likely cause of the failure of [the Pliskos' NIBCO] product is due to a possible manufacturing defect."

23

145.     When the Pliskos asked NIBCO if they would be offered any compensation as a result of the manufacturing defect, NIBCO's Technical Service Advisor responded that NIBCO would "reimburse the customer for normal and reasonable charges associated with the repair."

146.     However, instead of honoring its warranty and reimbursing the Pliskos for the damage caused by their defective NIBCO Products, NIBCO backtracked and changed its tune.

147.     On May 11, 2014, NIBCO's Technical Services Manager emailed the Pliskos and claimed that NIBCO's "findings are the tubing sample [the Pliskos] sent back is not defective and not covered under warranty."  Additionally, in an attempt to shift blame, the Technical Services Manager included a laundry list of questions about the Pliskos' water system.

148.     Despite NIBCO's revised "findings," an inspection of the Pliskos' water system in April 2015 showed that the installation, water pressure and temperature were all within specifications.

149.     The Pliskos would not have purchased and installed the PEX Products and exposed their real and personal property to flooding and water damage, as well as exposing themselves to a risk of personal injury, had NIBCO disclosed the propensity for the PEX Products to fail.

**Kenneth McLaughlin**

150.     Plaintiff Kenneth McLaughlin is a citizen of Alabama and a resident of Mobile, Alabama.

151.     Plaintiff McLaughlin purchased his new construction home in or around 2010.  The home was built with NIBCO's PEX Products, including ½ inch and ¾ inch PEX Tubing.

152.     Plaintiff McLaughlin's PEX Tubing has experienced at least **twenty (20)** leaks since February 2014.  The leaks have caused extensive damage to the walls, ceilings, floors and

insulation of Plaintiff McLaughlin's home, including in the home's bedrooms, bathrooms, kitchen, living room, attic and closets.  The leaks are too numerous to recount individually herein.

153.   To date, Plaintiff McLaughlin has incurred expenses in excess of $4,000 for the repair of the leaks, sheet rock and painting.

154.   Plaintiff McLaughlin contacted NIBCO in July 2014 to submit a warranty claim. He was informed that NIBCO would reimburse him for the cost of one leak, but Plaintiff McLaughlin has not been reimbursed by NIBCO.

155.   As part of his claim, Plaintiff McLaughlin sent NIBCO two damaged pieces of PEX Tubing from the leaks in his home.

156.   On February 4, 2015, a NIBCO Technical Services Advisor emailed Plaintiff McLaughlin to tell him that NIBCO's lab did not find leaks in the samples Plaintiff McLaughlin sent in.  Following this email, Plaintiff McLaughlin received an Evaluation Response Letter from NIBCO stating that NIBCO "could not duplicate any leakage with the sample" Plaintiff McLaughlin sent, and that "NIBCO is not willing to participate in any credit or claim reimbursement at this time."

157.   This denial of Plaintiff McLaughlin's warranty claim was made despite the fact that the samples of PEX Tubing unquestionably leaked while installed in Plaintiff McLaughlin's home.

158.   Plaintiff McLaughlin would not have purchased a home that had NIBCO's PEX Products installed therein and exposed his real and personal property to flooding and water damage, as well as exposing himself to a risk of personal injury, had NIBCO disclosed the propensity for the PEX Products to fail.

**Ryan Kenny**

159.   Plaintiff Ryan Kenny is a citizen of the State of New York and is a resident of

25

Greenlawn, New York.  As a result of Defendant's conduct as alleged herein, Plaintiff Kenny has been injured.

160.    NIBCO PEX Tubing was installed in Plaintiff Kenny's Greenlawn, New York home in 2010 during the construction of a large addition.

161.    To date, Plaintiff Kenny has experienced significant damages on two separate occasions due to PEX Product Defects.  In 2014, Plaintiff Kenny experienced a leak in a NIBCO PEX Tubing red hot water line.  Six months later, Plaintiff Kenny experienced a second leak in the same NIBCO PEX Tubing line.

162.    These two leaks damaged Plaintiff Kenny's home, including his finished basement. Plaintiff Kenny had to replace flooring in two rooms of his home, needed to make repairs or replace sheet rock, insulation and trim, and had to take other remedial actions.

163.    After the two leaks, Plaintiff Kenny replaced the entire NIBCO PEX Tubing line that had leaked.

164.    Plaintiff Kenny has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the PEX Products, including, but not limited to, out-of-pocket loss associated with catastrophic plumbing failures and attempted repairs of such within his home.  At no time did Defendant or any of its agents, dealers or other representatives inform Plaintiff Kenny of Defendant's omission and/or misrepresentations related to the PEX Product Defects.

**The Davises**

165.    Plaintiffs Alexander Davis and Andrea Davis ("the Davises") are husband and wife. Both are citizens of North Carolina and both reside in Raleigh, North Carolina. As a result of Defendant's conduct as alleged herein, the Davises have been injured.

26

166.     In 2010, the Davises had their Raleigh, North Carolina home re-piped with NIBCO PEX Tubing by a licensed plumbing contractor.

167.     In May 2017, the Davises discovered water damage to the kitchen and garage walls of their home.  After opening up the sheet rock, the Davises noticed a pin hole leak in a straight section of NIBCO PEX Tubing within the wall.

168.     This leak caused significant property damage to the Davises' home, including to the floor, cabinets, wall and insulation, and required further leak mitigation.

169.     After the leak, the Davises submitted a warranty claim to NIBCO.  As part of their claim, the Davises sent NIBCO the damaged piece of PEX Tubing from the leak.

170.     NIBCO denied the Davises' warranty claim, stating that it did not find the Davises' PEX Tubing to be defective.

171.     In June 2018, the Davises experienced a second leak in their NIBCO PEX Tubing. This leak resulted in extensive damage to the Davises' kitchen.

172.     To date, the Davises have experienced significant damages on two separate occasions due to the PEX Product Defects.

173.     The Davises have suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the PEX Products, including but not limited to out-of-pocket loss associated with catastrophic plumbing failures and attempted repairs of such within their home.  At no time did Defendant or any of its agents, dealers or other representatives inform the Davises of Defendant's omission and/or misrepresentations related to the PEX Product Defects.

**<u>The Defendant</u>**

174.     Defendant NIBCO, Inc. is incorporated under the laws of the State of Indiana with

its principal place of business located at 1516 Middlebury Street, Elkhart, Indiana 46515-1167.  In addition to the PEX Products previously described, NIBCO INC. manufactures plumbing valves, plastic fittings and flow control solutions for commercial, industrial and institutional construction, and for the residential and irrigation markets.  NIBCO operates ten manufacturing plants in the United States, Mexico and Poland, and has more than 2,000 employees.

## JURISDICTION AND VENUE

175.    This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5 million, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of states different than Defendant. *See* 28 U.S.C. § 1332(d)(2)(A).

176.    This Court has personal jurisdiction over Defendant because NIBCO conducts substantial business in New Jersey.  Defendant has sufficient minimum contacts with the State of New Jersey and intentionally avails itself of the consumers and markets within the State of New Jersey through the promotion and sales of its products, including its PEX Products.

