UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KIMBERLY COLE, ALAN COLE, JAMES MONICA, LINDA BOYD, MICHAEL MCMAHON, RAY SMINKEY, JAMES MEDDERS, JUDY MEDDERS, ROBERT PEPERNO, SARAH PEPERNO, and KELLY MCCOY, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> NIBCO, INC., <br><br> Defendant. | Civil Action No.: 3:13-cv-07871-FLW-TJB |

_____

BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR FINAL
SETTLEMENT APPROVAL AND RELATED RELIEF
ON BEHALF OF INTERESTED PARTY
CHRISTIANSON AIR CONDITIONING AND PLUMBING, LLC

_____

Gavin J. Rooney
Craig Dashiell
**LOWENSTEIN SANDLER LLP**
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500

Shelly D. Masters (*pro hac vice* admission pending)
Nicholas Y. Gavrizi (*pro hac vice* admission pending)
**COKINOS, BOSEIEN & YOUNG PC**
Las Cimas IV
900 S. Capital of Texas Hwy, Suite 425
Austin, Texas 78746
(512) 476-1080

*Attorneys for Objectors Christianson Air Conditioning and Plumbing, LLC and Dupree Plumbing Co., Inc.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................1

ARGUMENT ....................................................................................................5

    I.    THE SETTLEMENT CANNOT BE APPROVED BECAUSE
    THE CLASS IS NOT CERTIFIABLE. ...............................................8

        1.    Predominance is not satisfied because individual inquires
        of fact will be significant in deciding the Class Members
        Cases—most notably, the type/amount of disinfectant
        used in the water supplied to each structure. ............................8

        2.    Superiority is not satisfied because  the relevant factors
        weigh against a class action being a superior vehicle to
        assert claims on behalf of the Proposed Class. .......................14

        3.    Ascertainability  is not satisfied because  the Class is not
        defined using objective criteria and there is no reliable
        and administratively feasible way to identify all Class
        Members of the Proposed Class. .............................................18

        4.    Adequacy is not satisfied because subsets of the
        Proposed Class—homeowners and Installers—have
        conflicting/competing interests. ..............................................22

        5.    Typicality is not satisfied because Plaintiffs' claims are
        based on different legal theories, conduct, and injuries
        than Installers, a subset of the Proposed Class........................26

    II.    THE SETTLEMENT AGREEMENT IS NOT FAIR,
    REASONABLE OR ADEQUATE. ...................................................30

        1.    In performing a fairness analysis, the Court has a
        fiduciary duty to absent class members like Christianson.
        Plaintiffs' simultaneous request for certification and
        settlement calls for heightened judicial scrutiny.....................30

        2.    Several Girsh factors weigh against approval..........................33

        3.    Prudential considerations weigh against approval. ..................35

a. The Settlement is unfair to Installers because it strips them of contribution rights against NIBCO without just compensation.................................................35

b. The Settlement prevents Installers from securing a true right of opt out from the Settlement. ......................36

c. Finally, the procedure for processing individual claims under the settlement is not fair and reasonable. ...................................................................37

4. Finally, *In re Baby Products* factors weigh against the Settlement because the Settlement Amount is critically underfunded and inadequate...................................................37

CONCLUSION ................................................................38

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem v. Windsor Prods. Inc.*,
    521 U.S. 591 (199)...................................................................................23, 31

*Beneli v. BCA Fin. Services, Inc.*,
    324 F.R.D. 89 (D.N.J. 2018)....................................................................passim

*Boyle v. Progressive Specialty Ins.*
    Co., No. 09-5515, 2018 WL 2770166 (E.D. Pa. June 7, 2018)..................18, 19

*Byrd v. Aaron's Inc.*,
    784 F.3d 154 (3d Cir. 2015).............................................................10, 18, 19

*Cannon v. Ashburn Corp.*,
    CV 16-1452, 2018 WL 1806046 (D.N.J. Apr. 17, 2018)...................................7

*Continental Homes of Texas, LP v. NIBCO, et al* ....................................................2

*Ctr. City Periodontists, P.C. v. Dentsply Int'l, Inc.*,
    321 F.R.D. 193 (E.D. Pa. 2017) ......................................................................16

*Dewey v. Volkswagen Aktiengesellschaft*,
    681 F.3d 170 (3d Cir. 2012).............................................................................23

*Eichenholtz v. Brennan*,
    52 F.3d 478 (3d Cir. 1995)...........................................................................1, 4

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975)................................................... 30, 31, 33, 34

*Gonzalez v. Corning*,
    317 F.R.D. 443 (W.D. Pa. 2016)....................................................................17

*Gonzalez v. Corning*,
    885 F.3d 186 (3d Cir. 2018)......................................................................11, 12

*Gonzalez v. Corning*,
    885 F.3d 189 (3d Cir. 2018)......................................................................11, 12

*Grubb v. Green Tree Servicing, LLC*,
  CV 13-07421 (FLW), 2017 WL 3191521 (D.N.J. July 27, 2017)....................20

*Hayes v. Wal–Mart Stores, Inc.*,
  725 F.3d 349 (3d Cir. 2013) ...............................................................................6

*Helmer v. Goodyear Tire & Rubber Co.*,
  12-CV-00685-RBJ-MEH, 2014 WL 1133299 (D. Colo. Mar. 21, 2014)......9, 10

*Hummel v. Tamko Bldg. Products, Inc.*,
  303 F. Supp. 3d 1288 (M.D. Fla. 2017)...........................................................13

*In re AT&T Corp.*,
  455 F.3d 160 (3d Cir. 2006)..............................................................................30

*In re Atlas Roofing Corp. Chalet Shingle Products Liab. Litig.*,
  321 F.R.D. 430 (N.D. Ga. 2017) .................................................................13, 17

*In re Baby Products Antitrust Litig.*,
  708 F.3d 163, 174 (3d Cir. 2013) ................................................. 30, 31, 32, 37

*In re CertainTeed Fiber Cement Siding Litig.*,
  303 F.R.D. 199 (E.D. Pa. 2014) .......................................................................14

*In re Class 8 Transmission Indirect Purchaser Antitrust Litig.*,
  679 Fed. App'x 135 (3d Cir. 2017) .....................................................................8

*In re Domestic Drywall Antitrust Litig.*,
  13-MD-2437, 2017 WL 3700999 (E.D. Pa. Aug. 24, 2017) .............................22

*In re Dry Max Pampers Litig.*,
  724 F.3d 713 (6th Cir. 2013)........................................................................3, 32

*In re Ford Motor Co. E-350 Van Products Liab. Litig. (No. II)*,
  CIV.A. 03-4558, 2012 WL 379944 (D.N.J. Feb. 6, 2012)..................................7

*In re Ford Motor Co. Ignition Switch Products Liab. Litig.*,
  194 F.R.D. 484 (D.N.J. 2000) ..........................................................................13

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995)......................................................... 23, 24, 26, 33

*In re Hydrogen Peroxide Antitrust Litig.*,
  552 F.3d 305 (3d Cir. 2008) .................................................................6

*In re IKO Roofing Shingle Products Liab. Litig.*,
  757 F.3d 599 (7th Cir. 2014) ............................................... 10, 11, 12

*In re Nat'l Football League Players Concussion Injury Litig.*,
  821 F.3d 410 (3d Cir. 2016) .................................................................6

*In re Ocean Power Techs., Inc.*,
  3:14-CV-3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016) ................... 7, 15, 26

*In re Pet Food Products Liab. Litig.*,
  629 F.3d 333 (3d Cir. 2010) ............................................................6, 7

