UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KIMBERLY COLE, ALAN COLE, JAMES MONICA, LINDA BOYD, MICHAEL MCMAHON, RAY SMINKEY, JAMES MEDDERS, JUDY MEDDERS, ROBERT PEPERNO, SARAH PEPERNO, KELLY MCCOY, LESA WATTS, CHAD MEADOW, JOHN PLISKO, SUSAN PLISKO, KENNETH McLAUGHLIN, RYAN KENNY, ALEXANDER DAVIS, and ANDREA DAVIS, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>NIBCO, Inc.,<br><br>        Defendant. | Civil Action No. 13-7871-FLW-TJB |

**CLASS MEMBER JEFFREY PALMER'S OPPOSITION TO PLAINTIFFS' NOTICE OF MOTION FOR FINAL SETTLEMENT APPROVAL AND RELATED RELIEF**

## TABLE OF CONTENTS

I.  Class Recovery is Around 23% of Class Counsels' Proposed Fee. ............................... 1

II. Class Counsels' Prediction on Claims is Unrealistic Conjecture. .................................. 2

III. The Twelve-Page Claim Form is Confusing and Burdensome, Just as Mr. Palmer Testified. ..................................................................................................... 4

Conclusion .................................................................................................................... 5

## TABLE OF AUTHORITIES

**Cases**

*In re Baby Products Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013) .................................1, 2

*Jamison v. Klem*, 544 F.3d 266 (3d Cir. 2008) ...................................................................2

*Landsman v. Funk, P.C. v. Skinder-Strauss Assocs.*, 639 Fed. Appx. 880 (3d Cir. 2016) (unpublished). ...............................................................................................2

**Rules**

FED. R. CIV. P. 23 (2018 amendments and comments). ......................................................2

I.   **CLASS RECOVERY IS AROUND 23% OF CLASS COUNSELS' PROPOSED FEE.**

The focus of Mr. Palmer's objection is the disparity in class counsels' $13 million fee request relative to class payout under this reversionary claims-made settlement. Class counsels' response, a rose-colored projection of future claims based on self-serving conjecture, buries the lead. There have been only **758 claims** in the more than four months since the Claims Period started.[1] That's just a few times more than the **112 opt outs**. Class counsel still haven't estimated class size, but 758 is undoubtedly a miniscule percentage of it, and will produce only $3 million for the class assuming the 70% cap on individual recovery.[2] Even that number is overstated since some (and probably many) claims will be rejected.[3] Still, class counsel have the audacity to claim that the second *Girsh* factor—the reaction of the class—somehow weighs in favor of approval. Dkt. 201-1 at 10. This settlement has essentially the same disparate allocation produced by the claims process in *Baby Products*— $14 million in fees and expenses compared with $3 million to the class—which the Third Circuit rejected. 708 F.3d 163, 169-70, 179-80 (3d Cir. 2013).

---

[1] Dkt. 201-1 at 30.
[2] Dkt. 201-2 at 10.
[3] Dkt. 201-2 at 9 n.4 ("The number, however, includes Claim Forms where the Claimant asserts that the products were installed in the home before NIBCO started selling the Covered Products or after NIBCO discontinued sales of the Covered Products. Therefore, the Claim Form total reported here may be slightly overstated….").

*Baby Products* can't be written off as just a *cy pres* opinion. In discussing the *Girsh* factors, the Court in *Baby Products* added "that one of the additional inquiries for a thorough analysis of settlement terms is the degree of *direct benefit* provided to the class." *Baby Prod.*, 708 F.3d at 174 (emphasis added). That is also a central concern of recently amended Rule 23.[4] The unpublished *Landsman* opinion cited by class counsel, which carries no precedential weight, obviously does not trump *Baby Products* or Rule 23. 639 Fed. Appx. 880 (3d Cir. 2016) (unpub.).[5] It also involved 0 opt outs as opposed to the 112 here. *Id*. at 883.

## II. Class Counsels' Prediction on Claims is Unrealistic Conjecture.

While the claims period extends for six years, claims will inevitably wane after the initial notice campaign, particularly considering more than half of the $850,000 set aside for administration costs has already been spent. Dkt. 201-3 at 16. There are no plans for continued direct notice by mail or email, no plans for additional internet banner notices, and no plans for future publication notices.[6] Going forward, potential claimants will need to search out the settlement for

---

[4] FED. R. CIV. P. 23(e) (cmts. to 2018 amend.) ("[t]he relief that the settlement is expected to provide to class members is a central concern. Measuring the proposed relief may require evaluation of any proposed claims process; directing that parties report back to the court about actual claims experience may be important.").

[5] *Jamison v. Klem,* 544 F.3d 266, 278 n. 11 (3d Cir. 2008) ("[w]e have steadfastly attempted to discourage District Courts as well as attorneys from relying on nonprecedential opinions of this court. We do not accept these opinions as binding precedent because, unlike precedential opinions, they do not circulate to the entire court before they are filed.").

[6] The settlement administrator detailed these efforts in his declaration attached to the motion for final approval. Dkt. 201-3 at 4-8.

themselves.[7] Nevertheless, class attorney Shanon Carlson submits it would not be unreasonable to believe class members would file 10 to 25 times as many claims.[8] Ms. Carlson's unrealistically optimistic declaration assumes, without evidence, that there is a correlation between reported complaints to NIBCO and claims filed under the settlement. But as she concedes, this relationship "cannot be precisely defined or predicted as it depends on many factors." Dkt. 201-2 at 10-11. She doesn't name the factors, but certainly one is the ease of making a claim under warranty relative to the settlement. To make a warranty claim, NIBCO simply requires customers to contact the company and return the tubing, fittings, or accessories.[9] If the product is defective, a replacement is mailed free of charge. That's it. There's no confusing twelve-page claim form to be signed under penalty of perjury, no repeated use of undefined legal jargon, and no requirement that the class members provide their insurance policy numbers even if an insurance claim

---

[7] The settlement website will be maintained for the duration of the claims period, and the administrator will make efforts to make it findable via search engines. Dkt. 201-3 at 10.

