## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KIMBERLY COLE, ALAN COLE, JAMES MONICA, LINDA BOYD, MICHAEL McMAHON, RAY SMINKEY, JAMES MEDDERS, JUDY MEDDERS, ROBERT PEPERNO, SARAH PEPERNO, KELLY McCOY, LESA WATTS, CHAD MEADOW, JOHN PLISKO, SUSAN PLISKO, KENNETH McLAUGHLIN, RYAN KENNY, ALEXANDER DAVIS, and ANDREA DAVIS, on behalf of themselves and all others similarly situated, : : : : : : : : : : : : : : : : : : : : : : : : | : Civil Action No.: 13-7871(FLW) (TJB) |

Plaintiffs,

v.

NIBCO, INC.,

Defendant.

[~~PROPOSED~~] ORDER GRANTING FINAL APPROVAL TO CLASS ACTION SETTLEMENT AND CERTIFYING SETTLEMENT CLASS

WHEREAS, the Court, having considered the Settlement Agreement dated October 26, 2018 (the "Settlement Agreement") and the Court's November 14, 2018 Order Granting Preliminary Approval of the Settlement (Dkt. No. 177), having held a Final Approval Hearing on April 8, 2019, and having considered all of the submissions and arguments with respect to the Settlement, and otherwise being fully informed, and good cause appearing therefor; and

WHEREAS, the Settlement resolves not only this matter but also the case of *Meadow et al. v. NIBCO, Inc.*, No. 3:15-1124 (M.D. Tenn.), which the Parties will

document through filing a stipulation of dismissal in the United Stated District Court for the Middle District of Tennessee.

IT IS HEREBY ORDERED AS FOLLOWS:

1.      This Final Approval Order incorporates the Settlement Agreement and its Exhibits and the Preliminary Approval Order and its Exhibits.  Unless otherwise provided the terms defined in the Settlement Agreement and Preliminary Approval Order shall have the same meanings for purposes of this Final Approval Order and the accompanying Final Judgment. To the extent that the terms of this Final Approval Order conflict with any provision of the Settlement Agreement and its Exhibits and the Preliminary Approval Order and its Exhibits, the terms of this Final Approval Order shall control.

2.      The Court has jurisdiction over this action, and all Parties and Settlement Class Members, for all matters relating to this Litigation and the Settlement, including, without limitation, the administration, interpretation, effectuation and/or enforcement of the Settlement, this Final Approval Order, and the Final Judgment.

**I.      THE SETTLEMENT CLASS**

3.      In the Preliminary Approval Order, the Court certified the following Settlement Class:

>       All Persons that own or have owned at any time since January 1, 2005, a residential or commercial structure in the United

2

States that contains or contained NIBCO's Tubing, Fittings, or Clamps, including their spouses, joint owners, heirs, executors, administrators, mortgagees, tenants, creditors, lenders, predecessors, successors, trusts and trustees, and assigns ("Occupant Persons"); as well as all Persons who have standing and are entitled to assert a claim on behalf of any such Occupant Persons, such as but not limited to a builder, contractor, distributor, seller, subrogated insurance carrier, or other Person who has claims for contribution, indemnity or otherwise against NIBCO based on claims for Qualifying Leaks of the Tubing, Fittings, or Clamps with respect to such residential or commercial structures. The Settlement Class includes all Persons who subsequently purchase or otherwise obtain an interest in a property covered by this Settlement without the need of a formal assignment by contract or court order.

Excluded from the Settlement Class are Occupant Persons with respect to residential structures constructed by D.R. Horton, Inc.-Birmingham (including, but not limited to, those for which the plumbing contracting was performed by or on behalf of Dupree Plumbing Co. Inc.) and which are located in the following cities in Alabama:   Bella Vista; Bessemer; Birmingham; Calera; Chelsea; Cottondale; Hoover; Kimberly; Leeds; Maylene; McCalla; Montgomery; Northport; Odenville; Pinson; Pratville; Springville; Trussville; and Tuscaloosa.  Also excluded from the Settlement Class are Occupant Persons with respect to residential structures constructed by Continental Homes of Texas, L.P. (including, but not limited to, those for which the plumbing contracting was performed by or on behalf of Christianson Air Conditioning and Plumbing, LLC) and which are located in the following cities in Texas:  Boerne; Cibolo; Converse; Live Oak; Medina County; New Braunfels; Royse City; San Antonio; San Marcos; Schertz; Sequin; and Universal City.  A list of such residential structures in Alabama and Texas covered by this exclusion has been provided to the Settlement Administrator and has been filed with the Court by the Administrator.  Also excluded from the Settlement Class are D.R. Horton, Inc.-Birmingham, Dupree Plumbing Co. Inc., Continental Homes of Texas, L.P., and Christianson Air Conditioning and Plumbing, LLC., with respect to the structures identified in that list.