177.    Venue properly lies in this district pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the acts giving rise to Plaintiffs' claims occurred in this district, and because Defendant conducts substantial business in this judicial district.

## FACTUAL ALLEGATIONS

A.    **The Defective NIBCO PEX Products**

178.    NIBCO sells various plumbing products including PEX Tubing, PEX Fittings, PEX Clamps and other plumbing accessories.

28

179.    NIBCO has been in business for over 100 years and has manufactured plumbing systems and parts for nearly as long.

180.    NIBCO states, on its website, that it is a "recognized leading provider of valves, fittings and flow control products for commercial, industrial and institutional construction as well as residential and irrigation markets."[1]

181.    PEX is an acronym for cross-linked polyethylene. Polyethylene (denoted by "PE") is the raw material and the letter "X" in the acronym "PEX" refers to the cross-linking "chemical bonding" of the polyethylene across its molecular chains.

182.    NIBCO touts its PEX tubing as possessing "superior characteristics" due to NIBCO's cross-linking process.   Specifically, NIBCO states the following about its PEX manufacturing process:

> Cross-linking is the process that gives NIBCO DURA-PEX tubing its superior characteristics. The long, simple chains in a polyethylene molecule are altered to form a more stable, three-dimensional network. This process changes the material from a thermoplastic into a thermoset. A thermoset differs from a thermoplastic because a thermoset cannot be melted and then reformed. This change in molecular structure creates a polyethylene product with enhanced mechanical properties. Many manufacturers use a chemical additive to activate the cross-linking process, but NIBCO employs a sterile, electron beam process that provides superior properties. This process, which is called PEX-c, delivers the highest quality PEX tubing available today, while reducing the use of chemicals.[2]

**B.      NIBCO's Defective PEX Tubing.**

183.    Despite NIBCO's attestations to the quality and superiority of its PEX Tubing, consumers all across the United States have experienced water damage and catastrophic PEX

---

[1] *About NIBCO*, http://www.nibco.com/About/ (last visited Oct. 5, 2018).
[2] *See* NIBCO, NIBCO® DURA-PEX® Piping Systems, Catalog C-PEX-0509, 4 (Apr. 29, 2009); see also NIBCO, NIBCO® PEX Piping Systems, Catalog C-PEX-1013, 4 (Oct. 1, 2013) (describing identical cross-linking process for NIBCO's PEX tubing that also gives the tubing "superior characteristics" and "delivers the highest quality PEX tubing available today").

Tubing failures caused by slow growth cracking mechanisms consistent with oxidative failure and/or creep rupture.   These slow growth cracking mechanisms have been caused by the insufficient stabilization and/or improper cross-linking of the PEX material used by NIBCO to manufacture its PEX Tubing.

184.    NIBCO's PEX Tubing comes with an express warranty that warrants against defects in the materials and workmanship of the tubing.  Specifically, NIBCO's express warranty states, *inter alia*, the following:

> NIBCO Inc. warrants that when NIBCO® PEX tube is used with NIBCO® PEX fittings, and NIBCO® valves and installation accessories, they will, under normal conditions, use and service in potable water and radiant heat systems, be free from defects in materials and workmanship for a period of twenty-five (25) years from the date of purchase when installed by a licensed professional contractor. This 25-year warranty is voided if any non-NIBCO products are used in the PEX system. NIBCO INC. warrants NIBCO PEX tube, when used under normal conditions, use and service in potable water and radiant heat systems with brass insert fittings meeting NSF/ANSI 61, ASTM F1807 and ASTM F877 to be free from defects in materials and workmanship for a period ten (10) years form [sic] the date of purchase.[3]

185.    Plaintiffs and the Class substantially complied with their obligations under the NIBCO PEX warranty. NIBCO, however, has failed to fulfill its obligation to replace the defective PEX Tubing and compensate Plaintiffs and Class members for the foreseeable property damage it caused.

186.    To the extent that the NIBCO PEX Warranty purports to limit or eliminate certain contractual rights afforded to Plaintiffs (*e.g.,* on the type of recoverable damages, ability to recover property damages), such limitations are unconscionable and unenforceable under the circumstances.

---

[3] A true and correct copy of NIBCO's PEX warranty is attached to the Complaint as Exhibit 1.

**C.     NIBCO's Defective PEX Fittings and Clamps**

187.    In addition to its PEX Tubing, NIBCO also manufactures and sells the fittings, clamps, valves and installation accessories required to install a completed residential or commercial plumbing system.

188.    NIBCO manufactures and sells PEX Fittings that purportedly conform to ASTM standard F1807.

189.    The ASTM is a globally recognized organization (formerly known as the American Society for Testing and Materials) that develops international voluntary consensus standards.  The F1807 standard applies to metal insert fittings for use with SDR9 cross-linked polyethylene (PEX) tubing, which is manufactured and/or sold by NIBCO

190.    F1807 insert fitting systems typically use a crimped stainless steel or copper ring to secure the PEX tubing to the fitting.  The brass alloy fitting is inserted into the PEX tubing using a special tool that crimps a copper ring or stainless steel clamp around the outside of the tubing, which, in turn, creates a seal between the PEX tubing and the brass fitting.  Below are examples of NIBCO's ASTM-F1807 insert fittings used with PEX Tubing.

 

191.   Not only does NIBCO manufacture and sell ASTM-F1807 fittings, but it encourages consumers to purchase and install the fittings with its PEX Tubing.  NIBCO's express warranty covers 10 years if only its PEX Tubing is installed, but NIBCO increases its express warranty coverage to 25 years if its PEX Fittings, valves, and installation accessories are used in conjunction with its PEX Tubing.

192.   Defendant's ASTM-F1807 fittings are easily identified by a "NIBCO" stamp placed on the brass insert fittings.

193.   NIBCO's PEX Tubing comes with an express warranty that warrants against defects in the materials and workmanship of the fittings.  Specifically, NIBCO's express warranty states, *inter alia*, the following:

> NIBCO Inc. warrants that when NIBCO® PEX tube is used with NIBCO® PEX fittings, and NIBCO® valves and installation accessories, they will, under normal conditions, use and service in potable water and radiant heat systems, be free from defects in materials and workmanship for a period of twenty-five (25) years from the date of purchase when installed by a licensed professional contractor.[4]

194.   Plaintiffs and the Class substantially complied with their obligations under the NIBCO PEX warranty.  NIBCO, however, has failed to fulfill its obligation to replace any defective fittings and compensate Plaintiffs and Class members for the foreseeable property damage the PEX Fittings and Clamps caused.

195.   To the extent that the NIBCO PEX Warranty purports to limit or eliminate certain contractual rights afforded to Plaintiffs (*e.g.,* on the type of recoverable damages, ability to recover property damages), such limitations are unconscionable and unenforceable under the circumstances.

---

[4] *See* Exhibit 1.

D.    **Failure of NIBCO's Defective PEX Fittings and Clamps.**

196.    Consumers who purchased and installed NIBCO's PEX Fittings and Clamps have experienced cracking and leaking of these products in their residential and commercial plumbing systems, causing water leaks that have and will cause extensive damage to homes, businesses and personal property of the consumers as a result of water leaks from the plumbing system.