*In re Processed Egg Prod. Antitrust Litig.*,
  284 F.R.D. 278 (E.D. Pa. 2012) .......................................................14

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) ....................................................passim

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
  962 F. Supp. 450 (D.N.J. 1997) .................................. 27, 30, 31, 35

*In re Thalomid & Revlimid Antitrust Litig.*,
  14-6997, 2018 WL 6573118 (D.N.J. Oct. 30, 2018) ................... 19, 22

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ..............................................................33

*Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*,
  149 F.R.D. 65 (D.N.J. 1993) ..........................................................8, 27

*Marcus v. BMW of N. Am., LLC*,
  687 F.3d 583 (3d Cir. 2012) ..................................................8, 9, 19, 20

*Martina v. L.A. Fitness Intern., LLC*,
  2013 WL 5567157 (D.N.J. Oct. 8, 2013) .........................................34

*Payne v. Goodyear Tire & Rubber Co.*,
  216 F.R.D. 21 (D. Mass. 2003) .......................................................9, 10

*Powers v. Lycoming Engines*,
    272 F.R.D. 414 (E.D. Pa. 2011) ................................................................ 15, 18

*Rougvie v. Ascena Retail Group, Inc.*,
    CV 15-724, 2016 WL 4111320 (E.D. Pa. July 29, 2016) ............................ 6, 30

*Shoemake v. Fogel, Ltd.*,
    826 S.W.2d 933 (Tex. 1992) ............................................................................ 3

*Toyota Indus. Equip. Mfg., Inc. v. Carruth-Doggett, Inc.*,
    325 S.W.3d 683 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) ................ 3

*Toyota Indus. Equip. Mfg., Inc. v. Carruth-Doggett, Inc.*,
    325 S.W.3d 683 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) ................ 3

## RULES

Fed. R. Civ. P 23 ................................................................................................ 6, 7

Fed. R. Civ. P. 23(a)(2)(3) ................................................................................... 26

Fed R. Civ. P. 23(b)(3) ................................................................................... 14, 18

Fed. R. Civ. P. 23(e) ................................................................................... 7, 30, 31

## STATUTES

Tex. Bus. & Com. Code §2.103(a)(1) .................................................................. 29

Tex. Civ. Prac. & Rem. Code Ann. § 82.001-2 .................................................... 28

Objector Christianson Air Conditioning and Plumbing, LLC ("Christianson"), respectfully submits this brief in opposition to Plaintiffs' Motion for Final Settlement Approval and Related Relief.

## PRELIMINARY STATEMENT

Christianson[1] is not a party to this lawsuit. It is not a homeowner like the plaintiffs. Christianson is a plumbing installer[2] who purchased directly[3] from NIBCO, Inc. ("NIBCO") and installed NIBCO PEX[4] tubing in approximately 17,000 homes in Texas.[5] It has suffered damages of greater magnitude and of a different nature than plaintiffs. It will suffer future damages from new and

---

[1] Christianson has standing to make this Objection under the "legal prejudice rule" holding any non-settling person can object to a settlement affecting a person's legal rights. *Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995) (non-settling objectors had standing to object to the settlement because the settlement extinguished the objectors' ability to assert contribution and indemnification claims). *In re Cendant Corp. Sec. Litig.*, 98-CV-1664 WHW, 2007 WL 2164241, at *4 (D.N.J. July 25, 2007) (non-party to a settlement had standing to object because the settlement affected the non-party's legal rights and "touched [its] interests").

[2] Christianson installs plumbing for some of the largest national home builders in dozens of cities across Central Texas.

[3] NIBCO and its representatives made express and implied representations to Christianson concerning NIBCO PEX including, but not limited to, its compliance with applicable standards and certifications and its ability to withstand certain known conditions such as the water treatment method (*e.g.*, chlorine), temperature, pressure and use in aggressive water conditions.

[4] "NIBCO PEX" refers to tubing designed, manufactured, marketed and sold by NIBCO as NIBCO PEX 1006.

[5] *See* Declaration of Trent Christianson ("Christianson Decl.") Exs. A and B (All Homes Plumbed with NIBCO PEX Spreadsheet in the San Antonio, Texas and Austin, Texas areas, respectively).

subsequent leaks in great volume unlike any single homeowner who receives a repipe as a remedy. Christianson has experienced 3,940 leaks in 1,130 homes[6] and has incurred millions of dollars in damages.[7] Incurred and future damages threaten Christianson's business.[8] Christianson now finds itself a late addition to the definition of the Proposed Class[9] to its extreme prejudice and to the shocking benefit of NIBCO, the manufacturer of lots of bad pipe.[10]

This proposed Settlement[11] reflects NIBCO's attempt to extinguish all Installer[12] (and Builder) rights to contribution and indemnity.  By the terms of the

---

[6] *See id.* Ex. C (NIBCO PEX Leak Spreadsheet).

[7] Unlike Plaintiffs, Christianson's damages include costs to investigate, administer, document, store, repair, repipe and defend against tenders, claims and lawsuits from homeowners and home builders.

[8] Christianson is currently defending active litigation by homeowners and affirmatively suing NIBCO for damages arising out of NIBCO PEX failures (*e.g*, Cause No. D-1-GN-16-005797; *Christianson Air Conditioning and Plumbing, LLC v. NIBCO, Inc., MRK Manufacturer's Sales, Inc. and Morrison Supply Company, LLC,* In the 419th Judicial District Court, Travis County, Texas; and, Cause No. 18-0450-C368; C*ontinental Homes of Texas, LP v. NIBCO, et al,* In the 368th Judicial District Court of Williamson County, Texas).

[9] As used herein, "Proposed Class" refers to the nationwide class of which Plaintiffs seek certification and the alternative subclasses.  ECF No. 175 at 37-40.

[10] After three years of litigating on behalf of a putative class comprised only of homeowners, Plaintiffs amended the definition of the Proposed Class to include Installers like Christianson ***after*** Settlement negotiations with NIBCO.  Installers were subsequently names as Released Parties in the Settlement Agreement. ECF No. 175 at 37 and ECF No. 50 at 29.

[11] "Settlement" refers to the proposed class action settlement agreement and Plaintiffs' requested class certification. ECF No. 173-4,173-1.

[12] As used herein, "Installer" means plumbing companies like Christianson, general contractors, and other entities/individuals who purchase and install NIBCO Products in the homes/structures of end-users.

proposed Settlement, NIBCO successfully secured the Plaintiffs' agreement to extend the class beyond represented homeowners to absent Installers and Builders – fully releasing NIBCO from its greatest form of liability in exchange for more dollar signs. ECF No. 173-1 at §G(41)(a), (49); ECF No. 179-1 at 7. Thus, Court intervention is need to protect the rights of absent Installers and ensure class counsel satisfies its duty to protect the interests of *all* class members.[13]

For example, the terms of the proposed settlement documents were clearly drafted at the expense of Installers' rights.   The Settlement Release releases any and all claims "regarding or related" to NIBCO's Products.[14] The term "Releasing Parties" includes not only "Settlement Class Members" but "any and all Persons who seek to [make a] claim through or in the name or right of [Class Members]." ECF No. 173-1 at §(F)(34).   Under Texas law, contribution and statutory indemnification claims are arguably derivative of a plaintiff's rights. *See, e.g.*, *Shoemake v. Fogel, Ltd.*, 826 S.W.2d 933, 935 (Tex. 1992) (a contribution claim is derivative of a plaintiff's right to recover from a party against

---

[13] *See, e.g.*, *In re Dry Max Pampers Litig.*, 724 F.3d 713, 718 (6th Cir. 2013) (class settlements create the danger that class counsel may not adequate protect absent class members and "lawyers might urge a class settlement at a low figure or on a less-than optimal basis in exchange for a red-carpet treatment on fees" [...]courts must be particularly vigilant for subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations.").