[8] According to Ms. Carlson, "it is reasonable to believe that a settlement claim rate here following the extensive Notice Plan will result in between 7,039 to 19,705 claims." Dkt. 201-2.

[9] http://www.nibco.com/Resources/Warranties/ (Warranty for PEX Piping Systems) (last visited Mar. 30, 2019).

was not filed.[10] Perhaps most importantly, NIBCO doesn't tell its customers that if they file a warranty claim, they won't receive 75% of the benefits for more than six years. The disincentives for filing a claim under this settlement, as compared with claims under warranty, make it much more likely that the claims rate will continue to be extremely low, and even more likely that class counsels' $13 million fee will exceed class recovery. That is not an acceptable result.

### III. The Twelve-Page Claim Form is Confusing and Burdensome, Just as Mr. Palmer Testified.[11]

Class counsel grossly mislead[12] the Court in claiming Mr. Palmer's deposition testimony shows, in *their* words, that he was "easily able to fill out his own Claim Form" and that "he conceded that most of the Claim Form was clear and offered only quibbles about the rest." Dkt. 201-1 at 20. In *Mr. Palmer's* words, "the form is very cumbersome and difficult to negotiate[,]" even with the

---

[10] He explained that having to provide his homeowner's insurance policy number on the form, even though he didn't file a claim, made him uncomfortable. *Id.* at 53-54. The notice should have inquired if an insurance claim was made, and only then asked for this personal information. *Id.* at 52-53.

[11] Mr. Palmer's objection did mistakenly suggest that the claim form requires class members' dates of birth. Dkt. 184 at 16. That is actually a requirement for opt outs and objections. Notice at 11-12. It *is* an unnecessarily invasive requirement, particularly when paired with having to disclose insurance policy numbers.

[12] Mr. Palmer urges the Court to review the entire transcript. He did not object, as class counsel claim, only because his brother told him about the case. Dkt. 201-1 at 16 n. 2. He contacted counsel after his brother suggested he call them. Dkt. 201-2 Ex. B at 19-20. But "that was not why he hired them[,]" nor was it why he objected. *Id.* at 57-58. His testimony makes clear that the terms of the settlement, including the six year lag in class payment, struck him as unfair, which prompted him to contact counsel about objecting. *See e.g., id.* at 36, 40-41, 96.

assistance of counsel. Dkt. 201-2 Ex. B at 32. Mr. Palmer had to read portions of the form two or three times to understand it. *Id*. at 67. And, he had to go "back and forth several times to make sure that every single … blank was filled out with NA where it was not applicable to the claim." *Id*.[13] He correctly anticipated that there would not be many claims "because the process is cumbersome[,]" "that it could use a lot of revision[,]" that "it's going to deter a lot of people, and [that] … it's very likely that there are people that will not fill [the] form out correctly and be rejected.…" *Id*. at 118. Mr. Palmer believed inclusion of the term "effective date is very confusing and unclear because it's not even something that's been defined … it's a date somewhere in the future…." *Id*. at 73-74. "[T]he average person is going to look at that and have no idea what that means." *Id*. at 74-75. While a few claimants might sift through the settlement to discover the meaning, "the average consumer probably would have gotten frustrated at that point and thrown the thing in the trash[.]" *Id*. at 45.

## CONCLUSION

With preliminary results of the claims process before the Court, Mr. Palmer reiterates his request for relief as stated in his objection with even greater confidence.

---

[13] The claim form instructs, "[a]ll questions must be answered" and to use "N/A when the question does not apply." Dkt. 184-1 Ex. 1-A at 1. In the same paragraph, it indicates that "[i]f you fail to respond, your Claim may not be processed and you may waive your rights to receive a monetary award under the Settlement." *Id.*

5

DATED:  April 1, 2019								Respectfully submitted,


               /s/ *Janet L. Gold, Esquire*
               Janet L. Gold, Esquire
               Eisenberg, Gold & Agrawal, P.C.
               1040 North Kings Highway, Suite 200
               Cherry Hill, New Jersey 08034
               Tel: (856) 330-6200
               Fax: (856) 330-6207
               jgold @egclawfirm.com

               Robert W. Clore
               *Pro Hac Vice* Admission Pending
               Christopher A. Bandas
               *Pro Hac Vice* Admission Pending
               Bandas Law Firm, P.C.
               500 North Shoreline, Suite 1020
               Corpus Christi, TX 78401
               Tel: (361) 698–5200
               Fax: (361) 698-5200
               rclore@bandaslawfirm.com
               cbandas@bandaslawfirm.com

*Counsel for Objecting Class Member Jeffrey Palmer*

## Certificate of Service

The undersigned certifies that today she filed the foregoing objection and associated declarations on ECF which will send electronic notification to all attorneys registered for ECF-filing.

DATED:  April 1, 2019

                                             /s/ *Janet L. Gold, Esquire*
                                             Janet L. Gold, Esquire
                                             Eisenberg, Gold & Agrawal, P.C.
                                             1040 North Kings Highway, Suite 200
                                             Cherry Hill, New Jersey 08034
                                             Tel: (856) 330-6200
                                             Fax: (856) 330-6207
                                             jgold@egclawfirm.com
                                             *Attorney for Objector/Class Member*