3

Also excluded from the Settlement Class are (i) NIBCO, its officers, directors, affiliates, legal representatives, employees, successors, and assigns, and entities in which NIBCO has a controlling interest, and (ii) judges presiding over the Litigation; and (iii) local, municipal, state, and federal governmental entities.

4.      Certification of the Settlement Class is hereby reaffirmed as a final Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3) for the same reasons as set forth in the Court's Preliminary Approval Order.

5.      The Court has noted that the objections filed by (a) D.R. Horton, Inc. ("Horton"), Christianson Air Conditioning and Plumbing, LLC ("Christianson"), Dupree Plumbing Co. ("Dupree"), and Jesse Andrews were withdrawn on April 5, 2019, pursuant to written notices filed with the Court, and are therefore moot. The Court has considered the remaining three (3) objections to the Settlement, and, having found those objections to be without merit, overrules those objections in their entirety.

6.      The Court previously appointed Plaintiffs Kimberly Cole, Alan Cole, James Monica, Linda Boyd, Michael McMahon, Ray Sminkey, James Medders, Judy Medders, Robert Peperno, Sarah Peperno, Kelly McCoy, Chad Meadow, John Plisko, Susan Plisko, Kenneth McLaughlin, Lesa Watts, Ryan Kenny, Alexander Davis, and Andrea Davis as the Class Representatives of the Settlement Class and hereby reaffirms that appointment.

7.     The Court previously appointed Shanon J. Carson, Lawrence Deutsch and Jacob M. Polakoff of Berger Montague PC, and Joseph G. Sauder, Matthew D. Schelkopf and Joseph B. Kenney of Sauder Schelkopf LLC as Co-Lead Class Counsel, and hereby reaffirms that appointment.

## II.     CLASS NOTICE

8.     The record shows, and the Court finds, that the Notice Plan has been implemented in the manner approved by the Court in its Preliminary Approval Order.  The Court finds that the Notice Plan constitutes: (i) the best notice practicable to the Settlement Class under the circumstances; (ii) was reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of this Litigation and the terms of the Settlement, their right to exclude themselves from the Settlement, or to object to any part of the Settlement, their right to appear at the Final Approval Hearing (either on their own or through counsel hired at their own expense), and the binding effect of the Final Approval Order and the Final Judgment, whether favorable or unfavorable, on all Persons who do not exclude themselves from the Settlement Class, (iii) due, adequate, and sufficient notice to all Persons entitled to receive notice; and (iv) notice that fully satisfies the requirements of the United States Constitution (including the Due Process Clause), Fed. R. Civ. P. 23, and any other applicable law.  The Court has considered the objections to the Notice

Plan and, having found those objections to be without merit, overrules those objections.

9.     Due and adequate notice of the proceedings having been given to the Settlement Class and a full opportunity having been offered to Settlement Class Members to participate in the Final Approval Hearing, it is hereby determined that all Settlement Class Members except those identified in Appendix A who timely requested exclusion, are bound by this Final Approval Order and the Final Judgment.

10.    The Court finds that NIBCO through the Settlement Administrator provided notice of the Settlement to the appropriate state and federal government officials pursuant to 28 U.S.C. § 1715.  Furthermore, the Court has given the appropriate state and federal government officials the requisite ninety (90) day time period to comment or object to the Settlement before entering its Final Approval Order and Final Judgment.

## III.    FINAL APPROVAL OF THE SETTLEMENT

11.    The Court finds that the Settlement resulted from extensive arm's-length good faith negotiations and mediation between the Parties through experienced counsel, and with the assistance and oversight of experienced mediators Judge Wayne Andersen (Ret.) and Ross Hart, Esq.  Moreover, all aspects of the Settlement were informed by meaningful discovery that took place prior to and during the settlement process.