197.    During the foreseeable and intended use, the NIBCO PEX Fittings are exposed to elements in residential and commercial plumbing systems which cause the NIBCO PEX Fittings to corrode and prematurely fail as the result of dezincification corrosion.

198.    After undergoing dezincification, the PEX Fittings prematurely fail and become brittle, sponge-like and/or plugged.  As a result, a continuous network of tiny holes develops in the PEX Fittings, allowing water to weep through the walls of the fitting.  Weakened fittings may crack or break, causing significant water damage.  They may become plugged with corrosion product causing, a low water pressure condition.  Corroded fittings may also allow chloride-rich water to weep through the wall of the fittings, wetting the adjacent stainless steel PEX Clamp and causing the PEX Clamp to fail due to chloride induced stress corrosion cracking.

199.    Defendant knew or should have known that the PEX Fittings and/or stainless steel PEX Clamps they manufactured, marketed and/or sold were susceptible to premature failure through dezincification corrosion and chloride-induced stress corrosion cracking respectively.

200.    The design, materials choices, and manufacturing practices of the brass fittings and stainless steel PEX Clamps marketed and sold by Defendant have created damaged products that

begin to fail on their first day of use, even if properly installed in their intended environment. Currently, Defendant advertises fittings that are "dezincification resistant."[5]

201.    The stainless steel PEX Clamps fail slowly over time due to a fracture mechanism known as "chloride-induced stress corrosion cracking," which is caused by defective design and/or defective manufacturing by Defendant.  For stress corrosion cracking to occur, a susceptible material must be simultaneously exposed to tensile stress and chlorides.  If any one of these three things (material susceptibility, tensile stress, or chlorides) is eliminated or sufficiently reduced, stress corrosion cracking cannot occur.

202.    The failing PEX Clamps are manufactured from a stainless steel alloy that is known to be susceptible to stress corrosion cracking in the presence of chlorides, and these clamps are used in a design where simultaneous exposure to static tensile stress and chlorides is (or should have been) reasonably anticipated.  Stress corrosion cracking could not occur in the PEX Clamps if the clamps were manufactured from a material that is not susceptible to chloride-induced stress corrosion cracking.  Alternate materials that are generally immune to chloride-induced stress corrosion cracking (exhibiting little or no susceptibility) and that are approved for plumbing applications in the United States were readily available at little or no additional cost at the time the failing clamps were manufactured.

203.    Additionally, the failing PEX Clamps are designed in a manner that allows tensile stresses to exceed the yield strength of the material during normal installation (meaning that the tensile stresses are so high that the clamp permanently changes shape during installation, through a process known as "necking").  The clamps are designed in such a way that the tensile stresses

---

[5] *See, e.g.*, http://www.nibco.com/Flexible-Piping-Systems/Bronze-Insert-Fittings/ (last visited Oct. 5, 2018).

created during normal and proper installation promote chloride-induced stress corrosion cracking, and the tensile stress condition is made even more detrimental by other aspects of the clamp design and/or manufacture (smearing of surface material, sharp edges, etc.).  Stress corrosion cracking cannot occur in the absence of static tensile stress, so the PEX Clamp could not have failed in the manner that it did if commonly accepted principles of engineering design and manufacturing had been employed to sufficiently reduce tensile stresses.

204.    Chlorides are one of the most abundant compounds on the planet.  They are routinely found in potable water, solder flux, masonry materials, concrete curing accelerants, perspiration, flame retardants, and numerous other materials routinely encountered in building construction.  The presence of chlorides is (or should have been) reasonably anticipated and accounted for in the design and manufacture of the PEX Clamps.

205.    NIBCO acknowledges that liquid and paste fluxes for soldering applications of copper and copper-alloy fittings are corrosive and that they contain chlorides of zinc and ammonia.[6]  Additionally, NIBCO provides step-by-step brazing instructions to the installer.  These instructions specify the application of flux.  The final step requires that the finished brazed assembly be wiped with a rag until all flux is removed.[7]  NIBCO fails to warn the installer against allowing chloride-rich flux to come into contact with the stainless steel PEX Clamp. Nevertheless, NIBCO knows or should have known that it is impossible to completely remove all traces of chloride-rich flux, and that by wiping the flux with a rag it is near certain that the chloride-rich flux will be smeared onto the adjacent stainless steel PEX Clamp.

---

[6] *See* NIBCO, NIBCO® Copper Fittings, Catalog C-CF-0513, pg. 37 (May 9, 2013).
[7] *See Id.* pg. 47.

206.    Additionally, NIBCO knows or should have known that chlorides from any source would be problematic for the stainless steel PEX Clamps.  NIBCO acknowledges that their PEX Clamps are "covered by international patents held by Oetiker International."  Oetiker warns that chloride-rich environments can be problematic for their PEX Clamps.[8]  NIBCO fails to disclosures these vulnerabilities.

## TOLLING OF THE STATUTE OF LIMITATIONS

207.    Any applicable statute of limitations has been tolled by Defendant's knowing and active concealment and denial of the facts alleged herein.  Plaintiffs and members of the Class could not have reasonably discovered the true, latent defective nature of the Defective PEX Products until shortly before this class action litigation was commenced.

208.    Defendant was and remains under a continuing duty to disclose to Plaintiffs and members of the Class the true character, quality and nature of NIBCO's defective PEX Tubing, PEX Clamps, and/or PEX Fittings, and the fact that they suffer from the PEX Product Defects that can cause them to fail.  As a result of the active concealment by Defendant, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

---

[8]http://www.oetiker.com/en/Services/~/media/Downloads/Operating%20Instructions/Operating%20Instructions%20PEX/Installation%20Instructions%20PEX/PEX%20Clamps%20Installation%20Instructions.pdf?la=es

## CLASS ALLEGATIONS

209.    This action is brought on behalf of Plaintiffs, individually and as a class action, pursuant to FED. R. CIV. P. 23(a), 23(b)(2) and/or 23(b)(3), on behalf of a nationwide class of consumers who purchased NIBCO's PEX Products (the "Nationwide Class").   Specifically, the Nationwide Class consists of:

> All persons that own or have owned at any time since January 1, 2005, a residential or commercial structure in the United States that contains or contained NIBCO's PEX Products, including their spouses, joint owners, heirs, executors, administrators, mortgagees, tenants, creditors, lenders, predecessors, successors, trusts and trustees, and assigns; as well as all persons who have standing and are entitled to assert a claim on behalf of any such persons, such as but not limited to a builder, contractor, distributor, seller, subrogated insurance carrier, or other person who has claims for contribution, indemnity or otherwise against NIBCO based on claims for leaks of the PEX Products with respect to such current or former owners of such structures.