[14]As used herein  "NIBCO Products" refers to the NIBCO "Tubing," "Fittings," and "Clamps" as defined in the Settlement. ECF No. 173-1 at §1(a)(l).

whom contribution is sought); *Toyota Indus. Equip. Mfg., Inc. v. Carruth-Doggett, Inc.*, 325 S.W.3d 683, 689 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (a statutory indemnification duty under the Texas Products Liability Act is triggered by and depends on the plaintiff's pleadings). Therefore, NIBCO can avoid liability by claiming Christianson is a "Releasing Party" who is barred from asserting any claims against NIBCO.[15]

By way of further example, the Settlement also purports to strip Releasing Parties of their rights to bring contribution claims against NIBCO's suppliers of raw material and component part manufacturers. ECF No. 173-1 §(F)(34) (assigning all such claims to NIBCO). Thus, NIBCO can avoid liability and preserve its right to bring claims against others while Installers shoulder even more of NIBCO's liability with less rights.

Additionally, the Settlement is vastly underfunded with unnecessary impediments to homeowner recovery laced with unnatural incentives for homeowners to seek full reimbursement from Installers via separate litigation. The Settlement permits homeowners, even those who recover Settlement Funds, to sue Installers if they artfully plead such suits are based on certain installation practices. ECF No. 173-1 at §(F)35. With respect to Christianson, thousands of homeowners could bring such lawsuits. If NIBCO successfully argues Christianson

---

[15] This is true regardless of whether or not Christianson is a Class Member or receives Settlement Funds.

is a "Releasing Party," Christianson would alone incur attorney's fees, reimbursement of insurance deductibles, settlement payments, and other costs to homeowners for NIBCO's bad pipe with no recourse against NIBCO or its suppliers.  It is not hyperbole to say that this could drive Christianson out of business.

This Settlement and Proposed Class should be rejected because it does not meet the prerequisites for certification and fails to survive the fairness inquiry. Alternatively, it should be heavily modified and limited to impact only the rights of homeowners while preserving all rights and remedies of the non-party Installers like Christianson.  Accordingly, Christianson opposes certification[16] and seeks relief from this Court.

## ARGUMENT

For a class settlement to be approved, plaintiffs must satisfy a burden of showing by a preponderance of the evidence that Federal Rule of Civil Procedure Rule 23's requirements are met. *Beneli v. BCA Fin. Services, Inc.,* 324 F.R.D. 89, 95–96 (D.N.J. 2018) (internal citations omitted); *In re Nat'l Football League*

---

[16] Although Christianson is filing an opt out on the same date as this objection and therefore will no longer be a Class Member who could recover Settlement Funds,  the Settlement still prejudices Christianson's rights because of the many and impactful inconsistencies and ambiguities in the settlement documents including, but not limited to, the definition of "Releasing Party."

*Players Concussion Injury Litig.*, 821 F.3d 410, 426 (3d Cir. 2016). There are two steps to satisfy Rule 23.

First, plaintiffs must demonstrate the class is certifiable under Fed. R. Civ. P. 23(a) and (b). *Id*. This requires a showing that the following five (5) threshold requirements of class certification are met—predominance, superiority, asertainability, adequacy, and typicality.[17] *Beneli.,* 324 F.R.D. at 95; *Hayes v. Wal–Mart Stores, Inc.*, 725 F.3d 349, 354 (3d Cir. 2013). "[These] requirements of Rule 23 must be met, not just supported by some evidence." *In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d 305, 321 (3d Cir. 2008) (rejecting the view that a party seeking certification need only make "some showing" or a "threshold showing" with respect to certification). In deciding whether a class is certifiable, "a district court "may take the proposed settlement into consideration." *In re Pet Food Products Liab. Litig.*, 629 F.3d 333, 341 (3d Cir. 2010).[18]

---

[17] Christianson does not dispute that numerosity and commonality requirements are satisfied.

[18] Plaintiffs overstate the effect of a proposed settlement on the certification question when they say that "a showing of manageability at trial is not required." ECF No. 173-4 at 28-29. Instead, a proposed settlement only effects one prong: "variations in state law will not defeat Predominance in the class settlement certification context. *In re Ford Motor Co. E-350 Van Products Liab. Litig. (No. II)*, CIV.A. 03-4558, 2012 WL 379944, at *35 (D.N.J. Feb. 6, 2012); *Rougvie v. Ascena Retail Group, Inc.*, CV 15-724, 2016 WL 4111320, at *15 (E.D. Pa. July 29, 2016). The other requirements of Rule 23 must still be satisfied. *Pet Food Products*, 629 F.3d at 341.

Second, if and only if the class is certifiable, plaintiffs must then establish that the settlement agreement is "fair, reasonable, and adequate" under Rule 23(e). *Beneli., 324 F.R.D.* at 95*; see also In re Ocean Power Techs., Inc.,* 3:14-CV-3799, 2016 WL 6778218, at *4 (D.N.J. Nov. 15, 2016). This is true regardless of the general overriding presumption in favor of voluntary settlements. *In re Pet Food Products Liab. Litig.*, 629 F.3d 333, 351 (3d Cir. 2010).

As this Court has explained, although a court must always perform a "rigorous analysis" to confirm the requirements of Rule 23 are met, if plaintiffs seek certification and settlement approval simultaneously, then courts must apply a "heightened scrutiny" and be even "more scrupulous than usual" when examining the fairness of the proposed settlement to "protect absentees" from "unwarranted or overbroad class definitions". *Ocean Power Techs., Inc.,* 3:14-CV-3799, 2016 WL 6778218, at *4; *Cannon v. Ashburn Corp.*, CV 16-1452 (RMB/AMD), 2018 WL 1806046, at *6,10 (D.N.J. Apr. 17, 2018).

As discussed in detail below, Plaintiffs have failed to satisfy their burden and instead, the evidence shows that the Settlement cannot be approved because the Proposed Class cannot be certified and the Settlement is unfair.

## I.   THE SETTLEMENT CANNOT BE APPROVED BECAUSE THE CLASS IS NOT CERTIFIABLE.

### 1.   Predominance is not satisfied because individual inquires of fact will be significant in deciding the Class Members Cases—most notably, the type/amount of disinfectant used in the water supplied to each structure.