6

12.     Pursuant to Fed. R. Civ. P. 23(e), the Court hereby finally approves in all respects the Settlement and finds that the Settlement, the benefits to the Settlement Class Members, and all other aspects of the Settlement are, in all respects, fair, reasonable, and adequate, and in the best interests of the Settlement Class, within a range that responsible and experienced attorneys could accept considering all relevant risks and factors and the relative merits of Plaintiffs' claims and NIBCO's defenses, and are in full compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), and the Class Action Fairness Act.   Accordingly, the Settlement shall be consummated in accordance with its terms and provisions.

13.     The Court finds that the settlement is fair, reasonable, and adequate in light of the factors set forth in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), based on the following factors, among other things:

a.     This case was highly complex, expensive, and time consuming, and would have continued to be so through trial and possible appeals if the case had not settled;

b.     Because the case settled after extensive fact and expert discovery, the Parties had a full appreciation of the strengths and weaknesses of their case while negotiating the Settlement;

7

c.    Class Counsel and the Settlement Class would have faced material risks in establishing class certification through trial and appeals, and also in establishing liability and damages, if they decided to continue to litigate rather than settle pursuant to the Settlement Agreement;

d.    The settlement amount and relief available under the Settlement are well within the range of reasonableness in light of the best possible recovery and the risks the Parties would have faced if the Litigation had continued to verdicts and possible appeals as to liability and damages;

e.    The Settlement also satisfies the additional relevant factors set forth in *In re: Prudential Ins. Co. of Amer. Sales Practices Litig.*, 148 F.3d 283 (3d Cir. 1998).

Accordingly, for these reasons, the Settlement shall be consummated in accordance with the terms and provisions of the Settlement Agreement.

14.    The Court held a Final Approval Hearing, and has considered all objections and comments, timely and proper or otherwise, to the Settlement and denies and overrules them as without merit.

15.    In making all of the foregoing findings, the Court has exercised its discretion in certifying the Settlement Class and granting final approval to the

Settlement based upon all facts and circumstances of this Litigation as presented to the Court in the Parties' respective submissions in support of approval of the Settlement.

## IV.   DISMISSAL OF CLAIMS, RELEASE, AND INJUNCTION

16.    This Litigation is hereby dismissed with prejudice on the merits and without costs to any Party or Person, except as otherwise provided herein or in the Settlement Agreement.

17.    The Court finds and confirms that the Settlement Escrow Account is a "qualified settlement fund" as defined in Section 1.468B-1 through 1.468B-5 of the Treasury Regulations.

18.    The Court shall retain continuing jurisdiction over the Settlement Escrow Account, pursuant to Section 1.468B-1(c)(1) of the Treasury Regulations.

19.    Under the "relation back" rule provided under Section 1.468B-1(j)(2)(i) of the Treasury Regulations, the Court finds that NIBCO and the Settlement Administrator may jointly elect to treat the Settlement Escrow Account as coming into existence as a "qualified settlement fund" on the latter of the date the Settlement Escrow Account meets the requirements of Paragraph VI of the Preliminary Approval Order or January 1 of the calendar year in which all of the requirements of Paragraph VI of the Preliminary Approval Order are met. If such a relation-back

9

election is made, the assets held in the Settlement Escrow Account on such date shall be treated as having been transferred to the Settlement Escrow Account on that date.

20.     Upon the Effective Date, all Settlement Class Members, as well as any Person who receives any payment from the Net Settlement Fund, on behalf of themselves and their agents, heirs, executors and administrators, successors, assigns, insurers, attorneys, representatives, and any and all Persons who seek to claim through or in the name or right of any of them (but excluding any Persons identified in Appendix A who timely opted out of the Settlement with regard to the buildings or geographic scope for which they opted out) (the "Releasing Parties"), release and forever discharge (as by an instrument under seal without further act by any Person, and upon good and sufficient consideration), NIBCO, its administrators, insurers, reinsurers,       agents,       firms,       parent       companies/corporations,       sister companies/corporations, subsidiaries and affiliates, and any sales agents and distributors, wholesalers, retailers, plumbers, homebuilders, developers, contractors, engineers, architects, and any other product or service provider or any other party in the chain of distribution who distributed, specified, recommended, sold, and/or installed the Tubing, Fittings, and/or Clamps, and all of the foregoing Persons' respective predecessors, successors, assigns and present and former officers, directors, shareholders, employees, agents, attorneys, and representatives (collectively, the "Released Parties"), from each and every claim of liability, on any