210.    Alternatively, or in addition to the nationwide Class claims, Plaintiffs bring these claims under FED. R. CIV. P. 23(a), 23(b)(2) and/or 23(b)(3) on behalf of themselves and on behalf of Subclasses of individuals and entities residing in each of the states in which a named Plaintiff resides and each of the states where the laws are similar to each of the states in which a named Plaintiff resides (together, the "State Subclasses").   The State Subclasses are defined as:

> **The New Jersey Subclass**
> All persons that own or have owned at any time since January 1, 2005, a residential or commercial structure in New Jersey that contains or contained NIBCO's PEX Products, including their spouses, joint owners, heirs, executors, administrators, mortgagees, tenants, creditors, lenders, predecessors, successors, trusts and trustees, and assigns; as well as all persons who have standing and are entitled to assert a claim on behalf of any such persons, such as but not limited to a builder, contractor, distributor, seller, subrogated insurance carrier, or other person who has claims for contribution, indemnity or otherwise against NIBCO based on claims for leaks of the PEX Products with respect to such current or former owners of such structures.

> **The Tennessee Subclass**
> All persons that own or have owned at any time since January 1, 2005, a residential or commercial structure in Tennessee that contains or contained NIBCO's PEX

37

Products, including their spouses, joint owners, heirs, executors, administrators, mortgages, tenants, creditors, lenders, predecessors, successors, trusts and trustees, and assigns; as well as all persons who have standing and are entitled to assert a claim on behalf of any such persons, such as but not limited to a builder, contractor, distributor, seller, subrogated insurance carrier, or other person who has claims for contribution, indemnity or otherwise against NIBCO based on claims for leaks of the PEX Products with respect to such current or former owners of such structures.

### The Alabama Subclass

All persons that own or have owned at any time since January 1, 2005, a residential or commercial structure in Alabama that contains or contained NIBCO's PEX Products, including their spouses, joint owners, heirs, executors, administrators, mortgages, tenants, creditors, lenders, predecessors, successors, trusts and trustees, and assigns; as well as all persons who have standing and are entitled to assert a claim on behalf of any such persons, such as but not limited to a builder, contractor, distributor, seller, subrogated insurance carrier, or other person who has claims for contribution, indemnity or otherwise against NIBCO based on claims for leaks of the PEX Products with respect to such current or former owners of such structures.

### The Georgia Subclass

All persons that own or have owned at any time since January 1, 2005, a residential or commercial structure in Georgia that contains or contained NIBCO's PEX Products, including their spouses, joint owners, heirs, executors, administrators, mortgages, tenants, creditors, lenders, predecessors, successors, trusts and trustees, and assigns; as well as all persons who have standing and are entitled to assert a claim on behalf of any such persons, such as but not limited to a builder, contractor, distributor, seller, subrogated insurance carrier, or other person who has claims for contribution, indemnity or otherwise against NIBCO based on claims for leaks of the PEX Products with respect to such current or former owners of such structures.

### The Texas Subclass

All persons that own or have owned at any time since January 1, 2005, a residential or commercial structure in Texas that contains or contained NIBCO's PEX Products, including their spouses, joint owners, heirs, executors, administrators, mortgages, tenants, creditors, lenders, predecessors, successors, trusts and trustees, and assigns; as well as all persons who have standing and are entitled to assert a claim on behalf of any such persons, such as but not limited to a builder, contractor, distributor, seller, subrogated insurance carrier, or other person who has claims for contribution, indemnity or otherwise against NIBCO based on claims for leaks of the PEX Products with respect to such current or former owners of such structures.

**The Oklahoma Subclass**

All persons that own or have owned at any time since January 1, 2005, a residential or commercial structure in Oklahoma that contains or contained NIBCO's PEX Products, including their spouses, joint owners, heirs, executors, administrators, mortgagees, tenants, creditors, lenders, predecessors, successors, trusts and trustees, and assigns; as well as all persons who have standing and are entitled to assert a claim on behalf of any such persons, such as but not limited to a builder, contractor, distributor, seller, subrogated insurance carrier, or other person who has claims for contribution, indemnity or otherwise against NIBCO based on claims for leaks of the PEX Products with respect to such current or former owners of such structures.

**The Pennsylvania Subclass**

All persons that own or have owned at any time since January 1, 2005, a residential or commercial structure in Pennsylvania that contains or contained NIBCO's PEX Products, including their spouses, joint owners, heirs, executors, administrators, mortgagees, tenants, creditors, lenders, predecessors, successors, trusts and trustees, and assigns; as well as all persons who have standing and are entitled to assert a claim on behalf of any such persons, such as but not limited to a builder, contractor, distributor, seller, subrogated insurance carrier, or other person who has claims for contribution, indemnity or otherwise against NIBCO based on claims for leaks of the PEX Products with respect to such current or former owners of such structures.

**The South Carolina Subclass**

All persons that own or have owned at any time since January 1, 2005, a residential or commercial structure in South Carolina that contains or contained NIBCO's PEX Products, including their spouses, joint owners, heirs, executors, administrators, mortgagees, tenants, creditors, lenders, predecessors, successors, trusts and trustees, and assigns; as well as all persons who have standing and are entitled to assert a claim on behalf of any such persons, such as but not limited to a builder, contractor, distributor, seller, subrogated insurance carrier, or other person who has claims for contribution, indemnity or otherwise against NIBCO based on claims for leaks of the PEX Products with respect to such current or former owners of such structures.

**The New York Subclass**

All persons that own or have owned at any time since January 1, 2005, a residential or commercial structure in New York that contains or contained NIBCO's PEX Products, including their spouses, joint owners, heirs, executors, administrators, mortgagees, tenants, creditors, lenders, predecessors, successors, trusts and trustees, and assigns; as well as all persons who have standing and are entitled to assert a claim on behalf of any such persons, such as but not limited to a builder, contractor, distributor, seller, subrogated insurance carrier, or other person who has claims for contribution, indemnity or otherwise against NIBCO based on claims for

leaks of the PEX Products with respect to such current or former owners of such structures.

**The North Carolina Subclass**

All persons that own or have owned at any time since January 1, 2005, a residential or commercial structure in North Carolina that contains or contained NIBCO's PEX Products, including their spouses, joint owners, heirs, executors, administrators, mortgagees, tenants, creditors, lenders, predecessors, successors, trusts and trustees, and assigns; as well as all persons who have standing and are entitled to assert a claim on behalf of any such persons, such as but not limited to a builder, contractor, distributor, seller, subrogated insurance carrier, or other person who has claims for contribution, indemnity or otherwise against NIBCO based on claims for leaks of the PEX Products with respect to such current or former owners of such structures.

211.    Plaintiffs reserve the right to re-define the Class(es) prior to class certification.

212.    The rights of each member of the Class were violated in a similar fashion based upon Defendant's uniform actions.