To satisfy the predominance requirement, Plaintiffs must "demonstrate that the element of the [legal claims] are capable of proof at trial through evidence that is common to the class rather than individual to its members." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 600 (3d Cir. 2012). An "individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *In re Class 8 Transmission Indirect Purchaser Antitrust Litig.*, 679 Fed. Appx. 135, 139 (3d Cir. 2017). "When the resolution of a common legal issue is dependent upon factual determinations that will be different for each purported class plaintiff...courts have consistently refused to find commonality and have declined to certify a class action." *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*, 149 F.R.D. 65, 76 (D.N.J. 1993). In products liability actions, the Third Circuit has found that individual fact questions predominate when  individualized fact examination is required to determine whether a product defect is the proximate cause of a  plaintiff's injury. *Marcus v.*

*BMW of N. Am., LLC*, 687 F.3d at 604 (finding predominance was not met when an "individual examination" of Defendant's allegedly defective "run-flat" tires was required, as "any tire can "go flat" for a myriad of reasons" unrelated to the alleged defect). "[C]omplicated issues of individual causation [can] predominate over common questions regarding the existence of a defect." *Id.*

Here, Plaintiffs argue that "common questions of law and fact predominate over any questions that may affect individual class members" because "the focus of each of Plaintiff's claims is on whether the PEX Products are defective" and that this can be "proven on a class-wide basis using common proof." ECF No. 173-4 at 30; ECF No. 108-1 at 33. More specifically, Plaintiffs argue that the "common proof" of the defective nature of the NIBCO Products is as follows: "Plaintiffs will satisfy this causation requirement with expert testimony that the [NIBCO Products] are defective and fail both under ordinary, foreseeable conditions and even ideal conditions" and in support, cite three out-of-circuit decisions. ECF No. 108-1 at 38 (citing *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 28 (D. Mass. 2003), *Helmer v. Goodyear Tire & Rubber Co.*, 12-CV-00685-RBJ-MEH, 2014 WL 1133299, at *1 (D. Colo. Mar. 21, 2014), and *In re IKO Roofing Shingle Products Liab. Litig.*, 757 F.3d 599 (7th Cir. 2014)).

At the outset, Plaintiffs' failure to provide evidentiary support in lieu of a promise that they "will satisfy" the predominance requirement is insufficient, as "a

party cannot merely provide assurances to the district court that it will later meet Rule 23's requirements." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 164 (3d Cir. 2015). Moreover, Plaintiffs' reliance on the three out-of-circuit decisions of *Payne*, *Helmer*, and *IKO*  is misplaced as in addition to not being controlling, these decisions are all distinguishable.  ECF No. 108-1 at 38-40.

     *Payne* and *Helmer* are distinguishable because both ultimately discounted the need for individual inquiries into causal alternatives—such as environmental factors—because they found that the evidence simply did not support those concerns. *Payne*, 216 F.R.D. 24 ( expert analysis showed that a rubberized hose used in floor heating system failed even in an "ideal" environment and that the product failed "under a variety of conditions"); *Helmer*, 2014 WL 1133299, at *9 (dismissing claims that defective installation  required an individual inquiry because the "range of facts looks like the typical, normal range of installations that all purchasers of the tubing would employ" and concluding that "the facts do not suggest that individual questions would predominate"). In contrast, here both the evidence and Plaintiffs' own pleadings suggest that individual environmental conditions, such as  the temperature of the water, whether a structure is located in a water district that uses chlorine,  the amount of such chlorine, etc. are likely to be important inquiries in deciding individual class members' claims. ECF No. 175 at 2-3 (alleging  design and/or manufacturing defects in NIBCO products exist, in

part because the products are prone to "chloride-induced stress corrosion cracking").[19] *IKO* is also inapplicable here given the Third Circuit Court's recent opinion of *Gonzalez v. Corning*, 885 F.3d 186, 198 (3d Cir. 2018).

In *Gonzales*, plaintiffs sought to certify a class of homeowners from four states to bring strict product liability and breach of warranty claims against the manufacturer of residential roof shingles based on allegations that even though the shingles met applicable industry standards, several design flaws resulted in shingles that prematurely failed were subject to "premature deterioration" before the applicable warranty expired. *Gonzalez v. Corning*, 885 F.3d 189- 190 (3d Cir. 2018). In holding that Predominance was not satisfied, the Court distinguished several cases plaintiffs cited, including *IKO*. *Id*. at 196-199. The Court explained that *IKO* was distinguishable because there, the plaintiffs had articulated a single defect common to all of the shingles—the failure to meet the manufacturer's promise that the shingles satisfied the applicable ASTM standard. *Id*. at 198. In *Gonzalez*, however, the plaintiffs had alleged that the shingles had a propensity to fail before their warranties expired because of one or more design flaws— insufficient asphalt quantity or quality and insufficient mat mass and tear strength. *Id*. at 190. The Court also distinguished the situation from other product-liability

---

[19] *See* Christianson Decl. & Ex. C.

cases because in *Gonzalez*, it was undisputed that "a great many shingles will last through the end of their warranty period." *Id.*at 196-197.

This case is more analogous to *Gonzalez* than *IKO*. Unlike in *IKO*, Plaintiffs' claims are not simply based on one defect such as  whether NIBCO's products failed to satisfy a certain standard.  ECF No. 175 at 41.  Instead, like the plaintiffs in *Gonzalez*, Plaintiffs allege that several different design flaws exist in NIBCO Products that have caused them to fail before the warranty period was over.  For example, Plaintiffs allege that Fittings were improperly designed to withstand "dezincification corrosion," stainless steel Clamps were  improperly designed using a "susceptible material"  that could not withstand static tensile stress, and Tubing suffered from design defects in the stabilization and cross-linking of the PEX material. *Id.* at 29-34. Also similar to *Gonzalez*, there are many homes using NIBCO PEX that *have* lasted the length of the warranty—10 years.[20] ECF No. 175 at 45. As a result, there is not one common design defect among  all the NIBCO Products that can be proved by class wide evidence and this Court should follow the lead of the Third Circuit in *Gonzales* and hold that Plaintiffs have  failed satisfy the Predominance requirement.  *See In re Ford Motor Co. Ignition Switch Products Liab. Litig.*, 194 F.R.D. 484, 491 (D.N.J. 2000)(holding that Predominance did not exist because "plaintiffs have not alleged that the

---

[20] *Compare* Christianson Decl. Exs. A *and* B, *with id.* Ex. C.

subject switches *always* cause the type of harm alleged by the vehicle owners. Indeed, the very definition of plaintiffs' revised proposed subclasses admits that individual causation remains a critical part of class membership. Under the revised class definition, individuals would not be included unless they are an owner of a vehicle that has been 'burned or been damaged by fire because of a defective Fox ignition switch');[21]*Hummel v. Tamko Bldg. Products, Inc.*, 303 F. Supp. 3d 1288, 1299 (M.D. Fla. 2017) (rejecting argument that common question existing in defective shingle case because individual inquiries—which factory the specific shingles were manufactured, what processes were used in manufacturing the shingles, and what equipment and materials were used— made the  matter "inherently unsuitable for class-wide resolution"); *In re Atlas Roofing Corp. Chalet Shingle Products Liab. Litig.*, 321 F.R.D. 430, 443 (N.D. Ga. 2017) (rejecting predominance in defective shingle case because "the evidence in this case demonstrates that other specific causation issues—such as improper installation, inadequate ventilation, or environmental factors—will be significant in deciding the putative class members' cases.").

---

[21] Similarly, Plaintiffs' definition of the Proposed Class shows that individual causation remains a critical part of class membership because only Installers who have claims against NIBCO based on "Qualifying Leaks"— leaks that were not caused by certain improper installation practices, qualify as class members. ECF No. 173-1 § (A)(1)(nn), (ff).

**2.     Superiority is not satisfied because  the relevant factors weigh against a class action being a superior vehicle to assert claims on behalf of the Proposed Class.**

To determine whether the Superiority requirement is satisfied, courts use the factors listed in Rule 23(b)(3): "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *In re Processed Egg Prod. Antitrust Litig.*, 284 F.R.D. 278, 293 (E.D. Pa. 2012) (quoting Fed. R. Civ. P. 23(b)(3)).

Here, Plaintiffs argue that the manageability and desirability factors weigh in favor of Superiority. ECF No. 173-4 at 31.  However, the manageability factor is irrelevant here because as Plaintiffs themselves acknowledge, when a class is certified for settlement purposes the factor of the "likely difficulties in managing a class action" is irrelevant. *Id.* at 29; *see also In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 227 (E.D. Pa. 2014) (explaining that Court need not consider the manageability factor of superiority because the litigation is being settled rather than litigated); *In re Ocean Power*, 3:14-CV-3799, 2016 WL 6778218, at *8.