legal or equitable ground whatsoever, including relief under federal law or the laws of any state, regarding or related to NIBCO's Tubing, Fittings, and/or Clamps, including without limitation their design, manufacture, purchase, use, marketing, promotions, sale, or certification, and including without limitation all past, present, or future claims, damages, or liability on any legal or equitable ground whatsoever, and regardless of whether such claims might have been or might be brought directly, or through subrogation or assignment or otherwise, on account of or related to the Tubing, Fittings, and/or Clamps, which were alleged or could have been alleged in the Complaints filed in the Litigation. The Release is as a result of membership as a Settlement Class Member, status as Releasing Parties, the Court's approval process herein, and the occurrence of the Effective Date, and is not conditional on receipt of payment by any particular member of the Settlement Class or Releasing Party. Without in any way limiting its scope, and, except to the extent otherwise specified in the Settlement Agreement, the Release covers by example and without limitation, any and all claims for reasonable attorneys' fees, costs, expert fees, consultant fees, interest, litigation fees, costs, or any other fees, costs, and/or disbursements incurred by any attorneys, Class Counsel, Plaintiffs, Settlement Class Members, or any Releasing Party who claim to have assisted in conferring the benefits under this Settlement upon the Settlement Class. This Settlement Agreement and the Release provided for herein shall not and are not intended to release the claims of the

11

Releasing Parties against the suppliers of raw materials, components, or ingredients used in the manufacture of the Tubing, Fittings, and/or Clamps, which the Releasing Parties hereby fully and forever assign, transfer, and convey to NIBCO. This provision does not, and is not intended to preclude or impact the ability of parties that opted out of the Settlement, including, without limitation, Horton, Christianson, and Dupree, from asserting claims against suppliers of raw materials, components, or ingredients used in the manufacture of the Tubing, Fittings, and/or Clamps. For purposes of any claims by NIBCO against the suppliers of raw materials, components, or ingredients used in the manufacture of the Tubing, Fittings, and/or Clamps, should such supplier seek to join any Releasing Party in such a claim, NIBCO shall defend, indemnify, and hold harmless the Releasing Party from any and all claims of any such supplier against the Releasing Party.

21.    All personal injury claims are expressly excluded from the Release. In addition, subject to the terms of Paragraph 34 of the Settlement Agreement, the Parties further agree that certain limited claims as specified below, which a Releasing Party has brought or may in the future bring against an installer, plumber, homebuilder, contractor, or other product or service provider, or any other party in the chain of distribution who purchased, specified, recommended, sold, and/or installed the Tubing, Fittings, and/or Clamps, related solely and exclusively to the alleged faulty installation of the Tubing, Fittings, and/or Clamps are expressly not

12

released as to such Persons. This limited exception shall include only claims alleging that a party or parties other than NIBCO are solely and exclusively responsible for a leak of the Tubing, Fittings, or Clamps, including, without limitation, as a result of (1) a penetration of the Tubing, Fittings, and/or Clamps from a foreign object such as a nail or other physical abuse; (2) improper attachment of the Tubing, Fittings, and/or Clamps to plumbing components or appliances; (3) improper stress on the Tubing, Fittings, and/or Clamps due to improper installation; (4) leaks due to an improperly set or malfunctioning pressure-reducing valve not manufactured or sold by NIBCO; (5) leaks due to age of fixture sealant components supplied or provided by a plumber; or (6) any installation issue in violation of NIBCO's installation guidelines and/or unrelated to the design, manufacture, performance, or selection of the Tubing, Fittings, and/or Clamps. However, if a court finds, via dispositive motion or otherwise, that NIBCO was at least partially responsible, then this limited exception shall not apply and the claim is released under Paragraph 34 of the Settlement Agreement.  Nothing in this Paragraph shall permit any Releasing Party to bring any other claims released herein, including without limitation claims for improper, insufficient, or negligent advice, recommendation, solicitation, purchase, selection, or sale of the Tubing, Fittings, and/or Clamps, and in no event shall any claim whose prosecution is permitted by this Paragraph allege, purport to allege or depend on any wrongful act, error or omission, loss, or liability, whether strict, or