213.    This action has been brought and may be properly maintained as a class action for the following reasons:

a.    <u>Numerosity</u>:  Members of the Class are so numerous that their individual joinder is impracticable.  Plaintiffs are informed and believe that the proposed Class contains hundreds and perhaps thousands of individuals or entities that own properties with Defendant's defective PEX Products.  The Class is therefore sufficiently numerous to make joinder impracticable, if not impossible.  The precise number of Class members is unknown to Plaintiffs.

b.    <u>Existence and Predominance of Commons Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Class.  These questions predominate over any questions affecting individual Class members.  These common legal and factual questions include, but are not limited to, the following:

i.      Whether Defendant's PEX Tubing, Fittings and/or Clamps were defectively designed and/or manufactured for their intended purpose.

ii.     Whether Defendant's PEX Tubing, Fittings and/or Clamps were fit for their intended purpose.

iii.    Whether Defendant's PEX Tubing, Fittings and/or Clamps were merchantable.

iv.     Whether Defendant failed to warn consumers that its PEX Tubing, Fittings and/or Clamps were not properly tested during the design and development process.

v.      Whether Defendant made fraudulent, false, deceptive, and/or misleading statements in connection with the sale of its PEX Tubing, Fittings and/or Clamps in its product literature, including those relating to standards and reliability.

vi.     Whether Defendant omitted material information when it sold its PEX Tubing, Fittings and/or Clamps.

vii.    Whether Defendant exercised reasonable care in the design, manufacture, and testing of its PEX Tubing, Fittings and/or Clamps.

viii.   Whether Defendant owed a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the formulation, testing, design, manufacture, warranting and marketing of its PEX Tubing, Fittings and/or Clamps.

ix.     Whether Defendant breached its duty to Plaintiffs and the Class by designing, manufacturing, advertising, and selling to Plaintiffs and the Class defective PEX Tubing, Fittings and/or Clamps.

x.      Whether Defendant's PEX Tubing, Fittings and/or Clamps are progressively deteriorating at an accelerated rate.

xi.      Whether Defendant's PEX Tubing, Fittings and/or Clamps fail prematurely.

xii.      Whether Defendant knowingly sold or allowed its PEX Tubing, Fittings and/or Clamps to be distributed after it knew the PEX Tubing, Fittings and/or Clamps were failing at an increased rate.

xiii.      Whether Defendant knew or should have known of the defective nature of its PEX Tubing, Fittings and/or Clamps.

xiv.      Whether Plaintiffs and the Class are entitled to relief under Defendant's express warranties.

xv.      Whether Defendant breached its contracts with Plaintiffs and the Class.

xvi.      Whether Defendant breached the terms of its express warranty.

xvii.      The appropriate nature of class-wide equitable relief.

xviii.      The appropriate measurement of restitution and/or measure of damages to award to Plaintiffs and members of the Class.

xix.      Whether the Defendant should be required to notify all Class members about its Defective PEX Products.

These and other questions of law or fact which are common to the members of the Class predominate over any questions affecting only individual members of the Class.

c.      Typicality:  Plaintiffs' claims are typical of the claims of the Class since Plaintiffs and all members of the Class own Defendant's defective PEX Products.

42

Furthermore, Plaintiffs and all members of the Class sustained monetary and economic injuries arising out of Defendant's wrongful conduct by, *inter alia,* paying more for the PEX Products than they otherwise would have had they been aware of their defects. Had this material information been disclosed to Plaintiffs and Class members, they would not have purchased the PEX Products (or, at a minimum, would have paid substantially less for them). Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

        d.    <u>Adequacy</u>: Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class that they seeks to represent; they have retained counsel competent and highly experienced in complex class action litigation and they intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

        e.    <u>Superiority</u>: A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class to individually and effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation also increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action

device presents far fewer management difficulties, and provides the benefits of single

adjudication, an economy of scale, and comprehensive supervision by a single court.

       f.    <u>Ascertainability</u>: Class members are readily ascertainable, and can be

identified by Defendant's records.

       g.    Defendant has acted, and refused to act, on grounds generally applicable to

the Class, thereby making appropriate final injunctive relief with respect to the Class as a

whole.

**<u>VIOLATIONS ALLEGED</u>**
**<u>COUNT I</u>**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the Nationwide Class or, Alternatively, the New Jersey, Alabama, Texas,**
**Oklahoma, Pennsylvania, Georgia, New York and North Carolina Subclasses)**

214.    Plaintiffs and the Class incorporate by reference each preceding and succeeding

paragraph as though fully set forth herein.

215.    Plaintiffs bring this cause of action on behalf of themselves and on behalf of the

members of the Class against Defendant.

216.    Defendant's PEX Products are goods and thus Plaintiffs' and the Class' breach of

express warranty claim is governed by the Uniform Commercial Code.

217.    Defendant's PEX Products contained an express warranty with every purchase.  A

true and correct copy of such warranty can be found in Exhibit #1 to this Complaint.  NIBCO

warranted that the PEX Products would be free from defects in materials and workmanship and

such warranty became part of the basis of the transaction between Plaintiffs and the Class and

Defendant.

218.    Defendant's express warranty states its PEX Products will be free from defects in

materials and workmanship for a period of twenty-five (25) years from the date of purchase when

44

installed by a licensed professional contractor and when installed along with NIBCO PEX fittings and NIBCO valves and installation accessories.

219.    Defendant's express warranty states its PEX Tubing will be free from defects in materials and workmanship for a period of ten (10) years from the date of purchase if installed by a licensed professional contractor.

220.    Defendant expressly warrants that if a consumer's PEX Products are defective, NIBCO will replace them free of charge.

221.    Plaintiffs and the Class complied with the terms of Defendant's express warranty, including any and all conditions precedent and all obligations owed to NIBCO related to installation of the PEX Components.  Contrary to the terms of the express warranty, Defendant has failed to replace the defective PEX Products purchased by Plaintiffs and the Class.

222.    As NIBCO took no action to cure said breaches of warranties, Plaintiffs and the Class took corrective action at their own cost and expense so as to mitigate any further damage related to the failure of the PEX Products.

223.    As a result of Defendant's conduct, Plaintiffs and Class members have suffered an ascertainable loss in the form of direct monetary losses because Defendant has forced Plaintiffs to pay for repairs and/or the replacement of the defective PEX Products.

224.    Plaintiffs and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.  In addition, Defendant was put on notice of the defect because it had knowledge of the existence of the PEX Product Defects at all relevant times.

<u>COUNT II</u>
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(On Behalf of the Nationwide Class or, Alternatively, the Alabama, Texas, Oklahoma,**
**Pennsylvania, Georgia, South Carolina, New York and North Carolina Subclasses)**

225.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

226.    Plaintiffs bring this cause of action on behalf of themselves and on behalf of the members of the Class against Defendant.

227.    At all times mentioned herein, Defendant manufactured and/or supplied the PEX Products, and prior to the time the PEX products were purchased by Plaintiffs and the Class, Defendant impliedly warranted to Plaintiffs, and to Plaintiffs' agents, that the PEX Products were of merchantable quality and fit for the use for which they were intended.

228.    Plaintiffs and Plaintiffs' agents relied on the skill and judgment of Defendant in using the PEX Products.

229.    The PEX Products were unfit for their intended use and were not of merchantable quality, as warranted by Defendant, but instead contained the PEX Product Defects.  Specifically, and as a result of such defects, the PEX Tubing is predisposed to premature oxidative failure and creep rupture, the PEX Fittings are predisposed to prematurely fail as a result of dezincification corrosion, and the PEX Clamps are predisposed to prematurely fail as a result of chloride-induced stress corrosion cracking.  These defects cause the PEX Products to fail to perform when put to their intended use.