With respect to desirability, this factor actually weighs *against* a class certification that includes Installers. "Whether putative class members have a significant interest in individually prosecuting their own separate lawsuits is affected by the financial stake involved in each individual's case [...] the greater the damages in one's claim vis-á-vis others' claims, the greater the interest the individual has in controlling the litigation." *Powers v. Lycoming Engines*, 272 F.R.D. 414, 426 (E.D. Pa. 2011). In many cases, Installers will suffer much greater damages than merely the cost of repairing/ re-piping a home such as costs to investigate a complaint, attorney's fees and other costs to defend itself and/or settle a homeowner claim/lawsuit, insurance deductibles, etc. Therefore, because Installers have a strong interest in controlling their own litigation, this weighs against a class action being the superior vehicle to assert claims on behalf of the Proposed Class.

Finally, Plaintiffs' argument that the desirability factor weighs in favor of class action is contradicted by both the evidence and law. Plaintiffs allege that "class members' damages will in nearly all instances be too small to justify the cost of individually litigating [because] the cost to re-pipe the homes of Class Members (the only appropriate remedy given the inherently defective nature of the Pex Products) will amount to no more than $15,000-20,000." ECF No. 108-1 at 42-43. However, this assertion is inaccurate because not only does it fail to address

the fact that Installers may have damages that are far in excess of the cost to re-pipe a home, but even for homeowner Class Members it fails to consider additional damages that homeowners may suffer such as loss of use damages, diminution in value damages, and/or damages due to personal injury (i.e. claims arising out of exposure to mold) . Plaintiffs' analysis is also incomplete because it fails to even address the flip side of the coin—how much it would actually cost for homeowners to bring individual suits. *Ctr. City Periodontists, P.C. v. Dentsply Int'l, Inc.*, 321 F.R.D. 193, 214 (E.D. Pa. 2017) (superiority not met when plaintiffs alleged that individuals claims were only worth "somewhere between $1,500 and $3,500 each" without offering any calculations or data   to support  "a cost-benefit analysis" because although "litigation is expensive" courts should "not presume that litigating a class action will be more efficient than pursuing individual claims in state court").

In addition to failing to satisfy their burden of proof, Plaintiffs' argument is also contradicted by the evidence—several homeowners have already decided that despite the costs of litigation it is worth it to file individual suits.[22] It is also contradicted by relevant case law showing that  damages in the range of $15,000-$20,000 is not prohibitively small to justify individual suits.  In *Gonzalez v. Corning*, a case involving defective shingles, the plaintiffs made the same

---

[22] *See* Christianson Decl.

argument that Plaintiffs do here— "plaintiffs' superiority argument is that owners will have no financial incentive to pursue their claims individually because the cost of litigating a federal lawsuit will overtake the amount of damages." 317 F.R.D. 443, 524 (W.D. Pa. 2016). In rejecting this argument, the Court reasoned that "this is not a case in which an individual has suffered harm in connection with a minor or fleeting consumer transaction or service, such as purchasing yogurt or vitamins, paying at a restaurant with a credit card, or using an automated teller machine" and that the homeowners claims "are not financially insignificant and range from $5,000 to $22,000." *Id*. at 524-25; *see also In re Atlas Roofing Corp. Chalet Shingle Products Liab. Litig.*, 321 F.R.D. 430, 446 (N.D. Ga. 2017) (concluding that superiority requirement was not satisfied when "Plaintiff's own expert opined that replacing a roof can be several thousand dollars to tens of thousands of dollars").

Finally, the desirability prong actually weighs *against* a class certification that includes Installers. "Whether putative class members have a significant interest in individually prosecuting their own separate lawsuits is affected by the financial stake involved in each individual's case […] the greater the damages in one's claim vis-á-vis others' claims, the greater the interest the individual has in controlling the litigation." *Powers v. Lycoming Engines*, 272 F.R.D. 414, 426 (E.D. Pa. 2011). In many cases, Installers will suffer much greater damages than merely

the cost of repairing/ re-piping a home such as costs to investigate a complaint, attorney's fees and other costs to defend itself and/or settle a homeowner claim/lawsuit, insurance deductibles, etc.   Therefore, because Installers have a strong interest in controlling their own litigation, this weighs against a class action being the superior vehicle to assert claims on behalf of the Proposed Class.

> **3.    Ascertainability is not satisfied because the Class is not defined using objective criteria and there is no reliable and administratively feasible way to identify all Class Members of the Proposed Class.**

"A plaintiff seeking certification of a Rule 23(b)(3) class must prove by a preponderance of the evidence that the class is ascertainable." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015). Ascertainability should not be conflated with the predominance requirement—"predominance focuses on whether the essential elements of the class claims can be proven at trial by 'common, as opposed to individualized, evidence.'" *Boyle v. Progressive Specialty Ins.* Co., No. 09-5515, 2018 WL 2770166, at *10 (E.D. Pa. June 7, 2018) (quoting Byrd, 784 F.3d at 164). Ascertainability, on the other hand, "focuses on whether the class members can be identified without resorting to 'individualized fact finding.'" *Id*. (quoting Byrd, 784 F.3d at 163, 164). "In other words, predominance considers the evidence necessary to establish the claims while ascertainability considers the criteria and means necessary to identify class members." *Id*.

To demonstrate ascertainability, a plaintiff must show that "(1) the class is 'defined with reference to objective criteria'; and (2) there is a 'reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.' *In re Thalomid & Revlimid Antitrust Litig.*, 14-6997, 2018 WL 6573118, at *20 (D.N.J. Oct. 30, 2018). "[A] party cannot merely provide assurances to the district court that it will later meet Rule 23's requirements." *Id*. (citing *Byrd*, 784 F. 3d at 164). "Nor may a party 'merely propose a method of ascertaining a class without any evidentiary support that the method will be successful." *Id*.

Although there are numerous ambiguities and conflicts in the definition of the Proposed Class,  the most glaring evidence that it violates Ascertainability's objective criterion is that it includes as Class Members any individual/entity "who has claims for contribution, indemnity or otherwise against NIBCO based on claims for Qualifying Leaks[.]" *Id*. Not only does this require subjective legal interpretations to identify such Class Members, but it also would require subjective factual determinations since a "Qualifying Leak" does not include a leak that based on "available evidence" was "the clear result" of various negligent installation practices. ECF No. 173-1 at §(A)(1)(iv); *Marcus*, 687 F.3d at 593 (a class is not

ascertainable if extensive and individualized fact-finding is necessary to determine class membership).[23]

Further, Plaintiffs' assertion that the Proposed Class is defined with reference to objective criteria, because it "turns on a single objective criterion: ownership of a residential structure in which NIBCO PEX Tubing are installed" is factually inaccurate. ECF No. 108-1 at 31-32. Instead, in addition to owners of structures with NIBCO PEX, the new Proposed Class includes past and future owners, structures that contain other NIBCO Products (Fittings and Clamps), structures that do not even presently contain NIBCO Products, and other "Occupant Persons"— "spouses[of owners], heirs, executors, administrators, mortgagees, tenants, creditors, lenders, predecessors, successors, trusts and trustees, and assigns." ECF No. 173-1 at §(A)(1)(nn). Even more, the Proposed Class includes a whole host of non-end users, including Installers like Christianson, who have absolutely no property interest in the structures and in many instances may not have directly purchased the NIBCO Products. *Id.*

---

[23] The definition of the Proposed Class is also constitutes an impermissible "fail-safe" class because whether individuals/entities other than homeowners (such as Installers) qualify as Class Members itself depends on whether they have a valid claim—their claims against NIBCO must be "based on claims for Qualifying Leaks" which do not include leaks "the Settlement Administrator, NIBCO, and Plaintiffs' Counsel" all agree was caused by certain improper installation practices. ECF 173-1 at § (1) (IV). As a result, this language is not sufficiently legally objective and non-conclusory in defining the potential members. *Grubb v. Green Tree Servicing, LLC*, CV 13-07421 (FLW), 2017 WL 3191521, at *14 (D.N.J. July 27, 2017).