13

due to fault or otherwise, by NIBCO. The Releasing Parties and NIBCO do not intend to create and do not believe that the reservation provided in this Paragraph creates any basis for a claim of indemnification, contribution, or any other claim, however denominated, by a nonparty against the Released Parties, with the exception that, as described in Paragraph 34 of the Settlement Agreement, parties who opted out of the Settlement do not release their ability to assert indemnification, contribution, and any other claim however denominated against Released Parties. This provision is intended solely to preserve a Releasing Party's ability to seek relief against the nonreleased individuals or entities for liability unrelated to NIBCO as expressly specified in this Paragraph. In addition, the Releasing Parties agree that in any action brought by a Releasing Party against any third party based on a leak that is not a Qualifying Leak, should any such third party sued by a Releasing Party file a claim or cause of action against any Released Party for contribution, indemnification, or any other claim, however denominated, arising out of or related to the Tubing, Fittings, and/or Clamps, the Releasing Parties shall hold NIBCO and the Released Parties harmless, agree to a judgment in NIBCO's and the Released Parties' favor dismissing all claims asserted by the Releasing Party or anyone claiming by, through, or under the Releasing Party, and to the extent that the claims against NIBCO or the Released Parties are not released, then reduce or remit any judgment against such third party by the percentage, amount, or share necessary

14

under applicable law to fully discharge and relieve NIBCO and the Released Parties of liability to such third party for claims for contribution, indemnification, or any other claim, however denominated, including attorneys' fees and costs such Person may seek against NIBCO and the Released Parties. However, the Releasing Parties' obligation is limited to no more than the amount of the judgment against NIBCO or the Released Parties. If any third party sued by a Releasing Party obtains a judgment against NIBCO or any Released Party for contribution, indemnification, or any other claim, however denominated, the Releasing Party agrees that the Releasing Party shall reduce or remit its judgment against such third party by the amount of such third party's judgment against NIBCO and the Released Party not to exceed the amount of that portion of the judgment for which such third party obtains contribution, indemnification, or other relief, however denominated, so as to fully satisfy such third party's judgment against NIBCO and the Released Party including attorneys' fees and costs such third party may seek against NIBCO and the Released Party. In any settlement between any of the Releasing Parties and any Person arising out of or related to NIBCO's Tubing, Fittings, and/or Clamps, the Releasing Parties shall be deemed to have obtained a release in favor of all Released Parties.

22.    Settlement Class Members have knowingly and voluntarily waived the provisions of Section 1542 of the California Civil Code (to the extent applicable), which provides as follows:

15

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE
> CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER
> FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF
> KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED
> HIS OR HER SETTLEMENT WITH THE DEBTOR.

Plaintiffs and the Settlement Class Members, on behalf of all Releasing Parties, expressly waive and relinquish any and all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code, or any other law of any state or territory that is similar, comparable or equivalent to Section 1542, to the fullest extent they may lawfully waive such rights or benefits pertaining to the Released Claims. In connection with such waiver and relinquishment, the Settlement Class Members hereby acknowledge that the Releasing Parties are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those that they now know or believe exist with respect to Released Claims, but that it is their intention to hereby fully, finally, and forever settle and release all of the Released Claims known or unknown, suspected or unsuspected, that they have against the Released Parties. In furtherance of such intention, the Release herein given by the Releasing Parties to the Released Parties shall be and remain in effect as a full and complete general release notwithstanding the discovery or existence of any such additional different

16

claims or facts. Each of the Parties expressly acknowledges that it has been advised by its attorneys of the contents and effect of Section 1542, and with knowledge, each of the Parties hereby expressly waives whatever benefits it may have had pursuant to such section. Plaintiffs acknowledge, and the Releasing Parties shall be deemed by operation of the Final Approval Order and the Final Judgment to have acknowledged, that the foregoing waiver was expressly bargained for and a material element of the Settlement of which this Release is a part.