230.    Defendant breached the implied warranty of merchantability, as the PEX Products were not of a merchantable quality due to the PEX Product Defects.

231.     As a direct and proximate result of the breach of said warranties, Plaintiffs and the Class suffered and will continue to suffer losses and damages as alleged herein in an amount to be determined at trial.

232.     Plaintiffs and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

**COUNT III**
**TENNESSEE PRODUCTS LIABILITY ACT**
**(TENN. CODE ANN. § 29-28-101, *et seq.*)**
**(On Behalf of the Tennessee Subclass)**

233.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

234.     The Coles and Plaintiff Meadow bring this cause of action on behalf of themselves and on behalf of the members of the Tennessee Subclass against Defendant.

235.     NIBCO designed, manufactured, assembled, distributed, marketed and sold NIBCO PEX Products, including the NIBCO PEX Products that were installed in Coles' and Mr. Meadow's homes in Tennessee.

236.     The NIBCO PEX Products were expected to, and did, reach the Coles' and Mr. Meadow's homes without substantial change in the conditions in which they were designed, manufactured, assembled, distributed, marketed and sold by NIBCO.

237.     The NIBCO PEX Products, as designed, manufactured, assembled, distributed, marketed and sold by NIBCO were in a defective condition and were defective and unreasonably dangerous when they left NIBCO's possession and/or control.

238.     The NIBCO PEX Products were defectively designed and/or manufactured for the reasons set forth in paragraphs 168-191 above.

239.    The NIBCO PEX Products were defective for the following reasons: (1) they were not reasonable safe for ordinary and intended use; (2) NIBCO failed to provide the Coles, Mr. Meadow and other Class members with adequate and sufficient warnings regarding the known and foreseeable risks and dangers inherent in NIBCO PEX Products; and (3) the design, methods of manufacture, and testing of NIBCO PEX Products were inadequate and produced defective products.

240.    Kimberly Cole, Chad Meadow and/or other reasonably expected users of NIBCO PEX Products, could not, by the exercise of reasonable care, have discovered the defects and/or deficiencies posed by the NIBCO PEX Products.

241.    As a direct and proximate result of the defective condition of the NIBCO PEX Products, Kimberly Cole, Chad Meadow and other Class members, suffered property damage and other incidental and consequential damages.

**COUNT IV**
**NEW JERSEY PRODUCTS LIABILITY ACT**
**DEFECTIVE MANUFACTURE AND DESIGN (N.J.S.A. 2A:58C-2 *et seq.*)**
**(On Behalf of the New Jersey Subclass)**

242.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

243.    Plaintiff Monica brings this cause of action on behalf of himself and on behalf of the members of the New Jersey Subclass against Defendant.

244.    NIBCO is the designer, manufacturer, distributer, marketer, promoter, supplier and seller of NIBCO PEX Products which are defective and unreasonably dangerous to consumers.

245.    In certain instances NIBCO's PEX Products were defectively and improperly manufactured rendering the products deficient and unreasonably dangerous and hazardous to certain plaintiffs.

246.    NIBCO PEX Products are defective in design in that they are not reasonably fit, suitable or safe for their intended purpose and/or their foreseeable risks exceed the benefits associated with their design. NIBCO PEX Products are defective in design and manufacture for the reasons set forth in paragraphs 168-191 above.

247.    The defective condition of NIBCO PEX Products rendered them unreasonably dangerous, and the NIBCO PEX Products were in this defective condition when they left the hands of the Defendant.

248.    NIBCO PEX Products were expected to and did reach consumers, including, Monica, without substantial change in the conditions in which they were designed, manufactured, labeled, sold, distributed, marketed, promoted, supplied and otherwise released into the stream of commerce.

249.    Plaintiff was unaware of the hazards and defects associated with NIBCO PEX Products and used the products in a manner that was intended by the Defendant.

250.    NIBCO is strictly liable to Plaintiff Monica for designing, manufacturing, and placing into the stream of commerce products which were unreasonably dangerous for their reasonably foreseeable uses at the time they left the control of the Defendant because of design and/or manufacturing defects.

251.    NIBCO knew or should have known of the dangers associated with the use of NIBCO PEX Products and the defective nature of those products but continued to design, manufacture and sell them in disregard of the known risk of harm.

252.    As a direct and proximate cause of the design defect and the Defendant's misconduct, Plaintiff Monica and other Class members, suffered property damage and other incidental and consequential damages.

## COUNT V
## NEW JERSEY PRODUCTS LIABILITY ACT
## FAILURE TO WARN (N.J.S.A. 2A:58C-2 *et seq.*)
## (On Behalf of the New Jersey Subclass)

253.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

254.    Plaintiff Monica brings this cause of action on behalf of himself and on behalf of the members of the New Jersey Subclass against Defendant.

255.     NIBCO designed, manufactured, distributed, marketed, promoted, supplied and sold and otherwise released NIBCO PEX Products into the stream of commerce in a defective and unreasonably dangerous to consumers and therefore had a duty to warn users of the known risks associated with NIBCO PEX Products.

256.    NIBCO PEX Products were under the exclusive control of the Defendant as aforesaid, and were unaccompanied by appropriate warnings concerning the use of NIBCO PEX Products and the risk of water losses and damages associated with such use.

257.    NIBCO failed to timely and reasonably warn of material facts regarding the dangers of NIBCO PEX Products so that no purchaser, consumer or reasonably anticipated user would have utilized those products had those dangers been known to such purchasers, consumers and/or users.

258.    NIBCO PEX Products which were designed, manufactured, distributed, marketed, promoted, supplied and sold and otherwise released by NIBCO into the stream of commerce were defective due to inadequate post sale warnings and/or instructions because after the defendant knew or should have known of the risk of failures, water loss and property damage from the use of NIBCO PEX Products, Defendant failed to provide adequate warnings and instructions to the users of its products including, Plaintiff Monica.

259.     As a direct and proximate result of the conduct of NIBCO as aforesaid, Plaintiff Monica and other Class members, suffered property damage and other incidental and consequential damages.

**COUNT VI**
**ALABAMA EXTENDED MANUFACTURER'S LIABILITY DOCTRINE**
**(On Behalf of the Alabama Subclass)**

260.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

261.     Plaintiffs Boyd and McLaughlin bring this cause of action on behalf of themselves and on behalf of the members of the Alabama Subclass against Defendant.

262.     This Count is brought pursuant to the Alabama Extended Manufacturers Liability Doctrine.

263.     NIBCO designed, manufactured, distributed, marketed, promoted, supplied and sold and otherwise released NIBCO PEX Products into the stream of commerce in a defective and unreasonably dangerous to consumers and therefore had a duty to warn users of the known risks associated with NIBCO PEX Products.

264.     The NIBCO PEX Products were expected to, and did, reach Ms. Boyd's and Mr. McLaughlin's homes without substantial change in the conditions in which they were designed, manufactured, assembled, distributed, marketed and sold by NIBCO.

265.     At the time of the damages sustained by Ms. Boyd and Mr. McLaughlin, the NIBCO PEX Products were in the substantially same condition as they were on the date of their original manufacture, sale and/or distribution.