The proffered affidavit testimony (purporting to establish that NIBCO keeps "sales records" that would allow it "to identify and communicate with PEX purchasers and end-users [of the PEX Tubing]," like it allegedly did in a "fairly successful" recall of another NIBCO product) also fails to satisfy Ascertainability's second prong— that there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition. CMF 108-1 at 31-32.Affidavits, without sufficient indicia of reliability, are not sufficient to satisfy the Ascertainability requirement. *See Carrerra*, 727 F.3d at 306. More importantly, even assuming this testimony did serve as evidence that NIBCO keeps  "sales records" that allows it "to identify and communicate with PEX purchasers and end-users,"[24]  such sales records (or even pictures of the NIBCO PEX) would not allow NIBCO to identify several subsets of  Class Members such as future purchases  of structures, other Occupant Persons like prior tenants, and individual/entities that would have standing (but have not) asserted claims through homeowners (for example, a plumber  who several years ago was called out to a home to fix a leak and was never paid for the repair).

In short, Plaintiffs utterly fail to satisfy their burden of proof to demonstrate that the class is defined using objective criteria or that all of the members can be

---

[24] This is highly questionable considering that NIBCO's products are in many instances sold via third-party distributors.

identified by NIBCO's records. *See e.g. In re Domestic Drywall Antitrust Litig.*, 13-MD-2437, 2017 WL 3700999, at *9 (E.D. Pa. Aug. 24, 2017) (concluding that administrative feasibility prong of ascertainability was not satisfied in proposed class of users of drywall upon finding that there was  "incomplete transactional data" to identify all class members, as Plaintiffs reliance on putative class members to demolish some of their home or business to offer photos of the drywall itself was "antithetical to the administrative feasibility requirement," and the definition of class membership included an "open-ended timeframe" that included users of the drywall "to the present").

### 4.   Adequacy is not satisfied because subsets of the Proposed Class— homeowners and Installers—have conflicting/competing interests.

Adequacy requires that plaintiffs "possess the same interest and suffer the same injury as the class members" and is intended to "uncover conflicts of interest between named parties and the class they seek to represent." *Beneli*, 324 F.R.D. at 98.  The adequacy requirement has traditionally entailed a two-pronged inquiry: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and, (b) the plaintiff must not have interests antagonistic to those of the class." *In re Thalomid and Revlimid Antitrust Litigation*, 14-6997, 2018 WL 6573118, at *10 (D.N.J. Oct. 30, 2018).

Here, Plaintiffs  focus entirely on  the second prong—whether class counsel is adequate. ECF No. 173-4 at 26-27. In fact, other than empty (and false) assertion

that "Plaintiffs have the same claims and same interests as the Settlement Class Members," Plaintiffs fail to offer any explanation, let alone facts establishing a preponderance of the evidence, that their interests do not conflict and they suffered the same injury as other class members such as Installers. *Id.* at 27. Quite to the contrary, the interests of the homeowner named Plaintiffs are directly contrary to that of the Installer Class Members.

The "linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *Dewey v. Volkswagen Aktiengesellschaft,* 681 F.3d 170, 183, 187-88 (3d Cir. 2012) (denying preliminary class certification where interests of representative plaintiffs and absent class members diverged). Therefore, if there is "adversity among subgroups," the class cannot be certified. *Amchem v. Windsor Prods. Inc.,* 521 U.S. 591, 627 (199) (denying class certification where conflict existed between present and future claimants). When assessing adequacy, "a judge must focus on the settlement's distribution terms (or those sought) to detect situations where some class members' interests diverge from those of others in the class." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 797 (3d Cir. 1995) (finding representation inadequate where settlement terms preferred some class members over others). Thus, "a settlement that offers

considerably more value to one class of plaintiffs than to another may be trading the claims of the latter group away in order to enrich the former group." *Id.*

Here, the Proposed Class' interests and incentives are not sufficiently aligned because the Settlement offers more value to homeowners than Installers and its distribution terms create a situation where homeowners will be incentivized to sue Installers like Christianson. The Settlement does not come close to making homeowners whole . Even if the Settlement Fund is not prematurely exhausted, it only compensates a homeowner for a maximum of 70% of the costs to repair/replace the PEX Products and related property damage and a maximum of $16,000 for the cost to replumb a home. ECF No. 173-1 at §§ (A)(1)(kk),(C)(9). Further, it provides no compensation to homeowners for damages due to loss of use, diminution in value of their homes, personal injuries, or "if they have not taken reasonable steps to mitigate (i.e. 'limit or stop') the effects of a Qualifying Leak." *Id.* at §§ (A)(1)(kk), (F)(3); ECF No. §9(a). However, it does provide homeowners (even those who collected Settlement funds) an avenue to recover such shortfalls from Installers simply by artfully pleading claims as being based on negligent installation practices. ECF 173-1 at §(F)(35).Therefore, given the fact that homeowners will likely have to sue Installers to make themselves whole, their interests are directly antagonistic to Installers like Christianson, a fact that is not

merely theoretical but also evidenced by the several homeowner suits that have already been brought against Christianson.

The fact that the Settlement improper offers more value to one subclass than another is evidence by the fact that while the Settlement at least offers homeowners a path to recover their full damages by suing Installers, it does not do the same with respect to Installers. As previously discussed, in the inevitable homeowners suits the Settlement will bar Installers who are class members from recovering any money from the Settlement to compensate it for attorney's fees, settlement payments, and other costs associated with defending themselves. Even in situations where an Installer is not sued by a homeowner, because the Settlement only provides compensation for costs associated with repairing/ replacing the NIBCO Products and related personal property of the homeowner, an Installer cannot recoup several other types of damages that it may have suffered (*e.g.* past attorney's fees, payments of insurance deductibles, settlements, damages to its business reputation, interruption of its business, administrative costs in investigating and documenting the leaks including retention of designated personnel akin to third party administrators, etc.). ECF No. 173-1 at §(1)(A)(kk).

The Settlement distribution process also stacks the cards against Installers like Christianson. It provides NIBCO with the power to independently reject any Claim it decides does not involve a Qualifying Leak and was instead the result of

certain improper installation practices. ECF No. 173-1, at §14(b); §1(ff). Because NIBCO's chief defense in its suit with Christianson has always been that its products failed because of improper installation practices, rather than inherent defects, NIBCO is likely to use this provision to reject claims made on the Settlement Fund by Installers. Even more unfair, the only remedy available to Installers if NIBCO rejects their claims will be to appeal to an "Independent" engineer consultant who will likely be anything but as she/he will be selected by NIBCO and Plaintiffs (who again, are all homeowners) before the final hearing. *Id*. at §15(a).

As the above shows, the Proposed Class' interests are not sufficiently aligned because homeowners and Installers have divergent interests and the Settlement offers more value to Installers than homeowners.