23.     The Court approves the Settlement Agreement noting the following:

a.       the definition of "Qualifying Leak" as set forth in Paragraph 1(ff)(iv) of the Settlement Agreement has been amended and clarified, consistent with the Parties' original intent, to read in relevant part that:

A Qualifying Leak does not occur where, following the procedure set forth in Paragraph 14 below, the Settlement Administrator, NIBCO, and Co-Lead Class Counsel all agree that based on available evidence, a physical escape of water from a Covered Product causing damage was solely and exclusively the result of: (1) a penetration of the Tubing, Fittings, and/or Clamps from a foreign object such as a nail or other physical abuse; (2) improper attachment of the Tubing, Fittings, and/or Clamps to plumbing components or appliances; (3) improper stress on the Tubing, Fittings, and/or Clamps due to improper installation; (4)

17

leaks due to an improperly set or malfunctioning pressure-reducing valve not manufactured or sold by NIBCO; (5) leaks due to age of fixture sealant components supplied or provided by a plumber; or (6) any installation issue in violation of NIBCO's installation guidelines and/or unrelated to the design, manufacture, performance, or selection of the Tubing, Fittings, and/or Clamps. If it is determined that a Qualifying Leak has not occurred because the physical escape of water causing damage was solely and exclusively the result of one or more of the causes set forth in (1) through (6) above with respect to a particular Claimant, then that Claimant shall have the benefits of the carve-out of the release provisions in Paragraph 35, meaning that Claimant shall not be precluded by the Release from filing claims against its installer or third parties.

      b.     Paragraph 9.c. of the Settlement Agreement has been amended to provide as follows:

      c.     **Re-Plumb Claims for Claimants with Multiple Leaks**. An Eligible Claimant who demonstrates that their residential or commercial structure has experienced three (3) or more Qualifying Leaks, each one occurring at a separate time after repair and in such a manner that replumbing all or part of the structure would mitigate future events, has the option of requesting a payment relating to a complete re-plumb of relevant

PEX Tubing, Clamps, and Fittings. Such Claims must be submitted to the Settlement Administrator within 150 days after the Effective Date if the third Qualifying Leak occurred before the Effective Date, or otherwise must be submitted within 150 days after the third Qualifying Leak occurs, though the Settlement Administrator may extend this 150-day period for a particular Claimant upon a showing of good cause as determined by the Settlement Administrator. An explanation in a Claim Form under oath reasonably demonstrating that the Claimant was precluded from submitting a Claim Form due to circumstances beyond the Claimant's control shall constitute good cause. The amount of the payment (the "Re-Plumb Calculation(s)") shall be calculated at a rate of $600 per plumbing fixture present in the residential or commercial structure (*e.g.*, the Re-Plumb Calculation for a home with 13.5 fixtures would be $8,100). The Re-Plumb Calculation shall be limited to a maximum of $16,000 per residence or structure. A schedule of qualifying fixtures and half-fixtures is attached hereto as **Exhibit 3** and shall be used by the Settlement Administrator in determining the amount of an Eligible Claimant's Re-Plumb Calculation under this Paragraph. Eligible Claimants shall receive an initial payment of 25% of the Re-Plumb Calculation, and at the end of the Claim Period, the Eligible Claimants shall receive a second *pro rata* payment, which depending on the claim rate shall make the total payment up to 70% of their Re-Plumb Calculation. Co-Lead Class Counsel shall monitor the Net Settlement Fund and if appropriate, may make a recommendation to the

Court that the subsequent payment can be accelerated or that another interim payment can be made during the Claim Period, based upon the number of Claims and the amount remaining in the Net Settlement Fund. If an Eligible Claimant is compensated for a Re-Plumb Claim, that Eligible Claimant and their residential or commercial structure are no longer eligible to make any Future Property Damage Claims. Subject to the written approval of Co-Lead Class Counsel and Counsel for NIBCO, the Settlement Administrator may engage one or more dedicated re-plumbers to complete approved re-plumbings as set forth in this Paragraph. To the extent an Eligible Claimant's residential or commercial structure has experienced three (3) or more Qualifying Leaks and the Eligible Claimant paid for a complete re-plumb of Covered Products in the Eligible Claimant's structure before the Preliminary Approval Date, the Eligible Claimant may request payment consistent with the terms and limitations of this Paragraph.