266.     The NIBCO PEX Products in use in Ms. Boyd's and Mr. McLaughlin's homes were being used as intended.

267. The NIBCO PEX Products were unreasonably dangerous and defective and created an unreasonable risk of water loss and damage to expected and anticipated users.

268. The NIBCO PEX Products were defectively designed and/or manufactured for the reasons set forth in paragraphs 168-191 above.

269. The NIBCO PEX Products were defective for the following reasons: (1) they were not reasonably safe for ordinary and intended use; (2) NIBCO failed to provide Ms. Boyd, Mr. McLaughlin and other Class members with adequate and sufficient warnings regarding the known and foreseeable risks and dangers inherent in NIBCO PEX Products; and (3) the design, methods of manufacture, and testing of NIBCO PEX Products were inadequate and produced defective products.

270. Ms. Boyd, Mr. McLaughlin and/or other reasonably expected users of NIBCO PEX Products, could not, by the exercise of reasonable care, have discovered the defects and/or deficiencies posed by the NIBCO PEX Products.

271. As a direct and proximate result of the defective condition of the NIBCO PEX Products, Ms. Boyd, Mr. McLaughlin and other Class members, suffered property damage and other incidental and consequential damages.

<u>**COUNT VII**</u>
**TEXAS PRODUCTS LIABILITY ACT**
**(TEX. CIV. PRAC. & REM. CODE ANN. § 82.001, *et seq.*)**
**(On Behalf of the Texas Subclass)**

272. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

273. Plaintiff McMahon and the Medders bring this cause of action on behalf of themselves and on behalf of the members of the Texas Subclass against Defendant.

274.     NIBCO designed, manufactured, assembled, distributed, marketed and sold NIBCO PEX Products, including the NIBCO PEX Products that were installed in the McMahon home in Rio Vista, TX and the Medders home in Morgan Hill, TX.

275.     The NIBCO PEX Products were expected to, and did, reach Mr. McMahon's home and the Medders home without substantial change in the conditions in which they were designed, manufactured, assembled, distributed, marketed and sold by NIBCO.

276.     The NIBCO PEX Products, as designed, manufactured, assembled, distributed, marketed and sold by NIBCO were in a defective condition and were defective and unreasonably dangerous when they left NIBCO's possession and/or control.

277.     The NIBCO PEX Products were defectively designed and/or manufactured for the reasons set forth in paragraphs 168-191 above.

278.     The NIBCO PEX Products were defective for the following reasons: (1) they were not reasonably safe for ordinary and intended use; (2) NIBCO failed to provide Mr. McMahon and the Medders and other c\Class members with adequate and sufficient warnings regarding the known and foreseeable risks and dangers inherent in NIBCO PEX Products; and (3) the design, methods of manufacture, and testing of NIBCO PEX Products were inadequate and produced defective products.

279.     Mr. McMahon and the Medders and/or other reasonably expected users of NIBCO PEX Products, could not, by the exercise of reasonable care, have discovered the defects and/or deficiencies posed by the NIBCO PEX Products.

280.     As a direct and proximate result of the defective condition of the NIBCO PEX Products, Mr. McMahon and the Medders and other Class members, suffered property damage and other incidental and consequential damages.

**COUNT VIII**
**STRICT LIABILITY –**
**DESIGN DEFECT, MANUFACTURING DEFECT AND FAILURE TO WARN**
**(On Behalf of the Nationwide Class)**

281.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

282.    Plaintiffs bring this cause of action on behalf of themselves and on behalf of the members of the Nationwide Class against Defendant.

283.    NIBCO designed and manufactured the PEX Products, and sold or distributed the PEX Products to Plaintiffs and the Class.

284.    The PEX Products were defective in their design, and were defective when they left NIBCO's possession or control.

285.    The PEX Products were defectively manufactured and posed a substantial likelihood of harm when they left NIBCO's possession or control.

286.    NIBCO knew, or should have known, that the PEX Products contained a non-obvious danger in their material composition.  NIBCO knew that the PEX Products were highly susceptible to failure under expected installation conditions and ordinary use, and that consumers would not replace their PEX Products without an instruction to do so.

287.    NIBCO failed to inform Plaintiffs and the Class as to the PEX Products' susceptibility to failure.  NIBCO failed to warn consumers that it was necessary to replace the PEX Products, even if the PEX Products had not yet failed.

288.    The PEX Products were defective due to inadequate warnings, inadequate inspection and testing, and inadequate reporting regarding the results of quality control testing, or lack thereof.

289.   Had Plaintiffs and the Class been adequately warned concerning the likelihood that the PEX Products would fail, they would have taken steps to avoid damages by replacing the PEX Products or by not purchasing them.

290.   NIBCO, after learning that its PEX Products could degrade and fail, had a post-sale duty to warn consumers of the possibility that leaking and water damage could result from the failure of its PEX Products, even when used for their intended purpose.

291.   NIBCO is strictly liable for the injuries that the defective PEX Products have caused Plaintiffs and the Class.

292.   As a direct and proximate result of the defective condition of the PEX Products, Plaintiffs and the Class have incurred damages to both their PEX Products and to other personal and real property in an amount to be determined at trial.

**COUNT IX**
**NEGLIGENCE AND NEGLIGENT FAILURE TO WARN**
**(On Behalf of the Nationwide Class)**

293.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein

294.   Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Cass.

295.   Defendant owed Plaintiffs and the Class a duty to exercise reasonable and ordinary care in the formulation, testing, design, manufacture, warranting and marketing of the PEX Products.

296.   The failure of the PEX Products in Plaintiffs' and the Class member's residential and commercial properties was caused by poor and improper workmanship and manufacture, negligence, and lack of reasonable and ordinary care by NIBCO, acting through its duly authorized

agents, servants, and employees. Defendant failed to properly test and/or evaluate the PEX Products to ensure they would not fail when they were used for their intended purpose.

297. After being notified of the foregoing breaches, NIBCO took no action to cure its breaches of its duty to exercise ordinary care, thus requiring Plaintiffs and the Class to take corrective action at their own cost and expense to avoid continued failure of the PEX Products, as well as further damage to their homes, business and personal property.

298. Defendant failed to warn of the potential hazards associated with the use of NIBCO PEX Products and negligently failed to issue a notice of the hazards or recall regarding the hazard.

299. As a direct and proximate result of NIBCO's negligence, carelessness and breaches of its duty of reasonable and ordinary care, Plaintiffs and the Class have been caused to suffer losses and damages, including the cost of repairing and replacing the PEX Products, interruption of their businesses and home life, damage to their homes, businesses and personal property due to leakage, and other incidental expenses associated with the failure of Defendant's PEX Products, all of which damages were foreseeable by Defendant.

300. Plaintiffs and Class members comprise an identifiable class, which Defendant knew or had reason to know were likely to suffer damages as a result of its conduct, including property damage beyond that sustained only to the Defective NIBCO PEX Products.

## COUNT X
## UNJUST ENRICHMENT
### (On Behalf of the Tennessee, New York and North Carolina Subclasses)

301. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

302.    Plaintiffs Meadow, Kenny and the Davises bring this cause of action on behalf of themselves and on behalf of the members of the Tennessee, New York and North Carolina Subclasses against Defendant.