5. **Typicality is not satisfied because Plaintiffs' claims are based on different legal theories, conduct, and injuries than Installers, a subset of the Proposed Class.**

Typicality requires a plaintiff's claims "be typical of the claims of the class." Fed. R. Civ. P. 23(a)(2)(3). As this Court has explained, plaintiffs must show their claims "arise from the same event or practice or course of conduct and are based on the same legal theory." *In re Ocean Power Techs., Inc.*, 3:14-CV-3799, 2016 WL 6778218, at *6. Furthermore, when plaintiffs "allege multiple claims on behalf of the class" the plaintiffs must show they "possess the same injury and suffer the

same generic type of harm as other class members." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 518 (D.N.J. 1997). The typicality requirement is designed "to screen out class actions involving legal or factual positions of the representative class which are 'markedly different' from those of other class members." *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*, 149 F.R.D. 65, 77 (D.N.J. 1993).

Here, no Installer is included among the named Plaintiffs and Plaintiffs fail to show that their claims are based on the same legal theories, conduct, and injuries as Installers. Instead, Plaintiffs merely offer the conclusory statement that "typicality has been established" after stating "all of the claims of Plaintiffs and Settlement Class members arise out of the same alleged conduct of NIBCO, surrounding the same allegedly defective Covered Products that caused the same types of harm." ECF No. 173-4 at 26. In support, Plaintiffs cite their Motion for Class Certification, in which they state that "like all class members, Plaintiffs own homes in which NIBCO's PEX tubing and/or fitting were installed and all have suffered damages as a result" and "Plaintiffs' claims also arise from the same practices as that of absent class members—the design, manufacture and sale of defective PEX products, the breach of those products' warranties, and NIBCO's strict liability for them." ECF No. 173-4 at 20; No. 108-1, at 20-21.

This argument fails, because in addition to the Settlement Class not being limited to homeowners, Installers like Christianson have several claims against NIBCO based on different legal theories and conduct. Plaintiffs only bring strict product liability, negligence, and negligent failure to warn claims against NIBCO on behalf of the Proposed Class. ECF No. 175. These claims are based on the defective nature of NIBCO's products and misrepresentations/omissions in the product literature. *Id.* In contrast, Installers like Christianson have several legal theories unique to them being the entities/individuals who are in the business of putting NIBCO Products[25] into the stream of commerce and with whom NIBCO may have directly communicated with and made additional misrepresentations/warranties to in meetings, telephone calls, and email communications. For example, like Christianson, other Installers may have claims against NIBCO for fraud/fraudulent inducement, breach of warranty claims under their states' respective Uniform Commercial Codes, and claims for statutory indemnification in states that protect blameless sellers like Texas.[26] As a result, unlike Plaintiffs, Installers have claims which arise not solely out of NIBCO's conduct, but their own conduct as well. *See, e.g.*, Tex. Civ. Prac. & Rem. Code

---

[25] As used herein, "NIBCO Products" refers to the NIBCO "Tubing," "Fittings," and "Clamps" as defined in the Settlement. ECF No. 173-1 at §1(a)(l).

[26] *Compare* ECF No.175, *with* Christianson's Third Amended Petition (asserting breach of express and implied warranties under the Texas UCC, unjust enrichment, fraud, fraudulent inducement, conspiracy, violation of the DTPA, and violation of indemnification duties under the Texas Products Liability Act).

Ann. § 82.001-2 (indemnification is only owed to "a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof); Tex. Bus. & Com. Code §2.103(a)(1) (only buyer of goods can bring express and implied warranty claims under the UCC).

Finally, Christianson and other Installers have not suffered the same type of harm as Plaintiffs, who incorrectly argue that all class members have suffered the same "out of pocket losses" such as property damage to their homes, the cost to repair and replumb their homes, and the payment of insurance deductibles. ECF No. 108-1 at 28-29, 21-24; ECF No. 175 at 6-27.  Instead, as previously discussed, the injury to Installers like Christianson stems not from damage to its real property but instead from having to repair or replumb homes to mitigate the risk of claims and lawsuits, damage to its business reputation, interruption of its business, administrative costs in investigating and documenting the leaks including retention of designated personnel akin to third party administrators, and the cost incurred in defending itself against actual or threatened lawsuits.

## II.   THE SETTLEMENT AGREEMENT IS NOT FAIR, REASONABLE OR ADEQUATE.

### 1.   In performing a fairness analysis, the Court has a fiduciary duty to absent class members like Christianson.   Plaintiffs' simultaneous request for certification and settlement calls for heightened judicial scrutiny.

As this Court has explained, even if a plaintiff satisfies the requirements for certification, a class action cannot be settled without determining that the proposed settlement is fair, reasonable and adequate under Rule 23(e). *Beneli.*, 324 F.R.D. at 96. In evaluating whether the settlement is fair, reasonable and adequate under Rule 23(e), Courts conduct an independent analysis guided by the nonexclusive factors in *Girsh*, *Prudential* and *In re Baby Products*. *Id.* (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998); *Rougvie v. Ascena Retail Group, Inc.*, CV 15-724, 2016 WL 4111320, at *17 (E.D. Pa. July 29, 2016).

Although Courts must consider the *Girsh* factors before approving a class settlement, *Girsh* is not exhaustive and non-*Girsh* factors can also be dispositive. *In re AT&T Corp.*, 455 F.3d 160, 165 (3d Cir. 2006) ("[B]ecause of a 'sea-change in the nature of class actions' ...district courts should also consider other potentially relevant and appropriate factors."). For example, in *In re Baby Products Antitrust Litig.*, the Third Circuit reversed even though there was no dispute that the district

court correctly applied the *Girsh* factors, holding the court abused its discretion by failing to investigate the number of claims that class members had submitted and to ensure that the benefits provided by the settlement were fairly allocated to the class.  708 F.3d 163, 174-75 (3d Cir. 2013). The Court stated that in addition to the *Girsh* and *Prudential* factors, "we add today that one of the additional inquiries for a thorough analysis of settlement terms is the degree of direct benefit provided to the class [and] may consider, among other things, the number of individual awards compared to both the number of claims and the estimated number of class members, the size of the individual awards compared to claimants' estimated damages, and the claims process used to determine individual awards." *Id.* at 174.

This Court has also recognized that in performing this inquiry, the Court "acts as a fiduciary who must serve as a guardian of the rights of absent class members." *Beneli, 324 F.R.D.* at 101 (the Rule 23(e) inquiry "protects unnamed class members from unjust or unfair settlements affecting their rights" (citing *Amchem*, 521 U.S. at 623)). The purpose for this duty is clear. Unlike ordinary settlements where parties only bargain away their own rights, class action settlement affect not only the interests of the parties and counsel who negotiate them, but also the interests of unnamed class members who by definition are not present during the negotiations, presenting "the danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize

their own." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 715 (6th Cir. 2013). As the Third Circuit has explained, it follows that that a court's fiduciary role is "executed by the court's assuring the settlement represents adequate compensation for the release of the class claims." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998) (internal citation and quotation omitted).

Finally, this Court has confirmed that in addition to performing a fairness analysis keeping in mind its fiduciary duty to absentees "in cases as this, where settlement negotiations precede class certification and approval for settlement and certification are sought simultaneously, the Third Circuit requires district courts to be even 'more scrupulous than usual' when examining the fairness of the proposed settlement" and that one purpose of this "heightened standard" is to ensure that class counsel "has protected the interests of all class members." *Beneli*, 324 F.R.D. at 101 (D.N.J. 2018); *In re Baby Prod.*, 708 F.3d at 175 ("Because class actions are rife with potential conflicts of interest between class counsel and class members ... district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlement in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole.").