Notwithstanding the requirement that a Claimant's residential or commercial structure must have experienced three (3) or more Qualifying Leaks, each one occurring at a separate time after repair and in such a manner that replumbing all or part of the structure would mitigate future events, a Claimant who has paid for a complete re-plumb of Covered Products in the Claimant's structure after at least one Qualifying Leak can seek consideration as an exception and request payment consistent with the terms and limitations of this Paragraph upon a showing of good cause as determined by the Settlement Administrator and approved by NIBCO and

Co-Lead Class Counsel that the Claimant's unique circumstances warranted such re-plumb to mitigate future leaks.

c.      With respect to D.R. Horton, Inc., and its subsidiaries and affiliates, including but not limited to Continental Homes of Texas, L.P., and with respect to Christianson Air Conditioning and Plumbing, LLC and Dupree Plumbing Co., Inc., the Court approves their requests for exclusion of their own claims, including but not limited to their own direct claims and their own contribution and/or indemnity claims, from the Settlement and notes (i) that the D.R. Horton request satisfies the conditions in the Settlement Agreement because it identifies that it is opting out its own claims, including but not limited to its own direct claims and contribution and/or indemnity claims, with regard to all structures in the United States constructed or sold by D.R. Horton and/or its subsidiaries and affiliates containing Covered Products, (ii) that the Christianson Air Conditioning and Plumbing, LLC request satisfies the conditions in the Settlement Agreement because it identifies that it is opting out its own claims, including but not limited to its own direct claims and contribution and/or indemnity claims, with regard to each and every one of the structures identified in the schedules attached as Exhibits A and B to the document filed as ECF Docket No. 192-1, and (iii) that the Dupree Plumbing Co., Inc. request satisfies the conditions in the Settlement Agreement because it identifies that it is opting out its own claims, including but not limited to its own

direct claims and contribution and/or indemnity claims, with regard to each and every one of the structures identified in the schedule attached as Exhibits A to the document filed as ECF Docket No. 193. As also noted above, the Settlement Agreement excludes parties that opted out of the Settlement, including, without limitation, Horton, Christianson, and Dupree, from the definition of "Releasing Parties" and as such, none of these entities shall be considered a Releasing Party pursuant to Paragraphs 34 and 35 of the Settlement Agreement for their own claims opted out. Further, because such opt-out parties are not "Releasing Parties," they do not assign claims to NIBCO pursuant to Paragraph 34 of the Settlement Agreement.

24.    The Court orders that, upon the Effective Date, the Settlement Agreement shall be the exclusive remedy for any and all Released Claims. The Court thus hereby permanently bars and enjoins Plaintiffs, all Settlement Class Members, and all Persons acting on behalf of, or in concert or participation with such Plaintiffs or Settlement Class Members (including but not limited to the Releasing Parties but excluding parties who opted out of the Settlement, including D.R. Horton, Inc., Christianson Air Conditioning and Plumbing, LLC, and Dupree Plumbing Co., Inc. as described above), from: (a) filing, commencing, asserting, prosecuting, maintaining, pursuing, continuing, intervening in, or participating in, or receiving any benefits from, any lawsuit, arbitration, or administrative, regulatory or other proceeding or order in any jurisdiction based upon or asserting any of the Released

Claims against any Released Party; (b) bringing a class action on behalf of Plaintiffs or Settlement Class Members, seeking to certify a class that includes Plaintiffs or Settlement Class Members, or continuing to prosecute or participate in any previously filed and/or certified class action, and/or in any lawsuit based upon or asserting any of the Released Claims.  Pursuant to 28 U.S.C. §§ 1651(a) and 2283, the Court finds that issuance of this permanent injunction is necessary and appropriate in aid of its continuing jurisdiction and authority over the Settlement Agreement and the Litigation.