303.    Substantial benefits have been conferred on NIBCO by Plaintiffs and the Class by purchasing the PEX Products, and NIBCO knowingly and willingly accepted and enjoyed those benefits.

304.    NIBCO knew or should have known that payments received from Plaintiffs and the Class for the PEX Products were paid with the expectation that the PEX Products would perform as represented.

305.    NIBCO's retention of these benefits is inequitable.

306.    Plaintiffs and the Class are entitled to recover from NIBCO all amounts wrongfully collected and improperly retained by NIBCO, plus interest.

307.    As a direct and proximate cause of NIBCO's wrongful conduct and unjust enrichment, Plaintiffs and the Class are entitled to an accounting, restitution, attorneys' fees, costs and interest.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs request, on behalf of themselves and members of the Class, that this Court:

A.    determine that the claims alleged herein may be maintained as a class action under Rule 23(a), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above and designating Plaintiffs' counsel as counsel for the Class;

B.    award all actual, general, special, incidental, statutory, treble or other multiple, punitive and consequential damages to which Plaintiffs and Class members are entitled;

C.    award pre-judgment and post-judgment interest on such monetary relief;

D.    grant appropriate injunctive and/or declaratory relief as the Court may deem reasonable;

E.    award reasonable attorneys' fees and costs; and grant such further and other relief that this Court deems appropriate.  This relief may include, without limitation, any remediation, inspection, notice, and/or other necessary steps to be undertaken with respect to Class members with PEX Products on which the defect has not yet manifested.

### **JURY DEMAND**

Plaintiffs, on behalf of themselves and the class, demand a trial by jury on all issues so triable.

**LITE DEPALMA GREENBERG, LLC**

Dated:  November 1, 2018    */s/ Bruce D. Greenberg*
Bruce D. Greenberg
Susana Cruz Hodge
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Telephone: (973) 623-3000
bgreenberg@litedepalma.com
scruzhodge@litedepalma.com

*and*

Kyle A. Shamberg
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Telephone: (312) 750-1592
kshamberg@litedepalma.com

58

**SAUDER SCHELKOPF**
Joseph G. Sauder
Matthew D. Schelkopf
Joseph B. Kenney
555 Lancaster Avenue
Berwyn, PA 19312
Telephone: (610) 200-0583
jgs@sstriallawyers.com
mds@sstriallawyers.com
jbk@sstriallawyers.com

**BERGER MONTAGUE PC**
Shanon J. Carson
Lawrence Deutsch
Jacob M. Polakoff
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
scarson@bm.net
ldeutsch@bm.net
jpolakoff@bm.net

*Counsel for Plaintiffs*

# EXHIBIT 1



## NIBCO® PEX Warranty

### NIBCO INC. LIMITED WARRANTY
Applicable to NIBCO INC. PEX Piping Systems

NIBCO INC. warrants that when NIBCO® PEX tube is used with NIBCO® PEX fittings, and NIBCO® valves and installation accessories, they will, under normal conditions, use and service in potable water and radiant heat systems, be free from defects in materials and workmanship for a period of twenty-five (25) years from the date of purchase when installed by a licensed professional contractor. This 25-year warranty is voided if any non-NIBCO products are used in the PEX system. NIBCO INC. warrants NIBCO PEX tube, when used under normal conditions, use and service in potable water and radiant heat systems with brass insert fittings meeting NSF/ANSI 61, ASTM F1807 and ASTM F877 to be free from defects in materials and workmanship for a period of ten (10) years form the date of purchase. NIBCO INC. warrants NIBCO® PEX fittings, manifolds, transition fittings and valves under normal conditions, use and service in potable water and radiant heat systems, to be free from defects in materials and workmanship for a period of ten (10) years from the date of purchase. NIBCO INC. warrants NIBCO® associated hardware and tools for a period of 90 days from the date of purchase.

In the event any defect occurs which the owner believes is covered by this warranty, the owner should immediately contact NIBCO Technical Services, either in writing or by telephone at 1.888.446.4226 or 1.574.295.3000. The owner will be instructed to return said tube, fittings or accessories, at the owner's expense, to NIBCO INC., or an authorized representative for inspection. In the event said inspection discloses to the satisfaction of NIBCO INC. that said tube, fitting or accessory is defective, a replacement shall be mailed free of charge to the owner.

IN ORDER FOR THIS LIMITED WARRANTY TO APPLY, THE ABOVE REFERENCED PRODUCTS MUST BE INSTALLED BY A LICENSED PROFESSIONAL PLUMBER IN ACCORDANCE WITH NIBCO INSTALLATION INSTRUCTIONS AND IN COMPLIANCE WITH ALL APPLICABLE CODE REQUIREMENTS. FAILURE TO DO SO WILL VOID ALL APPLICABLE WARRANTIES.

This warranty does not apply and you do not have a right of reimbursement if the failure or resulting damage is caused by:

1. breaks, tearing, kinking, gouges, punctures or other external damages before, during, or after installation;
2. exposure to temperatures and pressures beyond the product ratings as specified on the product or in the NIBCO installation manual;
3. exposure to damaging chemicals, substances or corrosive water conditions;
4. damage from abnormal operating conditions;
5. damage due to accident, abuse, misuse, or unauthorized modification or repair;
6. improper installation due to worn, damaged, unauthorized or improperly calibrated tools;
7. components in the plumbing system other than those manufactured or sold by NIBCO;
8. not designing, installing, inspecting or testing the system in accordance with NIBCO installation instructions at the time of the installation; or
9. failure to follow applicable code requirements and good plumbing practices.

TO THE EXTENT PERMITTED BY LAW, THIS WARRANTY SPECIFICALLY EXCLUDES INCIDENTAL AND CONSEQUENTIAL DAMAGES OF EVERY TYPE AND DESCRIPTION RESULTING FROM ANY CLAIMED DEFECT IN MATERIAL OR WORKMANSHIP, INCLUDING BUT NOT LIMITED TO, PERSONAL INJURIES AND PROPERTY DAMAGES.

Some states or countries do not allow the exclusion or limitation of incidental or consequential damages so these limitations may not apply to you.

TO THE EXTENT PERMITTED BY LAW, IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE ARE LIMITED IN DURATION.

This warranty gives you specific legal rights, and you may also have other rights which vary from state to state and country to country.



To the best of our knowledge, the information contained in this publication is accurate. However, NIBCO does not assume any liability whatsoever for the accuracy or completeness of such information. Final determinations of the suitability of any information or product for the use to be contemplated is the sole responsibility of the user. The manner of that use, and whether there is any infringement of patents, is also the sole responsibility of the user.



NIBCO INC. WORLD HEADQUARTERS • 1516 MIDDLEBURY ST. • ELKHART, IN 46516-4740 • USA • PH: 1.800.234.0227
TECH SERVICES PH: 1.888.446.4226 • FAX: 1.888.336.4226 • INTERNATIONAL OFFICE PH: +1.574.295.3327 • FAX: +1.574.295.3456
www.nibco.com