Here, analyzing the Settlement through the prism of a fiduciary for absentee Installers like Christianson and applying a heighted scrutiny leads to only one conclusion—the Settlement is not fair, reasonable or adequate.

### 2.    Several *Girsh* factors weigh against approval.

The first *Girsh* factor considers the complexity and likely duration of litigation without settlement. *GM Truck Prods.*, 55 F.3d at 785. This factor favors approving a settlement only when resolution of the claims by trial would require "additional discovery, extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy trial." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004).

Here, however, Plaintiffs admit that the parties are  largely prepared for: "the procedural history of this matter demonstrates that the parties [have] an ample understanding of the case, their own arguments, and those of the opposing side [and] [have] completed discovery, and [have] fully briefed two motions to dismiss, class certification, summary judgment, and *Daubert* motions in the present case (and in *Meadow*, motions to dismiss and for class certification)."  ECF No. 173-4 at 22. Therefore, this factor does not favor final approval.

 The second *Girsh* factor "attempts to gauge whether members of the class support the settlement." *Prudential*, 148 F.3d at 318. Courts typically "analyze this factor by counting the number of objectors and weighing the vociferousness of

their objections," as well as by counting the number of Class members who submit claims. *Martina v. L.A. Fitness Intern., LLC*, 2013 WL 5567157, at *5 (D.N.J. Oct. 8, 2013).

Christianson does not how many objectors there may be. However, having installed more NIBCO PEX than many (if not all) other Installers nationwide, the cost to combat this NIBCO PEX problem is extraordinary. Christianson has experienced significant failures and loss which threaten the company's future. Christianson is making this objection on behalf of all Installers who may not have the financial ability to do so or who may not yet grasp the long ranging impact and cost. Further, considering the extensive deficiencies in the language of the settlement documents themselves, the complicated nature of the law, and the need to retain New Jersey counsel, the Court should not interpret a small number of objectors as an indication of class support but instead a reflection that the cost and burden of objecting are just too high.

With respect to the "ability of the defendants to withstand a greater judgment" (*i.e.*, another *Girsh* factor), NIBCO is a well-known multi-national manufacture of valves, fittings and flow control products with manufacturing facilities throughout the United States.[27] Throughout litigation involving the NIBCO PEX failures, NIBCO has continued to grow and acquire new assets,

---

[27] *See* http://www.nibco.com/.

companies and product lines. Even if all Class Members who had experienced leaks were allowed full reimbursement for their losses, the total settlement value is unlikely to exceed a fraction of NIBCO's total revenues. Further, NIBCO has tendered and is receiving and defense and indemnification from its carrier in active litigation in Texas.[28] As a result, this factor also does not favor approval.

### 3.   *Prudential* considerations weigh against approval.

Several Prudential factors weigh against approval, specifically: (1) the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; (2) whether class or subclass members are accorded the right to opt out of the settlement; and, (3) whether the procedure for processing individual claims under the settlement is fair and reasonable. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998).

### a.   The Settlement is unfair to Installers because it strips them of contribution rights against NIBCO without just compensation.

As discussed herein, the Settlement would have a disparate impact on homeowners and Installers. While the Settlement provides homeowners a way to be made whole by bringing defective installation claims against Installers, it does the opposite for Installers.

---

[28] The nature and extent of NIBCO's coverage are not fully known to Christianson.

Because the Settlement only provides compensation for costs associated with the actual repair and replacement of the NIBCO Products and related personal property of the homeowner, Installers will be unable to recoup several other types of damages suffered (*e.g.,* attorney's fees, builder back charges, payments of insurance deductibles, settlements, business reputation damages, business interruption, administrative costs in investigating, administering and documenting the leaks, etc.) Additionally, the Settlement leaves Installers catastrophically vulnerable to homeowner lawsuits as Installers will remain the only viable defendant with no true means to defend itself via contribution and indemnification cross-claims.[29]

> ### b. The Settlement prevents Installers from securing a true right of opt out from the Settlement.

As discussed in the Statement of Interest and other sections, even though Installers like Christianson may opt out of the Proposed Class and therefore could never recover Settlement Funds, its rights nevertheless are prejudiced because NIBCO will likely be able to successfully argue that Christianson and other Installers who opt out qualify as a "Releasing Parties" who are barred from bringing claims against NIBCO and others in any subsequent suits. Therefore,

---

[29] The Installers indemnification obligations to Builders insulate Builders from being viable defendants.

Settlement may not provide Installers with the true right to opt out of the settlement.

        **c.**      **Finally, the procedure for processing individual claims under the settlement is not fair and reasonable.**

As previously discussed, the Settlement distribution process unfairly allows NIBCO to independently reject any Claim it decides was caused by improper installation practices. ECF No. 173-1 at §§ 1(ff), 14(b). The unreasonableness of this is compounded by the fact that if NIBCO rejects a claim, the only avenue for relief an Installer will have is to appeal to an engineer chosen by NIBCO . *Id*. at §15(a).

        **4.**      **Finally, *In re Baby Products* factors weigh against the Settlement because the Settlement Amount is critically underfunded and inadequate.**

*In re Baby Products* provides that Courts should analyze the "degree of direct benefit provided to the class" by considering, among other things "the number of individual awards compared to both the number of claims and the estimated number of class members, the size of the individual awards compared to claimants' estimated damages." 708 F.3d at 174.

Here, the Settlement does not provide Class Members with a sufficient amount of direct benefits. *See* the Brief in Opposition to Plaintiffs' Notice of Motion for Final Settlement Approval and Related Brief on Behalf of Interested

Party, D.R. Horton, Inc. filed in this matter and incorporated by reference as if set forth fully at length herein.

## **CONCLUSION**

It is respectfully submitted that, for the reasons set forth above, Plaintiffs' Motion for Final Approval of the Proposed Settlement be denied in its entirety. Alternatively, while Christianson posits that this Settlement Agreement should not be approved, Christianson's objection may be satisfied by revisions which preserve rights and remedies of Installers like Christianson including, but not limited to, the following: (1) clarification to ensure Christianson is not defined as a "Releasing Party"; (2) the class is limited to homeowners; (3) the word "Contractor" is deleted from the class definition; (4) clarification to ensure class members release any and all claims against anyone including, but not limited to, Contractors like Christianson for claims arising out of or related to defects in the product; (5) the release excludes contribution, indemnity, and similar claims and provides that non-parties to the settlement retain the right to assert such claims against Released Parties; (6) the settlement agreement contains a covenant by class members not to sue anyone for defects in the product; (7) the Gross Settlement Fund amount is increased; and, (8) other necessary revisions to ensure the settlement documents are reasonably clear and free of ambiguity to avoid unnecessary cost and judicial resources.

Dated: February 27, 2019          Respectfully submitted,

                                  _s/ Gavin J. Rooney_____
                                  **LOWENSTEIN SANDLER LLP**
                                  Gavin J. Rooney
                                  Craig Dashiell
                                  One Lowenstein Drive
                                  Roseland, New Jersey 07068
                                  (973) 597-2500

                                  Of counsel

                                  Shelly D. Masters
                                  Nicholas Y. Gavrizi
                                  **COKINOS, BOSEIEN & YOUNG PC**
                                  Las Cimas IV
                                  900 S. Capital of Texas Hwy, Suite 425
                                  Austin, Texas 78746
                                  (512) 476-1080

                                  *Attorneys for Objector Christianson Air*
                                  *Conditioning and Plumbing, LLC and*
                                  *Dupree Plumbing Co., Inc.*