25.   Neither the Settlement Agreement, nor any of its terms and provisions, nor any of the negotiations, or proceedings connected with it, nor any of the documents or statements referred to therein, nor any of the documents or statements generated or received pursuant to the claims administration process, shall be:

a.   offered by any Person or received against NIBCO or any Released Party as evidence or construed or deemed as evidence of any presumption, concession, or admission by NIBCO or any Released Party of the truth of the facts alleged by the Plaintiffs or any Settlement Class Member or the validity of any claim that has been or could have been asserted in this Litigation or in any litigation, or other judicial or administrative proceeding, or the deficiency of any defense that has been or could have been asserted in

this Litigation or in any litigation, or of any liability, negligence, fault or wrongdoing of NIBCO or any Released Party;

b.    offered by any Person or received against NIBCO or any Released Party as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by NIBCO or any Released Party or any other wrongdoing by NIBCO or any Released Party; or

c.    offered by any Person or received against NIBCO or any Released Party as evidence of a presumption, concession, or admission with respect to any default, liability, negligence, fault, or wrongdoing, or in any way interpreted, construed, deemed, invoked, offered, received in evidence, or referred to for any other reason against any of the settling parties, in any civil, criminal, or administrative action or proceeding; provided, however, that nothing contained herein shall prevent the Settlement Agreement (or any agreement or order relating thereto) from being used, offered, or received in evidence in any proceeding to approve, enforce, or otherwise effectuate the Settlement (or any agreement or order relating thereto), the Final Approval Order, or the Final Judgment, or in which the reasonableness, fairness, or good faith of the Parties in participating in the Settlement (or any agreement or order relating thereto) is an issue, or to enforce or effectuate provisions of the

Settlement, the Final Approval Order, the Final Judgment, or the Release as to NIBCO, the Released Parties, Plaintiffs, or the Settlement Class Members.

## V.     OTHER PROVISIONS

26.     Ross Hart, Esquire, of the Arbitration Mediation Conciliation Center is hereby appointed as the Special Master.

27.     Todd J. Menna of Element Materials Technology is hereby appointed as the Independent Engineering Consultant.

28.     The Court has jurisdiction to enter this Final Approval Order and the accompanying Final Judgment.  Without in any way affecting the finality of this Final Approval Order or the Final Judgment, this Court expressly retains exclusive and continuing jurisdiction over the Settlement, including all matters relating to the administration, consummation, validity, enforcement and interpretation of the Settlement Agreement, the Final Approval Order, or the Final Judgment, including, without limitation, for the purpose of:

a.     enforcing the terms and conditions of the Settlement and resolving any disputes, claims or causes of action that, in whole or in part, are related to or arise out of the Settlement Agreement, the Final Approval Order, or the Final Judgment (including, whether a Person is or is not a Settlement Class Member);

b.      entering such additional orders, if any, as may be necessary or appropriate to protect or effectuate the Final Approval Order, the Final Judgment, or the Settlement Agreement, or to ensure the fair and orderly administration of the Settlement; and

c.      entering any other necessary or appropriate orders to protect and effectuate this Court's retention of continuing jurisdiction over the Settlement, the Final Approval Order, or the Final Judgment.

29.     Without affecting the finality of this Final Approval Order or the Final Judgment, NIBCO and each Settlement Class Member hereby irrevocably submits to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to the Settlement or the applicability of the Settlement Agreement, including any suit, action, proceeding, or dispute relating to the Release provisions herein.

30.     The Parties are hereby directed to implement and consummate the Settlement according to the terms and provisions of the Settlement Agreement.

31.     Without further order of the Court, the Parties may agree to reasonably necessary extensions of time to carry out any of the provisions of the Settlement Agreement.  Likewise, the Parties may, without further order of the Court or notice to the Settlement Class, agree to and adopt such amendments to the Settlement Agreement (including exhibits) as are consistent in material respects with this Final

Approval Order and the Final Judgment and that do not limit the rights of Settlement Class Members under the Settlement Agreement.

32.     In the event that the Effective Date does not occur, certification of the Settlement Class shall be automatically vacated and the Final Approval Order and Final Judgment, and all other orders entered and releases delivered in connection herewith, shall be vacated and shall become null and void.

33.     The Clerk of the Court is hereby directed to CLOSE THIS FILE.

IT IS SO ORDERED, this 11th day of _____April_____, 2019.

BY THE COURT:

HONORABLE FREDA L. WOLFSON
UNITED STATES DISTRICT COURT JUDGE

27